UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

MATTHEW MUCKEY,                                          No.:

                          Plaintiff,                    **COMPLAINT**

    -against-                                           **JURY TRIAL
DEMANDED**

ASSOCIATED MUSICIANS OF GREATER NEW YORK,
LOCAL 802, AMERICAN FEDERATION OF MUSICIANS
and THE PHILHARMONIC-SYMPHONY SOCIETY OF
NEW YORK, INC. a/k/a THE NEW YORK PHILHARMONIC
ORCHESTRA,

                        Defendants.

--------------------------------------------------------------------------X

        Plaintiff MATTHEW MUCKEY ("Plaintiff" or "Mr. Muckey"), by and through his

attorneys, McLAUGHLIN & STERN, LLP, as and for his complaint against Defendant

ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN

FEDERATION OF MUSICIANS ("LOCAL 802" or the "Union") and Defendant THE

PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC. a/k/a THE NEW YORK

PHILHARMONIC ORCHESTRA (the "Philharmonic" or the "Society") (Local 802/the Union

and the Philharmonic/the Society collectively referred to herein as the "Defendants"),

respectfully alleges, as follows:

<u>**NATURE OF THE ACTION**</u>

      1.     Plaintiff is an internationally recognized, talented musician of the Philharmonic

and was granted a tenured position as the Associate Principal and Third Trumpet at the

Philharmonic on or about January 2, 2008.

2.      In addition, throughout his career, Plaintiff has performed in other orchestras, has lectured students, taught masterclasses worldwide, participated in other musical engagements and enjoyed a successful career at the Philharmonic.

3.      Then, in or about 2010, false allegations of drugging and sexual misconduct were made against Plaintiff by a probationary player of the Philharmonic (the "2010 Allegations").

4.      Plaintiff acknowledged an encounter with the player which was consensual and in which no drugs were involved.

5.      Plaintiff denied the 2010 Allegations and fully cooperated with the local authorities in multiple investigations.

6.      Plaintiff voluntarily consented to a full physical exam specifically pertaining to a sexual assault investigation as well as to a complete search of his rented condominium.

7.      The local authorities located no drugs and after finding no basis to bring any criminal charges against Mr. Muckey, they ultimately closed the investigations.

8.      Also, the Philharmonic took no adverse employment action against Plaintiff at that time, and he continued to remain employed at the Philharmonic without issue.

9.      Plaintiff continued his successful musical career.

10.      He married in 2013, and currently has two young children.

11.      In 2018, however, the same 2010 Allegations resurfaced, and the Philharmonic terminated Plaintiff's employment claiming that it had "just cause" to dismiss him.

12.      Plaintiff again denied the 2010 Allegations as being false and petitioned Local 802 to file a grievance to challenge his termination.

13.      Local 802 thoroughly reviewed the matter and agreed with Plaintiff that there was no just cause to terminate him and Local 802 commenced an arbitration proceeding on behalf of

Plaintiff pursuant to a Trade Agreement between Local 802 and the Philharmonic (the "Collective Bargaining Agreement" or "CBA"), seeking the reinstatement of Plaintiff together with backpay.

14.     Local 802 prevailed in the arbitration and the Arbitrator issued an opinion and award dated April 4, 2020, in which he held that there was no just cause to terminate Plaintiff.

15.     The Arbitrator ordered the reinstatement of Plaintiff with all contractual benefits lost, including full back pay and seniority (the "Award").

16.     Thereafter, the Philharmonic restored Plaintiff to his tenured position, restored his seniority and remitted to him full back pay for the period during which he was wrongfully terminated.

17.     Plaintiff continued his career achieving status as tenured Associate Principal and Third Trumpet at the Philharmonic with much success and without any issue.

18.     Then, on April 12, 2024, an article appeared in *Vulture*, a *New York* magazine website ("*Vulture*" or "*New York* magazine") which rehashed the 2010 Allegations.

19.     The article contained no new claims but, instead, was simply a reiteration of the same 2010 Allegations that Local 802 argued, and the Arbitrator determined, did not constitute "just cause" to warrant Plaintiff's dismissal from the Philharmonic.

20.     The next day, April 13, 2024, based solely on the 2010 Allegations, the Philharmonic barred Plaintiff from attending all rehearsals and performances and publicly announced same.

21.     Later that day, Mr. Muckey was informed that his future at the Philharmonic was under further review.

22.     Plaintiff has made demands to Local 802 to take the necessary steps on his behalf to seek enforcement of the Award so that he may again participate in the rehearsals, performances and other activities at the Philharmonic.

23.     Local 802, however, has refused to do so, in breach of its duty of fair representation.

24.     In further disregard of the Union's obligations of fair representation, the President of Local 802 publicly endorsed the Philharmonic's acts and made other statements supporting the actions of the Philharmonic in derogation of Plaintiff's rights under the Award.

25.     Based upon the foregoing, Plaintiff brings this action seeking declaratory, affirmative and equitable relief, as well as applicable monetary damages (a) against Local 802 pursuant to the National Labor Relations Act (the "NLRA") based upon Local 802's failure and/or refusal to seek enforcement of the Award so that he may return to the rehearsals, performances and other activities at the Philharmonic; and (b) against the Philharmonic pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 based upon its violation of the Award.

## **PARTIES**

26.     Mr. Muckey, at all relevant times, was and is a member of Local 802 and is an employee of the Philharmonic.  Mr. Muckey is a citizen of the State of New York.

27.     Local 802 is the largest local union of professional musicians in the world and its community of musicians includes the New York Philharmonic.  Its principal place of business is located at 322 West 48th Street, #1308, New York, New York 10036.

28.     The Philharmonic is a domestic not-for-profit corporation.  Its principal place of business is located at 10 Lincoln Center Plaza, New York, New York 10023.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28

U.S.C. § 1343 as the cause of action presents a federal question.  In particular, pursuant to 29

U.S.C. § 185, Mr. Muckey states a hybrid claim under section 301 of the Labor Management

Relations Act for breach of the collective bargaining agreement by the Philharmonic, and breach

by Local 802 of its duty of fair representation to Mr. Muckey.

30.     Venue properly lies in this judicial district pursuant to 28 U.S.C § 1391(b) and

(c), in that Mr. Muckey is a natural person domiciled within this judicial district, Defendants

Local 802 and the Philharmonic each maintain an office within the judicial district, and a

substantial part of the events giving rise to the actions alleged herein have taken place within this

judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Mr. Muckey's Tenured Employment at the Philharmonic and Membership in Local 802*

31.     Mr. Muckey commenced his employment at the Philharmonic on June 28, 2006

and, shortly thereafter, on or about January 2, 2008, was granted tenure with the Philharmonic.

32.     His tenured position is as the Associate Principal and Third Trumpet at the

Philharmonic.

33.     As a tenured musician, Mr. Muckey has a lifetime appointment at the

Philharmonic, unless there is dismissal for good cause.

34.     Mr. Muckey is also a member of Local 802.

35.     As a member of Local 802, he is entitled to, *inter alia,* benefits provided by the

Union as well as fair representation.

***The 2010 Allegations Led to Mr. Muckey's Wrongful Dismissal at the Philharmonic and Local 802 Filed a Grievance on His Behalf***

36.     In 2010, a probationary player of the Philharmonic, Cara Kizer ("Kizer"), made the 2010 Allegations against Mr. Muckey.

37.     Mr. Muckey denied the 2010 Allegations as being false and he fully cooperated in the multiple, thorough investigations conducted by local authorities.

38.     He voluntarily consented to a full physical exam specifically pertaining to a sexual assault investigation as well as to a complete search of his rented condominium.

39.     At that time, the Philharmonic determined that there was no basis to inquire or take any adverse employment action against Mr. Muckey based upon the 2010 Allegations.

40.     Eight years later, in or about 2018, when the 2010 Allegations resurfaced, the Philharmonic then conducted an investigation into the 2010 Allegations.

41.     During the investigation, Mr. Muckey again denied 20210 Allegations as being false.

42.     After the investigation concluded, the Philharmonic terminated Mr. Muckey's employment on or about September 4, 2018, based upon the 2010 Allegations.

43.     In addition, another musician, Liang Wang ("Mr. Wang"), was terminated on or about the same date.

44.     Mr. Muckey protested the termination and asked Local 802 to submit a grievance on his behalf, as did Mr. Wang.

45.     Shortly thereafter, Local 802 submitted a grievance on behalf of Mr. Muckey[1] against the Philharmonic under the terms of the CBA on the grounds that there was no just cause

---

[1] Local 802 also submitted a grievance on behalf of Mr. Wang.

to terminate his employment and, therefore, his dismissal from the Philharmonic was in breach of his rights under the CBA.

46.     Local 802 then invoked Article XV of the CBA which provides in pertinent part that, "in the event that the dispute should remain unresolved, it may be submitted by the Union or the Society to an Arbitrator appointed by the American Arbitration Association in accordance with its Voluntary Labor Arbitration Rules."

47.     Article XV of the CBA further provides as follows:

> The decision of the Arbitrator shall be ***final and binding*** upon the Society, the Union and the individual Orchestra member involved…

48.     The Philharmonic and Local 802 selected Richard I. Bloch [2] (the "Arbitrator") as the independent arbitrator and a formal, confidential arbitration proceeding was initiated in late 2018 between the Philharmonic on one side and Local 802 together with Mr. Muckey on the other.

49.     From on or about November 2018 until January 2020, Local 802 worked with its own counsel, as well as Plaintiff's independently-retained counsel, engaging in discovery, collecting and presenting evidence (which included, *inter alia*, testimony from witnesses, including expert testimony, and documentary evidence) in prosecution of its case on behalf of Mr. Muckey (as well as Mr. Wang) and against the Philharmonic for wrongful discharge. In a post-hearing brief, Local 802 consolidated all of the relevant facts and law in support of its grievance.

50.     The arbitration proceedings encompassed a total of twenty (20) hearing days.

---

[2] Richard I. Bloch is the co-author of the book *Labor Agreement in Negotiation and Arbitration* (2d Ed.)

### *The Award in Favor of Local 802 Granted Mr. Muckey Reinstatement, Back Pay and Seniority*

51.     At the conclusion of the arbitration, the Arbitrator determined that the Philharmonic had not established that Mr. Muckey engaged in the drugging or sexual assault alleged. On April 4, 2020, the Arbitrator issued the Award which granted the grievance of the Union and ordered that Mr. Muckey (as well as Mr. Wang) be reinstated at the Philharmonic and that all contractual benefits lost, including full back pay and seniority be restored.

52.     Until April 12, 2024, the date on which the article rehashing the 2010 Allegations appeared in *Vulture*,  Mr. Muckey has been a tenured member as Associate Principal and Third Trumpet in good standing at the Philharmonic.

### *The Philharmonic Violates the Award by its Suspension of Mr. Muckey from the Philharmonic*

53.     On April 12, 2024, the *New York* magazine article was published which rehashed the 2010 Allegations that were the same subject of the Award.  The article contained no new claims or allegations against Mr. Muckey.

54.     Notwithstanding that the subject matter of the *New York* magazine article concerned the same 2010 Allegations, which already had been arbitrated and determined not to constitute "just cause" in the Award issued in Mr. Muckey's favor, the next day, on April 13, 2024, based solely upon the 2010 Allegations, the Philharmonic barred Plaintiff from attending all rehearsals and performances of the Philharmonic and later that day informed him that his future at the Philharmonic was under further review.

55.     Also, on April 13, 2024, based solely upon the 2010 Allegations, the Philharmonic's counsel sent an email to Mr. Muckey's counsel which stated - "I am writing to

confirm that Mr. Muckey should not attend Philharmonic rehearsals or performances until further notice."

56.     Later that evening on April 13, 2024, the Philharmonic publicly announced, in an email addressed to "NY Phil Colleagues," that Mr. Muckey was barred from all rehearsals and performances.

57.     Additional statements made by the Philharmonic to the public in the following days were based solely upon the 2010 Allegations.

58.     On April 18, 2024, the Philharmonic's President and Chief Executive Officer, Gary Ginstling, in a statement to the "New York Philharmonic Community," again referenced the 2010 Allegations raised in the *New York* magazine, stating that "the details revealed in the *New York* magazine article are horrifying to me personally."   Mr. Ginstling went on to state that the Philharmonic had engaged a law firm "to launch an independent investigation into the culture of the New York Philharmonic in recent years" and that, "for the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process, and a decision about their future with the New York Philharmonic will be made in due course."

59.     The clear message by the Philharmonic to the public was that Mr. Muckey (and Mr. Wang) were not being assigned to any Philharmonic activity solely because of the 2010 Allegations.

60.     That same day, on April 18th, an article in *The New York Times* quoted the Philharmonic's message to the public at large that Mr. Muckey was not being assigned to any Philharmonic activity based solely upon the 2010 Allegations.  Specifically, *The New York Times* article quoted the President's statement that Mr. Muckey (and Mr. Wang) were "not being

assigned to any Philharmonic activity as we work through this process," and that "a decision about their future with the New York Philharmonic will be made in due course."

61.     The Philharmonic also removed Mr. Muckey from concerts to which he had already been assigned for the 2023-2024 season.

62.     Since April 13, 2024, Mr. Muckey has been barred from performing in any concerts of the Philharmonic, which as of the date of this Complaint, totals at least nine (9) concerts, including the Spring Gala with Gustavo Dudamel in which he was scheduled to perform on April 24, 2024.

63.     In addition, Mr. Muckey has been barred from rehearsing for the Philharmonic's tour in China which is scheduled for June 2024 and the tour in Vail which is scheduled for July 2024.

64.     In sum, based solely upon the 2010 Allegations, the Philharmonic has taken adverse employment action against Mr. Muckey including, but not limited to, a ban from all rehearsals, performances, concerts, and tours and other Philharmonic activities, including those to which he had already been assigned (collectively, "Philharmonic Activities"), which is tantamount to a suspension and violates the Award.  (The ban from all Philharmonic Activities shall collectively be referred to herein as the "Suspension.")

65.     The Philharmonic's refusal to abide by the Award is without justification.

### *Local 802's Statements to the Public Support the Philharmonic's Wrongful Actions in Violation of the Union's Duty of Fair Representation*

66.     Notwithstanding that Local 802 had commenced the arbitration on Mr. Muckey's behalf that restored him to the Philharmonic, Local 802's President, Sara Cutler, issued a public statement to *The New York Times* in an article published on April 15, 2024, in which the Union

publicly stated its full support of the Philharmonic's Suspension of Mr. Muckey and its refusal now to represent Mr. Muckey.

67.     In the same article of April 15th in *The New York Times*, Local 802's President stated that the decision to keep Mr. Muckey (along with Mr. Wang) offstage "are good first steps but they can't be the last."

68.     Ms. Cutler did not state that the Philharmonic's sidelining of Mr. Muckey was in violation of the Award which ordered Mr. Muckey's reinstatement with back pay and seniority and that Local 802 would seek enforcement of the Award and restoration of Mr. Muckey to his tenured position as Associate Principal and Third Trumpet.

69.     Nor did Ms. Cutler state that the allegations which appeared in *New York* magazine were the same as those that were the subject of the arbitration commenced by Local 802 four years ago when it was determined that such allegations did not constitute just cause to terminate Mr. Muckey and the Award was granted in his favor.

70.     Instead, Ms. Cutler publicly stated that, "I am horrified by what was in the [*New York* magazine] story and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long."

71.     Then, on April 18th, the *New York Times* reported that, "[t]he musicians' union, which helped Mr. Muckey and Mr. Wang retain their jobs, has struck a different tone since the publication of the [*New York* magazine] article, praising the Philharmonic's decision to sideline the musicians… Sara Cutler, the new president and executive director of Local 802, said that the union supported the new inquiry."

72.     Additionally, in *The New York Times* article dated April 15th, the Orchestra Committee of the Union, which together with Local 802, has the duty to represent its member

musicians such as Mr. Muckey, is quoted as stating that it is "the overwhelming sentiment from the orchestra that we believe Cara."

73.     Thus, Local 802 did not act to seek the Philharmonic's compliance with the Award and instead supported the Philharmonic's violation of the Award.

### *Mr. Muckey's Demand to Local 802 to Seek the Philharmonic's Compliance with the Award and Local 802's Refusal to Fairly Represent Mr. Muckey*

74.     Counsel for Mr. Muckey sent a letter to Local 802's counsel dated April 18, 2024, demanding that Local 802 protect Mr. Muckey's rights as determined by the Award, perform its duty of fair representation, and take all the necessary steps to cause the Philharmonic restore Mr. Muckey to resume performing in his tenured position at the Philharmonic.

75.     Counsel for Local 802 responded in a letter dated April 18th stating that Mr. Muckey had to contact Local 802's Chief of Staff, Dan Point, "if Mr. Muckey would like to do something in response to the Philharmonic's action" and then "the Union will evaluate his request at that time."

76.     The next day, on April 19th, Mr. Muckey sent a letter directly to Mr. Point demanding that Local 802 immediately act on his behalf to require the Philharmonic to comply with the Award and that Local 802 cease making statements in support of the Philharmonic's actions which contravene the Award.

77.     Mr. Muckey never received a response from Mr. Point.

78.     Rather, one week later, on April 26th, Local 802's counsel (whom Mr. Muckey's attorney had initially contacted) sent a letter to Mr. Muckey's counsel.

79.     Notwithstanding the fact that the Suspension was based solely upon the 2010 Allegations and the Philharmonic has publicly announced same, and notwithstanding that the

Award that Local 802 previously obtained in Mr. Muckey's favor determined that Mr. Muckey was entitled to reinstatement to the Philharmonic with back pay and seniority, the response of Local 802 in the April 26th letter was that Local 802 was not going to seek enforcement of the Award or take any necessary steps to restore Mr. Muckey to resume performing in his tenured position at the Philharmonic.

80.     Instead, Local 802's counsel responded that, "the NY Philharmonic engaged an investigator to determine *whether* there were any new or different allegations of sexual misconduct by any members of the Orchestra, including … [Mr. Muckey]… Local 802 has determined to await the outcome of that investigation before determining how to proceed here."

81.     In its response, Local 802 failed to address the fact that the Suspension occurred before any such determination, that no member of the Philharmonic other than Mr. Muckey (and Mr. Wang) was subject to the Suspension pending the "investigation" and that the Suspension was based solely upon the 2010 Allegations, which violated the Award.

82.     In sum, Local 802 has failed and refused to perform its duty of fair representation to Mr. Muckey by seeking to enforce the Award and restore Mr. Muckey to resume performing in his tenured position at the Philharmonic.

83.     Based upon the foregoing, Mr. Muckey has been compelled to file the instant action and seek enforcement of the Award and restoration to his position.

**_The Wrongful Acts of the Philharmonic and Local 802 Lead to Reputational Damage and Lost Employment Opportunities for Mr. Muckey_**

84.     The Suspension of Mr. Muckey at the Philharmonic and the Philharmonic's public announcement of same, have resulted in a false perception within the classical music

community, and beyond, that the Suspension is due to misconduct stemming from the 2010 Allegations.

85.     Local 802's public statements that it supports the Philharmonic's adverse employment action against Mr. Muckey, has similarly resulted in a false perception within the classical music community, and beyond, that Mr. Muckey's Suspension from the Philharmonic is due to misconduct stemming from the 2010 Allegations.

86.     As a result, Mr. Muckey has sustained irreversible damage to his reputation as well as his professional musical career, has been removed from other rehearsals, concerts and projects, and lost opportunities with various other music societies and symphonies, that have subsequently canceled or retracted invitations, offers and/or contracts, among other damages.

87.     Specifically, Mr. Muckey was removed from the following rehearsals, concerts and projects as a result of the Suspension:

> a.     Soloist performance with Chamber Music Society of Lincoln Center;
>
> b.     Inaugural orchestral concert of Composing Inclusion, a partnership of the Juilliard Preparatory Division, sponsored by the Philharmonic;
>
> c.     All-City Orchestra coaching, sponsored by the Philharmonic; and
>
> d.     other opportunities of a like nature.

88.     Furthermore, Mr. Muckey's reputation has been immensely damaged  over social media, in which the statements of the Philharmonic and Local 802, have been reposted and reshared, thereby having exponential effects.

## **AS AND FOR A FIRST CAUSE OF ACTION AGAINST LOCAL 802**
### **(Violation of § 301 of the LMRA, 29 U.S.C. § 185,**
### **Breach of Contract/Fair Representation)**

89.     Plaintiff incorporates by reference and repeats and realleges each and every

allegation set forth in paragraphs "1" through "88," as if set forth in full herein.

90.     Local 802 has a duty of fair representation to Plaintiff, who is a member of the

Union, and in good standing.

91.     The duty of Local 802 includes, *inter alia*, representing Mr. Muckey in seeking

the enforcement of the Award and the restoration of Mr. Muckey to his tenured position at the

Philharmonic as the Associate Principal and Third Trumpet.

92.     However, Local 802 has breached its duty of fair representation to Mr. Muckey

by failing and/or refusing to represent Mr. Muckey by seeking to enforce the Award and restore

him to his tenured position at the Philharmonic as the Associate Principal and Third Trumpet.

93.     Local 802 has further breached its duty of fair representation to Mr. Muckey by

openly and publicly supporting the Philharmonic's Suspension of Mr. Muckey from his tenured

position at the Philharmonic as the Associate Principal and Third Trumpet based upon the 2010

Allegations.

94.     Local 802's acts of not opposing and supporting the Philharmonic's Suspension

of Mr. Muckey based upon the 2010 Allegations are arbitrary and in bad faith, because the

Suspension is based upon the same 2010 Allegations which Local 802 previously and

successfully challenged as not constituting good cause for the Philharmonic's prior termination

of Mr. Muckey from his tenured position.

95.     Mr. Muckey has made requests to Local 802 to seek the enforcement of the

Award and seek his restoration to his tenured position at the Philharmonic as the Associate

Principal and Third Trumpet.

96.     As of the date of this complaint, Local 802 has failed and refused to take any

action on behalf of Mr. Muckey.

97.     Therefore, Mr. Muckey has no other recourse other than to commence the instant

action on his own behalf to seek enforcement of the Award and restoration to his tenured

position as the Associate Principal and Third Trumpet.

98.     Based upon the foregoing, Mr. Muckey is entitled to the following relief:

    a.     a declaratory judgment that Local 802 has breached its duty of fair

        representation to Mr. Muckey;

    b.     economic damages in an exact amount to be determined at trial; and,

    c.     attorneys' fees, costs and disbursements in an amount not presently

        capable of ascertainment.


**AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE PHILHARMONIC**
**(Violation of the Final Binding Award**
**and Breach of the Collective Bargaining Agreement)**

99.     Plaintiff incorporates by reference and repeats and realleges each and every

allegation set forth in paragraphs "1" through "98," as if set forth in full herein.

100.     When the dispute arose in connection with the Philharmonic's termination of Mr.

Muckey's employment in 2018 based upon the 2010 Allegations, the parties submitted the matter

to arbitration pursuant to Article XV of the CBA which provides that, "in the event that the

dispute should remain unresolved, it may be submitted by the Union or the Society to an

Arbitrator appointed by the American Arbitration Association in accordance with its Voluntary Labor Arbitration Rules."

101.     After the arbitration in 2018, the Arbitrator issued the Award in favor of Local 802 which determined that the Philharmonic had no just cause to terminate Mr. Muckey based upon the 2010 Allegations and ordered that the Philharmonic reinstate Mr. Muckey, with all contractual benefits lost, including back pay and seniority.

102.     There is no dispute between the parties that the Award is final and binding.

103.     The Award was final and binding pursuant to Article XV of the CBA in which the parties specifically agreed as follows:

> The decision of the Arbitrator shall be final and binding upon the Society, the Union and the individual Orchestra member involved…

104.     Also, the New York Times has reported the Philharmonic's admission of the binding Award.  Specifically, the April 15th *New York Times* article stated that the Philharmonic's President and CEO, Gary Ginstling, "noted that the Philharmonic faced constraints because of the 2020 ruling, which the orchestra criticized at the time."  The article further quoted Mr. Ginstling as stating, "[t]he determination was through binding arbitration…. Binding is the key word."

105.     By suspending Mr. Muckey from his tenured position based upon the 2010 Allegations, the Philharmonic has violated an indisputably final and binding Award which has determined that Mr. Muckey could not be removed based upon such allegations and specifically ordered his reinstatement with back pay and seniority.

106.    Also, notwithstanding the Philharmonic's agreement with Local 802 that the Award shall be final and binding, the Philharmonic has now breached its agreement by contravening the Award and suspending Mr. Muckey from his tenured position.

107.    The Philharmonic did not challenge the Award and in fact, *complied* with it.

108.    It cannot now seek to avoid the finality and binding effect of the Award by the Suspension which is a clear violation of the Award.

109.    The Philharmonic's refusal to abide by the Award is without justification.

110.    As a result of the Suspension, Mr. Muckey has sustained damage to his reputation as well as to his professional musical career, has been removed from other rehearsals, concerts and other projects, and lost opportunities with various music societies and symphonies, who have subsequently canceled or retracted invitations, offers and/or contracts, among other damages.

111.    Specifically, as of the date of this Complaint, Mr. Muckey was removed from the following rehearsals, concerts and projects as a result of the Suspension:

      a.    Soloist performance with Chamber Music Society of Lincoln Center;

      b.    Inaugural orchestral concert of Composing Inclusion Initiative with Julliard, sponsored by the Philharmonic;

      c.    All-City Orchestra coaching, sponsored by the Philharmonic; and,

      d.    other opportunities of a like nature.

112.    Based upon the foregoing, Mr. Muckey is entitled to the following relief:

      a.    a declaratory judgment that the Philharmonic has violated the Award and breached the Collective Bargaining Agreement;

      b.    economic damages in an exact amount to be determined at trial; and,

    c.      attorneys' fees, costs and disbursements in an amount not presently capable of ascertainment.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE PHILHARMONIC
**(Breach of the Employment Agreement)**

113.     Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "112," as if set forth in full herein.

114.     Mr. Muckey is a tenured musician at the Philharmonic.

115.     As a tenured musician, Mr. Muckey has a lifetime appointment at the Philharmonic, other than dismissal for good cause.

116.     Indeed, when Mr. Muckey was granted tenure in January 2008, he received the following message from the then President and Executive Director of the Philharmonic, Zarin Mehta:

> Dear Matthew,
>
> I am delighted with the news of your receiving tenure, and on behalf of the entire New York Philharmonic family, we welcome you to spend your life and career as part of this great institution. With deepest admiration and best regards,
>
> Sincerely,
> Zarin

117.     Each year, Mr. Muckey receives an agreement which memorializes his compensation as the tenured Associate Principal and Third Trumpet of the Philharmonic for each orchestra season.

118.     The most recent agreement by and between Mr. Muckey and the Philharmonic covers the 2023-24 Season.

119.     However, as of April 13, 2024, Mr. Muckey has not been assigned and/or has been removed from Philharmonic Activities for the current season.

120.     As of April 13, 2024, the Philharmonic has announced that Mr. Muckey's job is in jeopardy.

121.     The Suspension of Mr. Muckey, a tenured player, from his position of Associate Principal and Third Trumpet of the Philharmonic orchestra, a prestigious position, with high visibility, is a breach of his employment contract.

122.     Since the Suspension, Mr. Muckey has been barred from performing in any concerts of the Philharmonic which, as of the date of this Complaint, totals at least nine (9) concerts, including the Spring Gala with Gustavo Dudamel in which he was scheduled to perform on April 24, 2024.

123.     Also, with the current ban imposed against Mr. Muckey, he is not able to rehearse for or perform in the China tour scheduled in June 2024 or the tour in Vail, Colorado scheduled in July 2024 for which he was to receive additional compensation.

124.     Accordingly, Mr. Muckey has suffered damages in the form of lost compensation in an exact amount to be determined at trial.

125.     Based upon the foregoing, Mr. Muckey is entitled to economic damages in an exact amount to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST LOCAL 802
#### (*Prima Facie Tort*)

126.     Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "125," as if set forth in full herein.

127.     In late 2018, Local 802 commenced an arbitration on Mr. Muckey's behalf and obtained the Award of reinstatement with back pay and seniority after the Philharmonic wrongfully terminated Mr. Muckey based upon the 2010 Allegations.

128.     Thereafter, in April 2024, Local 802 has intentionally, and without just cause or excuse, refused to seek enforcement of the Award after the Suspension based upon the 2010 Allegations.

129.     In addition, Local 802 intentionally has openly and publicly expressed its support of the Philharmonic's Suspension of Mr. Muckey.

130.     Local 802's actions are intentionally and maliciously inflicted against Mr. Muckey as evidenced by the animus of the President of Local 802, in her public remarks against Mr. Muckey.

131.     The President of Local 802 has also publicly stated that the decision to keep Mr. Muckey offstage "are good first steps but they can't be the last."

132.     Local 802 has no basis to make such public statements against Mr. Muckey except to harm and injure him.

133.     Local 802's acts and/or omissions are solely out of disinterested malevolence and are intentionally done without just cause or excuse.

134.     As a result of Local 802's acts, Mr. Muckey has sustained damage to his reputation as well as to his professional musical career, has been removed from other rehearsals, concerts and other projects, and lost opportunities with various music societies and symphonies, who have subsequently canceled or retracted invitations, offers and/or contracts, among other damages.

135.     Specifically, as of the date of this Complaint, Mr. Muckey was removed from the following rehearsals, concerts and projects as a result of the Suspension:

      a.     Soloist performance with Chamber Music Society of Lincoln Center;

      b.     Inaugural orchestral concert of Composing Inclusion, a partnership of the Juilliard Preparatory Division, sponsored by the Philharmonic;

      c.     All-City Orchestra coaching, sponsored by the Philharmonic; and,

      d.     other opportunities of a like nature.

136.     Mr. Muckey has sustained monetary damages in an exact amount to be determined at trial.

137.     Based upon the foregoing, Mr. Muckey is entitled to the following relief:

      a.     economic damages in an exact amount to be determined at trial; and,

      b.     punitive damages in an exact amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE PHILHARMONIC
### (*Prima Facie Tort*)

138.     Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "137," as if set forth in full herein.

139.     The Philharmonic agreed that a decision after arbitration would be final and binding.

140.     The Philharmonic publicly affirmed that the Award, which determined that the 2010 allegations did not constitute just cause to terminate Mr. Muckey and ordered the Philharmonic to reinstated Mr. Muckey, was final and binding.

141.     Specifically, as reported in the New York Times, the Philharmonic's President and CEO, Gary Ginstling stated that, "[t]he determination was through binding arbitration… Binding is the key word."

142.     Notwithstanding that, as reported in *The New York Times* article, Mr. Ginstling, "noted that the Philharmonic faced constraints because of the 2020 ruling…." And that "his hands are tied by a 'binding arbitration that required the orchestra to readmit both players," the Philharmonic intentionally, and without just cause or excuse, has suspended Mr. Muckey based upon the 2010 Allegations.

143.     The Philharmonic, in contumacious disregard of the Award, intentionally removed Mr. Muckey from the Philharmonic.

144.     The Philharmonic has no basis for the Suspension except to harm and injure Mr. Muckey.

145.     The Philharmonic's acts and/or omissions are solely out of disinterested malevolence and are intentionally done without just cause or excuse.

146.     As a result of the Philharmonic's acts, Mr. Muckey has sustained damage to his reputation as well as to his professional musical career, has been removed from other rehearsals concerts and projects, and lost opportunities with various music societies and symphonies, who have subsequently canceled or retracted invitations, offers and/or contracts, among other damages.

147.     Specifically, as of the date of this Complaint, Mr. Muckey was removed from the following rehearsals, concerts and projects as a result of the Suspension:

       a.     Soloist performance with Chamber Music Society of Lincoln Center;

       b.      Inaugural orchestral concert of Composing Inclusion, a partnership of the Juilliard Preparatory Division, sponsored by the Philharmonic;

       c.      All-City Orchestra coaching, sponsored by the Philharmonic; and,

       d.      other opportunities of a like nature.

148.      Mr. Muckey has sustained monetary damages in an exact amount to be determined at trial.

149.      Based upon the foregoing, Mr. Muckey is entitled to the following relief:

       a.      economic damages in an exact amount to be determined at trial; and,

       b.      punitive damages in an exact amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE PHILHARMONIC
### (Preliminary and Permanent Injunction)

150.      Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "149," as if set forth in full herein.

151.      Since April 13, 2024, the Philharmonic has placed Mr. Muckey on the Suspension.

152.      On the same day, Mr. Muckey was informed that his future at the Philharmonic was under further review.

153.      In addition, the Philharmonic has issued statements to the "New York Philharmonic Community" and publicly announced that the Philharmonic has engaged a law firm "to launch an independent investigation into the culture of the New York Philharmonic in recent years" and that, "for the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process, and a decision about their future with the New York Philharmonic will be made in due course."

154.     Furthermore, the Philharmonic has indicated that Plaintiff's future employment status at the Philharmonic is in jeopardy by its announcement to the "Philharmonic community" and public at large that Plaintiff's future with the Philharmonic is "subject to further review."

155.     Thus, there is an imminent threat that the Philharmonic intends to terminate Mr. Muckey's tenured position as the Associate Principal and Third Trumpet in continued violation of the Award.

156.     As a result of the Suspension, Mr. Muckey is not able to engage in any Philharmonic Activities.

157.     Also, as a result of the Suspension and the Philharmonic's publicizing of same, Mr. Muckey has been removed from other rehearsals, concerts and projects, and lost opportunities with various music societies and symphonies, who have subsequently canceled or retracted invitations, offers and/or contracts, among other damages.

158.     Furthermore, the Suspension of solely Mr. Muckey (and Mr. Wang), pending the "independent investigation", adversely affected Mr. Muckey's compensation, his reputation and professional musical career.

159.     It is uncertain when, and if, the Philharmonic will lift the Suspension and restore Mr. Muckey to perform in his tenured position as Associate Principal, Third Trumpet.

160.     In view of the foregoing, the immediate intervention of this Court has become necessary and injunctive relief is required herein.

161.     There is a likelihood of success on the merits because the Suspension is based solely upon the 2010 Allegations which were determined in a binding, arbitral Award to not constitute just cause and there is no just cause for the Suspension.

162.    Additionally, if an injunction is not issued, Mr. Muckey faces irreparable harm and injury.

163.    Specifically, Mr. Muckey will be irreparably harmed if the Suspension continues and if the Philharmonic continues to issue statements to the public about the Suspension which has resulted in a false perception within the classical music community, and beyond, that the Suspension of Mr. Muckey is due to misconduct.

164.    Money damages will not adequately compensate Mr. Muckey for his injuries because Mr. Muckey's reputation and professional musical career will be irreparably damaged.

165.    Such effects are difficult, if not impossible to quantify in monetary terms.

166.    Finally, a balancing of the equities tips decidedly in favor of Mr. Muckey.

167.    Based on the foregoing, Mr. Muckey seeks a preliminary and permanent injunction:

      a.    enjoining the Suspension of Mr. Muckey at the Philharmonic based upon the 2010 Allegations; and,

      b.    compelling the Philharmonic to comply with the Award and restore him to all Philharmonic Activities.

WHEREFORE, Plaintiff requests that this Court issue an Order grating the following relief to Plaintiff:

      a)    On the First Cause of Action against Local 802, Plaintiff is entitled to the following relief:

            i.    a declaratory judgment that Local 802 has breached its duty of fair representation to Mr. Muckey;

            ii.    economic damages in an exact amount to be determined at trial; and,

        iii.      attorneys' fees, costs and disbursements in an amount not presently capable of ascertainment;

b)      On the Second Cause of Action against the Philharmonic, Plaintiff is entitled to the following relief:

        i.      a declaratory judgment that the Philharmonic has violated the Award and breached the Collective Bargaining Agreement;

        ii.      economic damages in an exact amount to be determined at trial; and,

        iii.      attorneys' fees, costs and disbursements in an amount not presently capable of ascertainment;

c)      On the Third Cause of Action against the Philharmonic, Plaintiff is entitled to economic damages in an exact amount to be determined at trial:

d)      On the Fourth Cause of Action against Local 802, Plaintiff is entitled to the following relief:

        i.      economic damages in an exact amount to be determined at trial; and,

        ii.      punitive damages in an exact amount to be determined at trial;

e)      On the Fifth Cause of Action against the Philharmonic, Plaintiff is entitled to the following relief:

        i.      economic damages in an exact amount to be determined at trial; and,

        ii.      punitive damages in an exact amount to be determined at trial;

f)      On the Sixth Cause of Action against the Philharmonic, Plaintiff is entitled to a preliminary and permanent injunction:

        i.      enjoining the Suspension of Mr. Muckey at the Philharmonic based upon the 2010 Allegations; and,

ii.        compelling the Philharmonic to comply with the Award and restore him to all Philharmonic Activities;

g)      Together with such other and further relief as to this Court seems just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:      New York, New York
              May 1, 2024

                        McLAUGHLIN & STERN, LLP

                        By:    /s/ Steven J. Hyman
                                 STEVEN J. HYMAN, ESQ.
                                 JACQUELINE C. GERRALD, ESQ.

                        260 Madison Avenue - 18th Floor
                        New York, NY 10016
                        (212) 448-1100
                        shyman@mclaughlinstern.com
                        jgerrald@mclaughlinstern.com
                        *Attorneys for Plaintiff Matthew Muckey*