UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

MATTHEW MUCKEY,

                 Plaintiff,

      -against-

ASSOCIATED MUSICIANS OF GREATER NEW
YORK, LOCAL 802, AMERICAN FEDERATION OF
MUSICIANS and THE PHILHARMONIC-
SYMPHONY SOCIETY OF NEW YORK, INC. a/k/a
THE NEW YORK PHILHARMONIC ORCHESTRA,

                Defendants.

-----------------------------------------------------------------------X

1:24-cv-03348-AS

[rel. 1:24-cv-03356-AS,
1:24-cv-03987-AS]

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF
DEFENDANT THE PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC.**

Paul H. Levinson, Esq.
Steven J. Hyman, Esq.
Jacqueline C. Gerrald, Esq.
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Telephone: (212) 448-1100
plevinson@mclaughlinstern.com
shyman@mclaughlinstern.com
jgerrald@mclaughlinstern.com

*Attorneys for Plaintiff Matthew Muckey*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ i

I.    PRELIMINARY STATEMENT ..................................................................... 1

      STATEMENT OF FACTS ........................................................................ 3

II.   ARGUMENT ............................................................................................... 7

      A.    STANDARD OF REVIEW ............................................................... 7

      B.    PLAINTIFF HAS MORE THAN SUFFICIENTLY PLEADED A
            COGNIZABLE "HYBRID" DUTY OF FAIR REPRESENTATION ("DFR")
            AND SECTION 301 CLAIM ........................................................... 8

            1.    Plaintiff Alleges a Plausible Violation of the Union's DFR Given its Abject
                  Repudiation of the Arbitration Award ....................................... 8

            2.    Mr. Muckey Has Plausibly Alleged a Violation of the Collective Bargaining
                  Agreement ("CBA") .................................................................. 12

      C.    PLAINTIFF'S STATE LAW CLAIMS SOUNDING IN CONTRACT AND
            TORT ARE NOT PREEMPTED BY SECTION 301 OF THE LABOR
            MANAGEMENT RELATIONS ACT .............................................. 15

      D.    PLAINTIFF HAS PLEADED A PLAUSIBLE AND COGNIZABLE CLAIM
            FOR BREACH OF CONTRACT ..................................................... 16

      E.    PLAINTIFF HAS PLEADED A PLAUSIBLE AND COGNIZABLE CLAIM
            FOR PRIMA FACIE TORT ............................................................ 18

III.  CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*1-10 Indus. Assocs., LLC v. Trim Corp. of Am.,*
   297 A.D.2d 630, 747 N.Y.S.2d 29 (2d Dep't 2002) ................................................. 18

*ATSI Communic's, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ........................................................................................... 7

*Barr v. United Parcel Service, Inc.,*
   868 F.2d 36 (2d Cir. 1989) ......................................................................................... 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................ 7

*Bright-Asante v. Saks & Co.,*
   242 F. Supp. 3d 229 (S.D.N.Y. 2017) ....................................................................... 14

*Brown v. NFL,*
   219 F. Supp. 2d 372 (S.D.N.Y. 2002) ....................................................................... 15

*Burch v. Pioneer Credit Recovery, Inc.,*
   551 F.3d 122 (2d Cir. 2008) ......................................................................................... 8

*Burns Jackson Miller Summit & Spitzer v. Lindner,*
   59 N.Y.2d 314, 451 N.E. 2d 459, 464 N.Y.S.2d 712 (1983) .................................... 18

*Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union,*
   227 F.3d 29 (2d Cir., 2000) ....................................................................................... 10

*Feldleit v. Long Island Rail Rd.,*
   723 F. Supp. 892 (E.D.N.Y. 1989) ............................................................................ 10

*Ferrara v. Leticia, Inc.,*
   No. 09-CV-3032 (RRM) (CLP), 2012 U.S. Dist. LEXIS 135684
   (E.D.N.Y. Sept. 21, 2012) ......................................................................................... 18

*Field Day, LLC v. Cnty. Of Suffolk,*
   463 F.3d 167 (2d Cir. 2006) ......................................................................................... 8

*Foy v. Pratt & Whitney,*
   127 F.3d 229 (2d Cir. 1997) ....................................................................................... 15

*George v. Nw. Airlines, Inc.,*
   351 F. Supp. 2d 310 (E.D. Pa. 2005) ........................................................................ 12

*Harisch v. Goldberg,*
   No. 14-cv-9503 (KBF), 2016 U.S. Dist. LEXIS 39494 (S.D.N.Y. Mar. 25, 2016) .................... 7

i

*Hernandez v. Conriv. Realty Assocs.*,
   116 F.3d 35 (2d Cir. 1997) ................................................................................. 16

*Hines v. Anchor Motor Freight, Inc.*,
   424 U.S. 554, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976) ........................................ 10

*L/M Ninety CM Corp. v. 2431 Broadway Realty Co.*,
   170 A.D.2d 373, 566 N.Y.S.2d 277 (1st Dep't. 1991) .......................................... 19

*Lingle v. Norge Div. of Magic Chef, Inc.*,
   486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) .................................... 16

*Lynch v. City of New York*,
   952 F.3d 67 (2d Cir. 2020) ................................................................................... 8

*Maidman v. O'Brien*,
   473 F. Supp. 25 (S.D.N.Y. 1979) ........................................................................ 13

*Marquez v. Screen Actors*,
   525 U.S. 33, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998) ........................................ 10

*Mizuna. Ltd. v. Crossland Fed. Sav. Bank*,
   90 F.3d 650 (2d Cir. 1996) ................................................................................. 17

*Muldrow v. City of St. Louis*,
   ___ U.S. ____ , 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024) ..................................... 13

*Pardovani v. Crown Bldg. Maint. Co.*,
   No. 15-CV-9065 (JPO), 2020 U.S. Dist. LEXIS 88647 (S.D.N.Y. May 20, 2020) ................ 14

*Perkins v. 199 SEIU United Healthcare Workers East*,
   73 F. Supp. 3d 278 (S.D.N.Y. 2014) ..................................................................... 9

*S. Telecom Inc., v. ThreeSixty Brands Grp., LLC*,
   520 F. Supp. 3d 497 (S.D.N.Y. 2021) ................................................................... 18

*Samuels v. Air Transp. Loc. 504*,
   992 F.2d 12 (2d Cir. 1993) ................................................................................. 10

*Scales v. N.Y. Hotel & Motel Trades Council, Local 6*,
   No. 21 Civ. 8142 (JPC), 2023 U.S. Dist. LEXIS 19741 (S.D.N.Y. Feb. 6, 2023) ................ 10

*Sethi v. Narod*,
   12 F. Supp. 3d 505 (E.D.N.Y. 2014) ..................................................................... 14

*Spellacy v. Air Line Pilots Ass'n, Int'l*,
   156 F.3d 120 (2d Cir. 1998) ............................................................................... 12

*Starr v. Sony BMG Music Entm't,*
　592 F.3d 314 (2d Cir. 2010) ........................................................................... 7

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada,*
　374 F.3d 158 (2d Cir. 2004) ........................................................................... 18

*Sullivan v. Gelb,*
　No. 1:23-cv-5194 (GHW), 2024 U.S. Dist. LEXIS 93491 (S.D.N.Y. May 23, 2024) ............... 7

*Taub v. Hariton,*
　No. 94 Civ. 4910 (MBM), 1995 U.S. Dist. LEXIS 8566 (S.D.N.Y. Jun. 20, 1995) ................. 17

*Tessemae's LLC v. Atlantis Capital LLC,*
　No. 18-CV-4902 (KHP), 2019 U.S. Dist. LEXIS 141535 (S.D.N.Y. Aug. 20, 2019) .............. 17

*Thomas v. Little Flower for Rehab. & Nursing,*
　793 F. Supp. 2d 544 (E.D.N.Y. 2011) ........................................................... 10

*Twinkle Play Corp v. Alimar Props., Ltd.,*
　186 A.D.3d 1447 (2d Dep't 2020) ................................................................ 18

*Vaca v. Sipes,*
　386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967) ....................................... 9

*White v. White Rose Food,*
　237 F.3d 174 (2d Cir. 2001) ................................................................ 8, 10

*Winston v. Mediafare Entertainment Corp.,*
　777 F.2d 78 (2d Cir. 1985) ...................................................................... 17

*Wynn v. AC Rochester,*
　273 F.3d 153 (2d. Cir. 2001) ................................................................... 16

## **Statutes**

Fed. R. Civ. P. Rule 12(b)(6) .......................................................................... 7

Labor Management Relations Act § 301, 29 U.S.C. § 185 ................................... 8, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

MATTHEW MUCKEY,

                              Plaintiff,

        -against-                                           1:24-cv-03348-AS

ASSOCIATED MUSICIANS OF GREATER NEW                        [rel. 1:24-cv-03356-AS,
YORK, LOCAL 802, AMERICAN FEDERATION OF                      1:24-cv-03987-AS]
MUSICIANS and THE PHILHARMONIC-
SYMPHONY SOCIETY OF NEW YORK, INC. a/k/a
THE NEW YORK PHILHARMONIC ORCHESTRA,

                              Defendants.

----------------------------------------------------------------------X

## I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff MATTHEW MUCKEY ("Mr. Muckey" or "Plaintiff") commenced this action

due to the repudiation and violation by THE PHILHARMONIC-SYMPHONY SOCIETY OF

NEW YORK, INC. a/k/a THE NEW YORK PHILHARMONIC ORCHESTRA (the

"Philharmonic" or the "Society") of an arbitration award rendered in favor of Mr. Muckey, as well

as the failure of the ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802,

AMERICAN FEDERATION OF MUSICIANS ("Local 802" or the "Union") to seek the

enforcement of such award, notwithstanding due demand by Mr. Muckey.  Specifically, the

Philharmonic has removed Mr. Muckey, a musician of the Philharmonic, from his prestigious

tenured position in willful disobedience of an arbitration award which previously determined that

it could not do so based solely upon allegations made by another musician in a recently published

online magazine article that were the same subject of the arbitration award decided in Mr.

Muckey's favor.  At the core of Plaintiff's Complaint is the inescapable fact that the Philharmonic

and Local 802, as well as their executives, have taken wrongful actions and made damaging public

statements as if the award rejecting the allegations made against Mr. Muckey had never been adjudicated in his favor.

Even more, the Memorandum of Law filed by the Philharmonic in support of its Motion to Dismiss Mr. Muckey's Complaint (Doc. 25) misleads the Court as to the true circumstances underlying this action and is fatally infected by the same disregard for the fact that the allegations in the online magazine article are identical to those that were made against Mr. Muckey by the same purported victim and that were rejected by the arbitrator.  Specifically, in the very first paragraph of the Philharmonic's Preliminary Statement (Doc. 25, at 1) the Society cites "investigations into the culture of and conduct by employees of the Society" that "were initiated after publication of an article containing <u>allegations of sexual misconduct against Mr. Muckey</u> and another orchestra member." *Id.* (emphasis added). The Society then references the "2020 Arbitration Award ("Award")" that ordered [Mr. Muckey's] reinstatement after his termination <u>following an investigation into sexual misconduct allegations</u>." (emphasis added). The Society thus distorts and obscures the reality that the generically-described "sexual misconduct allegations" that were investigated and led to Mr. Muckey's termination and ultimate vindication in the Award are the same allegations that were reported in the online article—and not allegations of any other purported sexual misconduct, as the Philharmonic disingenuously implies.

Within 24 hours of the publication of the online article, the Philharmonic suspended Mr. Muckey from the same tenured position from which the Award held he could not be terminated and informed Mr. Muckey that he was prohibited from participating in all rehearsals, performances, concerts, and tours and other Philharmonic activities. The Philharmonic's then President and Chief Executive Officer made a series of public statements that impugned Mr. Muckey, including proclaiming that he was personally "horrified" by the allegations in the online

article, notwithstanding the prior determination in Mr. Muckey's favor. Moreover, when Mr. Muckey made demand upon Local 802 to seek enforcement of the Award so that he could be restored to his position, not only was he rebuffed, but like her counterpart at the Philharmonic, Local 802's President publicly condemned Mr. Muckey and lent her support to the Suspension, calling it a "good first step[s]."

To redress the foregoing wrongs, Plaintiff has brought claims (a) against the Philharmonic for breach of its collective bargaining agreement with Local 802 and its employment agreement with Mr. Muckey, as well as for *Prima Facie* Tort, and (b) against Local 802 for breach of its statutory Duty of Fair Representation and seeks monetary damages as well as injunctive relief.[1] As is demonstrated below, Mr. Muckey has plausibly alleged each of the foregoing claims, and his state law contract and tort claims are not preempted.

## STATEMENT OF FACTS

Mr. Muckey, who is an internationally recognized musician, had held a tenured position (entitling him to a lifetime appointment unless he is dismissed for just cause) as the Associate Principal and Third Trumpet at the Philharmonic since on or about January 2, 2008 (Compl. ¶¶ 1, 31-33). He had enjoyed a successful career at the Philharmonic until 2018 when the Philharmonic terminated his employment based upon false allegations of drugging and sexual misconduct which had been made against Mr. Muckey by a Philharmonic probationary player nearly a decade before in the summer of 2010 (the "2010 Allegations"). (Compl. ¶ 3).

---

[1] Mr. Muckey's claim against the Union for *Prima Facie* Tort has been withdrawn and dismissed via Stipulation (Doc. No. 38).
Mr. Muckey's claim against the Philharmonic for Injunctive Relief has been withdrawn and dismissed, with reservation of his rights to seek injunctive relief on the hybrid claims in the same Stipulation (Doc. No. 38).

Mr. Muckey denied the 2010 Allegations (although he acknowledged a consensual encounter with the player in which no drugs were involved) and fully cooperated with the local law enforcement authorities in multiple investigations, all of which were ultimately closed without any action against Mr. Muckey. (Compl. ¶¶ 5-7; 36-39). The Philharmonic took no adverse employment action against Mr. Muckey at that time, and for the next eight years he continued to remain employed at the Philharmonic and with his successful musical career without issue. (Compl. ¶¶ 8-9; 39).

However, in 2018 the 2010 Allegations resurfaced, and the Philharmonic terminated Mr. Muckey's employment contending that it had "just cause" to dismiss him. (Compl. ¶ 11; 40-42). Mr. Muckey again denied the 2010 Allegations as false, challenged the termination of his employment, and petitioned the Union to file a grievance and commence an arbitration proceeding on his behalf, pursuant to a Trade Agreement between Local 802 and the Philharmonic (the "Collective Bargaining Agreement" or "CBA"), seeking his reinstatement together with backpay. After thoroughly reviewing the matter, Local 802 agreed that the 2010 Allegations did not provide just cause to terminate him and initiated the arbitration before Richard I. Bloch (the "Arbitrator"), who was selected by the Philharmonic and the Union. (Compl. ¶¶ 12-13; 45-48).

The Union and Mr. Muckey prevailed in that arbitration, which encompassed a total of twenty (20) hearing days, and the Arbitrator issued the Award which held that there was no just cause to terminate Mr. Muckey, finding that the Philharmonic had failed to prove that Mr. Muckey had engaged in the drugging or sexual assault alleged. The Award ordered Mr. Muckey's reinstatement to his tenured position with all contractual benefits lost, including full back pay and seniority) -- and the Society complied in all respects. (Compl. ¶¶ 14-16; 49-51).

Mr. Muckey resumed his career at the Philharmonic with much success and without any issue. (Compl. ¶ 17). Mr. Muckey continued to work under annual agreements with the Philharmonic which memorialized his compensation in his tenured positions for each orchestra season, with the most recent covering the 2023-24 season. (Compl. ¶¶ 117-118).

On November 21, 2023, Mr. Muckey received an email from the Philharmonic stating that two copies of the 2023-24 season contract (the "2023 Agreement"), would be distributed at the rehearsal the following morning and advising that he should sign both copies and "keep one for [himself], and return one to Orchestra Personnel." (Plaintiff's Declaration in Opposition to the Motion to Dismiss of The Philharmonic-Symphony Society of New York, Inc. a/k/a The New York Philharmonic, at ¶ 4; hereinafter, "Muckey Decl. ¶ __"). Mr. Muckey countersigned both copies of the contract on Friday, November 24, 2023, retaining one and, to the best of his recollection, returning the other to Orchestra Personnel. (Muckey Decl. ¶¶ 5-6; Ex. "2").

Then, on April 13, 2024, the 2010 Allegations resurfaced yet again in an article in *Vulture*, a *New York* magazine website ("*Vulture*"), which rehashed those 2010 Allegations. The *Vulture* article contained no new claims but, rather, was simply a reiteration of the same 2010 Allegations that the Arbitrator had already determined did not constitute just cause to warrant Mr. Muckey's dismissal, and thus, Mr. Muckey's employment should not have been adversely impacted. (Compl. ¶¶ 18-19; 53-54).

However, within 24 hours of the publication of the *Vulture* article, the Philharmonic suspended Mr. Muckey from his tenured position, solely because of the 2010 Allegations. Specifically, the Philharmonic both advised Mr. Muckey and announced publicly that he was prohibited from participating in all rehearsals, performances, concerts, and tours and other Philharmonic activities, he was banned from attending any meetings of the Philharmonic and

barred from the Philharmonic's premises (Collectively, "Philharmonic Activities"), including those to which he had already been assigned, (Collectively, the "Suspension.") (Compl. ¶¶ 20; 59-64). Moreover, later that same day Mr. Muckey was informed that his future at the Philharmonic was under further review. (Compl. ¶¶ 21; 58).

Mr. Muckey made demands to Local 802 to take the necessary steps on his behalf to seek enforcement of the Award so that he could again participate in Philharmonic Activities. The Union refused to do so (Compl. ¶¶ 22-23; 74-83), and its President concomitantly made public statements impugning Mr. Muckey and supporting the Suspension, describing it as a "good first step[s]." (Compl. ¶¶ 24; 66-73).[2]

On April 18, 2024, the Philharmonic's then President and Chief Executive Officer, Gary Ginstling ("Mr. Ginstling"), circulated a statement addressed to the "New York Philharmonic Community," which referenced the 2010 Allegations raised in the *Vulture* magazine article, in which he articulated that "the details revealed in the New York magazine article are horrifying to me personally." Mr. Ginstling further stated that the Philharmonic had engaged a law firm "to launch an independent investigation into the culture of the New York Philharmonic in recent years" and that, "for the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process, and a decision about their future with the New York Philharmonic will be made in due course." (Compl. ¶ 58). Mr. Ginstling's statement was also published the same day in a *New York Times* article (Compl. ¶ 60).

---

[2] These factual allegations are set forth at length at pp. 5-7 in Plaintiff's accompanying Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Associated Musicians of Greater New York Local 802 American Federation of Musicians, to which the Court is respectfully referred.

The Philharmonic also removed Mr. Muckey from concerts to which he had already been assigned for the 2023-2024 season, barring him from (a) performing in any Philharmonic concerts in which he was previously scheduled to appear, including the Spring Gala on April 24, 2024, and (b) rehearsing for or performing in the Philharmonic's tours in (i) China (in June 2024) and (ii) Vail (in July 2024). (Compl. ¶¶ 61-63).  Mr. Muckey was also removed from the Philharmonic-sponsored "inaugural orchestra concert of Composing Inclusion, a partnership of the Juilliard Preparatory Division" and (b) "All City Orchestra Coaching", for which he was to be paid $1,200 each in May 2024.  (Compl. ¶ 147 (b), (c); Muckey Decl. ¶¶ 8,9; Exs. "3", "4").

## II.    ARGUMENT

### A.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a plaintiff must provide grounds upon which his claim rests through 'factual allegations sufficient to raise a right to relief above the speculative level.'" *Harisch v. Goldberg,* No. 14-cv-9503 (KBF), 2016 U.S. Dist. LEXIS 39494, at *15 (S.D.N.Y. Mar. 25, 2016) (quoting *ATSI Communic's, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Thus, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.*, quoting *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010); *Twombly*, 550 U.S. at 570; *see also, Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Most importantly, "[d]etermining whether a complaint states a plausible claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Sullivan v. Gelb,* No. 1:23-cv-5194 (GHW), 2024 U.S. Dist. LEXIS 93491, at *22 (S.D.N.Y. May 23, 2024) (quoting *Iqbal*, 556 U.S. at 679).  "The court must accept all facts

alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* (citing *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir. 2008). The court's task "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York,* 952 F.3d 67, 75 (2d Cir. 2020).

Finally, while "on a motion to dismiss, a court must generally limit itself to the facts stated in the complaint," it may also consider "any written instrument … attached to [the complaint] as 'an exhibit' or … incorporated in it by reference." *Sullivan v. Gelb,* No. 1:23-cv-5194, 2024 U.S. Dist. LEXIS 93491, at *23 (quoting *Field Day, LLC v. Cnty. Of Suffolk,* 463 F.3d 167, 192 (2d Cir. 2006); *Lynch,* 952. F.3d at 79).

### B.    PLAINTIFF HAS MORE THAN SUFFICIENTLY PLEADED A COGNIZABLE "HYBRID" DUTY OF FAIR REPRESENTATION ("DFR") AND SECTION 301 CLAIM

The core claims at bar against both the Society and the Union (i.e., the First and Second Counts (Causes of Action) are each in the nature of a "hybrid" claim for Local 802's violation of its DFR and the Philharmonic's violation of Section 301 of the Labor Management Relations Act ("LMRA"; 29 U.S.C. § 185). The Second Circuit defined the requirements and parameters of such a "hybrid" claim thusly in its decision in *White v. White Rose Food,* 237 F.3d 174, 178 (2d Cir. 2001):

> To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164-65, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983). The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both. *See, id.* at 165.

### 1.    Plaintiff Alleges a Plausible Violation of the Union's DFR Given its Abject Repudiation of the Arbitration Award

Close examination of the factual averments regarding the Union's unconscionable reaction to the *Vulture* article demonstrates that Mr. Muckey has alleged facts sufficient to prove that the

Union breached its DFR by acting arbitrarily and in bad faith. Simply stated, all the allegations in the *Vulture* magazine article regarding Mr. Muckey were well known to both the Union and the Society, as they were the subject of the arbitration proceeding. However, notwithstanding that the Arbitrator's determination came after a plenary hearing where all the facts and circumstances were aired and the purported victim was subjected to cross-examination, instead of stepping up and defending the process and the binding Award, the new Union President, Sara Cutler ("Ms. Cutler"), opined that the decision to impose the Suspension on Mr. Muckey and Mr. Wang "are good first steps but they can't be the last." (Compl. ¶ 67). Not only did Ms. Cutler's public statements directly contravene the Award, but she then doubled down and plunged the dagger even further by publicly declaring that "[a]s a woman, a musician, and a new union president, I was horrified by what was in the story and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long," thereby seriously undermining both the arbitral process that the Union had commenced as well as the Award in Mr. Muckey's favor. (Compl. ¶ 70). A clearer example of repudiation of an arbitration determination could scarcely be found.

The DFR arises out of a union's "'obligation to serve the interests of members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct' both while collectively bargaining with employers and enforcing the resulting agreements." *Perkins v. 199 SEIU United Healthcare Workers East,* 73 F. Supp. 3d 278, 283 (S.D.N.Y. 2014) (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)).

To state a claim of for breach of the DFR "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith' and (2) there was a 'causal connection between the

union's conduct and the member's injuries.'" *Id.* (quoting *White v. White Rose Food,* 237 F.3d 774, 779 (2d Cir. 2001). Another formulation of the second "prong" to a DFR claim which is particularly apposite to the facts and circumstances at bar is that in addition to being arbitrary, discriminatory, or in bad faith, a "union's conduct 'must have seriously undermine[d] the arbitral process.'" *Barr v. United Parcel Service, Inc.,* 868 F.2d 36, 43 (2d Cir. 1989) (quoting *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976); *see also, Feldleit v. Long Island Rail Rd.,* 723 F. Supp. 892, 897 (E.D.N.Y. 1989). To meet that standard, the union's conduct must be "so far outside a wide range of reasonableness that it is wholly irrational." *Marquez v. Screen Actors,* 525 U.S. 33, 45, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998).

Significantly, a "union acts arbitrarily 'when it ignores or perfunctorily presses a meritorious claim.'" *Scales v. N.Y. Hotel & Motel Trades Council, Local 6,* No. 21 Civ. 8142 (JPC), 2023 U.S. Dist. LEXIS 19741, at *20-21 (S.D.N.Y. Feb. 6, 2023) (quoting *Thomas v. Little Flower for Rehab. & Nursing,* 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011); *Samuels v. Air Transp. Loc. 504,* 992 F.2d 12, 16 (2d Cir. 1993). The duty applies to enforcement of the terms of collective bargaining agreements, including enforcement of arbitration awards. *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union,* 227 F.3d 29, 33–34 (2d Cir., 2000). Here, the Union disregards a final and binding Arbitrator's determination in favor of adopting a politically correct position that wholly contradicts and repudiates the Award, which both the Union and the Society freely admit was final and binding. The Union's actions -- when no new facts have been adduced and the circumstances have not changed since the Arbitrator's determination (save for a rehashing of allegations he already ruled had not been proven) -- are so far outside the range of reasonableness as to constitute nothing short of arbitrariness. The Union has not even perfunctorily pressed Plaintiff's meritorious claim, but rather has ignored the claim entirely.

Local 802's excuses for its inaction, as both detailed in its Memorandum of Law in Support of Motion to Dismiss of Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians (Doc. 23, at 9-14; "Union Mem.") and referenced in the Philharmonic's brief (Doc. 25, at 7), are pretextual and made in bad faith.  The assertion that the Union intends to await the results of the investigation *whether* there are any new allegations of sexual misconduct, before determining how to proceed is belied by the fact that the so-called investigation is based on nothing other than the *Vulture* article which brought nothing new to the fore that hadn't already been adjudicated. Moreover, the Union's contention that the Award didn't guarantee "permanent employment regardless of the occurrence of subsequent events" (Union Mem., at 11) is manifestly absurd, since there were no "subsequent events" that could have or should have led to the Suspension.  Rather, a reasonable (and honest) reaction to the *Vulture* article by the Philharmonic and the Union would have been a confirmation by Ms. Cutler that the 2010 Allegations which were reported had already been the subject of a full arbitration hearing that resulted in a determination in favor of Mr. Muckey. The Union's *post hac* justifications for its inaction are unseemly, especially when viewed in the context of the prejudicial statements by its President that cast aspersions on the actions and character of Mr. Muckey, although the Union feebly argues that "the statement did not malign or disparage Muckey in any way" and acknowledges that the statement was influenced by "today's #MeToo climate." (Union Mem., at 12).

In addition, the Union's assertion that Mr. Muckey has failed to allege any causal connection between its wrongful conduct and his injuries should be rejected by this Court. (Union Mem., at 13-14). Rather than seeking to enforce the Award, Mr. Muckey has been rendered *persona non grata* by the Suspension and publicly impugned by Ms. Cutler, even though he was

absolved of liability by the Arbitrator. Thus, the Union, as well as the Society, bears responsibility

for the ongoing professional and reputational damage that Mr. Muckey is suffering.

Finally, the case law upon which the Union relies upon is distinguishable and unavailing.

One line of decisional law is concerned with whether a union breaches its DFR when it declines

to pursue arbitration for a particular grievance. e.g., *Vaca v. Sipes,* 386 U.S. 171, 193-94 (1967);

*Spellacy v. Air Line Pilots Ass'n, Int'l,* 156 F.3d 120, 128 (2d Cir. 1998); *George v. Nw. Airlines,*

*Inc.*, 351 F. Supp. 2d 310, 318 (E.D. Pa. 2005). The other line is focused on the very different

situation where a plaintiff alleges a union breaches its DFR in its collective bargaining processes.

*Marquez v. Screen Actors Guild,* 525 U.S. 33, 44-46, 48 (1998). In contrast, here the Union

proceeded to arbitration on Mr. Muckey's behalf in 2018, received the Award in 2020, then

arbitrarily failed to enforce it when the same allegations that were the subject of the 2020 award

resurfaced in the *Vulture* article.

### 2.   Mr. Muckey Has Plausibly Alleged a Violation of the Collective Bargaining Agreement ("CBA")

Section 185(a) of the LMRA (29 U.S.C. § 185) provides for the bringing of a claim for

breach of a CBA as follows:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting
> commerce as defined in this chapter, or between any such labor
> organizations, may be brought in any district court of the United
> States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the
> parties.

The Society's failure, in the wake of the publication of the *Vulture* article, to honor and

abide by the Arbitrator's "final and binding" determination "that Mr. Muckey could not be

removed based upon" the 2010 Allegations and "ordering his reinstatement with back pay and

seniority," and its wrongful actions in suspending Mr. Muckey and barring him from the premises

of the Philharmonic, is the gravamen of the claim for breach of the CBA. (Compl. ¶¶ 103-105).

The Suspension violates the CBA's mandate (in Article XV(A) thereof) that the Award is "final and binding." (Compl. ¶ 47; Declaration of Howard Z. Robbins, Esq., dated June 5, 2024 ("Robbins Decl.") Decl.; Doc. 26; Ex. "A", at 20).  Here, where the Philharmonic had a full and fair opportunity to prove its case in the arbitration, it may not take a "mulligan,".  Thus, the Society is barred from "relitigation of factual disputes resolved by" the arbitration.  *Maidman v. O'Brien*, 473 F. Supp. 25, 29 (S.D.N.Y. 1979).  So, too, does the Suspension breach the CBA's requirement (in Article VII (E)(7) thereof), that disciplinary measures taken against Mr. Muckey be supported by "just cause" (*See*, Robbins Decl.; Ex. "A", at 12), given that the *Vulture* article was the sole predicate for the actions taken.

The Society contends that because it "continues to employ Muckey during the term of his paid leave" (Philharmonic Mem., at 8) and neither the Award nor the CBA "requires the Society to assign [Mr. Muckey] to play in the orchestra for any performance or which prevents the Society from placing him on paid leave," Mr. Muckey has failed to plausibly plead that it "breached the CBA in violation of Section 301 (Count II)." (Philharmonic Mem., at 9).  However, the Philharmonic's argument is fatally flawed and inherently contradictory.

While the Philharmonic attempts to justify its wrongful actions by characterizing the Suspension as simply (a) "paid leave" and (b) merely a decision to not "assign" Mr. Muckey to rehearse or perform, neither excuse passes legal muster.  To the extent the Philharmonic argues it has not violated the Award because it has not terminated Mr. Muckey, courts within this Circuit have held that a suspension is akin to constructive termination or an adverse employment action, which would be in violation of the Award. *See, e.g.*, *Muldrow v. City of St. Louis*, ___ U.S. ___ , 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024) (holding that the plaintiff's change in the terms and conditions of her employment constitutes an adverse employment action to hold her employer

liable under Title VII even where her rank and pay remained the same); *Pardovani v. Crown Bldg. Maint. Co.,* No. 15-CV-9065 (JPO), 2020 U.S. Dist. LEXIS 88647, at *15 (S.D.N.Y. May 20, 2020) (denying the defendant-employer's motion for summary judgment because plaintiff's suspension with pay could be considered an adverse employment action where the plaintiff was placed on paid leave for a month while defendants investigated his complaints of racial discrimination); *see also, Bright-Asante v. Saks & Co.,* 242 F. Supp. 3d 229, 243-44 (S.D.N.Y. 2017) (explaining that indefinite suspension (even with pay) could constitute constructive discharge where there was "no indication that [the plaintiff] would ever be called back was tantamount to termination."); *Sethi v. Narod*, 12 F. Supp. 3d 505, 525 (E.D.N.Y. 2014) (holding that the plaintiff's suspension with pay was an adverse employment action where there was no evidence that the defendant applied reasonable disciplinary procedures when it suspended the plaintiff for reasons that were unclear).

Moreover, the issue in this case is not one of "assignment," as the facts here demonstrate. First, Mr. Muckey had already been assigned to concerts and tours for the entire 2024-2025 season. Then, after the *Vulture* article was published, the Philharmonic *removed* Mr. Muckey from every single concert and tour that he had previously been scheduled to participate in. In fact, he was barred from attending the groundbreaking tour in China as well as the tour in Vail. Furthermore, the Philharmonic's statement that a decision about Mr. Muckey's "future with the New York Philharmonic will be made in due course." (Compl. ¶¶ 58, 60), as well as the Union's statement that the Suspension is a "good first step[s]," (Compl. ¶ 67), are a harbinger that it is highly questionable whether Mr. Muckey will ever be called back.

### C.    PLAINTIFF'S STATE LAW CLAIMS SOUNDING IN CONTRACT AND TORT ARE NOT PREEMPTED BY SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT

Although the Philharmonic contends that "Muckey's state law claims are completely preempted by Section 301 because they are founded directly on rights created by the CBA and substantially dependent on an interpretation of the CBA," (Philharmonic Mem., at 10), its argument is ultimately unavailing, since all that is required here is for the Court to consult the plain language of the CBA and no interpretation is required. Article XV of the CBA (see Declaration of Howard Z. Robbins, Esq. ("Robbins Decl.") (Doc. 26; Ex. "B", at 20)) clearly provides that the arbitration determination between a terminated musician-employee and his or her employer is "final and binding" upon each (as well as the Union). Thus, any breach or repudiation of such arbitration award is *ipso facto* a breach of the CBA.

As noted by the Court in *Brown v. NFL,* 219 F. Supp. 2d 372, 378 (S.D.N.Y. 2002), "It is well established, …, that § 301 preempts state law claims, including tort law claims, that involve the interpretation and application of a CBA." (citation omitted). "It does not follow, however, that any state tort [or breach of contract] suit brought by a CBA is preempted by the LMRA", for "[f]ederal preemption is driven by the need to ensure that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Id.*

In *Foy v. Pratt & Whitney,* 127 F.3d 229, 233 (2d Cir. 1997), the Second Circuit distilled the essence of the test for whether Section 301 preemption is applicable as follows:

> Where the resolution of a state-law claim depends on an *interpretation* of the collective-bargaining agreement, the claim is pre-empted." *Hawaiian Airlines*, 512 U.S. [246], 260-62 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) (emphasis added); *Hernandez v. Conriv. Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). However, the bare fact that a collective-bargaining agreement [**13] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished. *Livadas v. Bradshaw*, 512 U.S.

107-124, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994) (citing *Lingle*, 486 U.S. at 413 n. 12).

While "the boundary between claims requiring 'interpretation' of a CBA and those that merely require such an agreement to be 'consulted' is elusive" *Wynn v. AC Rochester,* 273 F.3d 153, 158 (2d. Cir. 2001), the analysis is straightforward in the instant action, since, as noted above, the finality and binding character of the Award in favor of Mr. Muckey and the Union is facially apparent from a simple reading of Article XV – and is freely conceded by both defendants.  Here, preemption is not warranted, since determination of the state law contract claim, alleging breach of the Agreement by reason of the Suspension of Mr. Muckey and his concomitant loss of compensation, simply requires the Court to refer to the CBA for his rate of pay without any need for interpretation.  *See Hernandez v. Conriv. Realty Assocs.,* 116 F.3d 35, 39-41 (2d Cir. 1997) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 n. 12, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) (Stating "not every dispute … tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301" and "[a] collective bargaining agreement may … contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.").

### D.    PLAINTIFF HAS PLEADED A PLAUSIBLE AND COGNIZABLE CLAIM FOR BREACH OF CONTRACT

In addition to breaching the CBA, the Philharmonic's actions and conduct in imposing the Suspension constitutes a breach of the 2023 Agreement, as alleged in the Third Count of the Complaint. The Philharmonic first contends that "the 2023 Agreement is not enforceable because Muckey failed to sign it, and the parties indicated their intent to be bound only when the Agreement is 'signed by all parties,'" referencing Robbins Decl.; Ex. "C", which does not bear Mr. Muckey's signature.  (Philharmonic Mem., at 20).  However, this argument fails both factually and legally.

First, Mr. Muckey *did* execute a copy of the 2023 Agreement and believes he returned his signed copy to the Society since he was given two copies to sign and only possesses one (See Muckey Decl. ¶¶ 4-6; Exs. "1", "2").   Second, even if Mr. Muckey had not delivered his countersigned copy to the Society, the 2023 Agreement would be enforceable.   The 2023 Agreement does not state that delivery is required.   In fact, all that is required is a "meeting of the minds." *Mizuna. Ltd. v. Crossland Fed. Sav. Bank,* 90 F.3d 650, 658 (2d Cir. 1996) ("Unlike, say, a deed, an ordinary contract is valid without delivery"); *See, e.g., Tessemae's LLC v. Atlantis Capital LLC,* No. 18-CV-4902 (KHP), 2019 U.S. Dist. LEXIS 141535, at *18-21 (S.D.N.Y. Aug. 20, 2019); *see also, Taub v. Hariton,* No. 94 Civ. 4910 (MBM), 1995 U.S. Dist. LEXIS 8566 at *6-7 (S.D.N.Y. Jun. 20, 1995).

Finally, the parties' partial performance makes clear that the 2023 Agreement is enforceable, in that Mr. Muckey and the Philharmonic mutually performed their obligations under the 2023 Agreement in 2023 and 2024 until the 2010 Allegations resurfaced in the *Vulture* article. Thus, applying the four-factor test articulated by the Second Circuit in *Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80 (2d Cir. 1985))[3] to determine whether the parties intended to be bound by a contract, it is clear from all of the facts and circumstances that Mr. Muckey and the Philharmonic intended to be bound by the contract once he executed the 2023 Agreement.

The Philharmonic concedes that "the Agreement establishes Muckey's role as a tenured member of the orchestra." As such, it cannot be gainsaid that the Suspension, based upon nothing

---

[3] Those factors are: (1) whether there has been an express reservation of the right not to be bound in the absence of writing; (2) whether there has been partial performance of the contract; (3) whether all the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. *Id.*

more than a rehash of the 2010 Allegations, has prevented Plaintiff from participating in any respect as a member of the orchestra. Repudiating the Award, suspending him, impugning him, making him a pariah, and casting grave doubt on whether, notwithstanding his tenured position, he will continue as "Associate Principal and Third Trumpet", not only breaches the 2023 Agreement, but also the Philharmonic's well-recognized implied obligation of good faith and fair dealing thereunder. *See, e.g., S. Telecom Inc., v. ThreeSixty Brands Grp., LLC,* 520 F. Supp. 3d 497, 504 (S.D.N.Y. 2021) (citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 170 (2d Cir. 2004) (quoting *1-10 Indus. Assocs., LLC v. Trim Corp. of Am.,* 297 A.D.2d 630, 747 N.Y.S.2d 29, 31 (2d Dep't 2002)). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.; See also, Twinkle Play Corp v. Alimar Props., Ltd.,* 186 A.D.3d 1447, 1448 (2d Dep't 2020).

### E.    PLAINTIFF HAS PLEADED A PLAUSIBLE AND COGNIZABLE CLAIM FOR PRIMA FACIE TORT

Mr. Muckey has plausibly pleaded a cognizable claim for *Prima Facie* tort, as he has sufficiently alleged the four elements required to sustain such a cause of action under New York law, which are "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Ferrara v. Leticia, Inc.,* No. 09-CV-3032 (RRM) (CLP), 2012 U.S. Dist. LEXIS 135684, at *15 (E.D.N.Y. Sept. 21, 2012) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 322, 451 N.E. 2d 459, 464 N.Y.S.2d 712 (1983). "The touchstone of this tort requires that disinterested malevolence is 'the sole motive for defendant's otherwise lawful act.'" *Id.* (quoting *Burns,* 59 N.Y.2d at 333).

With respect to the first and third elements, the gratuitous public statements by Mr. Ginstling impugning Mr. Muckey, to wit, that "the details revealed in the *New York* magazine article are horrifying to me personally" and then confirming that he was removing him from any involvement in Philharmonic activity, demonstrate intentional infliction of harm, as well as the concomitant requirement of disinterested malevolence. Mr. Ginstling thus acted and spoke publicly as if the Arbitrator never ruled in favor of Local 802 and Mr. Muckey, in reliance upon the very same allegations that the Arbitrator rejected without any legitimate justification for such malign conduct. To the extent that the Philharmonic argues that it had other motives for "plac[ing Mr. Muckey] on paid leave with the 'sole intent to harm' him"—i.e., "due to the pending investigations and the allegations concerning him" (Philharmonic Mem., at 16) – its assertions are pretextual and fly in the face of the Award itself. Specifically, "the allegations concerning him" are those on which the Arbitrator based his Award. Moreover, even were the Court to credit the Philharmonic's assertions that the "pending investigations" and imposition of the Suspension are somehow necessary or appropriate in the wake of the *Vulture* article, the suggestion that the Philharmonic "had a number of motives, including those prohibited in a *prima facie* claim under *Burns*, … presents merely a factual dispute, the resolution of which is inappropriate on the present motion to dismiss, and moreover, does not implicate preemption, as the motives of the [Philharmonic] do not require interpretation of the CBA." *Id.*, at *16 (citing *L/M Ninety CM Corp. v. 2431 Broadway Realty Co.,* 170 A.D.2d 373, 566 N.Y.S.2d 277, 278 (1st Dep't. 1991).

As for the third element, Mr. Muckey has alleged that the Philharmonic's malevolent actions, conduct, and statements have caused "damage to his reputation" and resulted in his removal from specific "rehearsals, concerts and projects as a result of the Suspension." More specifically, however, Mr. Muckey has alleged that he was removed from, *inter* alia: (a) "the

inaugural orchestra concert of Composing Inclusion, a partnership of the Juilliard Preparatory Division" and (b) "All City Orchestra Coaching," both sponsored by the Philharmonic. The contracts for each project provide that he was to be paid $1,200 by a specific date in May 2024. (Compl. ¶ 147 (b), (c); Muckey Decl. ¶¶ 8, 9; Exs. "3", "4"). These allegations particularize and identify present and ongoing losses sustained by Mr. Muckey, as well as their source. Moreover, the averments of reputational damage will likely be the predicate for expert testimony to quantify for the finder of fact the magnitude and scope of such additional "special damages".

Finally, while the Philharmonic contends that "Muckey fails to plead that the Society engaged in an act that is 'otherwise lawful,' the fourth element of the cause of action," (Philharmonic Mem., at 17), it fails to account for the malevolent, but otherwise lawful, statements by Mr. Ginstling which are set forth and/or incorporated by reference into Count V of the Complaint, expressing his horror at the allegations in the *Vulture* article – i.e., the 2010 Allegations that were already adjudicated. Accordingly, Plaintiff has pleaded acts that would "otherwise be lawful," thereby satisfying the fourth element.

### III.  **CONCLUSION**

For the reasons set forth above and in the accompanying Declaration of Matthew Muckey in Opposition to the Motion to Dismiss of The Philharmonic-Symphony Society of New York, Inc. a/k/a The New York Philharmonic, dated July 29, 2024,  and the Exhibits annexed thereto, Mr. Muckey respectfully submits that the Philharmonic's motion to dismiss Counts I-III and V-VI of the Complaint with prejudice, and to dismiss the Society from this action, be denied in its entirety.

Respectfully submitted,

Paul H. Levinson, Esq.
Steven J. Hyman, Esq.

Jacqueline C. Gerrald, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue, 16th Floor
New York, New York 10016
Phone: (212) 448-1100
Fax: (212) 448-0066
E-mail: plevinson@mclaughlinstern.com
E-mail: shyman@mclaughlinstern.com
E-mail: jgerrald@mclaughlinstern.com
*Counsel for Plaintiff Matthew Muckey*

Dated:  New York, New York
        July 29, 2024