UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MATTHEW MUCKEY,

                          Plaintiff,

    -against-

ASSOCIATED MUSICIANS OF GREATER NEW
YORK, LOCAL 802, AMERICAN FEDERATION OF
MUSICIANS and THE PHILHARMONIC-SYMPHONY
SOCIETY OF NEW YORK, INC. a/k/a THE NEW
YORK PHILHARMONIC ORCHESTRA,

                         Defendants.

-------------------------------------------------------------------x

Case No.: 1:24-cv-3348 (AS) (RWL)
[Rel. Case No.: 1:24-cv-03356 (AS) (RWL)]

# MEMORANDUM OF LAW OF PLAINTIFF MATTHEW MUCKEY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

Steven J. Hyman, Esq.
Jacqueline C. Gerrald, Esq.
Paul H. Levinson, Esq.
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Telephone: (212) 448-1100
shyman@mclaughlinstern.com
jgerrald@mclaughlinstern.com
plevinson@mclaughlinstern.com

*Attorneys for Plaintiff Matthew Muckey*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... i

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 5

    Brief Background of Mr. Muckey's Associate Principal and Third Trumpet Position
    and the Philharmonic's Wrongful Termination of Him ............................................. 5

    The Philharmonic's Wrongful Suspension of Mr. Muckey Based Upon the 2010
    Allegations in Violation of the Award and in Breach of the CBA............................ 6

    Local 802's Refusal to Perform Its Duty of Fair Representation............................ 10

ARGUMENT ............................................................................................................ 12

    I.     SUMMARY JUDGMENT STANDARD .................................................. 12

    II.    MR. MUCKEY IS ENTITLED TO SUMMARY JUDGMENT IN HIS
          FAVOR ON HIS HYBRID CLAIMS UNDER SECTION 301 OF THE LMRA ..... 13

        A. THERE IS NO TRIABLE ISSUE OF FACT THAT THE PHILHARMONIC
            BREACHED THE COLLECTIVE BARGAINING AGREEMENT........................ 13

            i.    The Award is Binding............................................................................ 13

            ii.   The Philharmonic Has Breached Article XV of the CBA by Suspending
                Mr. Muckey in Violation of the Award ................................................ 14

            iii.  The Philharmonic Has Breached Article VII of the CBA by Suspending
                Mr. Muckey Without Just Cause .......................................................... 17

        B. THERE IS NO TRIABLE ISSUE OF FACT THAT LOCAL 802 HAS
            BREACHED ITS DUTY OF FAIR REPRESENTATION...................................... 18

            i.    Local 802's actions are at best arbitrary, and at worst, in bad faith .................... 19

            ii.   There is a causal connection between Local 802's breach and Mr. Muckey's
                injury. ................................................................................................... 20

    III.   MR. MUCKEY IS ENTITLED TO A DECLARATORY JUDGMENT,
          A PERMANENT INJUNCTION, ECONOMIC DAMAGES AND
          ATTORNEYS' FEES for HIS HYBRID CLAIMS .................................................. 21

        A. MR. MUCKEY IS ENTITLED TO A DECLARATORY JUDGMENT
            AGAINST THE PHILHARMONIC AND LOCAL 802............................................. 21

B.  MR. MUCKEY IS ENTITLED TO A PERMANENT INJUNCTION AGAINST
THE PHILHARMONIC ........................................................................................... 22

C.  MR. MUCKEY IS ENTITLED TO ECONOMIC DAMAGES AND
ATTORNEYS' FEES AGAINST THE PHILHARMONIC AND THE UNION ...... 23

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
   889 F. Supp. 2d 606 (S.D.N.Y. 2012) ...................................................................... 22

*Barr v. United Parcel Service, Inc.*,
   868 F.2d 36 (2d Cir. 1989) ...................................................................................... 18

*Bldg. Material Teamsters Local 282 v. A Star Bus. Servs. of N.Y. Corp.*,
   No. 11 CV 4646 (KAM), 2012 U.S. Dist. LEXIS 110359 (E.D.N.Y. May 30, 2012)............ 24

*Bright-Asante v. Saks & Co.,*
   242 F. Supp. 3d 229 (S.D.N.Y. 2017) ...................................................................... 16

*Byrne v. Buffalo Creek R. Co.*,
   No. CIV-75-271E, 1985 U.S. Dist. LEXIS 13330 (W.D.N.Y. Sept. 29, 1985). ...................... 24

*Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union*,
   227 F.3d 29 (2d Cir., 2000) ...................................................................................... 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................... 12

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
   494 U.S. 558 (1990) ................................................................................................... 23

*Clemens v. Apple*,
   65 N.Y.2d 746 (1985) ................................................................................................ 17

*Clergeau v. Local 1181, Amalgamated Transit Union*,
   162 Fed. Appx.32 (2d Cir. 2005) .............................................................................. 25

*Cruz v. Local Union No. 3 of the IBEW*,
   34 F.3d 1148 (2d Cir. 1994) ...................................................................................... 25

*DelCostello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983) .................................... 13, 23

*Drywall Tapers & Pointers of Greater N.Y. Loc. Union 1974 v. KPM Constr. Corp.*,
   23 Civ. 7105 (PAE), 2024 U.S. Dist. LEXIS 57039 (S.D.N.Y. Mar. 26, 2024) ...................... 23

*Feldleit v. Long Island Rail Rd.*,
   723 F. Supp. 892 (E.D.N.Y. 1989) ............................................................................ 18

*Hines v. Anchor Motor Freight, Inc.*,
   424 U.S. 554, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976)............................................ 18

*Int'l Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*,
    774 F.2d 43 (2d Cir. 1985) ................................................................................... 23

*Jacobson v. Fireman's Fund Ins. Co.*,
    111 F.3d 261 (2d Cir. 1997) ........................................................................... 16, 17

*Kairos Credit Strategies Operating P'ship, LP v. Friars N.A., Inc.*,
    No. 23-cv-2960 (AS), 2023 U.S. Dist. LEXIS 222091 (S.D.N.Y. Dec. 12, 2023) ................. 12

*Larkin v. Saber Auto., LLC*,
    No. 23-cv-2428 (AS), 2024 U.S. Dist. LEXIS 101869 (S.D.N.Y. June 6, 2024) ................... 12

*Local 30, Int'l Union of Operating Eng'rs v. Wood Grp. Power Operations LLC*,
    No. CV 13-2499 (JS) (GRB), 2017 U.S. Dist. LEXIS 211666 (E.D.N.Y. Dec. 22, 2017) ..... 23

*Luppo v. Waldman, Inc.*,
    131 A.D.2d 443 (2d Dep't 1987) .......................................................................... 17

*Maidman v. O'Brien*,
    473 F. Supp. 25 (S.D.N.Y. 1979) ......................................................................... 16

*Marquez v. Screen Actors*,
    525 U.S. 33 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998) .............................................. 18

*Maryland Cas. Co. v. Rosen*,
    445 F.2d 101 (2d Cir. 1971) ............................................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith R Corp.*,
    475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) .......................................... 12

*Matter of American Ins. Co. v. Messinger*,
    43 N.Y.2d 184 (1977) ....................................................................................... 17

*McElwee v. Cnty. of Orange*,
    700 F.3d 635 (2d Cir. 2012) ............................................................................... 12

*Mock v. T.G. & Y. Stores Co.*,
    971 F.2d 522 (10th Cir. 1992) ............................................................................ 18

*Muldrow v. City of St. Louis*,
    ___ U.S. ___ , 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024) ......................................... 15

*Ognibene v. Parkes*, 671 F.3d 174 (2d. 2011) ............................................................ 22

*Oxford Health Plan*,
    287 F.3d 96 (2d Cir. 2002) ................................................................................ 12

*Pardovani v. Crown Bldg. Maint. Co.*,
    No. 15-CV-9065 (JPO), 2020 U.S. Dist LEXIS 88647 (S.D.N.Y. May 20, 2020) ................. 16

*Patricia v. Delford Indus., Inc.*,
    660 F. Supp. 1429 (S.D.N.Y. 1987) ...................................................................... 19

*Pennington v. D'Ippolito*,
    855 F. App'x 779 (2d Cir. 2021) ........................................................................... 12

*Rembrandt Industries, Inc. v. Hodges International, Inc.*,
    38 N.Y.2d (1976) .................................................................................................... 17

*Roku, Inc. v. Individuals, Corps., Ltd. Liab. Cos. P'ship & Unincorporated*
    *Ass'ns Identified*,
    No. 22-cv-2168 (PKC), 2023 U.S. Dist. LEXIS 3742 (S.D.N.Y. Jan. 9, 2023)...................... 22

*Samuels v. Air Transp. Loc. 504*,
    992 F.2d 12 (2d Cir. 1993) ...................................................................................... 18

*Scales v. N.Y. Hotel & Motel Trades Council, Local 6*,
    No. 21 Civ 8142 (JPC), 2023 U.S. Dist. LEXIS 19741 (S.D.N.Y. Feb. 6, 2023) .................. 18

*Sethi v. Narod*,
    12 F.Supp. 3d 505 (E.D.N.Y. 2014) ........................................................................ 16

*Spellacy v. Air Line Pilots Ass'n, Int'l*,
    156 F.3d 120 (2d Cir. 1998) .................................................................................... 18

*Streit v Amdocs, Inc.*
    307 Fed. Appx. 505 (2d Cir. 2009).......................................................................... 17

*Thomas v. Little Flower for Rehab. & Nursing*,
    793 F. Supp. 2d 544 (E.D.N.Y. 2011) .................................................................... 18

*Travelers Indem. Co. Ofamerica v. Ohio Sec. Ins. Co.*,
    No. 23-cv-3451 (AS), 2024 U.S. Dist. LEXIS 86264 (S.D.N.Y. May 10, 2024) .................. 12

*Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Dejil Sys.*,
    12 Civ. 005 (JMF), 2012 U.S. Dist. LEXIS 123143 (S.D.N.Y Aug. 29, 2012) .................... 13

*Trs. of the NY.C. Dist. Council of Carpenters Pension Fund v. All. Workroom Corp.*,
    No. 13 Civ. 5096 (KPF), 2013 U.S. Dist. LEXIS 174100 (S.D.N.Y. Dec. 11, 2013)............. 23

*Vaca v. Sipes,* 386 U.S.
    171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967) .................................................... 13, 24

*Vaughn v. Air Line Pilot Ass'n, Int'l*,
    604 F.3d 703 (2d Cir. 2010) .................................................................................... 19

*White v. White Rose Food*,
    237 F.3d 174 (2d Cir., 2001) .................................................................................. 13

*Young v. U.S. Postal Service,*
   907 F.2d 305 (2d Cir., 1990) ........................................................................ 13, 19

## **<u>Statutes</u>**

Fed. R. Civ. P. 56(a) ...................................................................................... 12

Fed. R. Civ. P. 57 ............................................................................................. 21

Plaintiff MATTHEW MUCKEY ("Plaintiff" or "Mr. Muckey") respectfully submits this memorandum of law pursuant to Fed.R.Civ.P. 56(a) in support of his motion for partial summary judgment on the First and Second Counts (Causes of Action) in the Complaint, each in the nature of a "hybrid" claim against (a) his employer and (b) his union for breach of a collective bargaining agreement and breach of the duty of fair representation, respectively.[1]

## PRELIMINARY STATEMENT

The underlying lawsuit arises from the repudiation and violation by THE PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC. a/k/a THE NEW YORK PHILHARMONIC ORCHESTRA (the "Philharmonic" or the "Society") of a binding arbitration award rendered in favor of Mr. Muckey as well as the failure of the Associated Musicians of Greater New York, Local 802, American Federation of Musicians ("Local 802" or the "Union"), notwithstanding due demand by Mr. Muckey, to challenge the disciplinary action taken against Mr. Muckey which violates the award and is without just cause. Specifically, the Philharmonic has removed Mr. Muckey, a musician of the Philharmonic, from his prestigious tenured position in willful disobedience of an arbitration award which previously determined that it could not do so based solely upon the exact same grounds found not to constitute just cause. Local 802, in turn, has walked away from the very arbitration award which it obtained on Mr. Muckey's behalf. This Court is respectfully directed to the complaint filed by Mr. Muckey on May 1, 2024 (Doc. No. 1) (the "Complaint"), as well as the accompanying Declaration of Matthew Muckey

---

[1] The Court is also respectfully directed to Plaintiff's papers submitted in opposition to the Motion to Dismiss of Defendant Local 802 (Doc. Nos. 40-41) and in opposition to the Motion to Dismiss of Defendant the Philharmonic (Doc. Nos. 42-44).

dated July 29, 2024 ("Muckey Decl.") which is being simultaneously filed herewith, for a complete recitation of the facts. The whirlwind of facts is briefly summarized as follows:

Mr. Muckey had had enjoyed a successful career as a tenured musician at the Philharmonic for about a decade until 2018 when the Philharmonic terminated his employment based upon false allegations of drugging and sexual misconduct which had been made by a probationary player of the Philharmonic, Cara Kizer, against Mr. Muckey nearly a decade before in the summer of 2010 (the "2010 Allegations"). Mr. Muckey denied the 2010 Allegations and sought to challenge the termination of his employment.

Local 802 commenced an arbitration proceeding on behalf of Mr. Muckey seeking his reinstatement to the Philharmonic, together with backpay, and prevailed in that arbitration. The arbitrator, Richard I. Bloch, Esq. ("Arbitrator Bloch" or the "Arbitrator") issued a final, binding award dated April 4, 2020, which held that there was no just cause to terminate Mr. Muckey and ordered his reinstatement to his tenured position with all contractual benefits lost, including full back pay and seniority (the "Award"). Thereafter, the Philharmonic restored Mr. Muckey to his tenured position, restored his seniority, and remitted to him full back pay for the period during which he was wrongfully terminated.

With the Award rendered in his favor, Mr. Muckey was happy to put this nightmare behind him once and for all and resumed his career achieving status as at the Philharmonic with much success and without any issue. Then, on April 13, 2024, an article appeared in *Vulture*, a *New York* magazine website ("*Vulture*" or "*New York*" magazine") which rehashed the same 2010 Allegations. Since the *Vulture* article contained no new allegations but, instead, was simply a reiteration of the same 2010 Allegations that Arbitrator Bloch already determined did not constitute "just cause" to warrant Mr. Muckey's dismissal, there was no reason for Mr.

Muckey's employment to be impacted in any way.  However, within 24 hours of the rehashing of the 2010 Allegations in the *Vulture* article, the Philharmonic suspended Mr. Muckey from the same tenured position from which the Award held he could not be terminated.

Specifically, the Philharmonic informed Mr. Muckey that he was prohibited from participating in all rehearsals, performances, concerts, and tours and other Philharmonic activities (the "Philharmonic Activities"), he was banned from attending any meetings of the Philharmonic, he cannot attend any of the Philharmonic Activities and, in fact he can not even so much as set foot into David Geffen Hall, the well renowned "home" of the Symphony and his place of employment  (all such acts against Mr. Muckey shall collectively be referred to herein as the "Suspension").   Mr. Muckey made repeated requests to Local 802 to seek to enforce the terms of the collective bargaining agreement and challenge the Suspension as violating the Award and not being based upon just cause so that he could be restored to the orchestra, but Local 802 refused to do so.

While the Philharmonic (as well as Local 802) has purported to state that the Suspension was pending an independent investigation into the Philharmonic's culture, the facts demonstrate that the Suspension has no basis other than the 2010 Allegations.  In fact, the Suspension occurred immediately after the *Vulture* article and before any purported investigation had commenced.  Days after it announced the "culture" investigation, the Philharmonic informed orchestra members that it had hired an investigator to investigate new allegations of sexual harassment, violence and/or abuse alleged to have been committed by *any* musicians employed by the Philharmonic.  The Suspension occurred before either investigation had commenced, and only Mr. Muckey (and Mr. Wang) were suspended during such investigations.

Given the undisputed facts that: (1) no musician has been suspended prior or during these investigations other than Mr. Muckey (and Mr. Wang); and (2) the Suspension occurred the day immediately following the publication of the *Vulture* article about the 2010 Allegations and *before* any purported investigations, there can be no genuine dispute that the Suspension is solely based upon the 2010 Allegations.  Indeed, Mr. Ginstling explained in a public statement that, "the details revealed in the *New York* magazine article are horrifying to me personally…." and he stated that, as a result, "for the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process."

There is no triable issue of fact that the Philharmonic has breached the collective bargaining agreement because the Suspension: (1) violates the Award that it agreed would be final and binding and which held that he could not be disciplined based upon the 2010 Allegations; and  (2) is not supported by "just cause."

There is also no triable issue of fact that Local 802 has breached its duty of fair representation.  Local 802 had a duty to enforce the terms of the collective bargaining agreement, specifically, enforce the award and challenge the Suspension as not being based upon just cause.  Instead, not only did Local 802 refuse to do so, its President openly *supported* the Suspension, even though Mr. Muckey was absolved by the Award.  Local 802's acts are, at best, arbitrary, and at worst, in bad faith, because the Suspension is solely based upon the 2010 Allegations, which Local 802 previously and successfully challenged as not constituting just cause, and there has been no grounds of just cause articulated by the Philharmonic for the Suspension.

As a result of Local 802's refusal to seek enforcement of the arbitration award, Mr. Muckey remains subject of the Suspension (and publicly impugned by his own union's President), and has been forced to commence t this action to seek redress, on his own.

## STATEMENT OF FACTS

*Brief Background of Mr. Muckey's Associate Principal and Third Trumpet Position and the Philharmonic's Wrongful Termination of Him*

Mr. Muckey has held the tenured position as the Associate Principal and Third Trumpet at the Philharmonic since on or about January 2, 2008.  Compl. ¶¶ 1, 31; Muckey Decl., ¶ 4.  He has enjoyed a successful career at the Philharmonic until in or about 2010, when the "2010 Allegations" were made against him. Compl. ¶¶ 2-3, 36; Muckey Decl., ¶ 5.  Mr. Muckey denied the 2010 Allegations and fully cooperated with the local authorities in multiple investigations. Compl. ¶¶ 5, 37; Muckey Decl., ¶ 9. During such investigations, the local authorities located no drugs and after finding no basis to bring any criminal charges against Mr. Muckey, they ultimately closed the investigations. Compl. ¶ 7; Muckey Decl., ¶ 7. The Philharmonic took no adverse employment action against Mr. Muckey based upon the 2010 Allegations, until 2018 when the same 2010 Allegations resurfaced. Compl. ¶¶ 8, 11, 40; Muckey Decl., ¶ 8. Then, after the Philharmonic conducted its own internal investigation, it terminated Mr. Muckey's employment claiming that it had "just cause" to dismiss him. Compl. ¶¶ 11, 42. Mr. Muckey again denied the 2010 Allegations and sought representation from Local 802, to challenge the termination of his employment.  Compl. ¶ 12, 41; Muckey Decl., ¶ 9.

Local 802 thoroughly reviewed the matter and agreed with Mr. Muckey that there was no just cause to terminate him. Compl. ¶¶ 13, 45; Muckey Decl., ¶¶ 11, 14. Pursuant to the Trade Agreement between the Philharmonic and Local 802 dated September 21, 2013 (the "CBA"), Local 802 commenced an arbitration proceeding on behalf of Mr. Muckey seeking his reinstatement together with backpay. *Id*; Muckey Decl., ¶ 12, Exh. A. Local 802 prevailed in the arbitration and on April 24, 2020, the Arbitrator issued the Award, holding that there was no just cause to terminate Mr. Muckey, and ordered his reinstatement with all contractual benefits lost,

including full back pay and seniority. Compl. ¶¶ 14, 51; Muckey Decl., ¶ 16. Thereafter, the Philharmonic restored Mr. Muckey to his tenured position, restored his seniority and remitted to him full back pay for the period during which he was wrongfully terminated. Compl. ¶¶ 16, 51; Muckey Decl., ¶ 19. Mr. Muckey once again resumed his career achieving status as tenured Associate Principal and Third Trumpet at the Philharmonic with much success and without any issue. Compl. ¶¶ 17, 52; Muckey Decl., ¶ 20. For the next four (4) years, Mr. Muckey remained an active employee of the Philharmonic, attending and participating in rehearsals and performing with orchestra members. Compl. ¶ 52; Muckey Decl., ¶ 20. For the current 2023/2024 season alone, Mr. Muckey was assigned to dozens of season concerts as well as to the Spring Gala with Gustavo Dudamel on April 24, 2024, and two Philharmonic sponsored projects, namely, the inaugural orchestral concert of Composing Inclusion on May 6 and the All-City Orchestra coaching project from February 2024 through May 2024. Compl. ¶¶ 62, 87; Muckey Decl., ¶¶ 20-21, 23, Exhs. C, D, E. He was also scheduled to attend a tour in Shanghai, China in June 2024 ("China Tour") and in Vail, Colorado in July 2024 ("Vail Tour") respectively and he had completed and returned the paperwork that the Philharmonic sent him to attend both tours. Compl. ¶ 63, Muckey Decl., ¶ 22.

*The Philharmonic's Wrongful Suspension of Mr. Muckey Based Upon the 2010
Allegations in Violation of the Award and in Breach of the CBA*

On April 12, 2024, an article appeared in *Vulture* which discussed the 2010 Allegations. Compl. ¶¶ 18, 53; Muckey Decl., ¶ 24, Exh. F. The *Vulture* article contained no new claims but, instead, was simply a reiteration of the same 2010 Allegations that Local 802 argued, and the Arbitrator determined, did not constitute "just cause" to warrant Mr. Muckey's dismissal from the Philharmonic. Compl. ¶¶ 19, 53. Muckey Decl., ¶ 25. Notwithstanding the binding Award,

on April 13, 2024, since that day, Mr. Muckey has been subjected to various forms of adverse employment action against him. Compl. ¶¶ 54, 86-87; Muckey Decl., ¶¶ 26-27.

The very next day, the Philharmonic notified Mr. Muckey that he was being removed from all of his assigned concerts and projects. Compl. ¶ 17, 54; Muckey Decl., ¶ 29. Specifically, on April 13, 2024, Howard Z. Robbins, the attorney for the Philharmonic, sent an email to Mr. Muckey's attorney which stated as follows:

> I am writing to confirm that Mr. Muckey should not attend Philharmonic rehearsals or performances until further notice.

Compl. ¶ 55; Muckey Decl., ¶ 29; Declaration of Jacqueline C. Gerrald, Esq. dated July 29, 2024 ("Gerrald Decl."), ¶ 4, Exh. B.

Also on that day, the Philharmonic's President and Chief Executive Officer, Gary Ginstling, sent an email addressed to "NY Phil Colleagues," which stated the following:

> Dear NY Phil Colleagues,
>
> Please note that for the time being, Matthew Muckey and Liang Wang will not be at rehearsals or performances.
>
> Thank you,
> Gary

Compl. ¶ 56; Muckey Decl., ¶ 30, Exh G.

The following week, on April 18, 2024, Mr. Ginstling sent an email addressed to the "New York Philharmonic Community" wherein he referenced the details of the 2010 Allegations in the *Vulture* article as being "horrifying" to him personally,  stated that the Philharmonic would be conducting an investigation into the "culture" at the Philharmonic and that pending such investigation, Mr. Muckey (and Mr. Wang) would not being assigned to any Philharmonic activity and their future at the Philharmonic was under review and would be decided.  Compl. ¶

58; Muckey Decl., ¶ 31, Exh H. Specifically, the announcement stated in pertinent part as follows:

> Dear New York Philharmonic Community,
>
> The details revealed in the *New York* magazine article are horrifying to me personally, and, while not yet a year into my tenure as President and CEO of the New York Philharmonic, I am deeply concerned about not only the specifics but broader issues of institutional culture. Therefore, I have taken the following immediate steps:
>
> 1.     At my direction, the Philharmonic has engaged Katya Jestin, co-managing partner of the law firm Jenner & Block, to launch an independent investigation into the culture of the New York Philharmonic in recent years. Katya has extensive experience handling sexual misconduct investigations and related matters involving extremely sensitive interviews. I am empowering Katya to look at everything and to leave no stone unturned, including any new allegations as they are reported. I pledge to share the recommendations with our board, our staff and our musicians as well as with the general public.  More details on the process will be coming shortly.
>
> 2.     For the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process, and a decision about their future with the New York Philharmonic will be made in due course….

*Id*.

The next day, on April 19, 2024, Mr. Ginstling sent an email to the Philharmonic musicians regarding the retention of "an investigator to investigate new allegations of sexual harassment, violence and/or abuse alleged to have been committed by any musicians employed by the Philharmonic."  Muckey Decl., ¶ 33, Exh. 33.

Also, on April 19, 2024, Mr. Robbins sent an email to Mr. Wang's attorney, Alan Lewis, Esq. effectively barring both Mr. Wang and Mr. Muckey from their place of employment. Specifically, in his email, Mr. Robbins stated in pertinent part as follows:

> … Mr. Wang should not report to rehearsals or performances until
> further notice, I would like to clarify that this means *they* should
> not come into David Geffen Hall.  If your client would like access
> to the building for some reason, please contact me about making
> such arrangements.

Muckey Decl., ¶ 34; Gerrald Decl., ¶ 5 Exh. C. (emphasis supplied).

Approximately one month later, on May 21, 2024, Mr. Robbins sent an email to Mr.

Muckey's attorney which removed him from participation in the China and Vail tours, and stated

as follows:

> Please note that your client, Mr. Muckey, remains on a paid leave
> pending the completion of the Philharmonic's ongoing
> investigation into allegations of sexual harassment or otherwise
> inappropriate conduct by musicians or other current employees of
> the Philharmonic.  As that investigation has not yet been
> completed, the Philharmonic will not be sending Mr. Muckey to
> China or to China to perform given that the Philharmonic must
> soon finalize rosters and logistics for both trips.  I will contact you
> following completion of the investigation.

Muckey Decl., ¶ 36; Gerrald Decl., ¶ 6 Exh. D.

Then, on May 28, 2024, Mr. Robbins sent an email to Mr. Muckey's attorney regarding

further action taken against Mr. Muckey, specifically, a prohibition against attending

Philharmonic meetings.  The email stated as follows:

> Mr. Hyman—
>
> Please note that Mr. Muckey should not attend meetings (including
> meetings scheduled for tomorrow, May 29) at the Philharmonic,
> not just rehearsals and performances, during the period of his paid
> leave of absence.
>
> Please let me know if you have any questions.

Muckey Decl., ¶ 38; Gerrald Decl. ¶ 7 Exh. E.

*Local 802's Refusal to Perform Its Duty of Fair Representation*

Mr. Muckey made demands to Local 802 to take the necessary steps on his behalf to seek enforcement of the Award so that he may be restored to the orchestra and again participate in Philharmonic Activities. Compl. ¶ 74; Muckey Decl., ¶ 45. Local 802, however, has refused to do so, notwithstanding its duty of fair representation to Mr. Muckey. Compl. ¶ 75; Muckey Decl., ¶ 45.

Specifically, Mr. Muckey's attorneys sent a letter dated April 18, 2024 to counsel for Local 802, Susan Davis, Esq. ("Ms. Davis") which stated in pertinent part as follows:

> … we hereby demand that the Union protect Mr. Muckey's rights as determined by the binding arbitration decision, perform its duty of fair representation, and take all the necessary steps to fully restore Mr. Muckey to performing in his position as the Associate Principal and Third Trumpet of the Philharmonic.  It is our earnest hope that the Union will reconsider its position so that Mr. Muckey will not have to resort to other remedies.

Compl. ¶ 74; Muckey Decl., ¶ 46 Gerrald Decl. ¶ 8, Exh. F.  Ms. Davis responded on April 18, 2024, as follows:

> If… Mr. Muckey would like the Union to do something in response to the Philharmonic's action, the proper course is for him to reach out to the Union, which he has not done.  If he wishes to do so, he should contact Dan Point at dpoint@local802afm.org and the Union will evaluate his request at that time. Local 802 prefers to speak directly to its members, rather than through communications between counsel.

Compl. ¶ 75; Muckey Decl., ¶ 47; Gerrald Decl. ¶ 9 Exh. G.  Accordingly, the next day, on April 19, 2024, Mr. Muckey sent an email directly to Local 802 which stated in pertinent part as follows:

> ….the Union must immediately act on my behalf to force the New York Philharmonic to comply with the arbitration award so that I am returned to the orchestra.

Compl. ¶ 76; Muckey Decl., ¶ 48, Exh. J. Despite its directive that Local 802 and Mr. Muckey communicate directly rather than through counsel, Local 802 never responded to Mr. Muckey. Compl. ¶ 77; Muckey Decl., ¶ 49. Instead, one week later, on April 26, 2024, Ms. Davis sent a reply to Mr. Muckey's attorneys indicating its refusal to challenge the Suspension (of Mr. Muckey) pending the Philharmonic's investigation to see *whether* there were any new allegations of sexual misconduct.  Compl. ¶ 78-80. The letter, stated in pertinent part as follows:

> …The NY Philharmonic engaged an investigator to determine whether there were any new or different allegations of sexual misconduct by any members of the Orchestra, including your client.  Local 802 has determined to await the outcome of that investigation before determining how to proceed here.

Gerrald Decl. ¶ 10, Exh. H.

Not only has Local 802 refused to represent Mr. Muckey, Local 802's President, Sara Cutler, publicly *endorsed* the Philharmonic's adverse employment actions against him. Compl. ¶ 66. Muckey Decl., ¶ 57. Specifically, Ms. Cutler issued a public statement to *The New York Times* in an article published on April 15, 2024, stating her support of the Philharmonic's decision to keep Mr. Muckey (along with Mr. Wang) offstage, stating that such acts "are good first steps but they can't be the last."  Compl. ¶ 67; Muckey Decl., ¶ 57, Exh. K. Also, instead of stating that the 2010 Allegations which appeared in *Vulture* did not constitute just cause to terminate Mr. Muckey because they were the same as those that were the subject of the Award, Ms. Cutler publicly stated that, "I am horrified by what was in the [*Vulture*] story and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long." Compl. ¶ 68-70; Muckey Decl., ¶ 57, Ex. K.

Given Local 802's failure to represent Mr. Muckey, On May 1, 2024, Mr. Muckey commenced the instant action.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also, Fay v. Oxford Health Plan,* 287 F.3d 96, 103 (2d Cir. 2002); *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012); *Travelers Indem. Co. Ofamerica v. Ohio Sec. Ins. Co.,* No. 23-cv-3451 (AS), 2024 U.S. Dist. LEXIS 86264, at *6 (S.D.N.Y. May 10, 2024) (granting plaintiffs motion for summary judgment for declaratory judgment); *Kairos Credit Strategies Operating P'ship, LP v. Friars N.A., Inc.,* No. 23-cv-2960 (AS), 2023 U.S. Dist. LEXIS 222091 (S.D.N.Y. Dec. 12, 2023) (granting plaintiff's motion for summary judgment); and *Larkin v. Saber Auto., LLC*, No. 23-cv-2428 (AS), 2024 U.S. Dist. LEXIS 101869 (S.D.N.Y. June 6, 2024).

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists. *Pennington v. D'Ippolito*, 855 F. App'x 779, 781 (2d Cir. 2021). If satisfied, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial, and to present such evidence that would allow a jury to find in his favor. *Id*. To defeat a summary judgment motion, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith R Corp.,* 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The non-moving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Pennington*, 855 F. App'x at 781 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To prevail on a hybrid Section 301/duty of fair representation claims against the employer and the union, respectively, a plaintiff must prove both that the employer "breached a

collective bargaining agreement" and "that the union breached its duty of fair representation vis-a-vis the union members." *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983); *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir., 2001); *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *Young v. U.S. Postal Service*, 907 F.2d 305, 307 (2d Cir., 1990).

The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both. See *DelCostello,* 462 U.S. at 165. We respectfully submit that both prongs are amply satisfied here.

## II.   MR. MUCKEY IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR ON HIS HYBRID CLAIMS UNDER SECTION 301 OF THE LMRA

### A.   THERE IS NO TRIABLE ISSUE OF FACT THAT THE PHILHARMONIC BREACHED THE COLLECTIVE BARGAINING AGREEMENT

#### i.   The Award is Binding

The Philharmonic and Local 802 are signatories to the CBA. Compl. ¶ 13; Muckey Decl., ¶ 9, Exh. A. Article XV of the CBA, clearly and unequivocally provides that both the Philharmonic and Local 802 agreed that "the decision of the Arbitrator shall be final and binding upon the Society, the Union and the individual Orchestra member involved…"  Compl. ¶ 49; Muckey Decl., ¶ 13, Exh. A.

Where, as here, the CBA provides that an arbitration award will be final and binding and Defendants concede same, there can be no genuine dispute of material fact over whether such arbitration award is binding.  *See Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Dejil Sys.*, 12 Civ. 005 (JMF), 2012 U.S. Dist. LEXIS 123143, at *8 (S.D.N.Y Aug. 29, 2012) (holding that the Petitioners met their burden of demonstrating that there was no genuine issue of material fact over the enforceability of an arbitration award where the CBA provided that the arbitrator's award shall be final and binding).  Defendants concede that the Award is binding.

ii.    The Philharmonic Has Breached Article XV of the CBA by Suspending
Mr. Muckey in Violation of the Award

The circumstances that motivated the Philharmonic to suspend Mr. Muckey are not in dispute.  The record shows, and the Philharmonic admits, that the Suspension stems solely from the 2010 Allegations subject of the *Vulture* article.

Specifically, on April 12, 2024, an article appeared in *Vulture*, which described the 2010 Allegations against Mr. Muckey that had been the subject of the Award.  Compl. ¶¶ 18, 52-53; Muckey Decl., ¶ 24, Exh. F. Within 24 hours, on April 13, 2024, Howard Z. Robbins, Esq., ("Mr. Robbins") the attorney for the Philharmonic, sent an email to Mr. Muckey's attorney which confirmed that Mr. Muckey should not attend Philharmonic rehearsals or performances until further notice.  Compl., ¶ 55; Muckey Decl., ¶ 29, Exh. B.  Also, on April 13, 2024, the Philharmonic's President and Chief Executive Officer, Gary Ginstling, sent a similar message in an email addressed to "NY Phil Colleagues," Compl., ¶ 56; Muckey Decl., ¶ 30, Exh. G; *see also,* Declaration of Olivia R. Singer (Doc. 22) ("Singer Decl.," at Exh. E) (*New York Times* article, quoting then CEO Ginstling as stating that the Article "prompted a lot of strong feelings" and confirming that Mr. Muckey had been barred from Philharmonic activity); *see also* Singer Decl. (Doc. No. 22 at Exh. C) (Ginstling statement reinforcing that Mr. Muckey (and Mr. Wang) were "not being assigned to any Philharmonic activity" because of the "specifics" in the "*Vulture* article."); *see also Union Memorandum of Law*, at 4 (Doc. 21) (describing Mr. Muckey's suspension as a response to the "*Vulture* article" and the "concerns expressed by members of the Orchestra).

Defendants do not dispute, nor could they, that the Suspension (which there refer to as "paid leave") is solely predicated upon the 2010 Allegations published in *Vulture*.  Instead, Defendants try to justify the Suspension by portraying it simply as the Philharmonic choosing

not to *schedule* Mr. Muckey for performances. *See Philharmonic Memorandum of Law*, (Doc. 25 at 2-3, 8); *Union Memorandum of Law* (Doc. 21 at 1-2, 8-10.)

But not only can unwarranted scheduling changes constitute actionable employment discipline, *see*, e.g. *Muldrow v. City of St. Louis*, ___ U.S. ___ , 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024) (change in terms and conditions of employment, including to a position with lest prestige, is an adverse employment action), Mr. Muckey has been subjected to much worse than a mere change in schedule:

- he has been *removed* from all rehearsals and performances, including concerts, tours, a gala, and other Philharmonic activities, he had already been scheduled to participate in as well as two Philharmonic-sponsored events subject of two separate contracts with the Philharmonic; he has been prohibited from attending meetings, even via ZOOM; and
- he has been barred from entering David Geffen Hall entirely.

Muckey Decl., ¶ 53.

Nor does the fact that Mr. Muckey is on (what it characterizes as) "paid leave pending an investigation" excuse the Philharmonic's violation of the Award.  As a preliminary matter, Mr. Muckey is not being *fully* compensated and in fact, he did not receive compensation pursuant to two separate contracts he has with the Philharmonic for the inaugural orchestral concert of Composing Inclusion and the All-City Orchestra coaching project. Muckey Decl. ¶ 23. All that Mr. Muckey has received is his base pay. Muckey Decl. ¶ 55s.

Moreover, it does not matter that Mr. Muckey's *base* pay remained the same, the placement of Mr. Muckey on "paid leave" is still an adverse employment action. *See e.g. Muldrow v. City of St. Louis*, ___ U.S. ___, at 977 (2024) (holding that the plaintiff's change in the terms and conditions of her employment constitutes an adverse employment action to hold her employer liable under Title VII even where her rank and pay remained the same); *Pardovani*

*v. Crown Bldg. Maint. Co.,* No. 15-CV-9065 (JPO), 2020 U.S. Dist LEXIS 88647, at *15 (S.D.N.Y. May 20, 2020) (denying defendant-employer's motion for summary judgment because plaintiff's suspension with pay could be considered an adverse employment action where plaintiff was placed on paid leave for a month while defendants investigated his complaints of racial discrimination); *see also Bright-Asante v. Saks & Co.,* 242 F. Supp. 3d 229, 243-44 (S.D.N.Y. 2017) (explaining that indefinite suspension (even with pay) could constitute constructive discharge where there was "no indication that [plaintiff] would ever be called back was tantamount to termination."); *Sethi v. Narod,* 12 F.Supp. 3d 505, 525 (E.D.N.Y. 2014) (holding that plaintiff's suspension with pay was an adverse employment action where there was no evidence that defendant applied reasonable disciplinary procedures when it suspended plaintiff for reasons that were unclear).

Thus, the Suspension pending investigation violates the CBA's mandate (in Article XV(A) thereof) that the Award is "final and binding" because the 2010 Allegations were already adjudicated.    Under both federal and State law, arbitration awards have the same *res judicata* and collateral estoppel effect as decisions of a court.  *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997) (holding that *res judicata* and collateral estoppel applied to an arbitrator's award regarding insurance claims that lacked judicial confirmation and barred a later suit that was based on the facts and issues dealt with in the award). A party who had a full and fair opportunity to make its case in arbitration is not entitled to a do-over, including on "factual disputes resolved by an arbitrator." *Maidman v. O'Brien,* 473 F. Supp. 25, 29 (S.D.N.Y. 1979) (relying on factual findings of arbitrator to dismiss federal securities claim as barred by collateral estoppel).

Here, where the Philharmonic had a full and fair opportunity to prove its case in the arbitration, it may not take a "mulligan."  Therefore, the Society is barred from "relitigation of factual disputes resolved by" the arbitration.  *See, e.g. Id.*; *Luppo v. Waldman, Inc.*, 131 A.D.2d 443, 445 (2d Dep't 1987) ("It is well settled that the doctrines of *res judicata* and collateral estoppel apply to arbitration awards with the same force and effect as they apply to judgments of courts") (citing *Matter of American Ins. Co. v. Messinger*, 43 N.Y.2d 184, 191 (1977); *Rembrandt Industries, Inc. v. Hodges International, Inc.*, 38 N.Y.2d (1976); *Clemens v. Apple*, 65 N.Y.2d 746 (1985)).

The Philharmonic was therefore barred from taking any adverse employment action against Mr. Muckey solely on the basis of the 2010 Allegations contained therein. *Jacobson*, 111 F.3d at 267-68; *Luppo*, 131 A.D. at 446.  Yet, as the Philharmonic admits, that is exactly what it has done.  In so doing, the Philharmonic flagrantly violated the CBA's requirement that it treat the Award as final and binding. *See, e.g. Streit v Amdocs, Inc*. 307 Fed. Appx. 505, 506 (2d Cir. 2009) (dismissing complaint on basis of prior arbitration of same claim).

Therefore, there can be no genuine dispute that the Philharmonic has breached the CBA by issuing the Suspension.

### iii.    The Philharmonic Has Breached Article VII of the CBA by Suspending Mr. Muckey Without Just Cause

For the same reasons set forth above, the Suspension breaches the CBA's requirement (in Article VII (E)(7) thereof), that disciplinary measures taken against Mr. Muckey be supported by "just cause" (*See,* Declaration of Howard Z. Robbins [Doc. 22, "Robbins Decl.,"] Exh A at 12), given that the *Vulture* article was the sole predicate for the actions taken.  The one-sided magazine article about old, fully adjudicated allegations, does not amount to "just cause,"

especially since the *Vulture* article contained no new allegations but simply rehashed the same

2010 Allegations that Arbitrator Bloch determined did not constitute "just cause."

### B.  THERE IS NO TRIABLE ISSUE OF FACT THAT LOCAL 802 HAS BREACHED ITS DUTY OF FAIR REPRESENTATION

To prevail on a claim for breach of a union's duty of fair representation  ("DFR"), the

employee must show that the union's actions were arbitrary, discriminatory and/or in bad faith,

and that there is a causal connection between the union's breach and the plaintiff's injury.  *White*,

237 F.3d at 178-179 (2d Cir., 2001).  *See also, Barr v. United Parcel Service, Inc.*, 868 F.2d 36,

43 (2d Cir. 1989) (emphasis added) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554,

567, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976); *see also Feldleit v. Long Island Rail Rd.*, 723 F.

Supp. 892, 897 (E.D.N.Y. 1989).  The duty applies to enforcement of the terms of collective

bargaining agreements, including enforcement of arbitration awards.  *Carrion v. Enterprise*

*Ass'n, Metal Trades Branch Local Union*, 227 F.3d 29, 33–34 (2d Cir., 2000).

To prove the arbitrary standard, the union's conduct must be is "so far outside a wide

range of reasonableness that it is wholly irrational." *Marquez v. Screen Actors*, 525 U.S. 33, 44,

119 S. Ct. 292, 142 L. Ed. 2d 242 (1998).  A "union acts arbitrarily 'when it ignores or

perfunctorily presses a meritorious claim.'" *Scales v. N.Y. Hotel & Motel Trades Council, Local*

*6,* No. 21 Civ. 8142 (JPC), 2023 U.S. Dist. LEXIS 19741, at *20-21 (S.D.N.Y. Feb. 6, 2023)

(quoting *Thomas v. Little Flower for Rehab. & Nursing,* 793 F. Supp. 2d 544, 548 (E.D.N.Y.

2011); *Samuels v. Air Transp. Loc. 504,* 992 F.2d 12, 16 (2d Cir. 1993).

A plaintiff can also prevail on a breach of DFR claim by showing that the union acted in

bad faith or in a discriminatory manner.  *Spellacy v. Air Line Pilots Ass'n, Int'l,* 156 F.3d 120,

126 (2d Cir. 1998). A union acts in bad faith if it acts with an "improper intent, purpose or

motive." *Id*. (citing *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 531 (10th Cir. 1992). A union's

inaction is discriminatory when its conduct is "invidious" and "unrelated to legitimate union objectives." *See Vaughn v. Air Line Pilot Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir. 2010); *see also Patricia v. Delford Indus., Inc*., 660 F. Supp. 1429, 1432 (S.D.N.Y. 1987)

In the specific context of a union's refusal to press an employee's meritorious grievance, a plaintiff can demonstrate a DFR breach by showing that (1) the employee's grievance had merit, (2) the union was aware of the grievance and (3) that the union's actions in failing to process the grievance were arbitrary. *See, e.g., Young.,* 907 F.2d at 308. Given the prior Award determined in Mr. Muckey's favor after arbitration, we respectfully submit that there was no need for a grievance to be filed. Instead, Local 802 merely had to seek enforcement of the CBA by seeking enforcement of the Award and/or otherwise challenging the Suspension as not being based upon just cause.

### i.   Local 802's actions are at best arbitrary, and at worst, in bad faith

Local 802 had a duty to enforce the terms of the CBA. Since the grievance regarding the Philharmonic having just cause to discipline Mr. Muckey based upon the 2010 Allegation had already been arbitrated and determined, in Mr. Muckey's favor, Local 802 had a duty to represent Mr. Muckey in seeking enforcement of the Award and/or otherwise challenging the Suspension as not being based upon just cause. In the event of further noncompliance by the Philharmonic, Local 802 had a duty to commence the instant action that Mr. Muckey was compelled to file himself pursuant to Section 301 of the Labor Management Relations Act based upon the Philharmonic's breach of the collective bargaining agreement.

Local 802's acts of not opposing, and instead supporting, the Philharmonic's Suspension of Mr. Muckey based upon the 2010 Allegations are arbitrary and in bad faith, because the Suspension is based upon the same 2010 Allegations which Local 802 previously and

successfully challenged as not constituting just cause.  Compl., ¶ 14, 51; Muckey Decl., ¶ 17. Local 802 ignored a final and binding Arbitrator's determination in favor of adopting a politically correct position that wholly contradicts and repudiates the Award, which both Local 802 and the Philharmonic freely admit was final and binding.  Local 802's actions-- when no new facts have been adduced and the circumstances have not changed since the Arbitrator's determination (save for a rehashing of allegations he already ruled had not been proven), -- are so far outside the range of reasonableness as to constitute nothing short of arbitrariness.

Local 802's excuses for its inaction, as both detailed in its Memorandum of Law in Support of Motion to Dismiss of Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians (Doc. 23, at 9-14; "Union Mem.") and referenced in the Philharmonic's brief (Doc. 25, at 7), are pretextual and made in bad faith.  The assertion that Local 802 intends to await the results of the investigation *whether* there are any new allegations, before determining how to proceed, is belied by the fact that the so-called investigation is based on nothing other than the *Vulture* article which brought nothing new to the fore that hadn't already been adjudicated.

        ii.   <u>There is a causal connection between Local 802's breach and Mr. Muckey's injury.</u>

Local 802 had an absolute and unambiguous duty to demand that the Philharmonic terminate the Suspension of Mr. Muckey which was solely based upon the 2010 Allegations subject of an arbitration held and determined in his favor four years prior.  However, Local 802 refused to do so.

Because of Local 802's refusal to seek enforcement of the Award, Mr. Muckey remains subject to the Suspension. Mr. Muckey has been rendered *persona non grata* by the Suspension and publicly impugned by Ms. Cutler, even though he was absolved of liability by the Arbitrator.

And, because of Local 802's breach of the duty of fair representation, Mr. Muckey was forced to commence the underlying action on his own, without union representation, to seek redress.

## III.  MR. MUCKEY IS ENTITLED TO A DECLARATORY JUDGMENT, A PERMANENT INJUNCTION, ECONOMIC DAMAGES AND ATTORNEYS' FEES for HIS HYBRID CLAIMS

### A.  MR. MUCKEY IS ENTITLED TO A DECLARATORY JUDGMENT AGAINST THE PHILHARMONIC AND LOCAL 802

On the hybrid claims alleged in the first and second counts of the Complaint, Mr. Muckey is entitled to a declaratory judgment that the Philharmonic has breached the CBA and that Local 802 has breached its DFR.

Pursuant to Fed. R. Civ. P. 57, a declaratory judgment is appropriate, where as here, there is an actual case or controversy where either (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceedings. *See Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971) (citing *Broadview Chemical Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir. 1969)).

Here, declaratory relief is proper under the second prong (i.e. an award of declaratory judgment in Mr. Muckey's favor would terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding). Mr. Muckey has proven all the elements of a hybrid § 301/DFR breach claim based on the Philharmonic's refusal to comply with a final and binding arbitration award and Local 802's unjustifiable failure and deliberate disregard to enforce such an award. A judgment in the absence of declaratory relief in this matter would leave Mr. Muckey's employment in jeopardy every time the 2010 allegations resurfaced. A declaratory judgment would have the effect of resolve any questions that the Philharmonic cannot terminate Mr. Muckey based on the 2010 allegations. Therefore, this Court should award Mr. Muckey declaratory relief.

### B. MR. MUCKEY IS ENTITLED TO A PERMANENT INJUNCTION AGAINST THE PHILHARMONIC

Mr. Muckey is entitled to a permanent injunction enjoining the Suspension based upon the 2010 Allegations and compelling the Philharmonic to comply with the Award and restore him to all Philharmonic Activities. A party seeking a permanent injunction must demonstrate: (1) it will suffer irreparable harm absent injunctive relief; and (2) actual success on the merits. *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d. 2011); *Roku, Inc. v. Individuals, Corps., Ltd. Liab. Cos. P'ship & Unincorporated Ass'ns Identified,* No. 22-cv-2168 (PKC), 2023 U.S. Dist. LEXIS 3742, at *3-4 (S.D.N.Y. Jan. 9, 2023); *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 889 F. Supp. 2d 606, 611 (S.D.N.Y. 2012).

Mr. Muckey has clearly and unequivocally met the standard entitling him to a permanent injunction. First, Mr. Muckey has established that he is currently suffering and will continue to suffer irreparable harm in the absence of injunctive relief. Mr. Muckey has lost all opportunities to perform, enhance his career, rehearse and teach as a result of the Suspension. Mr. Muckey was enjoying a successful music career prior to the publication of the *Vulture* article and now he is barred from participating in all Philharmonic Activities, including participating in performances around the globe, attending meetings hosted by the Philharmonic and even entering David Geffen Hall. Plaintiff should be returned to his *status quo* (i.e. returned to the same position he was in prior to the unwanted Suspension).

Second, Mr. Muckey has established actual success on the merits on his hybrid claim as (1) the Philharmonic breached its CBA through its deliberate refusal to comply with a final and binding arbitration award, and (2) Local 802 has breached its DFR through its arbitrary and bad faith failure to enforce the Award due to the publication of the *Vulture* article that it knew was based on the same facts and allegations as the 2020 arbitration.

Accordingly, Mr. Muckey is entitled to a permanent injunction, enjoining the Philharmonic from suspending Mr. Muckey based on the 2010 Allegations.

### C. MR. MUCKEY IS ENTITLED TO ECONOMIC DAMAGES AND ATTORNEYS' FEES AGAINST THE PHILHARMONIC AND THE UNION

The Supreme Court of the United States has recognized, an employee who seeks to recover money damages in a hybrid § 301/DFR case must prove: "that the employer's action violated the terms of the collective-bargaining agreement, and that the union breached its duty of fair representation." *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *DelCostello*, 462 U.S. at 163-164 (1983). Courts within this Circuit grant money judgments against employers and unions, including attorneys' fees, when plaintiffs prevail in hybrid § 301/DFR breach where the employer refuses to comply with an arbitration award. *See e.g.*, *Drywall Tapers & Pointers of Greater N.Y. Loc. Union 1974 v. KPM Constr. Corp.*, 23 Civ. 7105 (PAE), 2024 U.S. Dist. LEXIS 57039, at *8 (S.D.N.Y. Mar. 26, 2024) ("'courts have routinely awarded attorneys['] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court.'") (quoting *Trs. of the NY.C. Dist. Council of Carpenters Pension Fund v. All. Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 U.S. Dist. LEXIS 174100, at *6 (S.D.N.Y. Dec. 11, 2013)); *Local 30, Int'l Union of Operating Eng'rs v. Wood Grp. Power Operations LLC*, No. CV 13-2499 (JS) (GRB), 2017 U.S. Dist. LEXIS 211666, at *12 (E.D.N.Y. Dec. 22, 2017) ("While 'Section 301 of the [LMRA], 29 U.S.C. § 185, does not provide for attorney's fees in actions to confirm and enforce an arbitrator's award. . . when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'") (quoting *Int'l Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)); *Bldg. Material Teamsters Local 282 v. A Star Bus. Servs. of N.Y. Corp.*, No. 11

CV 4646 (KAM), 2012 U.S. Dist. LEXIS 110359, at *24 (E.D.N.Y. May 30, 2012) (awarding plaintiff reasonable attorneys' fees against defendant employer for failing to comply with an arbitration award without justification).

As in the foregoing, the Philharmonic has suspended Mr. Muckey in disregard of the directives contained in the Award and Local 802 has breached its DFR by its refusal to challenge the suspension on Mr. Muckey's behalf. Therefore, both the Philharmonic and the Union should be liable for money damages, including attorneys' fees.

With respect for the apportionment of damages, the Supreme Court in *Vaca,* 386 U.S. at 197-98 stated the following:

> The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

Thus, while an employer is generally liable for loss of pay, the union is generally liable for attorneys' fees and loss of pay for the time the union has refused to process the grievance. *Id.*; *see also Byrne v. Buffalo Creek R. Co.*, No. CIV-75-271E, 1985 U.S. Dist. LEXIS 13330, at *12 (W.D.N.Y. Sept. 29, 1985)

Money judgments in hybrid section 301/DFR cases are calculated based on loss of pay plus interest from the date of the breach to the date at which the plaintiff would have obtained a determination on their claim had the union acted in instituting the suit. *See Byrne*, 1985 U.S. Dist. LEXIS 13330, at *7 (W.D.N.Y. Sept. 29, 1985). Generally, the employer is liable for loss of pay as a result of its breach of the CBA. *Id.* at *12.

A money judgment, including attorneys' fees, is appropriate, where, as here, Plaintiff has proven (1) the Philharmonic has violated the terms of the CBA by deliberately refusing to

comply with the arbitrator's final and binding award, and (2) Local 802 breached its DFR by arbitrarily rejecting enforcement of the arbitration award. Mr. Muckey is also entitled to attorneys' fees, as Local 802 breach of its DFR deprived Mr. Muckey of his due process rights in the enforcement of the arbitration award, and thus, a judgment rendered in Mr. Muckey's favor recognizes a breach that benefits Local 802 and its members. *See Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (awarding attorney's fees in a breach of DFR action where a DFR breach recognizes the deprivation of the plaintiff's due process rights by the union, and thus has a benefit to the union and its membership); *Clergeau v. Local 1181, Amalgamated Transit Union*, 162 Fed. Appx.32, 34-35 (2d Cir. 2005) ("Recovery of attorneys' fees has been allowed or considered where the litigation had the potential to confer a common benefit on the members of an ascertainable class or group… This is true in suits for breach of the duty of fair representation because 'it is apt to encourage unions to more zealously represent employees' interest.'").

## CONCLUSION

For the reasons set forth above, and in the accompanying Declaration of Jacqueline C. Gerrald dated July 29, 2024, and the exhibits annexed thereto, and the Declaration of Matthew Muckey dated July 29, 2024, and the exhibits annexed thereto, Mr. Muckey respectfully submits that partial summary judgment should be granted on the First and Second Counts of the Complaint.

Dated: New York, New York
     July 29, 2024

              McLAUGHLIN & STERN, LLP

              By:  /s/ Steven J. Hyman
                  Steven J. Hyman
                  Jacqueline C. Gerrald
                  Paul H. Levinson
                  260 Madison Avenue

New York, New York 10016
Telephone: (212) 448-1100
shyman@mclaughlinstern.com
jgerrald@mclaughlinstern.com
plevinson@mclaughlinstern.com
*Attorneys for Plaintiff*