UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
MATTHEW MUCKEY,

                Plaintiff,

   v.

ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS and THE PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC. a/k/a THE NEW YORK PHILHARMONIC ORCHESTRA,

                Defendants.
-------------------------------------------------------------------

1:24-cv-03348-AS

[rel. 1:24-cv-03356]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANT THE PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC.**

Defendant "The Philharmonic-Symphony Society of New York, Inc. a/k/a The New York Philharmonic Orchestra" ("Society") submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint filed by Plaintiff Matthew Muckey ("Muckey") under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## ARGUMENT

### A. MUCKEY'S HYBRID DUTY OF FAIR REPRESENTATION ("DFR") AND SECTION 301 CLAIMS SHOULD BE DISMISSED

For the reasons stated in Defendants' moving papers (ECF 23 and 25) and the reply submitted by Defendant American Federation of Musicians ("AFM"), Local 802 ("Union"), Muckey has not plausibly alleged that the Union breached its DFR, which is a threshold requirement for a hybrid claim under Section 301 of the Labor Management Relations Act ("Section 301"). Thus, Muckey's claims under Section 301 (Count II), and state-law breach of contract and *prima facie* tort (Counts III, V)—which are preempted by Section 301 (Section B, *infra*)—should be dismissed.

Even if Muckey's DFR claim were to survive, his Section 301 claim fails on the pleadings. Muckey alleges, without stating a plausible basis for relief, the Society violated (i) CBA Article VII, which provides that "disciplinary measures" may only be taken for "just cause," and (ii) CBA Article XV, which provides that arbitration awards are "final and binding." (ECF 44 at 12-13.)

*First*, Muckey fails to plausibly allege the Society violated the "just cause" provision of the CBA because his placement on paid leave is not equivalent to a "disciplinary measure" as that term is used in the CBA. Labor arbitrators interpreting CBAs routinely embrace that principle:

> …[T]he grievant's temporary removal from the workplace [is] not a suspension, as that word is universally understood in labor relations. A suspension is a disciplinary measure imposed after the employer concludes that the employee committed misconduct. A paid administrative leave places the employee in a non-disciplinary status, during which the employer investigates whether the misconduct occurred at all.

*Grievant 1 v. Respondent 1 (Health Servs.)*, 2021 WL 3197280 (AAA), at *7 (Ryan, Apr. 26, 2021). *See also* ECF 25 at 8 (citing cases). Muckey improperly seeks to rely on cases concerning statutory discrimination claims under Title VII of the Civil Rights Act to argue that paid leave is an "adverse employment action." (ECF 44 at 13-14.) But none of the cases[1] upon which Muckey relies concern whether paid leave constitutes "discipline" under a CBA, nor do those cases involve paid leaves pending investigations. Employer conduct that may constitute an adverse employment action under the distinct text of Title VII does not necessarily constitute discipline under a CBA. *See Muldrow v. City of St. Louis,* 601 U.S. 346, 347 (2024) ("The 'terms [or] conditions' phrase [in Title VII] … is not used 'in the narrow contractual sense'; it covers more than the 'economic or tangible.'") (citation omitted); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner"); *Lee v. City of Syracuse*, 446 F. App'x 319, 323 (2d Cir. 2011) (differentiating "materially adverse employment action" from "disciplinary actions" in jury instructions).

Muckey acknowledges that his paid leave, at most, means that his future at the Society is being reviewed, not that any definitive action has been taken. (ECF 44 at 6 (Muckey was told his "future at the New York Philharmonic was under further review) and at 13 (it is "highly questionable whether Mr. Muckey will ever be called back").) Until an actual decision has been made, Muckey faces only uncertainty, not actual discipline.

*Second,* Muckey fails to plausibly allege that the Society violated CBA Article XV's requirement to treat the 2020 Arbitration Award ("Award") as "final and binding." (ECF 44 at 13-

---

[1] *Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229 (S.D.N.Y. 2017), *aff'd,* 855 F. App'x. 40 (2d Cir. 2021), inaccurately cited by Muckey, involved a suspension *without* pay. (ECF 44 at 14.)

2

14.) As the Union agrees, the Society complied with the Award, which simply required the Society to reinstate Muckey to paid employment in 2020 and provide economic make-whole relief. (ECF 1 ¶¶ 14-16.) Nothing in the Award required the Society to schedule Muckey for rehearsals and performances regardless of subsequent events. Muckey does not allege otherwise, except to argue that he "had already been assigned to concerts and tours for the entire 2024-2025 season." (ECF 44 at 14.) The Award, however, did not prohibit the Society from deciding not to assign Muckey to work during the period of a future investigation. Muckey's Section 301 claim should be dismissed for failure to state a plausible claim for relief.

### B. MUCKEY'S STATE-LAW CONTRACT AND TORT CLAIMS ARE PREEMPTED

Muckey's state-law breach of contract claim with respect to his individual agreement (Count III) is completely preempted by Section 301 because the agreement is inextricably intertwined with the CBA and is thus a labor contract for purposes of Section 301 (ECF 25 at 10-13)—Muckey does not refute this in his Opposition. (ECF 44 at 16.) Muckey relies upon a single case, *Hernandez v. Conriv Realty Associates*, 116 F.3d 35 (2d Cir. 1997), for the proposition that not every dispute tangentially involving a provision of a collective bargaining agreement is preempted by Section 301. (ECF 25 at 11-12.) *Hernandez* is readily distinguishable, as that case involved a plaintiff seeking to enforce an oral promise against his employer for him to resign from the union and to work *outside* the scope of the CBA. 116 F.3d at 39-40. Here, Muckey alleges a breach of contract based on his individual agreement that is inextricably intertwined with the CBA and has been in effect while he continues to be represented by the Union and covered by the CBA.

Muckey's *prima facie* tort claim is also preempted by Section 301, as the crux of the claim is that the Society did not abide by the Award "without just cause or excuse" and that he suffered damages as a result. (ECF 1 ¶¶ 143-45, ECF 25 at 13-14.) Tort claims are preempted by Section 301 when the claim is completely premised on a duty allegedly owed to a plaintiff that derives

3

from a CBA, which is demonstrably the case here, where the alleged duty is based on a CBA provision requiring arbitration awards to be treated as "final and binding." (ECF 25 at 13-14 (citing cases).) Muckey cites one case in his merits discussion touching on preemption (ECF 44 at 18-19), *Ferrara v. Leticia, Inc.*, 2012 WL 4344164, at *6 (E.D.N.Y. Sept. 21, 2012), but the holding of that case only reinforces why preemption is appropriate here. In that case, the district court concluded the tort claim *was* preempted by Section 301 because—as here—the duty owed derived from a CBA, not "an independent duty protected by state law" apart from the CBA. *Id.*

### C. MUCKEY CANNOT STATE A VIABLE BREACH OF CONTRACT THEORY

Even if Muckey's agreement is enforceable based on his recollection he countersigned it (ECF 44 at 17), Muckey does not identify a specific term of this agreement he claims the Society breached—because none exists. Muckey's failure to plead a specific provision upon which the theory of breach is based is fatal to his breach of contract claim. (ECF 25 at 15.)

For the first time in his Opposition, Muckey claims the Society breached the "well-recognized implied obligation of good faith and fair dealing" under the agreement by placing him on paid leave pending investigations. (ECF 44 at 18.) This theory does not hold water here because the cases upon which Muckey relies involved express contractual obligations that could be exercised in the contracting party's "sole discretion." (ECF 44 at 18.) Courts imposed a good-faith requirement because failure to do so rendered the contract benefit "illusory" and deprived the "other party the fruits of the contract." (*Id.*) No express commitment exists in Muckey's agreement. (ECF 43-2.) The agreement requires—at most—that the Society continue to employ Muckey and pay him during its term, which the Society has done. Count III, therefore, should be dismissed.

### D. MUCKEY FAILS TO ALLEGE A PLAUSIBLE *PRIMA FACIE* TORT CLAIM

In addition to being preempted, Muckey has not established the elements of a *prima facie* tort claim. The Court should reject Muckey's impermissible attempt to use his *prima tort* claim to

4

reiterate his other theories of liability—namely, his allegation the Society placed him on paid leave "in contumacious disregard of the Award." (ECF 1 ¶ 143; ECF 25 at 15-16.).

Muckey sidesteps his Complaint allegations and asserts that his *prima facie* tort claim is based on a comment made by Gary Ginstling, the former President and CEO of the Society, that the details revealed in the article were "horrifying to [him] personally." (ECF 44 at 19.) Muckey fails to plausibly tie this comment to any purported harm in the Complaint. (ECF 1 ¶¶ 138-49.) *See Cartagena v. Sixth Ave. W. Assocs. LLC*, 2023 WL 6318170, at *2 (S.D.N.Y. Sept. 28, 2023).

Muckey also fails to plead with sufficient particularity the "special damages" he alleges to have suffered. (ECF 1 ¶ 146.) Muckey points to new factual assertions in his Opposition (ECF 44 at 20), but he cannot cure his insufficient Complaint in opposition to a motion to dismiss. *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010) ("the Court generally cannot consider affidavits and exhibits on a motion to dismiss.").

Finally, Muckey cannot establish the *prima facie* tort element that the conduct at issue is "otherwise lawful" where his Complaint alleges that the Society placed him on leave "in contumacious disregard of the Award" (ECF 1 ¶ 143), which also underlies is his Section 301 claim. Muckey is in the same "catch-22" as the party alleging a *prima facie* tort in *Ferrara,* 2012 WL 4344164, at *5—upon which *Muckey* relies (ECF 44 at 19)—where that party could not simultaneously allege that an unlawful breach of contract also formed the basis of an "otherwise lawful" *prima facie* tort.

## **CONCLUSION**

For these reasons and those set forth in Defendants' moving papers, the Society requests that the Court dismiss Counts I-III and V of the Complaint with prejudice (Muckey voluntarily withdrew Count VI against the Society, ECF 38), and dismiss the Society from this action.

5

Dated: New York, New York
September 18, 2024

Respectfully submitted,

/s/ *Howard Z. Robbins*
Howard Z. Robbins (Lead Trial Counsel)
Joshua S. Fox
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900
hrobbins@proskauer.com
jfox@proskauer.com

*Attorneys for Defendant The Philharmonic-Symphony Society of New York, Inc.*