UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

MATTHEW MUCKEY,

                        Plaintiff,

      v.

ASSOCIATED MUSICIANS OF GREATER NEW
YORK, LOCAL 802, AMERICAN FEDERATION
OF MUSICIANS and THE PHILHARMONIC-
SYMPHONY SOCIETY OF NEW YORK, INC.
a/k/a THE NEW YORK PHILHARMONIC
ORCHESTRA,

                        Defendants.

-------------------------------------------------------------------

1:24-cv-03348-AS

[rel. 1:24-cv-03356]

**MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF
MATTHEW MUCKEY'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF MATERIAL AND UNDISPUTED FACTS.................................................. 3

    A.    The Collective Bargaining Agreement Governs Muckey's Employment Terms ........... 3

    B.    Prior Investigation, Muckey's 2018 Termination and 2020 Reinstatement.................... 4

    C.    Current Investigations and Muckey's Placement on Paid Leave ................................... 5

    D.    Muckey's Request that the Union File a Grievance......................................................... 6

    E.    The Instant Action and Defendants' Fully-Briefed Dispositive Motions ...................... 7

ARGUMENT .......................................................................................................................... 7

I.     MUCKEY'S PARTIAL SUMMARY JUDGMENT MOTION AS TO HIS HYBRID DFR /
      SECTION 301 CLAIMS SHOULD BE DENIED................................................................. 7

    A.    Legal Standard................................................................................................................ 7

    B.    The MPSJ Should Be Denied as Moot Based on Defendants' Motions to Dismiss the
        Complaint...................................................................................................................... 8

    C.    Muckey's MPSJ Should Be Denied on the Merits and the Court Should Find in Favor
        of Defendants as a Matter of Law.............................................................................. 9

II.    MUCKEY'S PRAYERS FOR RELIEF SHOULD BE DENIED. ...................................... 15

    A.    Muckey Cannot Show "Actual Success on the Merits" as to his Hybrid DFR/Section
        301 Claims to Warrant the Prayers for Relief He Seeks............................................... 15

    B.    A Permanent Injunction Is Barred by the Norris-LaGuardia Act. ................................ 16

    C.    Muckey Cannot Show Irreparable Harm to Warrant a Permanent Injunction. .............. 19

    D.    Muckey Is Not Entitled to Economic Damages and Attorney's Fees........................... 22

CONCLUSION...................................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  430 F. Supp. 2d 222 (S.D.N.Y. 2006), *aff'd*, 651 F.3d 218 (2d Cir. 2011),
  *aff'd*, 570 U.S. 205 (2013) ......................................................................................16

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987)..................................................................................................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................................7

*Avail 1 LLC v. Adovasi*o,
  2020 WL 4475271 (S.D.N.Y. Aug. 3, 2020)..............................................................8

*Boys Mkts., Inc. v. Retail Clerks Union, Loc. 770*,
  398 U.S. 235 (1970)........................................................................................17, 18, 19

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999)......................................................................................20

*Bright-Asante v. Saks & Co.*,
  242 F. Supp. 3d 229 (S.D.N.Y. 2017), *aff'd,* 855 F. App'x 40 (2d Cir. 2021)......................13

*Brown v. City of Syracuse*,
  673 F.3d 141 (2d Cir. 2012)......................................................................................15

*Burlington N. R.R. Co. v. Brotherhood of Maint. of Way Emps.*,
  481 U.S. 429 (1987)...................................................................................................17

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985).................................................................................21, 22

*Commc'ns Workers of Am. v. Verizon N.Y. Inc.*,
  2002 WL 31496221 (S.D.N.Y. Nov. 8, 2002)........................................................18

*Cromwell v. United Steel Workers of Am.*,
  2011 WL 13202676 (D.V.I. Sept. 26, 2011) ...........................................................23

*Deltondo v. Sch. Dist. of Pittsburgh*,
  2023 WL 2876812 (W.D. Pa. Jan. 30, 2023), *rep. & recommendation*
  *adopted*, 2023 WL 2534817 (W.D. Pa. Mar. 16, 2023) ........................................10

*E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*,
  2023 WL 6386821 (S.D.N.Y. Sept. 28, 2023)...........................................................3

*Ex Parte Collett*,
    337 U.S. 55 (1949)...................................................................................................20

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*,
    1998 WL 567900 (S.D.N.Y. Sept. 3, 1998)...............................................................8

*Flexible Techs., Inc. v. World Tubing Corp.*,
    910 F. Supp. 109 (E.D.N.Y. 1996) ....................................................................21, 22

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) (per curiam)..................................................................20

*Grievant 1 v. Respondent 1 (Health Servs.)*,
    2021 WL 3197280 (AAA), (Ryan, Apr. 26, 2021).................................................10

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    286 F. Supp. 2d 284 (S.D.N.Y. 2003)......................................................................19

*Haynes v. Maldonado*,
    2024 U.S. Dist. LEXIS 42841 (S.D.N.Y. Mar. 11, 2024) ......................................20

*Holcomb v. Iona Coll.*,
    521 F.3d 130 (2d Cir. 2008)......................................................................................7

*Holt v. Cont'l Grp., Inc.*,
    708 F.2d 87 (2d Cir. 1983)......................................................................................20

*In re United Gov't*,
    131 Lab. Arb. Rep. (BNA) 1209 (Bonney, Apr. 3, 2013) ......................................14

*In re W.E. Caldwell Co.*,
    28 Lab. Arb Rep. (BNA) 434 (Kesselman, Apr. 5, 1957) ......................................14

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
    457 U.S. 702 (1982).................................................................................................17

*Jaramillo v. Weyerhaeuser Co.*,
    536 F.3d 140 (2d Cir. 2008)......................................................................................8

*Jian Yang Lin v. Shanghai City Corp*,
    950 F.3d 46 (2d Cir. 2020)........................................................................................8

*Klein v. City of New York*,
    2011 WL 5248169 (S.D.N.Y. Oct. 28, 2011), *rep. & recommendation
    adopted*, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012)............................................15

*Le Cordon Bleu S.a.r.L. v. BPC Publ'g Ltd.*,
    327 F. Supp. 267 (S.D.N.Y. 1971) ..........................................................................22

*Loc. 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*,
965 F.2d 1224 (2d Cir 1982)............................................................................17

*Lowe v. City of Shelton*,
128 F. App'x 813 (2d Cir. 2005) ........................................................................7

*Maryland Cas. Co. v. Rosen*,
445 F.2d 1012 (2d Cir. 1971)............................................................................16

*Mordukhaev v. Daus*,
457 F. App'x 16 (2d Cir. 2012) ..........................................................................9

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)............................................................................................13

*N.Y. State Nurses Ass'n v. Montefiore Med. Ctr.*,
457 F. Supp. 3d 430 (S.D.N.Y. 2020)................................................................18

*Nat'l Football League Mgmt. Council v. N'l Football League Players Ass'n*,
296 F. Supp. 3d 614 (S.D.N.Y. 2017)................................................................21

*Nat'l Football League Players Ass'n v. Nat'l Football League*,
724 F. Supp. 1027 (D.D.C. 1989)......................................................................21

*Niagara Hooker Emps. Union v. Occidental Chem. Corp.*,
935 F.2d 1370 (2d Cir. 1991)............................................................................18

*Ognibene v. Parkes*,
671 F.3d 174 (2d Cir. 2011)........................................................................15, 19

*Pardovani v. Crown Bldg. Main. Co.*,
2020 WL 2555280 (S.D.N.Y. May 20, 2020) ....................................................13

*Piercy v. Fed. Rsrv. Bank of N.Y.*,
2003 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 10, 2003)......................................20

*Programmed Tax Sys., Inc. v. Raytheon Co.*,
419 F. Supp. 1251 (S.D.N.Y. 1976)..................................................................22

*Regan v. Conway*,
2010 U.S. Dist. LEXIS 165283 (E.D.N.Y. May 10, 2020) ................................20

*Risher v. J. Diamon Grp., Inc.*,
2018 WL 3539832 (D.N.M. May 11, 2018) ......................................................10

*Rovai-Pickett v. HMS Host, Inc.*,
2010 WL 289295 (N.D. Cal. Jan. 15, 2010), *aff'd*, 446 F. App'x 9 (9th Cir.
2011) ..................................................................................................................22

*Ryers Creek Corp. v. MacMartin*,
    1989 WL 231304 (W.D.N.Y. Apr. 20, 1989) .........................................................15

*Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*,
    401 F.3d 28 (2d Cir. 2005).................................................................................8

*Sethi v. Narod*,
    12 F. Supp. 3d 505 (E.D.N.Y. 2014) ...................................................................14

*Soto v. City of Lackawanna*,
    1986 WL 185 (W.D.N.Y. Apr. 11, 1986) ..............................................................15

*Tamarin v. Adam Caterers, Inc.*,
    13 F.3d 51 (2d Cir. 1993)...................................................................................23

*Tomney v. Int'l Ctr. for Disabled*,
    357 F. Supp. 2d 721 (S.D.N.Y. 2005)....................................................................8

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
    109 F.3d 105 (2d Cir. 1997)...............................................................................23

*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989)...............................................................................21

*White v. White Rose Food*,
    237 F.3d 174 (2d Cir. 2001)...............................................................................16

*Wojnarowicz v. Am. Fam. Ass'n*,
    745 F. Supp. 130 (S.D.N.Y. 1990) ......................................................................19

**STATUTES AND RULES**

29 U.S.C. ch. 6, Norris-LaGuardia Act...........................................................3, 16, 17, 19

29 U.S.C. § 101 ...............................................................................................17

29 U.S.C. § 107 ...............................................................................................19

29 U.S.C. §§ 108 .............................................................................................19

29 U.S.C. §§ 109 .............................................................................................19

29 U.S.C. § 185, Labor-Management Relations Act § 301 .................................. passim

42 U.S.C. § 2000e-5, Civil Rights Act of 1964 tit. VII ..............................................13

FED. R. CIV. P. 56 ...........................................................................................7, 8

**OTHER AUTHORITIES**

43A C.J.S. Injunctions § 2 (2009)......................................................................................20

## PRELIMINARY STATEMENT

In his Motion for Partial Summary Judgment ("MPSJ"), Plaintiff Matthew Muckey ("Muckey") asks this Court to conclude as a matter of law that Defendant American Federation of Musicians, Local 802 (the "Union") breached its duty of fair representation ("DFR") to him and that Defendant "The Philharmonic-Symphony Society of New York, Inc. a/k/a The New York Philharmonic Orchestra" (the "Society") breached the collective bargaining agreement ("CBA") between the Society and the Union under Section 301 of the Labor-Management Relations Act ("LMRA") ("Section 301"). The crux of Muckey's argument is that his placement on *paid* leave pending investigations into the Society's culture and alleged misconduct by its orchestra members constitutes disciplinary action that does not meet the CBA's "just cause" standard, and that his paid leave also violates the 2020 Arbitration Award (the "Award") that reinstated Muckey to paid employment after his 2018 termination.

Muckey's MPSJ should be denied because Defendants have demonstrated in their now fully-briefed Motions to Dismiss that, even construing all factual allegations in Muckey's favor, he has failed to plausibly state a claim for relief as to either prong of his hybrid DFR/Section 301 claims. The Court should dismiss the Complaint in its entirety with prejudice and deny the MPSJ as moot. As to the DFR claim (a prerequisite to a Section 301 violation against the Society), the Union has demonstrated that there is no basis to second-guess its decision to await the outcome of the ongoing investigations to determine whether to take action under the CBA on Muckey's behalf. Being placed on paid leave pending investigations is commonly understood in the realm of labor relations (and held by labor arbitrators) to be *non-disciplinary*. Muckey's misplaced reliance on statutory discrimination cases is ineffectual because the Society has not disciplined Muckey under the terms of the CBA. As routinely occurs in employment settings, Muckey was placed on administrative leave, *with pay*, until the conclusion of the investigations—at which time, the

Society will determine what action, if any, to take. Both the Society and Union agree that neither the Award nor any CBA provision compels the Society to have Muckey play in any rehearsal or performance, and thus no breach of either can be found. Accordingly, Muckey cannot satisfy the elements of his hybrid claims, which should be dismissed, and his motion denied.

Muckey uses his MPSJ to introduce evidence outside the pleadings. Even if the Court considers this additional evidence, the only conclusion that can be reached is that the hybrid claims should be dismissed as a matter of law, and summary judgment should be granted in favor of Defendants. The undisputed record evidence shows that Muckey was not suspended or otherwise disciplined in violation of the CBA. In fact, one of the documents Muckey provides clearly states that he was simply being placed on paid leave pending investigations.

Contrary to Muckey's claim in the MPSJ, he was not "suspended" based on the "2010 Allegations" involving allegations of sexual misconduct by Muckey toward former orchestra member Cara Kizer that were considered in the Award, and that were discussed in a *Vulture* article published in April 2024 (the "Article"). The Society initially placed Muckey on paid leave due to the difficult workplace environment among fellow orchestra members that resulted from the publication of the Article (not *based on* the 2010 Allegations). The paid leave continued because, among other reasons, the Society initiated two investigations after it learned that there may be additional allegations of misconduct by Muckey that should be investigated. Far from "double jeopardy," as Muckey contends, the Society acted reasonably in light of these new facts, and continued Muckey's paid leave while it had two comprehensive investigations conducted, to ensure that the entirety of the orchestra and other Society employees could work in a safe and harmonious environment.

In addition to being unable to prove that the Society breached the CBA or the Award, Muckey's request for injunctive relief is barred by the Norris-LaGuardia Act, which prohibits courts from issuing injunctions in labor disputes such as the instant case. Muckey also cannot demonstrate irreparable harm to warrant the drastic remedy of injunctive relief (which Muckey has waited months to seek).

Accordingly, the Society respectfully requests that the Court grant the Society's Motion to Dismiss and deny the MPSJ as moot, and alternatively, deny the MPSJ and grant summary judgment in Defendants' favor.

## STATEMENT OF MATERIAL AND UNDISPUTED FACTS

Many of the "facts" Muckey cites as "evidence" in his Local Rule 56.1 Statement (ECF 50 at ¶¶ 1-12, 14-28, 31, 33-37, 40-42) comprise Complaint allegations that are inadmissible and cannot be considered at summary judgment. *See, e.g., E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, 2023 WL 6386821, at *1 n.1 (S.D.N.Y. Sept. 28, 2023) (collecting cases holding that allegations in an unverified complaint should not be considered at summary judgment). Muckey also focuses on irrelevant and immaterial facts for purposes of the claims before the Court. (ECF 50 at ¶¶ 4-9, 15-19, 22-24, 26-39, 41-42.) The material, relevant and undisputed facts are as follows.

### A.  The Collective Bargaining Agreement Governs Muckey's Employment Terms

During Muckey's employment with the Society as an orchestra member, his employment terms have been governed by the CBA, which is in effect through September 20, 2024. (*See* Declaration of Howard Z. Robbins ("Robbins Decl."), Ex. A, Art. II.) Among other things, the CBA establishes that orchestra members such as Muckey shall be "employed" by the Society for "fifty-two (52) weeks in each year of the term of the Agreement[.]" (*Id.*, Art. III.) The CBA gives the Society broad discretion in "schedul[ing] whatever activities of the Orchestra it may determine,

both in the United States and abroad . . ." (*Id.*) Included within these 52 weeks of employment are nine weeks of vacation, as well as "relief weeks" and paid leave. (*Id.*) The CBA also establishes a maximum number of performances and rehearsals that may be required during a "basic work week." (*Id.*) There is no minimum number of performances or rehearsals to be assigned to each musician. (Robbins Decl. Ex. A, generally.) The CBA also provides that the "Society may take disciplinary measures . . . for other just cause." (*Id.*, Art. VII(E).) The CBA contains a grievance-arbitration procedure to resolve disputes; either the Union or the Society may submit the dispute to an Arbitrator whose decision shall be "final and binding." (*Id.*, Art. XV(B).)

### B.  Prior Investigation, Muckey's 2018 Termination and 2020 Reinstatement

In 2018, the Society was alerted to allegations of sexual misconduct by Muckey in 2010 with Ms. Kizer, which Muckey refers to as the "2010 Allegations." (ECF 47 ¶¶ 6, 8.) The Society engaged Judge Barbara Jones to investigate the matter; she conducted "22 interviews, including those of the grievants and the complainants, as well as review[ed] extensive documentary evidence during the course of her investigation that spanned some six months in early 2018." (Robbins Decl. ¶ 3.) Based on Judge Jones's investigation and her report, the Society terminated Muckey based on its conclusion that he "committed multiple sexual assaults against two former probationary musicians of the Philharmonic, Cara Kizer, in 2010, and [another female musician], in 2008."[1] (*Id.* ¶ 4.)

The Union grieved Muckey's and Wang's terminations and submitted the matter to arbitration before Arbitrator Richard I. Bloch. (ECF 47 ¶¶ 11, 15.) After a confidential hearing in 2019, Arbitrator Bloch issued his Award in April 2020, finding that "[t]he charges against

---

[1] The Society terminated another Society musician, Liang Wang ("Wang"), based on the "report that… a former Philharmonic musician, had reported being raped by Mr. Wang in 2006." (Robbins Decl. ¶ 4.)

[Muckey] and [Wang] have not been supported by clear and convincing evidence." (Robbins Decl. ¶ 5.) Arbitrator Bloch stated further that "[n]othing in this opinion should be read as concluding that all doubt has been removed concerning the actions of the grievants in this matter" and held that the Society failed to meet its "burden to provide evidence that clearly and convincingly supports the charges" and sustained the grievances. (*Id.*) Arbitrator Bloch ordered Muckey and Wang "to be reinstated and made whole for all contractual benefits lost, including full back pay and seniority. Requests for additional remedies are denied." (*Id.*) On or about June 4, 2020, the Society complied with the Award. (ECF 47 ¶ 19.)

### C. Current Investigations and Muckey's Placement on Paid Leave

On April 12, 2024, *Vulture* magazine published the Article, which described allegations of sexual misconduct involving Ms. Kizer and the terminations of Muckey and Wang in 2018. (ECF 47-7.) The Article did not address allegations of misconduct concerning any other orchestra member. (*Id.*) On April 13, 2024, the Society advised Muckey's counsel that Muckey "should not attend Philharmonic rehearsals or performances until further notice." (ECF 46-2.) On or about April 16, 2024, counsel for the Society spoke with counsel for Muckey via telephone, reiterating that Muckey would remain on paid leave until further notice and that there was a difficult workplace environment at the Society in light of the Article. (Robbins Decl. ¶ 6; *see also* ECF 46-6 (Email from Muckey's counsel, noting that Muckey was "removed…from all Philharmonic rehearsals and performances 'until further notice'").)

On or about April 17, 2024, the Society retained an investigator, Tracey Levy, to consider allegations of workplace misconduct involving the Society's orchestra members because the Society became aware, shortly following publication of the Article on April 12, 2024, that there

were individuals who wanted to share additional allegations of misconduct by Muckey and Wang that were not discussed in the Article. (Robbins Decl. ¶ 7.)

On April 19, 2024, the Society relayed to the orchestra members that it had retained Ms. Levy to conduct this investigation, advising orchestra members that they could report allegations of "sexual harassment, violence and/or abuse" to her. (ECF 47-10.) The Society also commenced a separate "independent investigation into the culture of the New York Philharmonic in recent years" conducted by Katya Jestin, and noted to the Society's community on April 18, 2024, that "[f]or the time being" Muckey and Wang "are not being assigned to any Philharmonic activity as [the Society] work[s] through this process, and a decision about their future with the New York Philharmonic will be made in due course." (ECF 47-9 at 1.)

On May 21, 2024, Muckey's counsel was advised that Muckey "remains on paid leave pending the completion of the Philharmonic's ongoing investigation into allegations of sexual harassment or otherwise inappropriate conduct by musicians or other current employees of the Philharmonic." (ECF 46-4.) The investigation conducted by Ms. Levy remains ongoing, but it is the Society's understanding that it is near completion. (Robbins Decl. ¶ 8.) On August 8, 2024, Ms. Levy conducted her initial interview of Muckey, and she provided Muckey (at his request) an opportunity to produce additional evidence for her consideration; a second interview was held on September 3, 2024. (*Id.*)

### D. Muckey's Request that the Union File a Grievance

On or about April 18 and 19, 2024, Muckey asked the Union to file a grievance regarding his placement on paid leave. (ECF 46-6.) The Union advised Muckey that his placement on paid leave did not violate the Award, which "certainly does not give Mr. Muckey a guarantee of lifetime employment regardless of whether new allegations of wrongdoing or different circumstances

arise" and the CBA "does not guarantee that members attend any or all scheduled performances and rehearsals." (ECF 46-8.) The Union acknowledged that Muckey "is receiving full pay and benefits." (*Id.*) The Union also noted that "the NY Philharmonic engaged an investigator to determine whether there were any new or different allegations of sexual misconduct by any members of the Orchestra, including . . . [Mr. Muckey]," and "Local 802 has determined to await the outcome of that investigation before determining how to proceed here." (*Id.*)

**E.  The Instant Action and Defendants' Fully-Briefed Dispositive Motions**

On May 1, 2024, Muckey commenced this action. (ECF 1.) On June 5, 2024, the Society and the Union filed Motions to Dismiss the Complaint in their entirety with prejudice. (ECF 21-25.) On July 22, 2024, the Court stayed discovery until resolution of the pending and anticipated motions pursuant to the parties' joint request. (ECF 35.) On July 29, 2024, Muckey submitted his opposition to Defendants' Motions to Dismiss, and filed the instant MPSJ. (ECF 41, 44, 49.) Defendants' Motions to Dismiss are now fully briefed.

## <u>ARGUMENT</u>

**I.    MUCKEY'S PARTIAL SUMMARY JUDGMENT MOTION AS TO HIS HYBRID DFR / SECTION 301 CLAIMS SHOULD BE DENIED**

### A.  <u>Legal Standard</u>

"A grant of summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Lowe v. City of Shelton,* 128 F. App'x 813, 814 (2d Cir. 2005) (*citing* FED. R. CIV. P. 56(c)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the Court must

view all facts "in the light most favorable to [the non-moving party's] case," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

Even in the absence of a formal cross-motion, a court may enter summary judgment for the non-moving party where the admissible evidence establishes that there is no issue of genuine issue of material fact and the nonmovant is entitled to judgment in their favor. FED. R. CIV. P. 56(f)(1); *see also Jian Yang Lin v. Shanghai City Corp,* 950 F.3d 46 (2d Cir. 2020) (affirming district court's decision to treat defendants' opposition to plaintiffs' motion for conditional collective certification as a cross-motion for summary judgment and to grant that motion); *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005) ("District courts have the discretion to grant summary judgment *sua sponte*, even without notice in certain circumstances."); *Avail 1 LLC v. Adovasi*o, 2020 WL 4475271, at *1 n.1 (S.D.N.Y. Aug. 3, 2020) (treating defendant's opposition to plaintiff's motion for summary judgment as a cross-motion for summary judgment and granting it); *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 1998 WL 567900, at *1 (S.D.N.Y. Sept. 3, 1998) ("A district court may enter summary judgment *sua sponte* if it concludes that the non-movant is entitled to summary judgment as a matter of law").

B. <u>The MPSJ Should Be Denied as Moot Based on Defendants' Motions to Dismiss the Complaint.</u>

Muckey argues in his MPSJ that the Court should find, as a matter of law, that the Union breached its DFR with respect to him, which is a threshold requirement to proceed with a hybrid DFR/Section 301 claim. *See, e.g., Tomney v. Int'l Ctr. for Disabled*, 357 F. Supp. 2d 721, 738

(S.D.N.Y. 2005) ("It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" (citation omitted)). For the reasons stated in Defendants' fully-briefed Motions to Dismiss the Complaint, Muckey's claim that the Union breached its DFR fails at the pleading stage and should be dismissed. (ECF 23 and 25.) This conclusion compels the Court to also dismiss the concomitant Section 301 claim against the Society, and then to deny the MPSJ as moot. Even if the DFR claim survives dismissal, for the reasons stated in the Union's Opposition to the MPSJ (incorporated herein), Muckey cannot establish as a matter of law that the Union breached its DFR and, therefore, the MPSJ should be denied. Indeed, as explained in the Union's Opposition to the MPSJ, the undisputed facts warrant a summary judgment finding in Defendants' favor as to Muckey's DFR claim.

If the Court finds that Muckey has established a DFR breach as a matter of law, which he cannot do, the MPSJ still should be denied with respect to the Section 301 claim. For the reasons stated in Defendants' Motions to Dismiss, Muckey has failed to plausibly state a claim for relief that the Society breached *any* provision of the CBA or the Award, even construing the factual allegations in the pleadings as true. Muckey's Section 301 claim should be dismissed and the MPSJ denied as moot. *See, e.g., Mordukhaev v. Daus*, 457 F. App'x 16, 18 n.2, 21 (2d Cir. 2012) (affirming district court's decision granting defendants' motion to dismiss and denying plaintiffs' pending motion for summary judgment as moot).

      C.  <u>Muckey's MPSJ Should Be Denied on the Merits and the Court Should Find in Favor of Defendants as a Matter of Law.</u>

If the Court declines to grant Defendants' Motion to Dismiss, based on the undisputed evidence, Defendants—not Muckey—are entitled to judgment as a matter of law with respect to

Muckey's hybrid claims. Muckey premises his claim that the Society breached the CBA in violation of Section 301 on three assertions: (i) the Award is "final and binding"; (ii) the Society breached CBA Article XV by "suspending" Muckey in violation of the Award; and (iii) the Society breached CBA Article VII by "suspending" Muckey without "just cause." (ECF 49 at 13-14.) The many pages Muckey devotes in his Local Rule 56.1 Statement (ECF 50) to the Society's awareness of, and investigation into, the "2010 Allegations," Muckey's denial of the alleged sexual misconduct related thereto, and his characterization of the Award, are all immaterial because they do not bear on the current claims.

Contrary to the conclusory assertion advanced in his MPSJ, Muckey's placement on paid leave pending investigations does not constitute a "disciplinary measure" susceptible to "just cause" review under the CBA (the latter of which Muckey fails to even allege in the Complaint, *see* ECF 1), nor does it violate the Award in any respect. Paid leave pending investigation is not disciplinary in nature and does not constitute termination, as those terms are generally understood in labor relations (and by labor arbitrators) for the purposes of interpreting a CBA. (ECF 25 at 8-9 (citing cases).) *See also Grievant 1 v. Respondent 1 (Health Servs.)*, 2021 WL 3197280 (AAA), at *7 (Ryan, Apr. 26, 2021) (unlike "[a] suspension [which] is a disciplinary measure…[a] paid administrative leave places the employee in a non-disciplinary status, during which the employer investigates whether the misconduct occurred at all"); *Risher v. J. Diamon Grp., Inc*., 2018 WL 3539832, at *4 (D.N.M. May 11, 2018) (unpaid administrative leave was not "disciplinary action" under suspension provision of CBA); *Deltondo v. Sch. Dist. of Pittsburgh*, 2023 WL 2876812, at *9 (W.D. Pa. Jan. 30, 2023) (claims related to paid suspension dismissed in part because plaintiff failed to identify any provision of the CBA stating that a suspension with pay constitutes a "disciplinary action" under the CBA), *rep. & recommendation adopted*, 2023 WL 2534817 (W.D.

Pa. Mar. 16, 2023). The Union agrees with this conclusion, and Muckey provides no basis to ignore these well-settled principles. (*See* ECF 46-8 (Union counsel noting that "the collective bargaining agreement mandates that members of the Orchestra be 'employed' for 52 weeks each year; it does not guarantee that members attend any or all scheduled performances and rehearsals. Mr. Muckey is receiving full pay and benefits.'").)

In addition, Muckey cannot establish, as a matter of law, that the Society violated CBA Article XV by failing to treat the Award as "final and binding." (ECF 44 at 13-14.) While there is no dispute that the Award is "final and binding," the Society complied with the Award, which required the Society to reinstate Muckey in 2020 and to provide make-whole relief (including full back pay and seniority)—the Award explicitly stated that the grievants' "[r]equests for additional remedies are denied." (ECF 50 ¶ 22; Robbins Decl. ¶ 5.) Nothing in the Award required the Society to schedule Muckey for rehearsals and performances during the remainder of his employment, regardless of subsequent events—and the Union agrees with this conclusion (ECF 46-8 (Union counsel noting that "[t]he New York Philharmonic fully complied with the award more than four years ago. The award certainly does not give Mr. Muckey a guarantee of lifetime employment regardless of whether new allegations of wrongdoing or different circumstances arise.").) Muckey has not shown (because he cannot) that the Award provides otherwise. Indeed, the Court should find as a matter of law that the Award does not so provide based on the undisputed evidence.

Muckey attempts to support his Section 301 claim in his MPSJ entirely on his conclusory assertion (without any supporting evidence) that "Defendants do not dispute, nor could they, that the Suspension (which there [*sic*] refer to as 'paid leave') is solely predicated upon the 2010 Allegations published in *Vulture*." (ECF 49 at 14.) Muckey argues, based on this unsupported assertion, that the Society breached the CBA's "just cause" requirement and failed to treat the

Award (which concerned Muckey's prior termination), as "final and binding." (*Id.*) This bald claim, however, is belied by the undisputed facts, including documents that *Muckey himself submitted* to support his MPSJ. (ECF 46-2 to 46-5.)

There is no basis for the Court to find, as a matter of law, that the Society imposed a disciplinary "suspension" on Muckey, or any other discipline. Nowhere in any of the documents Muckey submits with his MPSJ did the Society state that it was *suspending* him or that he was placed on *suspension*—in fact, they confirm the Society's position that he was placed on paid leave pending investigation. (*See* ECF 46-4 (Email on May 21, 2024, that "Mr. Muckey, remains on *paid leave pending the completion of the Philharmonic's ongoing investigation* into allegations of sexual harassment or otherwise inappropriate conduct by musicians or other current employees of the Philharmonic.") (emphasis added).)

Muckey's claim that the Society placed Muckey on paid leave pending investigation (which he mischaracterizes as a "suspension") solely on "the 2010 Allegations published in *Vulture*" (ECF 49 at 14) is also not supported by the undisputed evidence—Muckey does not even attempt to support this conclusion in his Local Rule 56.1 Statement. (ECF 50.) Muckey was not placed on paid leave *due to the 2010 Allegations*. The undisputed facts are that the Society placed Muckey on paid leave immediately after publication of the Article "for the time being," as counsel for the Society communicated directly to counsel for Muckey in the days after publication of the Article that the Society was faced with a difficult workplace environment in light of the Article's publication. (Robbins Decl. ¶ 6.) Muckey's paid leave continued because, among other reasons, shortly following publication of the Article, the Society received reports of allegations regarding additional incidents of alleged misconduct involving Muckey (and Wang) that were not discussed in the Article. (*Id.* ¶ 7.) These circumstances, among others, led the Society to initiate

12

investigations regarding allegations of workplace misconduct involving orchestra members and the general workplace culture, which warranted continuing Muckey's (and Wang's) paid leave pending completion of those investigations. (*Id.*; *see also* ECF 46-4, 46-8, 47-9, 47-10.) Muckey cannot present any evidence disputing these facts. Muckey has not shown that he was placed on paid leave *based on the 2010 Allegations* or that he has been disciplined at all, let alone twice for the same conduct at issue in the Award.

Muckey next argues he was subjected to "actionable employment discipline" (ECF 49 at 15) based on being removed from the performance schedule, even though he was paid. In support, he cites cases concerning claims under Title VII of the Civil Rights Act of 1964, where courts have held that paid leave can be an adverse employment action. (ECF 49 at 15-16.) Whether conduct reaches the level of an adverse employment action under Title VII, based on its distinct language and context, does not determine whether paid leave constitutes discipline under a CBA, and the cases upon which Muckey relies are readily distinguishable from the contractual context at issue here. *See Muldrow v. City of St. Louis,* 601 U.S. 346, 347 (2024) (finding job transfer constituted adverse employment action under Title VII, given the permanent impact on terms and conditions of employment, but noting that "[t]he 'terms [or] conditions' phrase [in Title VII] … *is not used 'in the narrow contractual sense*'; it covers more than the 'economic or tangible'" (second alteration in original) (emphasis added) (citation omitted)); *Pardovani v. Crown Bldg. Main. Co.*, 2020 WL 2555280, at *5 (S.D.N.Y. May 20, 2020) (finding paid suspension was an adverse employment action under discrimination laws because there was no reasonably disciplinary basis for the suspension pending *his own* complaint); *Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 243-44 (S.D.N.Y. 2017), *aff'd,* 855 F. App'x 40 (2d Cir. 2021) (finding suspension without pay was an adverse action because plaintiff was placed on indefinite suspension without pay for ten

13

months)[2]; *Sethi v. Narod*, 12 F. Supp. 3d 505, 524 (E.D.N.Y. 2014) (assuming, for the purposes of summary judgment, that plaintiff's suspension with pay was an adverse action precisely because there was a factual dispute as to the reason for the suspension, so the court could not determine whether the defendant applied reasonable procedures).

Although the Society vigorously disputes Muckey's characterization of his placement on paid leave as disciplinary in any respect, if the Court finds otherwise, the Society submits that it was within its contractual rights to do so under these circumstances and is entitled to judgment as a matter of law based on the undisputed record, due to the reasonableness of its action based on the impact of the Article on the workplace, the new allegations against Muckey (and Wang), and the subsequent investigations the Society appropriately initiated. *See, e.g., In re United Gov't*, 131 Lab. Arb. Rep. (BNA) 1209, 1221 (Bonney, Apr. 3, 2013) (under "just cause" standard, employers may discipline employees when there is a nexus showing that the employee's conduct adversely affected the employer's operations or important interest.); *In re W.E. Caldwell Co*., 28 Lab. Arb Rep. (BNA) 434, 436-37 (Kesselman, Apr. 5, 1957) (discipline may be imposed when an employee's conduct harms the employer's business or leads other employees to refuse to work with the offender).

Muckey also disputes that he was placed on leave *with* pay, because he claims he was not "*fully* compensated" (ECF 49 at 15 (emphasis in original)), due to alleged compensation Muckey claims to be owed pursuant to two separate contracts. (ECF 50 ¶ 23.) This is a red herring because Muckey has not pointed to an alleged violation of the CBA for purposes of Section 301, as he concedes he received his base pay (ECF 49 at 15), and there is no evidence whatsoever that Muckey exhausted the grievance procedure with the Union to seek additional compensation

---

[2] Muckey incorrectly states in his brief that this case involved a paid suspension. (ECF 49 at 16.)

pursuant to the two contracts he attaches to the MPSJ. Additionally, the contracts to which Muckey refers make plain that he is entitled only to additional pay based on his "participation" in the referenced activities, and he did not participate in them during his paid leave. (ECF 47-5, 47-6 (noting that Muckey would receive pay "[f]or [his] participation" in the concerts, rehearsals, and coaching sessions referenced in the agreements).) In any event, Muckey's claim for additional pay does not render his placement on leave with pay an "actionable adverse employment action" because this loss of pay (even if true) was the direct result of his leave, not an additional action taken by the Society. *See Brown v. City of Syracuse,* 673 F.3d 141, 151 (2d Cir. 2012) (rejecting argument that loss of overtime pay that was "a direct *result* of [plaintiff's] suspension with pay" constitutes an adverse employment action under discrimination laws (emphasis in original)).

For these reasons, the MPSJ should be denied, and summary judgment should be granted in Defendants' favor.

## II.    MUCKEY'S PRAYERS FOR RELIEF SHOULD BE DENIED.

### A.    Muckey Cannot Show "Actual Success on the Merits" as to his Hybrid DFR/Section 301 Claims to Warrant the Prayers for Relief He Seeks.

Muckey's requests for declaratory relief, injunctive relief, money damages and attorney's fees should be denied because, for the reasons discussed above, he cannot show actual success on the merits with respect to his hybrid DFR/Section 301 claims. *Ognibene v. Parkes,* 671 F.3d 174, 182 (2d Cir. 2011) (actual success on the merits required for injunctive relief); *Klein v. City of New York*, 2011 WL 5248169, at *10 (S.D.N.Y. Oct. 28, 2011) (denying request for declaratory relief based on consideration of the same factors as injunctive relief), *rep. & recommendation adopted*, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012) ; *Ryers Creek Corp. v. MacMartin*, 1989 WL 231304, at *6 (W.D.N.Y. Apr. 20, 1989) (denying plaintiff's request for monetary damages after denying injunctive relief); *Soto v. City of Lackawanna*, 1986 WL 185, at *2 (W.D.N.Y. Apr. 11, 1986)

(rejecting claim for monetary damages and attorney's fees based on failure to demonstrate "likelihood of success on the merits" for injunctive relief); *White v. White Rose Food*, 237 F.3d 174, 183–84 (2d Cir. 2001) (plaintiffs did not prove hybrid claims and not "entitled to attorneys' fees in any amount").

As to declaratory relief, the one case on which Muckey relies actually shows that such relief is inappropriate here. (ECF 49 at 21.) In that case, the Second Circuit *reversed* the district court's grant of a declaratory judgment and remanded with directions to dismiss the complaint when the declaratory judgment issued had no actual legal impact and was "not . . . determinative or even relevant" to the legal status of the parties. *Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971). The Second Circuit confirmed that courts should "avoid the use of the declaratory judgment procedures when the result would be to make inconclusive or abstract determinations, to try the controversy piecemeal, or to try particular issues without settling the entire controversy." *Id.* Declaratory relief would be inappropriate here given that it is speculative that the Society will place "Muckey's employment in jeopardy every time the 2010 allegations resurfaced." (ECF 49 at 21.) *See All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 430 F. Supp. 2d 222, 277 (S.D.N.Y. 2006), *aff'd*, 651 F.3d 218 (2d Cir. 2011), *aff'd*, 570 U.S. 205 (2013). Thus, the Court should deny and dismiss Muckey's prayers for relief in the MPSJ.

B.  <u>A Permanent Injunction Is Barred by the Norris-LaGuardia Act.</u>

Judicial authority to issue injunctions in labor disputes is exceedingly narrow and can be obtained in only the most limited circumstances. The Court does not have authority to issue a permanent injunction over this dispute, because the Union has not filed a grievance regarding the conduct Muckey alleges violates the CBA, and thus there is no arbitration which would be rendered futile by the lack of judicial intervention.

The Norris-LaGuardia Act states that "[n]o court of the United States . . . shall have

jurisdiction to issue any . . . permanent injunction in a case involving or growing out of a labor

dispute, except in a strict conformity with the provisions of this [Act]." 29 U.S.C. § 101. And there

can be no question that this case involves or grows out of a "labor dispute" within the meaning of

the Norris-LaGuardia Act. The term "labor dispute" has consistently been interpreted broadly by

the Supreme Court. *See*, *e.g.*, *Burlington N. R.R. Co. v. Brotherhood of Maint. of Way Emps.*, 481

U.S. 429, 441 (1987) ("we have long recognized that 'Congress made the definition [of 'labor

dispute'] broad because it wanted it to be broad" (alteration in original) (citation omitted));

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982) ("the

term 'labor dispute' must not be narrowly construed because the statutory definition itself is

extremely broad"). As the Second Circuit summarized, "[c]ritical to whether a dispute is a 'labor

dispute' is whether 'the employer-employee relationship [is] the matrix of the controversy." *Loc.

1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1235 (2d Cir 1982)

(second alteration in original) (citation omitted). There can be no legitimate contention that the

primary issue here is between Muckey (an employee) and the Society (his employer) seeking to

overturn alleged discipline under the CBA.

Except in vary narrow circumstances not applicable here, the Norris-LaGuardia Act is a

flat bar to injunctive relief in a labor dispute. In *Boys Markets, Inc. v. Retail Clerks Union, Local

770*, 398 U.S. 235, 252-53 (1970), the Supreme Court carved out a limited exception to

Norris-LaGuardia's broad general prohibition against injunctions in labor disputes, finding that a

court may issue an injunction against a labor union that has engaged in a strike in violation of a

contractual no-strike clause if the dispute is over a matter that is arbitrable under a CBA. The

exception is even more limited when a union or employee seeks a "reverse" *Boys Markets*

injunction, *i.e.*, an injunction prohibiting an employer from acting during the pendency of an

17

arbitration. *See Niagara Hooker Emps. Union v. Occidental Chem. Corp.,* 935 F.2d 1370, 1377 (2d Cir. 1991). The *Boys Markets* exception to Norris-LaGuardia "cannot simply be imported wholesale when a union [or an employee] seeks to enjoin an employer action pending arbitration" because "labor disputes frequently arise out of common management actions involving, for example, discipline, work-place rules, and production targets, [and] implying a promise to maintain the status quo would permit unions [or employees] to embroil the judiciary in day-to-day disputes. Management initiatives would be stifled, economic costs on the employer would mount, and its ability to run the business would be impaired." *Id*. Rather, it is only in the most extreme cases—where the employer's action "has the effect of frustrating the arbitral process, or rendering it a 'hollow formality'" that a union or employee may obtain a status quo injunction to avoid rendering the arbitration process "meaningless." *Id.* "The arbitral process is not rendered 'meaningless,' however, by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable." *Id.* at 1378.

The narrowness of the reverse *Boys Market* injunction has been reinforced in a number of decisions in this Circuit. *See e.g.*, *N.Y. State Nurses Ass'n v. Montefiore Med. Ctr.*, 457 F. Supp. 3d 430, 433 (S.D.N.Y. 2020) (refusing to grant injunction where healthcare workers sought additional protections during the COVID-19 pandemic because injunctive relief "would 'unduly interfere' with the hospital's 'ability to make business decisions'" (citation omitted)); *Commc'ns Workers of Am. v. Verizon N.Y. Inc.*, 2002 WL 31496221, at *6 (S.D.N.Y. Nov. 8, 2002) (denying injunction where employer sought to lay off workers because the "focus of the inquiry is whether the *arbitration* will become a futility, not what the results of the arbitration's potential lack of timeliness will have on the world outside that of the labor dispute" (emphasis in original)).

As the Union has not filed a grievance—indicating that it plans to "await the outcome of [the] investigation before determining how to proceed here" (ECF 46-8)—there is no arbitration to be "frustrat[ed]" and "render[ed] a hollow formality." Indeed, the reverse *Boys Markets* exception only applies where the arbitration *process*—not the potential remedy—would be meaningless if the court did not grant an injunction. In the absence of a pending arbitral proceeding, there is no basis for judicial intervention and injunctive relief, because there is no arbitral process to preserve. Even if the Union eventually grieves the Society's action, the decision to place Muckey on paid leave pending the investigations is merely "interim damage" that would not "frustrate the arbitral process" or "render it a hollow formality," because the arbitrator could simply reverse the paid leave and reinstate Muckey.

Finally, even if the Court concludes that this labor dispute falls within the limited reverse *Boys Markets* exception, which it should not because there is currently no arbitration proceeding to protect, Norris-LaGuardia's exacting procedural requirements must still be met. 29 U.S.C. §§ 107-109. For instance, the Court cannot rely on witness declarations or documentary evidence to issue an injunction under these circumstances, but must "hear[] the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered…" 29 U.S.C. § 107. Muckey does not attempt to meet these procedural requirements and his request should be denied with prejudice.

C.  Muckey Cannot Show Irreparable Harm to Warrant a Permanent Injunction.

Even if the Norris-LaGuardia Act does not preclude injunctive relief in this labor dispute and Muckey can somehow show actual success on the merits, Muckey does not—and indeed, cannot—come close to showing irreparable harm. *Ognibene*, 671 F.3d at 182; *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd*., 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003); *Wojnarowicz v. Am. Fam. Ass'n*, 745 F. Supp. 130, 148-49 (S.D.N.Y. 1990). The standard for showing irreparable harm

for a permanent injunction is the same as for a preliminary injunction. *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n.12 (1987). "A permanent injunction is a drastic remedy and is awarded only on a clear meritorious right." *Regan v. Conway*, 2010 U.S. Dist. LEXIS 165283, at *59 (E.D.N.Y. May 10, 2020) (*citing Ex Parte Collett*, 337 U.S. 55, 72 (1949); 43A C.J.S. Injunctions § 2 (2009)). Muckey has failed to establish the requisite elements warranting the use of "one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam) (citation omitted).

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999). In the employment context, "'courts are loathe to grant…injunctions,' because injuries often associated with employment discharge, such as damage to reputation, financial distress, and difficulty finding other employment, do not constitute 'irreparable harm' unless extraordinary circumstances are shown." *Piercy v. Fed. Rsrv. Bank of N.Y.*, 2003 U.S. Dist. LEXIS 379, at *8 (S.D.N.Y. Jan. 10, 2003) (citations omitted). "[P]aid preservation of employment through paid leave [] is traditionally insufficient to establish irreparable harm 'unless truly extraordinary circumstances are shown.'" *Haynes v. Maldonado*, 2024 U.S. Dist. LEXIS 42841, at *14 (S.D.N.Y. Mar. 11, 2024) (quoting *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983)).

Muckey's claim that he has lost opportunities to "perform, enhance his career, rehearse and teach" fails to qualify as a truly extraordinary circumstance sufficient to warrant the drastic remedy of injunctive relief. Indeed, "loss of reputation resulting from an employee's discharge [much less paid leave, as here] is normally insufficient to create an irreparable injury." *Id.* at *18. In similar circumstances, the court denied a preliminary injunction sought by NFL players who alleged that

missing playing time during their suspension constituted irreparable harm, even though their suspension was "untimely, occurring simultaneously with mandatory team roster cuts." *Nat'l Football League Players Ass'n v. Nat'l Football League,* 724 F. Supp. 1027, 1028 (D.D.C. 1989). The court in *National Football League Management Council v. National Football League Players Ass'n*, 296 F. Supp. 3d 614, 625 (S.D.N.Y. 2017), denied the union's motion for a preliminary injunction to block enforcement of a six-game suspension, holding as follows:

> To support the notion that missed games constitute irreparable injury, the NFLPA points out that an average career in the NFL is 'short and precarious.' Even so, just as in other professions, future economic injuries such as lost profits are compensable through monetary awards. And any individual honors Elliott might attain absent suspension depend on countless variables … that together render this alleged harm far too speculative to justify injunctive relief. As for damage to Elliott's reputation, cases in this Circuit require a more concrete economic impact than mere negative publicity to constitute irreparable harm. (citations omitted).

The court further explained that alleged damage to "players' skills, reputations, and professional careers" because of steroid suspensions are not irreparable harm, as athletes return routinely from extended absences and play well. *Nat'l Football League Players Ass'n*, 724 F. Supp. at 1028. The same is true for Muckey in his role as a musician for the Society.

Muckey's harms are also not irreparable because they are not immediate. To establish irreparable harm, the injury must be actual and imminent—not remote or speculative. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Injunctions are "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Therefore, delay "may be fatal to a claim of irreparable harm" and is "an important factor" in its determination. *Flexible Techs., Inc. v. World Tubing Corp.*, 910 F. Supp. 109, 113 (E.D.N.Y. 1996). Delay "tends to indicate at least a reduced need for such drastic, speedy action" and "may . . . indicate an absence of the kind of irreparable harm required to support a preliminary injunction," which includes the

same requirement for irreparable harm as permanent injunctions. *Citibank*, 756 F.2d at 276 (finding delay of ten weeks was sufficient to deny granting preliminary injunction). Moreover, delay "may also suggest that the application is more a matter of tactic than need." *Flexible Techs.*, 910 F. Supp. at 113.

Here, Muckey was placed on leave with pay beginning April 13, 2024 (ECF 48 ¶ 26); he filed his complaint on May 1, 2024. (ECF 1.) Muckey did not seek a temporary restraining order or preliminary injunction after the commencement of the action, but instead, on July 29, 2024—more than three-and-one-half months after he was placed on paid leave—he requested injunctive relief in connection with his MPSJ. Such a lengthy and unexplained delay contradicts the notion that Muckey has suffered irreparable harm. *See, e.g., Le Cordon Bleu S.a.r.L. v. BPC Publ'g Ltd.*, 327 F. Supp. 267, 270-71 (S.D.N.Y. 1971) (injunctive relief denied when plaintiff waited 13 weeks to seek injunction); *Programmed Tax Sys., Inc. v. Raytheon Co.*, 419 F. Supp. 1251, 1255 (S.D.N.Y. 1976) (injunction denied four months after alleged harm, ten weeks since action was commenced). The Court should, therefore, deny Muckey's request for injunctive relief.

### D.  Muckey Is Not Entitled to Economic Damages and Attorney's Fees.

Muckey's request for economic damages is puzzling because he was placed on leave *with pay* and thus has not suffered economic loss. Where, as here, a plaintiff cannot provide evidence of "having suffered economic injury," the employer—not the employee—is entitled to summary judgment. *Rovai-Pickett v. HMS Host, Inc.*, 2010 WL 289295, at *7 (N.D. Cal. Jan. 15, 2010) (granting employer's motion for summary judgment on hybrid DFR/Section 301 claim where employee suffered no economic loss due to termination because she received workers' compensation benefits from the date of her termination until the termination notice was rescinded), *aff'd*, 446 F. App'x 9 (9th Cir. 2011).

The authority Muckey cites as the basis for this requested relief does not involve summary judgment of hybrid claims. (ECF 49 at 24.) The Court also cannot accept as true on a motion for summary judgment an unsupported statement of damages from the plaintiff to determine the amount of damages due. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 53 (2d Cir. 1993) (finding estimates of union payroll in form of one affidavit containing parts of a payroll review prepared by an accountant are at best undocumented and at worst a speculative basis for damages). Thus, Muckey cannot demonstrate economic injury, and his requested money damages should be denied.

Muckey's demand for attorneys' fees fares no better. "It is well settled that [Section 301] does not authorize the award of attorney's fees." *Cromwell v. United Steel Workers of Am.*, 2011 WL 13202676, at *2 (D.V.I. Sept. 26, 2011) (collecting authority). Muckey has not demonstrated that the Society and the Union have defended this litigation "in bad faith, vexatiously, or for oppressive reasons" such that an exception to the "American rule" whereby each party normally must bear the burden of its own legal expenses, including attorneys' fees, is warranted. *Id.* (citation and quotation omitted). Unlike the inapposite authority on which Muckey relies (ECF 49 at 25), the posture of this case is not one where the Court is asked to confirm an arbitration award, and Muckey does not cite any provision under the LMRA or the CBA permitting the recovery of attorneys' fees in a hybrid DFR/Section 301 claim, as here.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Defendants' Motions to Dismiss and deny Muckey's Motion for Partial Summary Judgment with prejudice as moot. If Defendants' Motions to Dismiss are not granted with respect to Muckey's hybrid DFR/Section 301 claims, then

the Court should deny the Motion for Partial Summary Judgment and grant summary judgment in favor of Defendants, dismissing the hybrid DFR/Section 301 claims with prejudice.

Dated: New York, New York
        September 18, 2024

Respectfully submitted,

/s/ Howard Z. Robbins
Howard Z. Robbins (Lead Trial Counsel)
Joshua S. Fox
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900
hrobbins@proskauer.com
jfox@proskauer.com

*Attorneys for Defendant The Philharmonic-Symphony Society of New York, Inc.*

24