# Exhibit D

Unanimous Decision of the Executive Board of Associated Musicians of Greater New York, Local 802, AFM, on the Philharmonic Symphony Society of New York's Non-Reengagement of Liang Wang and Matthew Muckey
November 4, 2024

## **Background**

On or about April 12, 2024, an article appeared in Vulture, an online publication of New York Magazine, detailing allegations of rape committed by Matthew Muckey and additional allegations of improper conduct of Liang Wang when the musicians of the Philharmonic Symphony Society of New York (the "NY Phil") were in Vail, Colorado in 2010.[1] The contents of the article spread like wildfire among the NY Phil musicians and throughout the national symphonic community.

The article sparked conversation among the NY Phil musicians, many of whom began to share their own experiences and stories they had heard from others about the improper behavior of Muckey and Wang. Many women who joined the Orchestra relatively recently said that more senior female musicians routinely warned younger women when they joined the Orchestra to stay away from Muckey and Wang. A number of musicians, most of whom were young women who had not heard anything about the allegations before the Vulture article, reported to the NY Phil HR Department that they did not feel safe in their workplace, not just because of what they read in the Vulture article, but also because their colleagues had begun to share stories of sexual misconduct by the two musicians.

---

[1] The NY Phil had fired Muckey and Wang in 2018, after an investigation by former federal judge Barbara Jones credited multiple rape allegations against the two musicians. Local 802 challenged the terminations in arbitration. In a decision issued in April 2020, Arbitrator Richard Bloch ordered the NY Phil to reinstate the two musicians with full back pay and benefits. Arbitrator Bloch imposed a burden of proof that required the NY Phil to present "clear and convincing evidence" (as opposed to the current "preponderance of evidence standard") to support a finding of just cause. Relying on the testimony of Dr. Marisa Silveri, who testified that "it is possible, in a blackout state, for a person to engage in a variety of volitional behaviors…" and, significant to this case, "decid[e] to have sex or not have sex," he found that the NY Phil had not met its burden of establishing, by clear and convincing evidence, that there was just cause for discharge. He specifically stated, however, that "[n]othing in this opinion should be read as concluding that all doubt has been removed concerning the actions of the grievants in this matter." Our decision here involves a different provision in the CBA, Article XIV, a different burden of proof, and different underlying facts. We also vociferously reject the notion that meaningful consent to have sex can be granted in a blackout state.

Responding to growing concerns expressed by Orchestra musicians, the NY Phil placed Muckey and Wang on paid administrative leave while it determined how to handle the situation. Because several musicians had reported that the conduct described in the Vulture article was not an isolated incident, but rather part of a pattern of improper conduct, the NY Phil hired an investigator to look into any additional allegations of sexual misconduct—distinct from those in the Vulture article or the 2020 arbitration award—by any member of the Orchestra.

Immediately after being placed on paid administrative leave, Muckey and Wang, through counsel, demanded that Local 802 challenge the Philharmonic's action in arbitration. Counsel for Local 802 advised both musicians' lawyers that Local 802 would await the results of the investigation before determining whether to request arbitration.

**The Non-Reengagement of Muckey and Wang and the Contractual Process**

On October 15, 2024, the NY Phil notified Local 802 that the investigation, which had taken six months, was complete and that they had issued notices of non-reengagement to Wang and Muckey pursuant to Article XIV of the parties' collective bargaining agreement (the "CBA"). That Article provides:

> "If the Society desires not to engage a member of the Orchestra for the following year…, it must give notice to that effect to said member by February 15th prior to the beginning of the year in question… The Society, however, will endeavor whenever possible to give the Orchestra member concerned one year's dismissal notice …

The process to be followed after the issuance of a non-reengagement notice is described in Article XV of the CBA. In short, if an affected individual protests their non-reengagement, which both Muckey and Wang did here, the Orchestra must elect a nine-member Dismissal Review Committee (the "DRC") to review the terminations. Local 802 accepted nominations to the DRC and ballots were sent to all members of the Orchestra electronically on October 21, 2024. The ballots were counted, and the DRC was elected on October 22, 2024.

Counsel for Local 802 immediately requested that the NY Phil provide a copy of the investigative report to Local 802. The parties entered into a

confidentiality agreement[2] under which Local 802 counsel and the Local 802 President were allowed to review the entire investigative report, while the DRC, as well as Muckey and Wang, were allowed to review the Executive Summaries.

A meeting between the Local 802 President, Sara Cutler, and members of the DRC took place on October 23, 2024. At the meeting, members of the DRC, after signing confidentiality agreements, reviewed the Executive Summaries and expressed their views to President Cutler. Although Muckey's and Wang's Executive Summaries were considered separately, every member of the DRC expressed revulsion at the abuse of power and pattern of behavior discussed in each. Wang's behavior with one individual was seen as a textbook case of grooming. Several members of the DRC said the acts described in the reports were consistent with stories they had heard or things they had witnessed over the years. Noting the passage of time since most of the sexual misconduct, the DRC members all agreed that the "lens of time was irrelevant" given the type and pattern of behaviors at issue and the views of most members of the Orchestra about the two musicians returning. Several prominent musicians on the DRC said they would resign from the Orchestra if Muckey and Wang were brought back; others said that they, and most of their colleagues, either would "not ever" take the stage with them or would feel uncomfortable doing so. After considerable discussion, the DRC unanimously recommended that Local 802 not contest Muckey's and Wang's terminations.

In accordance with Article XV of the CBA, on October 25, 2024, members of the DRC, President Cutler, and Deborah Borda, Executive Advisor to the NY Phil Board of Directors, met to determine if the dispute could be settled. The DRC members reiterated the views they had expressed in the October 23 meeting about how unsafe and/or unsettled they and their colleagues would feel if Muckey and Wang returned. They emphasized that at least 2/3 of the Orchestra members who spoke to the investigator said that they would not take the stage or would feel extremely uncomfortable if Muckey and Wang returned. Emphasizing the need for the Orchestra to function as a unified unit, they explained that many of them knew about or suspected the kind of conduct described in the Executive Summaries, which they found abhorrent. They were particularly disturbed by the palpable lack of contrition or empathy shown by both Muckey and Wang in their interviews with the investigator.

---

[2] The Philharmonic has agreed to a partial modification of the confidentiality agreement so that the Executive Board can issue this decision.

At this meeting, after advising the NY Phil that the Local 802 Executive Board would meet shortly to determine whether to proceed to arbitration, Cutler expressed concern to Borda about the precedent that this could set for the NY Phil's use of Article XIV instead of the just cause dismissal process in Article VII.E.7. Borda acknowledged that the notices of non-reengagement issued to Muckey and Wang were based on extreme circumstances, including the type and scope of the sexual misconduct at issue and the overwhelming sentiment of the Orchestra members who spoke to the investigator concerning the impact of returning these two musicians to their workplace. She confirmed that the NY Phil would not use the Article VIX non-reengagement procedure to supplant or do an end-run around the requirement for having "just cause" for dismissals under Article VII.E.7 of the CBA. This understanding was later confirmed in writing between counsel for Local 802 and counsel for the NY Phil.

**The Executive Board Meeting and Deliberative Process**

On November 1, 2024, we, the Executive Board, met to review this matter. Prior to the meeting, counsel for Local 802 had sent each Board member a copy of written submissions from Muckey and Wang. At the meeting, after signing confidentiality agreements, we reviewed the two Executive Summaries, as well as the written statements from Muckey and Wang that counsel had sent us on October 31st. Additionally, Muckey and Wang each appeared before the Board for 15 minutes to present their positions. DRC representatives also appeared for a 15-minute presentation of the DRC's views and recommendations. Following the presentations, we had an extensive discussion of the issues. For the reasons described below, we unanimously have decided not to challenge the two terminations. Our reasons follow.

The Relevant CBA provisions

The CBA has two distinct routes for terminating a musician. The first, which is not at issue here, is a dismissal for "just cause" under Article VII.E.7 of the CBA. With a just cause dismissal, a musician is terminated without any pay and benefits. The second and entirely distinct route involves an Article XIV non-reengagement, which is the provision at issue here. Under Article XIV, if the NY Phil does not issue a notice of non-reengagement before February 15, it must continue to pay the terminated musician for the entire next year. In its October 15, 2024 notices of non-reengagement to both musicians, the NY Phil confirmed that both would be paid for the entire 2024-2025 year.

4

We are not aware of any other instances where the NY Phil has used Article XIV to terminate a musician. However, the NY Phil confirmed that it is only relying on Article XIV here due to the exceptional circumstances at issue, including the fact that 2/3 of the Orchestra who spoke to the investigator either will not take the stage or will feel extremely uncomfortable or unsafe if Muckey and Wang return. It also confirmed that it will not use Article XIV to do an end-run around Article VII.E.7 to avoid its burden of showing "just cause." Given the extremely unique nature of the allegations in this case, including the fact that it might be impossible for the NY Phil to stage performances if a large segment of the Orchestra refuses to take the stage, we believe that Article XIV was properly used here. Thus, we will proceed in analyzing the "propriety of the terminations" under Article XIV.

**The Evidence**

Wang's Written and Oral Statements

Wang, in his statement to the Board, as well as in his written statement, emphasized the need for the Philharmonic to show "just cause" for his dismissal. As discussed above, that is not required under Article XIV where, unlike in the case of a just cause dismissal, a musician receives one year of pay. We reject the notion that the use of Article XIV here nullifies the concept of tenure; the Philharmonic has confirmed that Article XIV only can and will be used in exceptional circumstances, such as those at issue here.

We also do not credit Wang's statements that, contrary to the testimony of eleven witnesses, the instances cited in the report were merely the result of his socializing and trying to navigate the dating world. Nor do we think that the lack of sexual harassment policies in 2018, even if that is true, excuses the pattern of predatory conduct that the witnesses described and the investigator credited in her report. Quite frankly, given how unlikely it is that all of the witnesses were lying, we do not believe Wang's statement that he "never did any of [the] things" described in the Executive Summary. And his total lack of contrition and empathy for the women who testified reinforces our view that the dismissal was appropriate under Article XIV.

Muckey's Written and Oral Statements

Muckey also relied heavily on the just cause standard, which is inapplicable here. As stated above, we disagree with his view that his dismissal will set a "dangerous precedent" that will jeopardize every tenured musician. The circumstances here are unlike any that the Orchestra has ever experienced. In that regard, although Muckey "categorically denies" engaging in *any* of the misconduct in the report, we rely on the testimony that was credited by the investigator in her report, which is consistent with a pattern she identified of Muckey failing to secure meaningful consent from women with whom he had sex.

We do, however, agree with Muckey's admonition that we have an "obligation to represent every" member of the bargaining unit, fairly and without discrimination. That obligation requires us to give significant weight to the fact that 2/3 of the members of the Orchestra who spoke to the investigator either will not take the stage or will feel extremely uncomfortable and/or unsafe if Muckey returns. This fact is central to our decision that Muckey's dismissal was appropriate under Article XIV.

The Dismissal Review Committee (DRC) Representatives

Three members of the DRC appeared before the Executive Board and told us that the nine members of the DRC unanimously had recommended that we not take these cases to arbitration. One member of the DRC described her "soul crushing" and "heartbreaking" regret at having been taught not to "make waves" and to simply accept the power dynamic and culture of complicity in the Orchestra. She agreed with the investigator's conclusion that the women who spoke with the investigator were credible, particularly considering what this DRC member has seen and heard about the two musicians over many years. She described the events discussed in both Executive Summaries to be indicative of a larger pattern of improper behavior and an "abuse of power" that caused great harm to many people, particularly women, in the Orchestra. Finally, she found the fact that both musicians have been acting as if "nothing is wrong," in the face of the widespread pain inflicted on so many women, to underscore the appropriateness of their non-reengagement.

The second member of the DRC said that she has been "plagued by the presence" of Muckey and Wang and devastated by the fact that they have harmed or traumatized so many women. She emphasized that the horror of "sexual grooming," the pattern of sexual misconduct, and the culture of complicity in the Orchestra must finally be addressed. She believed, considering the power dynamic in the Orchestra and that many women fear that that Muckey and Wang would

6

retaliate against anyone who spoke against them, it is possible that other women with similar stories did not feel comfortable talking to the investigator. Finally, sharing her view that allowing the two musicians to return would only serve to embolden other predators, she urged us to listen to the majority of her colleagues and not contest the dismissals.

The third member of the DRC was a male who has been with the Orchestra for a decade. He reminded us that over the last two contract cycles, Local 802 has been working towards addressing issues of safety and equity in the Orchestra, in 2020 by lowering the burden of proof for dismissals to a "preponderance of evidence" standard and, in 2024, by agreeing to a "standards of conduct" clause that specifically addresses off-duty sexual abuse. He emphasized that the views of the DRC and his colleagues in the Orchestra were not based on the Vulture article or the 2020 arbitration, but rather on the decades of the two musicians' abusive behavior towards women and pattern of exploiting their power in the Orchestra. He, too, emphasized that a supermajority of the Orchestra who spoke to the investigator—who comprise a majority of the entire Orchestra—will not take the stage or will feel unsafe or uncomfortable if the two musicians return. Finally, he described the profound harm to the NY Phil—from the public, the donor community, the patrons, and prospective members of the Orchestra—if the two musicians are allowed to return. He closed by saying that "we implore you, on behalf of our colleagues, to understand that this is a matter of whether we can exist and continue to function as an Orchestra…"

The Executive Summaries

First and foremost, we believe that the investigator conducted an appropriate, credible, and thorough six-month investigation, without motive or bias. While we have signed confidentiality agreements and are not permitted to disclose most of the specific factual details and witness testimony discussed in the Executive Summaries, we are sickened by the pattern of predatory conduct and the failure to comprehend the concept of "consent" that the witnesses, whom the investigator spoke to and found to be credible, discussed in detail. We also agree with the investigator's conclusion that other victims of both men's improper behavior likely exist but did not come forward due to fear of retaliation.

With respect to Wang, the investigator spoke to 11 witnesses who testified to specific instances of rape, sexual assault, grooming of a young female musician, inappropriate touching and comments, unwelcome kissing, and other sexually harassing behavior. We also take note of the fact that she specifically found that

7

Wang had abused his power by seeking to have Cara Kizer removed from the Orchestra after she reported the incident in Vail.

With respect to Muckey, the Investigator credited the testimony of a woman, six years his junior, with whom he had had sex when she was 18 years old and was too incapacitated by alcohol to voluntarily consent. While the allegations concerning Muckey are not as numerous as those involving Wang, we cannot ignore the fact that they demonstrate a similar abuse of power and failure to acknowledge the importance of a woman's consent to sexual relations. Even though significant time has passed since the conduct at issue, we do not believe that anyone who has engaged in such acts, however temporally distant, has a right to be exonerated due merely to the passage of time.

We have carefully read the statements from Muckey and Wang and listened to what they said to us in their presentations. Considering the 11 witnesses who testified about Wang's pattern of sexual violence and harassment over many years, we do not credit his denials or failure to remember these events. With respect to Muckey, we similarly do not find his denials sufficient to overcome the testimony of the witness whom the investigator found credible and the pattern of conduct she described. Additionally, the lack of any contrition and the absence of any empathy shown towards the victims reinforces our view that the two musicians should not return to the Orchestra.

Most significantly, the DRC representatives told us that all DRC members, as well as a supermajority of their colleagues in the Orchestra who spoke to the investigator, either will refuse to take the stage with Muckey and Wang or do not feel comfortable working alongside them. Some of their colleagues said that they will resign if Muckey and Wang return. These sentiments are not based on the Vulture article or the 2020 arbitration award, which was never distributed to them, but rather on the personal and shared experiences and beliefs of so many Orchestra musicians. While the Vulture article may have sparked conversations and motivated Orchestra musicians to break through the culture of silence to speak to HR and the investigator, we have not considered that article or the 2020 arbitration award in reaching our decision. Rather, we rely on the distinct events described in the Executive Summaries, the unanimous recommendation of the DRC, and the sobering fact that 2/3 of the Orchestra members interviewed will not take the stage, or will feel unsafe or uncomfortable, if Muckey and Wang return. If this occurs, the NY Phil will not be able to stage performances.

To conclude, our role here is not to determine whether any criminal conduct occurred, or even whether there is "just cause" for the dismissals. Rather, under Article XIV, we are charged with assessing whether the notices of non-reengagement were appropriate under the circumstances. Based on the information in the Executive Summaries, as well as the unanimous recommendation of the DRC, a body elected by the entire Orchestra to guide us in our decision—and ignoring the Vulture article and the facts underlying the 2020 arbitration award—we find that they were. Thus, Local 802 will not challenge the dismissals in arbitration.