UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x
                                                   :

MATTHEW MUCKEY,                      :

                  Plaintiff,       :     Case No.

                vs.            :     1:24-cv-03348 (AS) (RWL)
                                   :     [Rel: Case No. 1:24-cv-03356 (AS)
ASSOCIATED MUSICIANS OF GREATER NEW  :    (RWL)]
YORK, LOCAL 802, AMERICAN FEDERATION  :
OF MUSICIANS and THE PHILHARMONIC    :
SYMPHONY SOCIETY OF NEW YORK, INC.    :
a/k/a THE NEW YORK PHILHARMONIC     :
ORCHESTRA,                          :

              Defendants.    :

--------------------------------------------------------------- x


# MEMORANDUM OF LAW OF DEFENDANT ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Susan Davis
Olivia R. Singer
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022-4869
Tel: (212) 563-4100
sdavis@cwsny.com
*Attorneys for Defendant Associated Musicians
of Greater New York, Local 802, American
Federation of Musicians*

# TABLE OF CONTENTS

**Pages(s)**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 5

    The Parties ......................................................................................................... 5

    The Events Leading up to Plaintiff's Non-Reengagement .................................. 5

    Procedural Posture and Claims Raised ............................................................... 9

ARGUMENT ....................................................................................................... 10

I.       STANDARD OF REVIEW .......................................................................... 10

II.     PLAINTIFF FAILS TO STATE A HYBRID SECTION 301/DUTY OF FAIR
       REPRESENTATION CLAIM. ..................................................................... 11

    A.     The Stringent Section 301/Duty of Fair Representation Standard ................. 11

    B.     Plaintiff Fails to Plausibly Allege a Breach of the Collective Bargaining
          Agreement. ................................................................................................. 13

    C.     Plaintiff Fails to State a Claim for Breach of the Duty of Fair
          Representation ............................................................................................ 16

          i.       Local 802 Reasonably Determined that There was No Basis to
                  Seek Enforcement of the 2020 Award When Plaintiff was Placed
                  on a Paid Administrative Leave. ............................................................ 16

          ii.      Local 802 Did Not Breach its Duty of Fair Representation When It
                  Declined to Arbitrate Plaintiff's Non-Reengagement. .............................. 18

          iii.    Local 802's Statement to the Press Did Not Constitute a Breach of
                  its Duty of Fair Representation. ............................................................. 21

III.    PLAINTIFF FAILS TO STATE A SEX DISCRIMINATION CLAIM UNDER
       TITLE VII. ................................................................................................. 23

IV.    PLAINTIFF'S STATE AND CITY DISCRIMINATION CLAIMS ARE NOT
       COGNIZABLE ............................................................................................ 24

    A.     Section 301 of the LMRA Preempts Plaintiff's State and City Claims. .......... 24

    B.     Plaintiff's State Law Claims Must Be Dismissed Under *Martin v. Curran*. ........ 25

i

    C.      Plaintiff Fails to State a Claim for Sex Discrimination under the NYSHRL or NYSHRL. ........................................................................................................ 26

CONCLUSION ......................................................................................................................... 27

WORD COUNT CERTIFICATION ......................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney*,
230 F.3d 569 (2d Cir. 2000) ..................................................................................16

*Agosto v. Corr. Officers Benevolent Ass'n.*,
107 F.Supp.2d 294 (S.D.N.Y. 2000) ......................................................................23

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
499 U.S. 65 (1991) ...............................................................................12, 18, 19

*Alston v. Int'l Ass'n of Firefighters, Loc. 950*,
998 F.3d 11 (1st Cir. 2021) ....................................................................................21

*Alvarado v. PBM, LLC*,
No. 21-cv-01481, 2022 WL 3566630 (D. Conn. Aug. 18, 2022) ...........................20

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*,
403 U.S. 274 (1971) ...............................................................................13, 19, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................10

*Associated Musicians of Greater N.Y., Loc. 802 v. League of Am. Theatres & Producers, Inc.*,
No. 05-cv-2769 (KMK), 2006 WL 3039995 (S.D.N.Y. Oct. 25, 2006) .................26

*Ayala v. Union de Tronquistas de P.R., Loc. 901*,
74 F.3d 344, 345–46 (1st Cir. 1996) ....................................................................18

*Barrett v. Loc. 804 Union Bhd. of Teamsters (IBT)*,
No. 22-cv-06925 (NCM)(LB), 2024 WL 1345218 (E.D.N.Y. Mar. 28, 2024) .......11

*Batson v. Rim S.A. Acquisition, LCC*,
No. 15-cv-07576 (ALC), 2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016) ................11

*Bejjani v. Manhattan Sheraton Corp.*,
No. 12-cv-6618 (JPO), 2013 WL 3237845 (S.D.N.Y. June 27, 2013), *aff'd*,
567 F.App'x 60 (2d Cir. 2014) ...............................................................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................10

*Bryant v. Verizon Commc'ns, Inc.*,
  550 F.Supp.2d 513 (S.D.N.Y. 2008)......................................................................24

*Cano v. SEIU Loc. 32BJ*,
  No. 19-cv-8810 (PAE) (KHP), 2021 WL 4480274 (S.D.N.Y. Sept. 30, 2021) .....................26

*Cappelli v. Jack Resnick & Sons, Inc.*,
  No. 13–cv–4381 (GHW), 2014 WL 4188084 (S.D.N.Y. Aug. 22, 2014) ...........................12

*Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*,
  227 F.3d 29 (2d Cir. 2000)..............................................................................12

*Carrion v. Loc. 32B–32J SEIU*,
  No. 03-cv-1896, 2005 WL 659321 (S.D.N.Y. 2005) ..........................................................18

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
  494 U.S. 558 (1990)......................................................................................11

*Chi. Newspaper Guild v. Field Enters., Inc.*,
  747 F.2d 1153, 1156 (7th Cir.1984) ....................................................................13

*Coggins v. 297 Lenox Realty Co.*,
  108 F.3d 1369 (2d Cir. 1997)..........................................................................23

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..............................................................................11

*Cruz v. UAW, Loc. 2300*,
  No. 18-cv-0048 (GTS) (ML), 2019 WL 3239843 (N.D.N.Y. July 18, 2019) ......................26

*Dillard v. SEIU Loc. 32BJ*,
  No. 15-cv-4132 (CM), 2015 WL 6913944 (S.D.N.Y. Nov. 6, 2015)...............................18, 24

*DeGennaro v. N.Y.C. Hous. Auth.*, No. 92-cv-5985 (MBM),
  1995 WL 37850, at *6 (S.D.N.Y. Jan. 31, 1995) ..................................................18

*Douds v. Associated Musicians of Greater N.Y., Loc. 802*,
  123 F.Supp. 798 (S.D.N.Y. 1954) ....................................................................26

*Feldleit v. Long Island R.R.*,
  723 F.Supp. 892 (E.D.N.Y. 1989) ....................................................................17

*Ford Motor Co. v. Huffman*,
  345 U.S. 330, 338 (1953) ................................................................................12

*Freeman v. Loc. Union No. 135*,
  746 F.2d 1316, 1321 (7th Cir.1984) ..................................................................22

*Garnes v. Pritchard Indus., Inc.*,
  No. 20-cv-3843 (PAE) (SLC), 2023 WL 3980693 (S.D.N.Y. May 23, 2023) ...................... 11

*George v. Nw. Airlines, Inc.*,
  351 F.Supp.2d 310 (E.D. Pa. 2005) ................................................................................. 17

*Girolamo v. Teamsters Loc. 72*,
  No. 97-cv-9412, 81676, 1998 WL 889039 (S.D.N.Y. Dec. 21, 1998) .................................. 25

*Good Samaritan Med. Ctr. v. NLRB*,
  858 F.3d 617 (1st Cir. 2017) ........................................................................................... 21

*Goodman v. Port Auth. of N.Y. & N.J.*,
  No. 10-cv-8352, 2011 WL 3423800 (S.D.N.Y. Aug. 4, 2011) ............................................ 25

*Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*,
  No. 16-cv-6278 (VEC), 2018 WL 4625768 (S.D.N.Y. Sept. 26, 2018) ................................ 24

*Griffin v. Facebook*,
  No. 19-cv-7821 (CS), 2020 WL 5645986 (S.D.N.Y. Sept. 21, 2020) .................................. 11

*Hardwick v. Sunbelt Rentals, Inc.*,
  719 F.Supp.2d 994 (C.D. Ill. 2010), *aff'd*, 430 F.App'x 536 (7th Cir. 2011) ...................... 17

*Humphrey v. Moore*,
  375 U.S. 335 (1964) ................................................................................................. 13, 21

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991) ........................................................................................... 11

*Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*,
  774 F.2d 43 (2d Cir. 1985) ............................................................................................. 13

*Jenkins v. Arcade Bldg. Maint.*,
  No. 98-cv-3133 (RWS), 1999 WL 1051105 (S.D.N.Y. Nov. 19, 1999) ............................... 24

*Jiggetts v. Loc. 32BJ, SEIU*,
  No. 10-cv- 9082 (DAB) (JCF), 2011 WL 4056312 (S.D.N.Y. Aug. 10, 2011) ..................... 12

*Kolinske v. Lubbers*,
  712 F.2d 471, 481 (D.C. Cir. 1983) ................................................................................ 22

*Krakowski v. Am. Airlines, Inc.*,
  610 B.R. 714 (S.D.N.Y. 2019), *aff'd*, 834 F.App'x 660 (2d Cir. 2021) ............................... 16

*Langford v. Int'l Union of Operating Eng'rs, Loc. 30*,
  765 F.Supp.2d 486 (S.D.N.Y. 2011) ............................................................................... 25

*Marquez v. Screen Actors Guild, Inc.*,
  525 U.S. 33 (1998) ................................................................................12, 19, 21

*Martin v. Curran*,
  303 N.Y. 276 (1951) .................................................................................10, 25, 26

*Martinez v. Staten Island Univ. Hosp.*,
  No. 19-cv-02672 (CBA) (RER), 2020 WL 13837813 (E.D.N.Y. June 19,
  2020) ................................................................................................................25

*McIntyre v. Longwood Cent. Sch. Dist.*,
  No. 07-cv-1337 (JFB) (ETB), 2008 WL 850263 (E.D.N.Y. Mar. 27, 2008) ........25

*Muckey v. Levy Employment Law, LLC*,
  No. 152917/2025 (N.Y. Sup. Ct. Mar. 4, 2025) ......................................................3

*Naprstek v. Marriott Int'l*,
  No. 21-cv-08560(CM), 2024 WL 113804 (S.D.N.Y. Jan. 10, 2024) ....................19

*Novick v. Village of Wappingers Falls*,
  376 F.Supp.3d 318 (S.D.N.Y. 2019)......................................................................27

*Nunes v. United Bhd. of Carpenters & Joiners of Am.*,
  No. 20-cv-1092 (ALC) (SDA)*,* 2021 WL 1172625 (S.D.N.Y. Mar. 29, 2021) .....20

*Oakland Univ.*,
  2019 BA LA 51 (Scales 2019)................................................................................14

*Oparaji v. United Fed'n of Tchrs.*,
  418 F.Supp.2d 139 (E.D.N.Y. 2006) .....................................................................23

*Palladino v. CNY Centro*,
  23 N.Y.3d 140 (2014)........................................................................................25, 26

*Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*,
  No. 20-cv-2531 (JS) (AYS), 2022 WL 16755284 (E.D.N.Y. Aug. 25, 2022) .......26

*Price v. UAW*,
  795 F.2d 1128 (2d Cir. 1986).................................................................................22

*Pyzynski v. N.Y. Cent. R. Co.*,
  421 F.2d 854 (2d Cir. 1970)...................................................................................20

*Ramroop v. Commc'ns Workers of Am. Loc. 1182*,
  No. 157047/2019, 2022 WL 17574009 (N.Y. Sup. Ct. Dec. 8, 2022) ..................25

*Rodriguez v. Verizon Telecom*,
  No. 13-cv-6969 (PKC) (DCF), 2014 WL 6807834 (S.D.N.Y. Dec. 3, 2014) ........27

*Ross v. Commc'ns Workers of Am., Loc. 1110,*
    No. 91-cv-6367, 1995 WL 351462 (S.D.N.Y. June 9, 1995) ...........................................18, 23

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000)..................................................................................................11

*Russo v. 210 Riverside Tenants, Inc.,*
    No. 10-cv-914 (DLC), 2010 WL 2758192 (S.D.N.Y. July 13, 2010) ...................................16

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,*
    *Inc.,*
    75 F.3d 801 (2d Cir. 1996)..................................................................................................11

*Sanozky v. Int'l Ass'n of Machinists and Aerospace Workers,*
    415 F.3d 279 (2d Cir. 2005)................................................................................................17

*Scales v. N.Y. Hotel & Motel Trades Council, Loc. 6,*
    No. 21-cv-8142 (JPC), 2023 WL 1779617 (S.D.N.Y. Feb. 6, 2023) ...................................18

*Smith v. Brookhaven Sci. Assocs., LLC,*
    473 F.Supp.3d 159 (E.D.N.Y. 2020), *aff'd,* 848 F.App'x 57 (2d Cir. 2021).........................12

*Spellacy v. Air Line Pilots Ass'n-Int'l,*
    156 F.3d 120 (2d Cir. 1998)...................................................................................13, 19, 20

*Tenn. Valley Auth. v. Salary Pol'y Emp. Panel,*
    No. 89-cv-065, 1989 WL 241715 (E.D. Tenn. Sept. 20, 1989), *aff'd,* 917 F.2d
    564 (6th Cir. 1990)..............................................................................................................15

*United Nurses and Allied Profs., Loc.__,*
    2021 BNA LA 193 (Ryan 2021)..........................................................................................15

*United Steelworkers of Am. v. Rawson,*
    495 U.S. 362 (1990)............................................................................................................13

*Ustad v. Int'l Bhd. of Teamsters, Loc. 747,*
    No. 10-cv-3894 (FB)(RER), 2014 WL 1311573 (E.D.N.Y. Apr. 1, 2014),
    *aff'd,* 607 F.App'x 67 (2d Cir. 2015)...................................................................................17

*Vaca v. Sipes,*
    386 U.S. 171 (1967)......................................................................................................12, 18

*Von Maack v. 1199SEIU United Healthcare Workers E.,*
    No. 14-cv-4360 (PKC), 2014 WL 5801349 (S.D.N.Y. Nov. 7, 2014) ...................................23

*Walczak v. Int'l Ass'n of Machinists & Aerospace Workers,*
    No. 22-cv-00927 (SVN), 2023 WL 5334365 (D. Conn. Aug. 18, 2023) ..............................16

*Whitehurst v. 1199SEIU United Healthcare Workers E.*,
    928 F.3d 201 (2d Cir. 2019)...................................................................................................25

**Statutes**

Labor Management Relations Act § 301, 29 U.S.C. § 185 .................................................... passim

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................................1, 11

<u>**PRELIMINARY STATEMENT**</u>

Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians ("Local 802" or the "Union") submits this memorandum of law in support of its motion to dismiss Plaintiff's First Amended Complaint ("FAC") [Dkt. 85] pursuant to Federal Rule of Civil Procedure 12(b)(6).

Local 802 is the labor union that represents musicians in the New York City area, including the musicians in the New York Philharmonic Orchestra (the "Orchestra"). Local 802 and the Philharmonic Symphony Society of New York, Inc. (the "Society" or the "Philharmonic") are parties to a negotiated collective bargaining agreement (the "CBA") establishing the terms and conditions of employment for the Orchestra musicians, as well as the rules and procedures the Society and Local 802 must follow if a dispute arises.

As discussed more fully below, there are two distinct procedures in the CBA for terminating a musician from the Orchestra. The first, a disciplinary procedure contained in Article VII.E of the CBA, lists the "rules and regulations of the Society" that musicians must follow and, in Subsection E.7, allows the Society to "take disciplinary measures in the event of the violation of these rules or for other just cause." The second, a severance provision contained in Article XIV, provides that "[i]f the Society desires not to engage a member of the Orchestra for the following year" and does not notify the musician by February, it must pay the musician for one year. The difference between the two provisions is simple: Article VII.E allows the Society to take "disciplinary" action if there is "just cause" to terminate a musician—without any obligation to pay the musician unless ordered to do so by an arbitrator. Article XIV, in contrast, is a non-disciplinary severance provision that requires the Society to pay a musician for one year if it decides not to reengage them. There are no limitations in the CBA for when the Article XIV non-reengagement process may be used. Additionally, there is an elaborate Orchestra review

1

process that must be followed if the Society decides not to reengage a musician pursuant to Article XIV.

The events leading up to the non-reengagement of Plaintiff are straightforward. In April 2024, *Vulture*, an online *New York Magazine* website, published an article discussing in detail the events leading up to the terminations of Plaintiff and another Orchestra musician, Liang Wang ("Wang"), in 2018 for, among other conduct, alleged rape and sexual assault. June 9, 2025, Declaration of Susan Davis ("Davis Decl."), Ex. B. In the article, a former probationary member of the Orchestra describes how, after a concert in Vail, she agreed to join Plaintiff and Wang for a glass of wine at Plaintiff's condo. She states that Wang "brought her a glass of red wine" and that she "has no memories of what happened after she drank from that glass." She alleges she "woke up the morning after the concert in Muckey's bed, naked." She states that she "felt groggy and sick and there were red vomit stains on the floor around the bed." *Id.* She also states that, while showering, "she realized that a tampon that she had put in the previous day had been put so far into her vagina she had trouble removing it."

Following the release of this article, a number of Orchestra musicians expressed safety concerns to both the Society and Local 802 about the sexual misconduct and assault allegations involving both musicians, which had not been publicized following a 2020 arbitration decision reinstating them.[1] In response to these concerns, the Society placed the two musicians

---

[1] The Society had fired Plaintiff and Wang in 2018 after an investigation by former federal judge Barbara Jones credited multiple rape and other sexual misconduct allegations against the two musicians. Davis Decl., Ex. H at 1 n.1. Local 802 challenged the disciplinary terminations in arbitration. *Id.* In a decision issued in April 2020 (the "2020 Award"), Arbitrator Bloch— imposing a burden of proof that required the Society to present "clear and convincing evidence" that there was "just cause" for the Article VII terminations (as opposed to the "preponderance of evidence standard" in the current CBA and distinct from the Article XIV non-disciplinary procedure)—ordered the Society to reinstate the two musicians. *See* Davis Decl., Exs. A, H. Contrary to Plaintiff's assertion that the Arbitrator cleared him of all wrongdoing, FAC ¶65, the

on a non-disciplinary, temporary administrative leave with full pay and then retained an

independent investigator to determine whether there were any other instances of sexual

misconduct by any musician in the Orchestra.

Following the conclusion of the investigation, the Society issued a notice of non-

reengagement to Plaintiff and, consistent with its obligations under Article XIV, advised him that

he would continue to be paid for the 2024-25 season. Local 802 immediately requested copies of

the investigative report in order to determine whether to contest the non-reengagement. In a 9-

page summary of the report (the "Executive Summary"),[2] the investigator explained that she had

found "it more likely than not that [Plaintiff] had sex with an 18-year-old college freshman who

was six years his junior at a time when she was too incapacitated by alcohol to voluntarily

consent to the interaction, and similarly made sexual advances toward other women without

much regard to indicators of a lack of consent." Dkt. 101-6 at 9.[3]

---

Arbitrator specifically stated that *"[n]othing in this opinion should be read as concluding that all doubt has been removed concerning the actions of the grievants in this matter."* (emphasis added). Davis Decl., Ex. H at 1, n.1. As discussed below, the current non-reengagement involves not only a lower burden of proof, but also a different provision in the CBA, Article XIV—which does not require a showing of "just cause"—and completely distinct underlying facts.

[2] The Executive Summary has been submitted by the Society in support of its motion to dismiss. *See* Dkt. 101-6.

[3] Plaintiff filed a verified petition in state court seeking pre-action disclosure from the Society and the investigator in anticipation of filing an action for defamation against one of the women who testified against Plaintiff during the investigation. *Muckey v. Levy Employment Law, LLC*, No. 152917/2025, NYSCEF Doc. No. 1 (N.Y. Sup. Ct. Mar. 4, 2025). In this petition, Plaintiff alleged that this woman's "false and defamatory statements" about him (not Local 802's conduct) caused him damages. *See id.* at ¶59. On May 20, 2025, the court denied Muckey's petition because he had failed to identify any specific allegedly defamatory statements made by the woman and therefore could not show he had a meritorious cause of action for defamation, a prerequisite for pre-action discovery. *Muckey v. Levy Employment Law, LLC, No. 152917/2025,* NYSCEF Doc. No. 24 (N.Y. Sup. Ct. May 20, 2025). In denying the petition, the court noted that "attempting to gain access to statements of persons who have alleged sexual

Additionally, after interviewing 67 members of the Orchestra, the investigator found that approximately two-thirds of the musicians either were "personally concerned with [Plaintiff] returning" or "[could not] imagine ever sharing the stage or working with him again." *Id.* at 8.  These concerns included musicians "feel[ing] unsafe," and facing "untenable working conditions," "turmoil," or the "negative impact their return would create for the work environment."  *Id.*

Local 802 then initiated the review process required in the CBA for an Article XIV non-reengagement—a process that does not apply to an Article VII disciplinary termination. In accordance with Article XV.A, the Orchestra elected from its ranks a nine-member Dismissal Review Committee ("DRC") to evaluate the propriety of the non-reengagement and make a recommendation to Local 802 as to whether it should be contested.  As summarized in the Local 802 Executive Board's decision:

> [E]very member of the DRC expressed revulsion at the abuse of power and pattern of behavior discussed in [the Executive Summary] . . . Several members of the DRC said the acts described in the reports were consistent with stories they had heard or things they had witnessed over the years . . . Several prominent musicians on the DRC said they would resign from the Orchestra if Muckey and Wang were brought back; others said that they, and most of their colleagues, either would "not ever" take the stage with them or would feel uncomfortable doing so.

Davis Decl., Ex. H at 3.  The DRC unanimously recommended that Local 802 not contest Plaintiff's non-reengagement.  *Id.* at 6.

The Local 802 Executive Board then met to decide how to proceed.  Although not contractually required to do so, it invited Plaintiff to submit a written statement and make an oral

_____

misconduct within investigations raises the specter of re-harming those reporting abuse."  *Id.*, slip. op. at 3.

presentation to the Board, both of which he did.  The Executive Board's deliberative process is described in detail in its November 4, 2024, decision.  In short, after hearing the oral presentations, reviewing the written submissions and the Executive Summary, and analyzing the relevant CBA provisions, the Board stated:

> We have carefully read the statements from Muckey and Wang and listened to what they said to us in their presentations . . . With respect to Muckey, we . . . do not find his denials sufficient to overcome the testimony of the witness whom the investigator found credible and the pattern of conduct she described.

*Id.* at 8.  The Board found significant the fact that "all DRC members, as well as a supermajority of their colleagues in the Orchestra who spoke to the investigator, either will refuse to take the stage with Muckey and Wang or do not feel comfortable working alongside them." *Id.* at 8. Concluding that "if this occurs, the NY Phil will not be able to stage performances," and based on all the evidence before it, the Executive Board determined not to contest Plaintiff's non-reengagement in arbitration.   The instant action followed.

## STATEMENT OF FACTS

The Parties

Local 802 is a labor union that represents thousands of professional musicians, including musicians employed by the Society.  FAC ¶8.  The Orchestra is a premiere symphony orchestra based in New York City.  *Id.* ¶¶2, 9.  Local 802 and the Society have been parties to a series of successive CBAs.  *Id.* ¶17; *see also* Davis Decl., Ex. A.  Plaintiff, an Associate Principal and Third Trumpet in the Orchestra, has held a tenured position in the Orchestra since 2008.  FAC ¶15.

The Events Leading up to Plaintiff's Non-Reengagement

On April 12, 2024, an article, entitled "A Hidden Sexual-Assault Scandal at the New York Philharmonic" appeared on *Vulture*, an online *New York Magazine* website.  *Id.* ¶52;

Davis Decl., Ex. B.  The article recounted prior sexual misconduct allegations against Plaintiff

and questioned why he continued to perform in the Orchestra.  It noted that "[i]nterviews with

current and former musicians and orchestra staff . . . reveal[ed] that some employees, particularly

female employees, continue to feel unsafe." *Id.*  For many members of the Orchestra, this was

the first time they had learned of the allegations against Plaintiff, as the 2020 Award had not

been distributed or discussed with them.  FAC ¶41; Davis Decl., Ex. H at 1.

Following the publication of the *Vulture* article, Orchestra musicians expressed

concerns to the Society and Local 802 about their safety.  *See* Davis Decl., Ex. H at 1-2.  The

Society then placed Plaintiff and Wang on a paid administrative leave, while it determined how

to proceed.  FAC ¶¶56, 58, 61, 77(b), (e); Davis Decl., Ex. D.  Although Plaintiff

mischaracterizes the Society's action as a "suspension," FAC ¶61, he does not dispute the fact

that his salary and benefits continued during the administrative leave.  *See* Davis Decl., Ex. D.

On April 15, 2024, the *New York Times* published an article concerning the

*Vulture* piece.  FAC ¶¶64, 77(c), 80(a); Davis Decl., Ex. C.  The article quoted the following

statement made by the Philharmonic Orchestra Committee, a committee of rank-and-file

musicians, issued shortly after the *Vulture* piece: "[It is] the overwhelming sentiment of the

orchestra that . . . we don't believe [the prior sexual assault allegations] are isolated incidents

involving Matt Muckey and Liang Wang."  FAC ¶64; Davis Decl., Ex. C.  The Committee

criticized the Society's practice of "not taking musician complaints seriously so musicians often

do not feel safe in raising accusations of sexual harassment and assault."  *Id.*  The Committee

then called on the Society to take action to provide a safe workplace.  *Id.*

The *New York Times* article also contained a statement from the Local 802

President regarding the Society placing Plaintiff (and Wang) on temporary paid administrative

leave while it looked into the complaints it had received: "[T]he decision to keep Mr. Wang and Mr. Muckey offstage *for the time being* 'are good first steps but they can't be the last . . . As a woman, a musician, and a new union president, I am horrified by what was in the story and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long.'" (emphasis added).  FAC ¶80(a); Davis Decl., Ex. C.

On April 18, 2024, the Society retained an investigator, Tracey Levy, to follow up on the complaints it had received and determine whether there were any additional sexual misconduct allegations against any musician in the Orchestra.  FAC ¶¶77(f), 93; Davis Decl., Exs. D, F.  It also announced publicly that it was undertaking an independent investigation into its workplace culture.  FAC ¶77(e), 92; Davis Decl., Ex. D.

Soon after being placed on temporary administrative leave, Plaintiff demanded that Local 802 seek enforcement of the 2020 Award.  FAC ¶¶85, 87, Davis Decl., Ex. E.  On April 26, 2024, Local 802 responded that the Union would await the results of the Society's investigation before determining how to proceed.  FAC ¶¶88, 90; Davis Decl., Ex. F.

On October 15, 2024, following the conclusion of Levy's six-month investigation, the Society issued notices of non-reengagement to Plaintiff and Wang pursuant to Article XIV of the CBA.  FAC ¶¶127, 133; Davis Decl., Ex. G.

After being advised that Plaintiff wished to protest his non-reengagement, Local 802, in accordance with Article XV of the CBA, directed the Orchestra to elect a nine-member DRC.  FAC ¶¶146, 188.  It then asked the Society for the Executive Summary, *id.* ¶147, which the Society agreed to provide as long as the Union signed a confidentiality agreement.  *Id*.  Under the agreement, the Union was permitted to allow members of the DRC and Plaintiff to

review the Executive Summary if a Union representative was present during the review.  *Id.* ¶¶150, 190.

The DRC met on October 23, 2024, reviewed the Executive Summary, had a lengthy discussion about the propriety of Plaintiff's non-reengagement, and then unanimously recommended that Local 802 not contest it in arbitration.[4]  FAC ¶192; Davis Decl., Ex. H at 3. On October 25, 2024, in accordance with Article XV, the DRC met with the Local 802 President and Deborah Borda, Executive Advisor to the Society's Board of Directors.  Davis Decl., Ex. H at 3.  At that meeting:

> The DRC members reiterated the views they had expressed in the October 23 meeting about how unsafe and/or unsettled they and their colleagues would feel if Muckey . . . returned . . . [T]hey explained that many of them knew about or suspected the kind of conduct described in the Executive Summaries, which they found abhorrent.  They were particularly disturbed by the palpable lack of contrition or empathy shown by . . . Muckey . . . in [his] interviews with the investigator.

*Id.*

On November 1, 2024, the Union's Executive Board met to review the DRC's recommendation.  FAC ¶193; Davis Decl., Ex. H at 4.  Plaintiff was given the opportunity to submit a written position statement and orally present his position to the Board, both of which he did.  FAC ¶¶187, 193; Davis Decl., Ex. H at 4.

On November 4, 2024, the Executive Board issued a unanimous decision not to contest Plaintiff's non-reengagement.  FAC ¶196; Davis Decl., Ex. H.  The Board explained that it had reached this conclusion after considering the Executive Summary, Plaintiff's written submission and oral presentation, the CBA, the fact that the Society might not be able to stage

---

[4] As noted in the Local 802 Executive Board's decision, the DRC considered Plaintiff's and Wang's Executive Summaries separately.  Davis Decl., Ex. H. at 3.

performances if Plaintiff returned to work, and the unanimous recommendation of the DRC.

Davis Decl., Ex. H. It concluded:

> Muckey . . . relied heavily on the just cause standard, which is inapplicable here…[W]e disagree with his view that his dismissal will set a 'dangerous precedent' that will jeopardize every tenured musician. The circumstances here are unlike any that the Orchestra has ever experienced. In that regard, although Muckey 'categorically denies' engaging in *any* of the misconduct in the report, we rely on the testimony that was credited by the investigator in her report, which is consistent with a pattern she identified of Muckey failing to secure meaningful consent from women with whom he had sex.
>
> We do, however, agree with Muckey's admonition that we have an 'obligation to represent every' member of the bargaining unit, fairly and without discrimination. That obligation requires us to give significant weight to the fact that 2/3 of the members of the Orchestra who spoke to the investigator either will not take the stage or will feel extremely uncomfortable and/or unsafe if Muckey returns. This fact is central to our decision that Muckey's dismissal was appropriate under Article XIV.

*Id.* at 5 (emphasis in original).

<u>Procedural Posture and Claims Raised</u>

Plaintiff brought this lawsuit on May 1, 2024. Dkt. 1. On June 5, 2024, the

Society and the Union filed motions to dismiss Plaintiff's complaint. Dkts. 21-26. On July 29,

2024, Plaintiff filed a motion for partial summary judgment. Dkt. 45. On March 4, 2025, the

Court issued an order granting Plaintiff leave to file an amended complaint, denying as moot

Defendants' motions to dismiss, and denying Plaintiff's pending motion for partial summary

judgment. Dkt. 81. On April 10, 2025, Plaintiff filed the First Amended Complaint. Dkt. 85.

Plaintiff asserts four claims against Local 802: 1) a hybrid claim under Section

301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("Section 301"), for

breach of the CBA and the Union's duty of fair representation ("DFR") (First Claim for Relief),

2) a Title VII discrimination claim (Third Claim for Relief); 3) a New York State Human Rights

Law ("NYSHRL") discrimination claim (Fifth Claim for Relief), and 4) a New York City Human Rights Law ("NYCHRL") discrimination claim (Seventh Claim for Relief).

Plaintiff's Section 301/DFR claim is threefold: First, he claims that the Union breached its DFR by refusing to file an action to enforce the 2020 Award in response to Plaintiff's placement on temporary paid administrative leave pending the results of the Society's investigation; second, he argues that Local 802's decision not to arbitrate his non-reengagement violated the DFR; and third, he asserts that a quote from Local 802's President in a *New York Times* article constituted a separate breach of the DFR.

As explained in Part II, Plaintiff's Section 301/DFR claim should be dismissed because Plaintiff: 1) fails to plausibly allege a breach of the CBA and 2) fails to plausibly allege arbitrary, discriminatory, or bad faith conduct by Local 802. As discussed in Part III, Plaintiff's federal, state and city sex discrimination claims against the Union should be dismissed because he fails to plausibly allege any of the essential elements of these claims. Finally, as outlined in Part IV, his state and city discrimination claims also fail because they are preempted by Section 301 of the LMRA and he fails to allege that every member of Local 802 ratified the Union's actions, an essential element of these claims under *Martin v. Curran*, 303 N.Y. 276 (1951).

## ARGUMENT

## I.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claims must be more than just "conceivable" or "speculative." *Twombly*, 550 U.S. at 555, 570. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must be

dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

On a Rule 12(b)(6) motion, the court may consider documents whose authenticity is not in dispute which, although not attached to the complaint, a plaintiff refers to or relies on in the complaint. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000); *see also Garnes v. Pritchard Indus., Inc.,* No. 20-cv-3843 (PAE) (SLC), 2023 WL 3980693, at *1, n.1 (S.D.N.Y. May 23, 2023), *report and recommendation adopted*, 2023 WL 3977882 (S.D.N.Y. June 13, 2023). Additionally, if a plaintiff partially quotes or attaches documents integral to a complaint, the court may "consider the full text of those documents in ruling on [a] motion to dismiss." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *Griffin v. Facebook*, No. 19-cv-7821 (CS), 2020 WL 5645986, at *3 (S.D.N.Y. Sept. 21, 2020). Moreover, if a document incorporated by reference in a complaint contradicts the plaintiff's conclusory allegations in the complaint, the court is not required to accept the plaintiff's contradictory allegations as true. *See Batson v. Rim S.A. Acquisition, LCC*, No. 15-cv-07576 (ALC), 2016 WL 6901312, at *3 (S.D.N.Y. Nov. 22, 2016) (citing *I. Meyer Pincus*, 936 F.2d at 762).

## II.     PLAINTIFF FAILS TO STATE A HYBRID SECTION 301/DUTY OF FAIR REPRESENTATION CLAIM.

### A.     The Stringent Section 301/Duty of Fair Representation Standard

In order to prevail on a Section 301/DFR claim, a plaintiff must establish *both* that the employer breached the CBA *and* that the union violated its DFR. *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *see also Barrett v. Loc. 804 Union*

*Bhd. of Teamsters (IBT)*, No. 22-cv-06925 (NCM)(LB), 2024 WL 1345218, at *4 (E.D.N.Y. Mar. 28, 2024). As the Supreme Court explained in *DelCostello v. International Brotherhood of Teamsters*, claims for breach of a CBA and the DFR are "inextricably interdependent." 462 U.S. 151, 164–65 (1983). A failure to prevail on a breach of contract claim necessarily results in a failure to prevail on a DFR claim. *Id.*; *see also Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 33 (2d Cir. 2000); *Jiggetts v. Loc. 32BJ, SEIU*, No. 10-cv- 9082 (DAB) (JCF), 2011 WL 4056312, at *6 (S.D.N.Y. Aug. 10, 2011), *report and recommendation adopted*, No. 10-cv-9082 (DAB), 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011); *Smith v. Brookhaven Sci. Assocs., LLC*, 473 F.Supp.3d 159, 165 (E.D.N.Y. 2020), *aff'd*, 848 F.App'x 57 (2d Cir. 2021).

With respect to the DFR, courts afford unions "wide latitude" in making decisions about whether to pursue a particular grievance. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991); *Vaca v. Sipes*, 386 U.S. 171, 191–93 (1967); *see also Cappelli v. Jack Resnick & Sons, Inc.*, No. 13–cv–4381 (GHW), 2014 WL 4188084, at *6 (S.D.N.Y. Aug. 22, 2014) (dismissing breach of DFR claim where union reasonably determined that plaintiff's CBA claims lacked merit). A union breaches the DFR only if its conduct was discriminatory, in bad faith, or "so far outside a 'wide range of reasonableness'" as to be "wholly 'irrational' or 'arbitrary.'" *O'Neill*, 499 U.S. at 78 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).

Under established DFR precedent, to state a claim against a union for breach of the DFR, a plaintiff must plausibly allege that the union: (1) for the "arbitrary" DFR prong, acted without any "rational basis," *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998) (union is accorded "room to make discretionary decisions"); (2) for the "discriminatory" DFR prong, acted "invidious[ly]," *O'Neill,* 499 U.S. at 81, with discrimination that was "intentional,

severe, and unrelated to legitimate union objectives, " *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971); or (3) for the "bad faith" DFR prong, acted so fraudulently or dishonestly as to intentionally mislead the plaintiff, as demonstrated by "'substantial evidence of fraud, deceitful action or dishonest conduct.'" *Id.* at 299 (quoting *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)); *see also Spellacy v. Air Line Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). Evidence that a union made a mistake in judgment is insufficient to establish a DFR breach. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73, 376 (1990).

   B. Plaintiff Fails to Plausibly Allege a Breach of the Collective Bargaining Agreement.

   Plaintiff's asserted breach of the CBA rests on two exceptionally slim reeds: (1) the notion that the Society breached the 2020 Award and the CBA by placing him on a fully paid administrative leave pending an investigation; and (2) the claim that the Society could only terminate his employment for "just cause." FAC ¶¶242, 245. The 2020 Award, however, only required the Society to reinstate Plaintiff *in 2020* based on the Arbitrator's finding that the Society had not proven by "clear and convincing evidence" at that time that it had "just cause" under Article VII of the CBA to terminate Plaintiff's employment. *Id.* ¶¶34, 38, 46; Davis Decl., Ex. H at 1 n.1. As Plaintiff concedes, the Society fully complied with the 2020 Award at the time of its issuance. FAC ¶48.

   The 2020 Award nowhere guarantees Plaintiff the right to permanent employment regardless of the occurrence of subsequent events. *See, e.g.*, *Int'l Chem. Workers Union , Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 45–46 (2d Cir. 1985) (employee's layoff was not prohibited by prior award ordering employee's reinstatement because the "arbitrator's order of reinstatement did not guarantee [the employee] 'perpetual job security'") (quoting *Chi.*

*Newspaper Guild v. Field Enters., Inc.*, 747 F.2d 1153, 1156 (7th Cir.1984)). Here, the subsequent events included a witness credibly testifying to an independent investigator that Plaintiff had "sexually assaulted or raped her after she became intoxicated at a party he had invited her to when she was a freshman college student and he was a member of the Orchestra," conduct which the investigator found to be part of a larger pattern of Plaintiff making "sexual advances toward . . . women without much regard to indicators of a lack of consent." Dkt. No. 101-6 at 9. The subsequent events also included two-thirds of the Orchestra indicating that they either would not take the stage or would feel extremely uncomfortable and/or unsafe if Plaintiff returned. *Id.* at 8. It is nonsensical to argue that the 2020 Award sanctioned unlawful and unwelcome behavior by Plaintiff during the entire course of his employment in the Orchestra, regardless of its severity.

Additionally, there is simply no plausible argument that the Society was required to show "just cause" for placing Plaintiff on a temporary, paid administrative leave and later for issuing a notice of non-reengagement. *First*, the Society did not discipline Plaintiff when it placed him on a temporary paid administrative leave pending the results of an investigation. Although Article VII.E.7 of the CBA provides that the "Society may take *disciplinary* measures . . . for other just cause," Davis Decl., Ex. A (emphasis added), Plaintiff does not allege, nor could he, that the Society charged him with any violation of its rules when it placed him on paid administrative leave.

Indeed, arbitrators have consistently held that because placement on paid administrative leave is not a disciplinary measure, the just cause provisions of a CBA are not implicated. *See, e.g.*, *Oakland Univ.*, 2019 BA LA 51 (Scales 2019) (because a suspension with pay lacks characteristics normally associated with discipline, a just cause analysis is irrelevant);

*Detroit Public Schools Emp.*, 2007 BNA LA Supp. 119026 (McDonald 2007) (suspension with pay did not constitute discipline); *United Nurses and Allied Profs., Loc.__*, 2021 BNA LA 193 (Ryan 2021) ("A paid administrative leave places the employee in a non-disciplinary status, during which the employer investigates whether the misconduct occurred at all . . . "); *see also Tenn. Valley Auth. v. Salary Pol'y Emp. Panel*, No. 89-cv-065, 1989 WL 241715, at *3 (E.D. Tenn. Sept. 20, 1989) (vacating arbitration award sustaining grievance for *unpaid* suspension pending investigation because arbitrator applied just cause standard, which is reserved for disciplinary actions; in contrast, "a suspension pending investigation does not involve disciplinary action . . . "), *aff'd*, 917 F.2d 564 (6th Cir. 1990).

 *Second*, the Society's October 15 notice of non-reengagement was fully compliant with the CBA. As discussed *supra*, Article XIV is a severance provision that permits the Society to dismiss a musician through a process that is entirely separate and distinct from a discharge for "just cause" under Article VII.E.7. In contrast to some collective bargaining agreements in the entertainment industry which expressly limit the use of non-reengagement provisions to dismissals for artistic reasons, *see* FAC ¶132, Article XIV contains no such limitation on the circumstances in which it may be applied. Although Plaintiff was unhappy with the Society's choice of paying him for a year under Article XIV rather than summarily terminating him without pay under Article VII.E, the choice was not his to make. Rather, the Union and the Society negotiated a CBA with two distinct routes to terminate a musician's employment. Article XIV is unambiguous, and the parties who bargained the CBA agree that it means what it says.

 As the Second Circuit has explained, "[w]hen courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor

policies . . . When provisions in the agreement are unambiguous, they must be given effect as written." *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney*, 230 F.3d 569, 576 (2d Cir. 2000) (internal citations omitted). In situations similar to those here, courts have consistently deferred to the clear and unambiguous language of the CBA and the mutual intent of the parties. *See, e.g.*, *Russo v. 210 Riverside Tenants, Inc.*, No. 10-cv-914 (DLC), 2010 WL 2758192, at *3 (S.D.N.Y. July 13, 2010) (plain language of CBA defeated plaintiff's hybrid Section 301/DFR claim); *Krakowski v. Am. Airlines, Inc.*, 610 B.R. 714, 722 (S.D.N.Y. 2019), *aff'd*, 834 F.App'x 660 (2d Cir. 2021) (affirming dismissal of Section 301/DFR claim where employer had complied with clear and unambiguous language of CBA); *Walczak v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 22-cv-00927 (SVN), 2023 WL 5334365, at *9 (D. Conn. Aug. 18, 2023) (dismissing hybrid Section 301/DFR claim against union where plain language of CBA foreclosed plaintiff's breach of contract claim even though court found plaintiff plausibly alleged union had acted in bad faith by not filing grievance).

### C. Plaintiff Fails to State a Claim for Breach of the Duty of Fair Representation

Plaintiff claims that Local 802 breached its DFR by refusing to seek enforcement of the 2020 Award, FAC ¶244, by declining to contest his non-reengagement in arbitration, *id.* ¶247, and by the Local 802 President's statement that was quoted in the *New York Times* article, *Id.* ¶243. As explained below, none of these allegations supports a plausible claim for breach of the DFR.

#### i. Local 802 Reasonably Determined that There was No Basis to Seek Enforcement of the 2020 Award When Plaintiff was Placed on a Paid Administrative Leave.

As explained in Part II.A, to the extent that Plaintiff's DFR rests on Local 802's refusal to seek enforcement of the 2020 Award, it fails because Plaintiff has failed to allege a

plausible violation of the 2020 Award.  In any event, this Circuit has made clear that a union

does not violate the DFR when it has a reasonable basis not to seek enforcement of an arbitration

award.  *See, e.g.*, *Sanozky v. Int'l Ass'n of Machinists and Aerospace Workers,* 415 F.3d 279,

283 (2d Cir. 2005) ("the failure to enforce an arbitration award must still be viewed in the overall

test of whether such action was arbitrary, discriminatory or in bad faith") (footnote omitted);

*Hardwick v. Sunbelt Rentals, Inc.*, 719 F.Supp.2d 994, 1006 (C.D. Ill. 2010) (no DFR violation

where union declined to enforce award based on reasonable doubts as to its applicability and

concerns about the "impact on the other bargaining unit members"), *aff'd*, 430 F.App'x 536 (7th

Cir. 2011).  Such is the case here, as the Society fully complied with the 2020 Award at the time

of issuance and Local 802 reasonably determined that it was not appropriate to seek its

enforcement four years later based on conduct that was entirely distinct from the conduct

underlying the 2020 Award.  *See* Davis Decl., Ex. G.

       Moreover, Local 802 did not refuse to represent Plaintiff when he was placed on

paid administrative leave but rather deferred its decision pending the investigation results.  *See*

FAC ¶57; *see also* Davis Decl., Ex. G.  It is well established that a union does not breach its

DFR by awaiting the results of an investigation before deciding whether to file a grievance.  *See,*

*e.g.*, *Ustad v. Int'l Bhd. of Teamsters, Loc. 747,* No. 10-cv-3894 (FB)(RER), 2014 WL 1311573,

at *2–3, *6 (E.D.N.Y. Apr. 1, 2014) (no DFR breach where union filed grievance only after

employee was terminated, and not while he was on paid leave pending investigation), *aff'd*, 607

F.App'x 67 (2d Cir. 2015); *Feldleit v. Long Island R.R.,* 723 F.Supp. 892, 894, 897 (E.D.N.Y.

1989) (no DFR breach in case where union filed grievance only after employee was demoted and

not while he was on paid leave pending investigation); *George v. Nw. Airlines, Inc.,* 351

F.Supp.2d 310, 313, 319 (E.D. Pa. 2005) (no DFR breach in case where union did not file

grievance while employer investigated allegations of wrongdoing). Indeed, it is highly rational, and certainly within the Union's "wide range" of discretion, *O'Neill*, 499 U.S. at 78, to await an evaluation of the facts and circumstances before deciding whether to pursue a grievance to arbitration.

      ii.   <u>Local 802 Did Not Breach its Duty of Fair Representation When It Declined to Arbitrate Plaintiff's Non-Reengagement.</u>

Plaintiff also fails to plausibly allege that the Union's decision not to challenge his non-reengagement was arbitrary, discriminatory or in bad faith. A union-represented employee has no absolute right to have his grievance submitted to arbitration and a union's refusal to arbitrate a grievance does not, standing alone, constitute a breach of the DFR. *See Vaca*, 386 U.S. at 194–95; *see also Dillard v. SEIU Loc. 32BJ*, No. 15-cv-4132 (CM), 2015 WL 6913944, at *5 (S.D.N.Y. Nov. 6, 2015). "Even if the Union made an erroneous determination regarding the merit of plaintiff's claim, so long as the decision not to arbitrate was made in good faith . . . the Union cannot be held liable for unfair representation." *Ross v. Commc'ns Workers of Am., Loc. 1110*, No. 91-cv-6367, 1995 WL 351462 (S.D.N.Y. June 9, 1995) (quoting *DeGennaro v. N.Y.C. Hous. Auth.*, No. 92-cv-5985 (MBM), 1995 WL 37850, at *6 (S.D.N.Y. Jan. 31, 1995)), *aff'd*, 100 F.3d 944 (2d Cir.1996); *see also Scales v. N.Y. Hotel & Motel Trades Council, Loc. 6,* No. 21-cv-8142 (JPC), 2023 WL 1779617, at *7 (S.D.N.Y. Feb. 6, 2023) (union's determination not to pursue a grievance, "correct or not," did not rise to level of arbitrariness where it reflected a "reasonable interpretation of the MOA").

Indeed, it is well-established that the "duty of fair representation is not a straitjacket which forces unions to pursue grievance remedies . . . in every case where an employee has a complaint . . ." *Carrion v. Loc. 32B–32J SEIU*, No. 03-cv-1896, 2005 WL 659321, at *6 (S.D.N.Y. 2005) (quoting *Ayala v. Union de Tronquistas de P.R., Loc. 901*, 74

F.3d 344, 345–46 (1st Cir. 1996)). Rather, "[s]o long as the union's action is based on a reasoned decision, it will not be found arbitrary." *Naprstek v. Marriott Int'l*, No. 21-cv-08560(CM), 2024 WL 113804, at *11 (S.D.N.Y. Jan. 10, 2024) (cleaned up).

        In light of the clear contractual language in Article XIV, the investigative report on which the Society's decision was based, and the unanimous recommendation of the DRC—the members of the Orchestra elected by their peers to evaluate this matter—Plaintiff cannot plausibly claim that the Union's decision not to arbitrate his case was: 1) wholly irrational, *Marquez*, 525 U.S. at 45–46, 2) invidiously discriminatory and unrelated to legitimate union objectives, *O'Neill*, 499 U.S. at 8, or 3) deceitful and fraudulent, *Lockridge*, 403 U.S. at 299, 301; *Spellacy*, 156 F.3d at 126. The Executive Board's decision meticulously describes the basis on which it decided not to arbitrate Plaintiff's non-reengagement. FAC ¶118; Davis Decl., Ex. H. First, it conducted a careful contractual analysis and concluded that the Society did not breach the CBA by terminating Plaintiff's employment under Article XIV. Davis Decl., Ex. H at 4-5. Before deciding whether to arbitrate Plaintiff's non-reengagement, it solicited and considered Plaintiff's written and oral statements, the unanimous recommendation of the DRC, and the Executive Summary (which detailed and credited allegations concerning Plaintiff's repeated failure to ensure meaningful consent in his sexual encounters). *Id.* at 5-8. It also took into consideration the fact that "all DRC members, as well as a supermajority of their colleagues in the Orchestra who spoke to the investigator, either will refuse to take the stage with Muckey and Wang or do not feel comfortable working alongside them." *Id.* at 8. This level of due consideration and prudent decision-making belies the notion that the Union acted irrationally, invidiously, or deceitfully.

Although Plaintiff speculates in a baldly conclusory fashion that the Society and the Union colluded to "devise[ ] a plan to remove him from the orchestra," FAC ¶233, he has not alleged one fact from which it could even be inferred that this occurred. His conclusory assertions, standing alone and in sharp contrast to the facts found by the investigator, simply do not state a viable DFR claim. *See, e.g*, *Bejjani v. Manhattan Sheraton Corp*., No. 12-cv-6618 (JPO), 2013 WL 3237845, at *14–16 (S.D.N.Y. June 27, 2013) (conclusory allegation that union and employer had worked together to undermine settlement agreement failed to support plausible DFR claim), *aff'd*, 567 F.App'x 60 (2d Cir. 2014); *Nunes v. United Bhd. of Carpenters & Joiners of Am*., No. 20-cv-1092 (ALC) (SDA)*, 2021 WL 1172625, at *5 (S.D.N.Y. Mar. 29, 2021) (conclusory allegations of conspiracy or collusion between union and employer failed to establish a DFR claim).

In sum, the Union painstakingly weighed a variety of factors in determining whether to arbitrate Plaintiff's non-reengagement. Most fundamentally, as the CBA was not violated, there was not a credible breach of contract claim that it could assert in an arbitration. It also considered the safety and concerns of other musicians, as well as the inability of the Philharmonic to stage performances without a majority of the Orchestra. In these circumstances, there simply is no basis for concluding that Local 802 breached its DFR in declining to proceed to arbitration. *See, e.g.*, *Pyzynski v. N.Y. Cent. R. Co.*, 421 F.2d 854, 864 (2d Cir. 1970) (A union does not breach its DFR when it makes a good faith decision not to institute legal proceedings, "for a union must be allowed to exercise reasonable discretion as to how it can best satisfy the interests of the individual as well as the interests of the collective unit."); *Spellacy*, 156 F.3d at 129 (union fairly balanced "competing concerns" of members); *Alvarado v. PBM, LLC*, No. 21-cv-01481 (SALM), 2022 WL 3566630, at *2 (D. Conn. Aug. 18, 2022).

<u>Local 802's Statement to the Press Did Not Constitute a Breach of its Duty of Fair Representation.</u>

Finally, Plaintiff has failed to credibly allege that Local 802's statement in the *New York Times* violated its DFR.  The Union did not "endorse" Plaintiff's "suspension," FAC ¶43, but merely acknowledged that by placing Plaintiff "offstage for the time being," the Society was taking a "good first step" by finally responding to member concerns about sexual harassment.  Davis Decl., Ex. C. Local 802's statement reasonably balanced the interests of the other members of the Orchestra, who had voiced concerns about their safety and other instances of sexual misconduct by Plaintiff.  *See Good Samaritan Med. Ctr. v. NLRB*, 858 F.3d 617, 640 (1st Cir. 2017) (union may reasonably consider one employee's mistreatment of another as it is relevant to its representation of its constituency as a whole); *Alston v. Int'l Ass'n of Firefighters, Loc. 950*, 998 F.3d 11, 27 (1st Cir. 2021) (union had an "obligation both to protect its members from perceived threats to their safety and to ensure that any discipline . . . comported with the CBA"); *see also Humphrey*, 375 U.S. at 349–50 (As "[c]onflict between employees represented by the same union is a recurring fact[,]…[t]o remove or gag the union in these cases" would be inappropriate).  Viewed in the context of the Orchestra members' stated concerns about the Society's non-responsiveness when dealing with allegations of sexual misconduct, the statement can hardly be viewed as "arbitrary" or "without rational basis."  *Marquez*, 525 U.S. at 46.

The statement also was not discriminatory simply because it referenced the President's status as a woman.  It did not suggest that the Union would treat men differently from women in grievance processing or collective bargaining, and Plaintiff does not cite a single instance of the Union having done so.  Indeed, the Union pursued Plaintiff's 2018 termination to arbitration, a fact that is entirely inconsistent with the claim that it discriminates against men. The statement certainly did not denigrate Plaintiff's status as a man or men in general.  Instead,

the Union's President simply recognized the fact that many of the other musicians who had reported safety concerns were women and that, as a woman, she was "horrified" by allegations of sexual violence.  Davis Decl., Ex. C.  This statement cannot plausibly be said to constitute discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Lockridge*, 403 U.S. at 301.

Additionally, the statement did not contain "substantial evidence of fraud, dishonesty, and other intentionally misleading conduct." *Id.* at 299.  The President was not quoted as saying that the temporary paid leave was a "good first step" toward Plaintiff's termination.  Rather, read in the context of the entire quote, she commended the Philharmonic for beginning to take steps to investigate sexual harassment allegations in the Orchestra.  This values statement can hardly be viewed as arbitrary, discriminatory, or made in bad faith.

Moreover, the statement did not even implicate the DFR because it did not involve the Union's representation of Plaintiff with his employer: "'[T]he duty of fair representation is co-extensive only with the power of exclusive representation.'"  *Price v. UAW*, 795 F.2d 1128, 1134 (2d Cir. 1986) (quoting *Kolinske v. Lubbers*, 712 F.2d 471, 481 (D.C. Cir. 1983)), *vacated on other grounds*, 487 U.S. 1229 (1988).  "Given this, '[i]f a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation.'"  *Id.* (alteration in original) (quoting *Freeman v. Loc. Union No. 135*, 746 F.2d 1316, 1321 (7th Cir.1984)).  Here, the Union was not acting in a representational capacity, *i.e.*, not in connection with the negotiation or administration of the CBA, when the President commented to the press about a matter of significant concern to the entire bargaining unit.

In any event, Plaintiff fails to allege any causal connection between Local 802's statement to the press and the damages alleged. Any reputational harm he experienced resulted from the April 12 *Vulture* article, and not the Union's statement after he was placed on paid leave.

### III. PLAINTIFF FAILS TO STATE A SEX DISCRIMINATION CLAIM UNDER TITLE VII.

To state a Title VII discrimination claim against a union, a plaintiff must plausibly allege that (1) the employer breached the CBA; (2) the union breached its duty of fair representation; and (3) the Union's conduct was motivated by discriminatory animus. *See Coggins v. 297 Lenox Realty Co.*, 108 F.3d 1369 (2d Cir. 1997); *Ross*, 1995 WL 351462, at *5–14; *Oparaji v. United Fed'n of Tchrs.*, 418 F.Supp.2d 139, 146 (E.D.N.Y. 2006) ("Title VII claims against labor organizations are subject to an analysis different from that applicable to Title VII claims against employers.").[5] Here, as explained in Sections II.A and II.B above, Plaintiff fails to plausibly allege either that the Society breached the CBA or that the Union breached its DFR. Plaintiff's Title VII fails on this basis.

Additionally, Plaintiff's failure to identify *any* similarly situated females whose grievances were submitted to arbitration is fatal to his claim. *See, e.g.*, *Von Maack v. 1199SEIU United Healthcare Workers E.*, No. 14-cv-4360 (PKC), 2014 WL 5801349, at *5 (S.D.N.Y. Nov. 7, 2014) (dismissing Title VII claim against union where plaintiff failed to identify "any similarly-situated black union members whose grievances were processed in a more satisfactory

---

[5] As the court explained in *Agosto v. Corr. Officers Benevolent Ass'n.*, 107 F.Supp.2d 294, 305 (S.D.N.Y. 2000), a plaintiff may also bring a Title VII claim against a union under a disparate impact theory, in which case the plaintiff need not establish discriminatory motive. Here, however, Plaintiff is not asserting a disparate impact claim.

manner"); *Jenkins v. Arcade Bldg. Maint.,* No. 98-cv-3133 (RWS), 1999 WL 1051105, at *5 (S.D.N.Y. Nov. 19, 1999) (same).

Finally, Plaintiff has failed to allege any facts or circumstances that give rise to an inference of discrimination. *See Dillard*, 2015 WL 6913944, at *7 ("In order to survive a motion to dismiss, the plaintiff must allege facts supporting an inference of discrimination, and not simply rely on the union's failure to take the demanded action on his or her grievance."); *accord Bryant v. Verizon Commc'ns, Inc.,* 550 F.Supp.2d 513, 533 (S.D.N.Y. 2008). Indeed, as stated earlier, the fact that the Union previously arbitrated his dismissal is anathema to a claim of discrimination based on his gender.

The Local 802 President's statement quoted in the *New York Times* does not support a contrary conclusion. As discussed *supra* at 21-22, the President's reference to her status as a woman was simply an acknowledgment of that fact in the context of the larger issue of sexual harassment. Her statement made no reference to Plaintiff's gender and certainly demonstrated no animus towards men in general. A statement is not discriminatory merely because it mentions the speaker's or another individual's gender. *See Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-cv-6278 (VEC), 2018 WL 4625768, at *25 (S.D.N.Y. Sept. 26, 2018) (union representative's remark that "TWU had never had a woman rise to Chassis Maintainer" was "neutral, factual statement devoid of any evidence of gender-based animus"). No more than that occurred here.

## IV. PLAINTIFF'S STATE AND CITY DISCRIMINATION CLAIMS ARE NOT COGNIZABLE

### A. Section 301 of the LMRA Preempts Plaintiff's State and City Claims.

Plaintiff's state and city discrimination claims also fail because they are preempted by Section 301 of the LMRA, which preempts state and local claims that require

interpretation of, or are inextricably intertwined with, the CBA. *See, e.g.*, *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 208–09 (2d Cir. 2019) (NYSHRL and NYCHRL claims preempted by Section 301 where CBA was the "source of the rights" plaintiff "[sought] to vindicate"); *Goodman v. Port Auth. of N.Y. & N.J.*, No. 10-cv-8352, 2011 WL 3423800, at *9 (S.D.N.Y. Aug. 4, 2011) (As the plaintiff's NYSHRL claims against the union alleged violations of the CBA and the union's failure to remedy these breaches, his NYSHRL claim against the union was preempted); *Martinez v. Staten Island Univ. Hosp.*, No. 19-cv-02672 (CBA) (RER), 2020 WL 13837813, at *9 (E.D.N.Y. June 19, 2020) (same). Since Plaintiff's NYCHRL and NYSHRL discrimination allegations amount to no more than his claim that the Society breached the CBA and Local 802 failed to arbitrate this breach, Section 301 preempts these claims. *Whitehurst*, 928 F.3d at 207–08; *see also Goodman*, 2011 WL 3423800, at *9.

B. <u>Plaintiff's State Law Claims Must Be Dismissed Under *Martin v. Curran*.</u>

Plaintiff's state law claims also should be dismissed for failing to meet the pleading requirements of *Martin v. Curran*, which holds that damages are unrecoverable against a voluntary association unless plaintiffs prove "the individual liability of every single member." 303 N.Y. 276, 282 (1951). In the intervening more than seventy years since *Martin*, New York courts have consistently followed it and required plaintiffs to plead and prove that every member of the association authorized or approved the alleged misconduct. *See, e.g.*, *Palladino v. CNY Centro*, 23 N.Y.3d 140, 150–52 (2014); *Goodman*, 2011 WL 3423800, at *10. Courts in the Second Circuit have applied the *Martin* rule to the precise types of claims asserted here. *See, e.g.*, *Girolamo v. Teamsters Loc. 72*, No. 97-cv-9412, 81676, 1998 WL 889039, at *9 (S.D.N.Y. Dec. 21, 1998) (NYSHRL claim); *McIntyre v. Longwood Cent. Sch. Dist.*, No. 07-cv-1337 (JFB) (ETB), 2008 WL 850263, at *13 (E.D.N.Y. Mar. 27, 2008) (NYSHRL claim). *But see Langford v. Int'l Union of Operating Eng'rs, Loc. 30*, 765 F.Supp.2d 486, 511 (S.D.N.Y. 2011); *Ramroop*

*v. Commc'ns Workers of Am. Loc. 1182*, No. 157047/2019, 2022 WL 17574009, at \*3 (N.Y. Sup. Ct. Dec. 8, 2022), *but cf. Palladino*, 23 N.Y.3d at 150–51.

Local 802, a labor organization, FAC ¶20, is a voluntary unincorporated association. *See Douds v. Associated Musicians of Greater N.Y., Loc. 802*, 123 F.Supp. 798, 799 (S.D.N.Y. 1954); *Associated Musicians of Greater N.Y., Loc. 802 v. League of Am. Theatres & Producers, Inc.*, No. 05-cv-2769 (KMK), 2006 WL 3039995, at \*1 (S.D.N.Y. Oct. 25, 2006); *Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*, No. 20-cv-2531 (JS) (AYS), 2022 WL 16755284, at \*5–6 (E.D.N.Y. Aug. 25, 2022) (finding union to be a voluntary association where plaintiff failed to plead otherwise and union's official name did not include any corporate signifier), *report and recommendation adopted*, No. 20-cv-2531(JS) (AYS), 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022); *Cruz v. UAW, Loc. 2300*, No. 18-cv-0048 (GTS) (ML), 2019 WL 3239843, at \*17 (N.D.N.Y. July 18, 2019) (same).

Here, Plaintiff did not, and could not conceivably, contend that Local 802's *entire* membership of thousands of musicians authorized or ratified the alleged misconduct at issue. Accordingly, Plaintiff's state law claims against Local 802 should be dismissed under *Martin v. Curran* and its progeny.

C. <u>Plaintiff Fails to State a Claim for Sex Discrimination under the NYSHRL or NYSHRL.</u>

Plaintiff's claims for sex discrimination under the NYSHRL and the NYCHRL also fail for the reasons outlined in Section III above. *See Cano v. SEIU Loc. 32BJ*, No. 19-cv-8810 (PAE) (KHP), 2021 WL 4480274, at \*15 (S.D.N.Y. Sept. 30, 2021) (applying same standard as Title VII to NYSHRL and NYCHRL claims against union). Plaintiff has failed to identify even one comparator who was "similarly situated" in *any* material respect, let alone "all

material respects." *Novick v. Village of Wappingers Falls*, 376 F.Supp.3d 318, 344 (S.D.N.Y. 2019). Accordingly, his discrimination claim fails.

Likewise, to state a claim under the NYCHRL, an employee must allege that they were treated "less well than other similarly situated employees." *Rodriguez v. Verizon Telecom*, No. 13-cv-6969 (PKC) (DCF), 2014 WL 6807834, at *8 (S.D.N.Y. Dec. 3, 2014). Plaintiff's failure to plausibly allege that there *is* a similarly situated female employee, let alone that he was treated less well than her, is fatal to his NYCHRL claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's First, Fourth, Sixth, and Eighth Claims for Relief should be dismissed with prejudice.

Dated: June 9, 2025
New York, New York

Respectfully submitted,

*/s/ Susan Davis*
Susan Davis
Olivia R. Singer
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022-4869
Tel: (212) 563-4100
sdavis@cwsny.com

*Attorneys for Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians*

## **WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned, an attorney admitted to practice in this Court, hereby certifies that, excluding the parts of the document exempted by Rule 7.1(c), this document contains 8,676 words and therefore complies with the Rule's word-count limitation.

Dated: June 9, 2025
New York, New York

*/s/ Susan Davis*