**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW MUCKEY, <br><br> Plaintiff, <br><br> v. <br><br> THE PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC., AND ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS, <br><br> Defendants. | Case No. 24-cv-03348-AS <br><br> [rel. 1:24-cv-03356-AS, 1:24-cv-03987-AS] <br><br> **ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES TO THE AMENDED VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Defendant The Philharmonic-Symphony Society of New York, Inc. (the "Philharmonic"), by and through its undesigned attorneys, submits this Answer in response to the Amended Complaint, ECF No. 85 ("Amended Complaint"), filed by Plaintiff Matthew Muckey ("Plaintiff").

Unless otherwise stated, capitalized terms herein have the same meaning as in the Amended Complaint. To the extent the Philharmonic uses terms in this Answer defined in the Amended Complaint, that use is not an acknowledgment or admission of any characterization Plaintiff may have ascribed to such defined terms.

No response is required to the various headings, subheadings, and footnotes throughout the Amended Complaint. To the extent that responses are required to such headings, subheadings, and footnotes, they are denied. To the extent that any allegation is not specifically admitted, it is denied.

To avoid any doubt, the Philharmonic denies each and every allegation in the Amended Complaint except as specifically admitted herein. Further, the Philharmonic does not concede that Plaintiff has accurately described any or all documents cited as purported evidentiary support for its factual allegations, nor does the Philharmonic admit to the accuracy of any statements contained

1

in those documents and refers to those documents for their full contents.

The Philharmonic reserves the right to challenge the relevance and admissibility of the allegations and of all sources and documents referred to or purportedly quoted in the Amended Complaint. The Philharmonic further reserves the right to amend, supplement, or rescind any or all of its Answer.

Subject to the foregoing, as and for its answer to the Amended Complaint, the Philharmonic answers as follows:

## INTRODUCTION

1.    The #MeToo movement, which was intended to serve the interests of women who have been victimized by real perpetrators, has unfortunately been used by some as a weapon to destroy the careers of innocent people, who in some instances, are men who are falsely accused of sexual misconduct.

**ANSWER:**    Paragraph 1 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

2.    This case involves the epitome of the #MeToo movement gone awry and a culmination of unlawful events, based upon Plaintiff's sex/gender, that ultimately led to the removal of Plaintiff, a tenured musician, from one of the most prestigious orchestras in the world, the New York Philharmonic.

**ANSWER:**    The Philharmonic admits as to Paragraph 2 of the Amended Complaint only that it is one of the most prestigious orchestras in the world, that Plaintiff is a formerly tenured musician of the Philharmonic, and that it did not reengage Plaintiff's contract for the

2025–2026 season. Answering further, the Philharmonic denies that it violated any law, took any action based upon Plaintiff's sex or gender, that Plaintiff suffered any damages, and that Plaintiff is entitled to any relief whatsoever.

3.    First, Plaintiff was suspended by the Philharmonic with the affirmative consent of his union, Local 802, based upon allegations of sexual misconduct which were published in an online magazine article, that were already found unsubstantiated by an arbitrator but nonetheless injected malicious rumors into the Philharmonic community and beyond about Plaintiff and imposed pressure upon the Philharmonic to remove him from the orchestra to "protect" female musicians.

**ANSWER:**    The Philharmonic admits as to Paragraph 3 of the Amended Complaint only that it placed Plaintiff on administrative leave with pay following the Article's publication. The Philharmonic denies the remaining allegations of Paragraph 3 of the Amended Complaint.

4.    Then, in a collaborative process, using a contrived application of the collective bargaining agreement, which had no other purpose than to find grounds to remove him, the Philharmonic terminated Plaintiff, again with the agreement of Local 802, purporting to justify such action by pointing to a false claim of sexual misconduct made by a woman some 16 years after the consensual encounter.

**ANSWER:**    Paragraph 4 of the Amended Complaint Plaintiff purports to characterize the collective bargaining agreement ("CBA"), which speaks for itself. Accordingly, the Philharmonic respectfully refers the court to the CBA for its full contents and denies any allegations inconsistent therewith. The Philharmonic otherwise denies the allegations in Paragraph 4 of the Amended Complaint.

5.      In this case, societal calls to "believe the woman" went as far as crediting the testimony of such woman, even in the face of messages written by the woman herself, that included statements such as, "awwww you're really the best 😊 **thanks for everything, yes, even the sex. it was pretty good**..." (emphasis added).

**ANSWER:**    Paragraph 5 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic admits that, following a reasonable investigation by the Philharmonic's investigator, its investigator credited the allegations made by the woman referenced in Paragraph 5 of the Amended Complaint that Plaintiff engaged in nonconsensual sex with her. With respect to the remaining allegations, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

6.      As detailed below, the actions by Local 802 and the Philharmonic give rise to essentially two core causes of action.  The first set of causes of action involve hybrid claims against the Philharmonic for its breach of its obligations under the collective bargaining agreement and Local 802's concomitant breach of its duty to Plaintiff to provide him with fair representation. The second set of causes of action for gender discrimination arise under Title VII and its State and City counterparts, where both the Philharmonic and Local 802:  (a) deliberately ignored the overwhelming documentary evidence that Plaintiff was not guilty of wrongdoing; (b) engaged in a sham process calculated to achieve a predetermined finding of wrongdoing; and (c) succumbed to orchestra members' and the classic musical community's demands that Plaintiff be terminated, notwithstanding that there was no evidence of wrongdoing.

**ANSWER:**    Paragraph 6 of the Amended Complaint calls for a legal conclusion, to which no response is required, and contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic states that Paragraph 6 of the Amended Complaint purports to characterize the CBA. Accordingly, the Philharmonic respectfully refers the Court to the CBA and denies any allegations inconsistent therewith. Answering further, the Philharmonic states that Title VII and its State and City counterparts speak for themselves and denies any allegations inconsistent therewith; denies that it breached the CBA, Title VII and its State and City counterparts, or any other laws; denies that Plaintiff suffered any damages; denies that Plaintiff is entitled to any relief whatsoever; and denies the remaining allegations in Paragraph 6 of the Amended Complaint.

**PARTIES**

7.    Mr. Muckey, at all relevant times, was and is a member of Local 802 and is an employee of the Philharmonic.  Mr. Muckey is a male and a citizen of the State of New York.

**ANSWER:**    The Philharmonic admits as to Paragraph 7 of the Amended Complaint only that Plaintiff was a member of Local 802, was an employee of the Philharmonic, and is a male. The Philharmonic denies that Plaintiff is currently an employee of the Philharmonic. The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 7 of the Amended Complaint and therefore denies the same.

8.    Local 802 is the largest local union of professional musicians in the world and its community of musicians includes the New York Philharmonic.  Its principal place of business is located at 322 West 48th Street, #1308, New York, New York 10036.

**ANSWER:**    Paragraph 8 contains allegations directed against another defendant to which no responsive pleading is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic admits only that its musicians are represented by Local 802. The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Amended Complaint and therefore denies the same.

9.    The Philharmonic is a domestic not-for-profit corporation.  Its principal place of business is located at David Geffen Hall, 10 Lincoln Center Plaza, New York, New York 10023.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 9 of the Amended Complaint.

### JURISDICTION AND VENUE

10.    This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 29 U.S.C. § 185 and 42 U.S.C. § 2000e-2, as the counts present a federal question.  In particular, Mr. Muckey states a hybrid claim, against the Philharmonic, pursuant to the Labor Management Relations Act (codified at 29 U.S.C. § 185), for breach of the collective bargaining agreement, and against Local 802, pursuant to § 9(a) of the National Labor Relations Act ("NLRA") (codified at 29 U. S. C. S. § 159(a)) for breach of its duty of fair representation.  Mr. Muckey also states a discrimination claim under Title VII (codified at 42 U.S.C. 2000e-2) based upon the discriminatory acts of both the Philharmonic and Local 802.

**ANSWER:**    Paragraph 10 of the Amended Complaint calls for a legal conclusion, to which no response is required, and contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic states that Paragraph 10 of the Amended Complaint purports to characterize the CBA. Accordingly, the Philharmonic respectfully refers

the Court to the CBA and denies any allegations inconsistent therewith. Answering further, the Philharmonic states that the Labor Management Relations Act and Title VII speak for themselves and denies any allegations inconsistent therewith; denies that it breached the collective bargaining agreement, Title VII and its State and City counterparts, or any other laws; denies that Plaintiff suffered any damages; denies that Plaintiff is entitled to any relief whatsoever; and denies the remaining allegations in Paragraph 10 of the Amended Complaint.

11.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

**ANSWER:**    Paragraph 11 of the Amended Complaint asserts legal conclusions, to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 11 of the Amended Complaint.

12.     Venue properly lies in this judicial district pursuant to 28 U.S.C § 1391(b) and (c), in that Mr. Muckey is a natural person domiciled within this judicial district, Defendants Local 802 and the Philharmonic each maintain an office within the judicial district, and a substantial part of the events giving rise to the actions alleged herein have taken place within this judicial district.

**ANSWER:**    Paragraph 12 of the Amended Complaint asserts legal conclusions, to which no response is required. To the extent a response is required, Defendant denies these allegations.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

A.     **Background**

13.     Mr. Muckey is an internationally recognized, talented musician of the Philharmonic.

**ANSWER:**    The Philharmonic denies the allegation in Paragraph 13 of the Amended Complaint that it employs Plaintiff. Answering further, the Philharmonic is without knowledge

or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Amended Complaint and therefore denies the same.

14.     He commenced his employment at the Philharmonic on June 28, 2006 when he was only 21 years old and, thus, one of the youngest musicians of the Philharmonic.

**ANSWER:**    The Philharmonic admits as to Paragraph 14 of the Amended Complaint only that Plaintiff commenced his employment with the Philharmonic in June 2006 at the age of 21, at which time Plaintiff was one of the Philharmonic's youngest members.  The Philharmonic otherwise denies the allegations in Paragraph 14 of the Amended Complaint.

15.     On or about January 2, 2008, he was granted the esteemed, tenured position at the Philharmonic of Associate Principal and Third Trumpet.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 15 of the Amended Complaint.

16.     As a tenured musician, Mr. Muckey has a lifetime appointment at the Philharmonic, absent dismissal for "just cause."

**ANSWER:**    The Philharmonic admits as to Paragraph 16 of the Amended Complaint only that Plaintiff was a tenured musician at the Philharmonic. The Philharmonic otherwise denies the allegations in Paragraph 16 of the Amended Complaint.

17.     Specifically, Article VII of the Trade Agreement between Local 802 and the Philharmonic (the "collective bargaining agreement" or "CBA") provides as follows:

> ARTICLE VII - WORKING CONDITIONS
> ... E. CONDUCT OF MUSICIANS
> ... 7:  Society may take disciplinary measures in the event of the violation of these rules or for other just cause.

**ANSWER:**    Paragraph 17 of the Amended Complaint purports to characterize and quote excerpts from the CBA, which speaks for itself. Accordingly, the Philharmonic

respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith.

18.    When Mr. Muckey was granted tenure in January 2008, he received the following message from the then President and Executive Director of the Philharmonic, Zarin Mehta:

> Dear Matthew,
>
> I am delighted with the news of your receiving tenure, and on behalf of the entire New York Philharmonic family, we welcome you to spend your life and career as part of this great institution.
>
> With deepest admiration and best regards,
>
> Sincerely,
>
> Zarin

**ANSWER:**    Paragraph 18 of the Amended Complaint purports to characterize and quote excerpts from the January 2008 message from Mr. Mehta, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the document for its full contents and denies any allegations inconsistent therewith.

19.    Each year, Mr. Muckey receives an agreement which memorializes his compensation as the tenured Associate Principal and Third Trumpet of the Philharmonic for each orchestra season.

**ANSWER:**    The Philharmonic admits as to Paragraph 19 of the Amended Complaint only that Plaintiff received agreements relating to his compensation while the Philharmonic employed him. The Philharmonic otherwise denies the allegations in Paragraph 19 of the Amended Complaint.

20.    The last agreement entered into between Mr. Muckey and the Philharmonic covered the 2023-24 Season.

**ANSWER:** The Philharmonic admits the allegations in Paragraph 20 of the Amended Complaint.

21. Throughout his career, Mr. Muckey has performed in other orchestras, has lectured students, taught masterclasses worldwide, was a professor at Rutgers University, and participated in other musical engagements.

**ANSWER:** The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 and therefore denies the same.

22. Mr. Muckey is also a member of Local 802 and as such member, he is entitled to, *inter alia*, benefits provided by Local 802 as well as fair representation.

**ANSWER:** The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 and therefore denies the same.

23. In fact, in order to incentivize musicians to join Local 802, it promises to those who join fair representation in getting benefits by the following Q&A on its website- "Why join Local 802? Musicians can achieve more pay, benefits, job security and respect with a union than if they try to negotiate separately on their own.  Secondly, the union movement empowers all of us to work together for more justice, equality, diversity, inclusiveness and fairness in all of society – it's a great way to be a part of social change.  Thirdly, there are some core benefits in joining Local 802, which you can see below." *See* https://www.local802afm.org/benefits/.

**ANSWER:** Paragraph 23 of the Amended Complaint purports to characterize and quote excerpts from Local 802's website, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to Local 802's website for its full contents and denies any allegations inconsistent therewith.

10

24.    Mr. Muckey had enjoyed a successful career at the Philharmonic until July 2010 when Cara Kizer ("Ms. Kizer"), a probationary musician at the Philharmonic, with whom Mr. Muckey had consensual sex while they were on tour with the orchestra in Vail, Colorado, made false allegations of sexual assault against him (the "2010 Allegations").

**ANSWER:**    Paragraph 24 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

25.    Mr. Muckey denied the 2010 Allegations as being false and fully cooperated in the multiple, thorough investigations conducted by local authorities in Vail.

**ANSWER:**    Paragraph 25 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

26.    The local authorities, finding no basis to bring any criminal charges against Mr. Muckey, ultimately closed the investigations.

**ANSWER:**    Paragraph 26 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

27.    The Philharmonic, which was fully informed of the false allegations made by Ms. Kizer against Mr. Muckey as well as the investigation conducted by the law enforcement authorities, had determined at that time that it would defer to the authorities with regard to the matter.

**ANSWER:**    The Philharmonic admits as to Paragraph 27 of the Amended Complaint only that it did not terminate Plaintiff's employment or take any adverse employment action against Plaintiff at the time referenced therein. The Philharmonic otherwise denies the allegations in Paragraph 27 of the Amended Complaint.

28.    At that time, the Philharmonic determined that there was no basis to inquire or take any adverse employment action against Mr. Muckey based upon the 2010 Allegations, and Mr. Muckey continued to remain employed at the Philharmonic without issue.

**ANSWER:**    The Philharmonic admits as to Paragraph 28 of the Amended Complaint only that it did not terminate Plaintiff's employment or take any adverse employment action against Plaintiff at the time referenced therein. The Philharmonic otherwise denies the allegations in Paragraph 27 of the Amended Complaint.

29.    In 2013, he became married, and he currently has two young children.

**ANSWER:**    Paragraph 29 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

**B.    In 2018, in Response to the #MeToo Movement, the Philharmonic Investigates the 2010 Allegations and Terminate Mr. Muckey**

30.    Mr. Muckey's career with the Philharmonic continued until 2018 when inquiries generated in the context of the burgeoning #MeToo movement prompted the Philharmonic to suddenly revisit the 2010 Allegations.

**ANSWER:**    The Philharmonic admits as to Paragraph 30 of the Amended Complaint only that, in or about 2018, it undertook an investigation into Ms. Kizer's allegations that Plaintiff sexually assaulted her, and otherwise denies the allegations in Paragraph 30 of the Amended Complaint.

31.    The Philharmonic commenced an investigation into the 2010 Allegations (the "2018 Investigation").

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 31 of the Amended Complaint.

32.    During the 2018 Investigation, Mr. Muckey again denied the 2010 Allegations as being false and denied any allegations of wrongdoing.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 32 of the Amended Complaint.

33.    There had been no new facts warranting the Philharmonic revisiting a matter that it had previously considered and about which it had rejected taking action.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 33 of the Amended Complaint.

34.    However, after the 2018 Investigation concluded, on or about September 4, 2018, the Philharmonic terminated Mr. Muckey's employment and relied upon Article VII of the CBA, purporting to have "just cause" to terminate Mr. Muckey.

13

**ANSWER:**   The Philharmonic admits the allegations in Paragraph 34 of the Amended Complaint.

35.     At the same time, the Philharmonic had similarly conducted an investigation of another musician, Liang Wang ("Mr. Wang") and also terminated his employment, although based upon separate claims of sexual abuse unrelated to the 2010 Allegations or Mr. Muckey.

**ANSWER:**   The Philharmonic admits as to Paragraph 35 of the Amended Complaint only that it investigated Liang Wang around the same time it investigated Plaintiff and terminated Mr. Wang's employment around the same time it terminated Plaintiff's employment. The Philharmonic otherwise denies the allegations in Paragraph 35 of the Amended Complaint.

36.     The terminations of both Mr. Muckey and Mr. Wang were publicly announced by the Philharmonic.

**ANSWER:**   The Philharmonic admits as to Paragraph 36 that it issued a statement regarding the termination of Plaintiff and Mr. Wang. Accordingly, the Philharmonic respectfully refers the Court to its statement for its full contents and denies any allegations inconsistent therewith.

**C.      Local 802 Challenges the Termination of Mr. Muckey in 2018 by Submitting a Grievance and Then Commencing an Arbitration on His Behalf**

37.     Mr. Muckey protested the termination and asked Local 802 to submit a grievance on his behalf to challenge his termination, as did Mr. Wang.

**ANSWER:**   Paragraph 37 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

38.    After review of the allegations against both, Local 802 agreed with Mr. Muckey (and Mr. Wang) that there was no cause to terminate them and submitted a grievance on behalf of the two musicians pursuant to the terms of the CBA seeking their reinstatement on the grounds that there was no "just cause" to terminate the two tenured musicians from their employment and that, therefore, their dismissal from the Philharmonic was in breach of their rights under the CBA.

**ANSWER:**    The Philharmonic admits as to Paragraph 38 of the Amended Complaint only that Local 802 took the actions described therein. To the extent Paragraph 38 of the Amended Complaint purports to characterize the CBA, the CBA speaks for itself; accordingly, the Philharmonic respectfully refers the court to the CBA for its full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Local 802's purported agreement and therefore denies the same, the Philharmonic denies that Local 802's interpretation of the CBA as described in Paragraph 38 of the Amended Complaint was correct, denies that Local 802 had a legitimate basis to submit the grievance referenced therein, and denies that the Philharmonic breached the CBA.

39.    After the matter could not be resolved between Local 802 and the Philharmonic, Local 802 then invoked Article XV of the CBA which provides in pertinent part that, "in the event that the dispute should remain unresolved, it may be submitted by the Union or the Society to an Arbitrator appointed by the American Arbitration Association in accordance with its Voluntary Labor Arbitration Rules."

**ANSWER:**    Paragraph 39 of the Amended Complaint purports to characterize and quote excerpts from the CBA, which speaks for itself. Accordingly, the Philharmonic

respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith. The Philharmonic admits as to Paragraph 39 of the Amended Complaint only that the matter of its decision to terminate Plaintiff and Mr. Wang could not be resolved between itself and Local 802 and that Local 802 invoked Article XV of the CBA.

40.     Article XV of the CBA further provides as follows:

> The decision of the Arbitrator shall be ***final and binding*** upon the Society, the Union and the individual Orchestra member involved...

**ANSWER:**     Paragraph 40 of the Amended Complaint purports to characterize and quote excerpts from the CBA, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith.

41.     The Philharmonic and Local 802 jointly selected Richard I. Bloch[1] ("Arbitrator Bloch") as the independent arbitrator and a formal, confidential arbitration proceeding was initiated by Local 802 on behalf of Mr. Muckey and Mr. Wang, against the Philharmonic challenging its actions (the "Arbitration").

**ANSWER:**     The Philharmonic admits the allegations in Paragraph 41 of the Amended Complaint.

42.     At the hearing, both Mr. Muckey and Mr. Wang were represented by Local 802 counsel as well as their own personal attorneys.

**ANSWER:**     The Philharmonic admits the allegations in Paragraph 41 of the Amended Complaint.

43.     From on or about November 2018 until January 2020, Local 802 worked with its own counsel, as well as Mr. Muckey's (and Mr. Wang's) independently-retained counsel, engaging in

---

[1] Richard I. Bloch is the co-author of the book *Labor Agreement in Negotiation and Arbitration* (2d Ed.)

discovery, collecting and presenting evidence (which included, *inter alia*, testimony from witnesses, including expert testimony, and documentary evidence) in prosecution of its case on behalf of Mr. Muckey (as well as Mr. Wang) and against the Philharmonic for wrongful discharge.

**ANSWER:**    The Philharmonic admits as to Paragraph 43 of the Amended Complaint only that counsel for Local 802, Plaintiff, and Mr. Wang took the actions described therein. The Philharmonic denies that it wrongfully discharged Plaintiff or Mr. Wang.

44.    Arbitrator Bloch conducted extensive evidentiary hearings with regard to the charges against Mr. Muckey and Mr. Wang, including the 2010 Allegations.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 44 of the Amended Complaint.

45.    The arbitration proceedings encompassed a total of twenty (20) hearing days.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 45 of the Amended Complaint.

**D.    The Arbitrator Finds That the Philharmonic Did Not Have "Just Cause" to Terminate Mr. Muckey and Issues an Award in His Favor**

46.    At the conclusion of the Arbitration, Arbitrator Bloch issued a decision, dated April 4, 2020 (the "Award"), in which he determined that the Philharmonic had not established there was "just cause" to terminate Mr. Muckey.

**ANSWER:**    The Philharmonic admits as to Paragraph 46 of the Amended Complaint only that Arbitrator Bloch issued the decision described therein. The Philharmonic denies that it lacked just cause to terminate Plaintiff.

47.    He also found in favor of Mr. Wang with regard to his termination as well.

**ANSWER:** The Philharmonic admits as to Paragraph 47 of the Amended Complaint only that Arbitrator Bloch reached the finding described therein. The Philharmonic denies that it lacked just cause to terminate Mr. Wang.

48. In the Award, Arbitrator Bloch granted the grievance of Local 802, ordering that Mr. Muckey (as well as Mr. Wang) be reinstated at the Philharmonic and restored with all contractual benefits lost, including full back pay for the period during which he was wrongfully terminated, and that seniority be restored.

**ANSWER:** The Philharmonic admits as to Paragraph 48 of the Amended Complaint only that Arbitrator Bloch ordered the relief described therein. The Philharmonic denies that it lacked just cause to terminate Plaintiff.

49. Shortly thereafter, Mr. Muckey was restored to his tenured position in the orchestra as the Associate Principal and Third Trumpet with much success and without any issue.

**ANSWER:** The Philharmonic admits as to Paragraph 49 of the Amended Complaint only that it reinstated Plaintiff to his tenured position following Arbitrator Bloch's decision. The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 of the Amended Complaint and therefore denies the same.

50. Over the ensuing four years there had been no new allegation or complaint involving Mr. Muckey with his colleagues in the orchestra or anyone else.

**ANSWER:** Paragraph 50 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information

sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

51.     Mr. Muckey remained a tenured musician of the Philharmonic as Associate Principal and Third Trumpet and in good standing.

**ANSWER:**    The Philharmonic admits as to Paragraph 51 of the Amended Complaint only that Plaintiff remained a tenured musician of the Philharmonic as Associate Principal and Third Trumpet until the Philharmonic elected not to reengage Plaintiff's contract for the 2025–2026 season. The Philharmonic otherwise denies the allegations in Paragraph 51 of the Amended Complaint.

**E.     The Philharmonic Suspends Mr. Muckey Based Upon the Online Publication of the 2010 Allegations**

52.     On April 12, 2024, four years following the issuance of Award, an article appeared in *Vulture,* a *New York Magazine* website (*"Vulture"* or *"New York Magazine"*) rehashing the 2010 Allegations, inaccurately portraying Ms. Kizer as a victim of wrongdoing by Mr. Muckey and Mr. Wang and criticizing the Philharmonic and the Award (the "Article").

**ANSWER:**    Paragraph 52 of the Amended Complaint purports to characterize the Article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Article for its full contents and denies any allegations inconsistent therewith. The Philharmonic otherwise denies the allegations in Paragraph 52 of the Amended Complaint.

53.     The thrust of the Article was that Mr. Muckey and Mr. Wang were men who had wrongfully victimized Ms. Kizer, a woman, and that the two men should not be permitted to continue to play in the Philharmonic orchestra.

19

**ANSWER:**    Paragraph 53 of the Amended Complaint purports to characterize the Article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Article for its full contents and denies any allegations inconsistent therewith.

54.    No new facts about the 2010 Allegations or any other claimed wrongdoing by Mr. Muckey or Mr. Wang were presented in the Article.  The Article was simply a reiteration of the same 2010 Allegations that Local 802 argued, and the Arbitrator determined, did not constitute "just cause" to warrant Mr. Muckey's dismissal from the Philharmonic.

**ANSWER:**    Paragraph 54 of the Amended Complaint purports to characterize the Article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Article for its full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic denies that it lacked just cause to dismiss Plaintiff.

55.    Upon publication of the Article, there was internet chatter as well as communication among the orchestra members about the Article and inquiry from other publications including *The New York Times*.

**ANSWER:**    Paragraph 55 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

56.    Notwithstanding that the subject matter of the Article concerned the same 2010 Allegations, which already had been arbitrated and determined not to constitute "just cause" in the Award issued in Mr. Muckey's favor, the next day, on April 13, 2024, based solely upon the 2010 Allegations, the Philharmonic barred Plaintiff from attending all rehearsals and

20

performances of the Philharmonic and later that day informed him that his future at the Philharmonic was under further review.

**ANSWER:** The Philharmonic admits as to Paragraph 56 of the Amended Complaint only that it placed Plaintiff on paid administrative leave after the Article's publication. The Philharmonic otherwise denies the allegations in Paragraph 56 of the Amended Complaint.

57. Immediately following the publication of the Article, on April 13, 2024, Howard Robbins ("Mr. Robbins") of the law firm Proskauer Rose, LLP ("Proskauer Rose"), counsel for the Philharmonic, informed Mr. Muckey's counsel, Steven J. Hyman ("Mr. Hyman"), that because of the Article, Mr. Muckey should not attend rehearsals or performances, including the ones he was scheduled for that weekend, pending further advice by the Philharmonic.

**ANSWER:** The Philharmonic admits as to Paragraph 57 of the Complaint only that counsel for the Philharmonic informed counsel for Plaintiff that Plaintiff should not attend rehearsals or performances until further notice. The Philharmonic otherwise denies the allegations in Paragraph 57 of the Amended Complaint.

58. Mr. Robbins subsequently sent an email to Mr. Hyman which stated - "I am writing to confirm that Mr. Muckey should not attend Philharmonic rehearsals or performances until further notice."

**ANSWER:** The Philharmonic admits the allegations of Paragraph 58 of the Amended Complaint.

59. In fact, Mr. Muckey, as well as Mr. Wang, were banned from all Philharmonic activities and could not come to their workplace at David Geffen Hall.

**ANSWER:** The Philharmonic admits as to the allegations in Paragraph 59 of the Amended Complaint only that Plaintiff and Mr. Wang were directed not to attend rehearsal or

performances.  The Philharmonic otherwise denies the allegations of Paragraph 59 of the Amended Complaint.

60.    The Philharmonic also removed Mr. Muckey, as well as Mr. Wang, from concerts to which they had already been assigned for the 2023-24 season.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 60 of the Amended Complaint.

61.    In sum, based solely upon the 2010 Allegations, the Philharmonic took adverse employment action against Mr. Muckey including, but not limited to, a ban from all rehearsals, performances, concerts, and tours and other Philharmonic activities, including those to which he had already been assigned (collectively, "Philharmonic Activities"), which is tantamount to a suspension and violates the Award.  For all intents and purposes, both Mr. Muckey and Mr. Wang were suspended by the Philharmonic solely based on the 2010 Allegations repeated in the Article (the "Suspension").

**ANSWER:**    The Philharmonic admits as to Paragraph 61 of the Amended Complaint only that it placed Plaintiff on paid administrative leave and prohibited Plaintiff from attending rehearsals, performances, concerts, tours, and other Philharmonic activities, including those to which he had already been assigned. The Philharmonic denies that it took those actions based solely upon the 2010 Allegations, denies that those actions were "tantamount to a suspension," and denies that those actions violated the Award.

62.    The Philharmonic's refusal to abide by the Award is without justification.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 62 of the Amended Complaint.

22

F.      **Public Commentaries by Members of the Orchestra, the Classical Music Industry and the General Public Follow the Online Publication of the 2010 Allegations**

63.     The Article reported that, "[i]nterviews with current and former musicians and orchestra staff, however, reveal that some employees, particularly female employees, continue to feel unsafe."

**ANSWER:**     Paragraph 63 of the Amended Complaint purports to quote excerpts from the Article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Article for its full contents and denies any allegations inconsistent therewith.

64.     On April 15, 2024, the Orchestra Committee, which has the duty, together with Local 802, to represent musicians such as Mr. Muckey, stated in *The New York Times* article dated April 15th that it is "the overwhelming sentiment from the orchestra that we believe Cara" and added that, "the orchestra has a culture of 'not taking musician complaints seriously so musicians often do not feel safe in raising accusations of sexual harassment and assault' and called on management to take action to provide a safe workplace."

**ANSWER:**     Paragraph 64 of the Amended Complaint purports to quote excerpts from an April 15, 2024, New York Times article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Times article for its full contents and denies any allegations inconsistent therewith. Answering further, the remaining allegations of this paragraph calls for a legal conclusion, to which no response is required.  To the extent that a response is deemed require it is denied.

65.     In addition, members of the orchestra made public statements that, based on the Article, they believed Ms. Kizer and that Mr. Muckey, as well as Mr. Wang, were therefore guilty of sexual abuse, all notwithstanding the Award rendered in their favor.

23

**ANSWER:** The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 and therefore denies the same.

66. On April 13, 2024, a message was posted on Facebook under the account name, "The Musicians of the New York Philharmonic," stating as follows:

> In light of recent events, we the Orchestra Committee of the New York Philharmonic, believe it is imperative that you hear our voices.
>
> We wholeheartedly denounce and find abhorrent all conduct that violates and degrades the women in our Orchestra.  Such conduct is an affront to women everywhere.  It must never be tolerated.
>
> We call on our fellow musicians and the Philharmonic-Symphony Society to provide a safe environment so that no one is afraid to come to work.

**ANSWER:** Paragraph 66 of the Amended Complaint purports to quote excerpts from an April 13, 2024, Facebook post, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Facebook post for its full contents and denies any allegations inconsistent therewith.

67. Various web sites in the classical music community contained posts which, *inter alia*, portrayed Ms. Kizer, who was female, as "survivor," who was to be believed, portrayed Mr. Muckey, as well as Mr. Wang, both of whom were males, as "predators," rejected their denials as well as the binding determination made by Arbitrator Bloch, and demanded that Mr. Muckey, as well as Mr. Wang, be ousted and permanently removed from the Philharmonic.

**ANSWER:** Paragraph 67 of the Amended Complaint purports to characterize and quote excerpts from various websites in the classical music community, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the various websites in the classical music community for their full contents and denies any allegations inconsistent therewith.

24

68.     Statements from the public were posted in the comments section of the Article as well as on a blog website called *Slippedisc.com* which served as the main channels for spreading various rumors and defamatory information about Mr. Muckey and casting Ms. Kizer as a victim.

**ANSWER:**     Paragraph 68 of the Amended Complaint purports to characterize statements from the Article's comment section and Slippedisc.com, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the statements for their full contents and denies any allegations inconsistent therewith.

69.     Furthermore, a petition dated April 15, 2024, entitled, "An Open Letter to Local 802 AFM Regarding Allegations of Sexual Misconduct by New York Philharmonic Musicians Matthew Muckey and Liang Wang" (the "Petition") by a group called Composers Collective was circulated among the classical music community contending that Mr. Muckey was guilty of sexual assault and demanded that he be permanently removed from the Philharmonic.

**ANSWER:**     Paragraph 69 of the Amended Complaint purports to characterize the Petition, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Petition for its full contents and denies any allegations inconsistent therewith.

70.     Specifically, the Petition stated as follows:

> In response to Sammy Sussman's article, "A Hidden Sexual-Assault Scandal at the New York Philharmonic" in *Vulture* on 12 April 2024 (https://www.vulture.com/article/new-york-philharmonic-sexual-assault-scandal.html),we, a diverse community of composers, musicians, educators, leaders, and allies, call for the investigation of New York Philharmonic musicians Matthew Muckey and Liang Wang by Local 802 AFM to be immediately re-opened.  We also call for both Muckey and Wang to be put on immediate suspension from the New York Philharmonic.
>
> By allowing the alleged perpetrators to remain in their positions, musicians and survivors face a daily affront, with the potential for further harassment, discrimination, and abuse.  If no action is taken, institutions seemingly endorse illegal, unethical, and bigoted behavior.

**ANSWER:**    Paragraph 70 of the Amended Complaint purports to excerpt quotes the Petition, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Petition for its full contents and denies any allegations inconsistent therewith.

71.    Also, on April 16, 2024, a message purporting to be from "The Musicians of the Philadelphia Orchestra" was posted on Facebook, stating, "we want to express our support for and solidarity with Cara, Amanda and the women of the NY Philharmonic who feel unsafe at work as a result of this moral failure."

**ANSWER:**    Paragraph 71 of the Amended Complaint purports to excerpt quotes from an April 16, 2024, Facebook post, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Facebook post for its full contents and denies any allegations inconsistent therewith.

72.    Other members of the orchestra who had previously supported and even testified under oath in the Arbitration in support of Mr. Muckey were cowed into silence.

**ANSWER:**    Paragraph 72 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

73.    Two women, Katherine Needleman and Lara St. John, who are not musicians of the Philharmonic and neither know Mr. Muckey nor have personal knowledge of the facts concerning the 2010 Allegations, engaged in the unlawful dissemination of false and defamatory statements about Mr. Muckey on social media such as Facebook, and/or organized and led petitions and protests at the Philharmonic.

26

**ANSWER:**    Paragraph 73 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 73 of the Amended Complaint purports to characterize statements made on social media by Ms. Needleman and Ms. St. John, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the statements made on social media for their full contents and denies any allegations inconsistent therewith.

74.    An article published by *The Violin Channel* dated May 20, 2024, entitled, "Protests Call for New York Phil to Dissolve Alleged Assault Victim's NDA," reported one such protest led by Ms. St. John and Ms. Needleman on that day in front of David Geffen Hall, and quoted them as stating, "[w]e are having a reckoning right now with misogyny and sexism and this is an opportunity for the New York Philharmonic to be leaders in righting the ship." The same article included photos of Ms. Needleman and other protesters holding up posters which stated, "Clean Up Your Act," What are you afraid of NYPhil????" and "Do the Right Thing."

**ANSWER:**    Paragraph 74 of the Amended Complaint purports to characterize and quote excerpts from a May 20, 2024, article by The Violin Channel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the article by The Violin Channel for its full contents and denies any allegations inconsistent therewith.

75.    From that point, Mr. Muckey and Mr. Wang were targeted by the Philharmonic which was intent on finding a way to dismiss them.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 75 of the Complaint.

27

76. Thereafter, both the Philharmonic and Local 802 took adverse action against Mr. Muckey in response to the escalating chatter in the orchestra and the classical music industry following publication of the article.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 76 of the Complaint.

**G.    The Philharmonic Violates the Award by Suspending Mr. Muckey Because of the 2010 Allegations**

77. Within days of publication of the Article, the Philharmonic took a series of actions against and made a number of public statements about the action it took against Mr. Muckey (and Mr. Wang) in reaction to the Article, including, but not limited to, the following:

(a)    On April 12, 2024, hours after the publication of the Article, the Philharmonic's then President and Chief Executive Officer, Gary Ginstling ("Mr. Ginstling") sent an email to the orchestra members in which he suggested that the "article may well be distressing," and told them, "[i]f you feel you need support, you can reach out confidentially to Kristine, Kristen, DeAnne or me for a conversation and/or a referral to external support resources."

(b)    On April 13, 2024, Mr. Ginstling sent an email addressed to "NY Phil Colleagues," which stated that, "...for the time being, Matthew Muckey and Liang Wang will not be at rehearsals or performances."

(c)    On April 15, 2024, an article appeared in *The New York Times,* titled, "Philharmonic Sidelines 2 Player It Tried to Fire for Misconduct," with the headline, "The New York Philharmonic said the musicians would not perform for now, after a magazine article brought new attention to allegation of misconduct. They have denied wrongdoing," *The New York Times* article reported that, "[t]he New York Philharmonic said on Monday that two players it had tried to fire in

28

2018 – but was forced to rehire after the musicians' union challenged their dismissal – would not take part in rehearsals or performances for the time being after a magazine article detailed the allegations of misconduct that had been made against them." The article further reported that, "[t]he Philharmonic said that the players – the principal oboist, Liang Wang, and the associate principal trumpet, Matthew Muckey – would not appear as the orchestra deals with the fallout from a New York magazine article published on Friday." Moreover, Mr. Ginstling "said in an interview [that same day] that the New York magazine report had 'prompted a lot of strong feelings' and confirmed that Mr. Muckey and Mr. Wang were not playing with the orchestra at the moment."

(d)   On April 16, 2024, an article appeared on the website, www.broadwayworld.com titled, "New York Philharmonic Suspends Two Musicians Amid Outcry Over Past Allegations," with the headline, "[t]he renewed interest in the incident follows an article from New York Magazine."

(e)   On April 18, 2024, Mr. Ginstling issued a public statement to the "New York Philharmonic Community," stating that "the details revealed in the *New York* magazine article are horrifying to me personally.... I am deeply concerned about not only the specifics but broader issues of institutional culture" and announced that the Philharmonic had engaged a law firm "to launch an independent investigation into the culture of the New York Philharmonic in recent years" and "for the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process, and a decision about their future with the New York Philharmonic will be made in due

29

course." That same day, on April 18th, an article in *The New York Times* quoted the Philharmonic's message to the public at large that Mr. Muckey was not being assigned to any Philharmonic activity based solely upon the 2010 Allegations.

(f)    On April 19, 2024, Mr. Ginstling sent a message to the Philharmonic musicians regarding the retention of "an investigator to investigate new allegations of sexual harassment, violence and/or abuse alleged to have been committed by any musicians employed by the Philharmonic."

**ANSWER:**    Paragraph 77 of the Amended Complaint purports to characterize and quote excerpts from various emails and articles, as well as a statement and a message, which all speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the emails, articles, statement, and message for their full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic denies that it placed Plaintiff on paid administrative leave based solely upon the 2010 Allegations.

78.    The clear message by the Philharmonic to the orchestra and to the public in response to the chatter in the classical music industry was that Mr. Muckey (and Mr. Wang) were not being assigned to any Philharmonic activity solely because of the 2010 Allegations.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 78 of the Amended Complaint.

**H.    Local 802 Refuses to Fairly Represent Mr. Muckey Despite His Demands That Local 802 Seek the Philharmonic's Compliance with the Award and Instead Supports the Philharmonic's Action**

79.    To add fuel to the fire, Local 802 took no action against the Philharmonic's violation of the Award, notwithstanding that Local 802 had commenced the arbitration on Mr. Muckey's behalf that restored him to the Philharmonic but instead, *supported* its unlawful action.

**ANSWER:**    The Philharmonic admits as to Paragraph 79 of the Amended Complaint only that Local 802 did not grieve the Philharmonic's decision to place Plaintiff on administrative leave. Answering further, the Philharmonic denies that it violated the Award or engaged in any unlawful action.

80.    Within days of publication of the Article, Local 802 took a series of actions and made a number of statements in reaction to the Article, which openly displayed its support of the Philharmonic's adverse employment actions that violated the Award, including, but not limited to, the following:

> (a)    On April 15, 2024, *The New York Times* reported that, "Sara Cutler, the president and executive director of Local 802, who took office last year, struck a different tone than her predecessors.  She said that the decision to keep Mr. Wang and Mr. Muckey offstage for the time being 'are good first steps but they can't be the last.'"  Ms. Cutler also stated that, "[a]s a woman, a musician and a new union president, I am horrified by what was in the [Article] and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long."

> (b)    On April 18, 2024, an article appeared in *The New York Times,* titled, "Philharmonic Opens Inquiry After Misconduct Allegations Are Revived," with the headline, "The New York Philharmonic commissioned an outside investigation into its culture after a magazine article explored how it handled an accusation of sexual assault in 2010." The article reported that, "Sara Cutler, the new president and executive director of Local 802, said that the union supported the new inquiry."

**ANSWER:** Paragraph 80 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic denies that it violated the Award, and states that Paragraph 80 of the Amended Complaint purports to characterize and quote excerpts from New York Times articles dated April 13 and 15, 2024, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the New York Times articles for their full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 80 and therefore denies the same.

81.    Ms. Cutler did not state that the Philharmonic's sidelining of Mr. Muckey was in violation of the Award which ordered Mr. Muckey's reinstatement with back pay and seniority and that Local 802 would seek enforcement of the Award and restoration of Mr. Muckey to his tenured position as Associate Principal and Third Trumpet.

**ANSWER:** Paragraph 81 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, the Philharmonic denies that it violated the Award.

82.    Nor did Ms. Cutler state that the allegations which appeared in *New York Magazine* were the same as those that were the subject of the arbitration commenced by Local 802 four years ago when it was determined that such allegations did not constitute "just cause" to terminate Mr. Muckey and the Award was granted in his favor.

**ANSWER:**    Paragraph 82 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, the Philharmonic denies that it lacked just cause to terminate Plaintiff in 2018.

83.    Notwithstanding the fact that the Suspension was solely based upon the 2010 Allegations, Local 802, which had previously challenged Mr. Muckey's wrongful termination based upon the 2010 Allegations as not being based upon "just cause," Local 802, now under its new administration led by a woman, Ms. Cutler, refused to seek enforcement of the Award or take any necessary steps to restore Mr. Muckey to resume performing in his tenured position at the Philharmonic.

**ANSWER:**    The Philharmonic admits as to Paragraph 83 of the Amended Complaint only that Local 802 did not seek to compel the Philharmonic to take Plaintiff off paid administrative leave. The Philharmonic otherwise denies the allegations in Paragraph 83 of the Amended Complaint.

84.    Instead, Local 802 consented to, and acquiesced in, the Suspension.

**ANSWER:**    Paragraph 84 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 84 and therefore denies the same. Answering further, the Philharmonic denies that Plaintiff was suspended; rather, Plaintiff was placed on paid administrative leave.

33

85.     Counsel for Mr. Muckey sent a letter to Local 802's counsel dated April 18, 2024, demanding that Local 802 protect Mr. Muckey's rights as determined by the Award, perform its duty of fair representation, and take all the necessary steps to cause the Philharmonic restore Mr. Muckey to resume performing in his tenured position at the Philharmonic.

**ANSWER:**    Paragraph 85 of the Amended Complaint purports to characterize an April 18, 2024, letter that Plaintiff's counsel sent to Local 802's counsel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith.

86.     Counsel for Local 802 responded in a letter dated April 18th stating that Mr. Muckey had to contact Local 802's Chief of Staff, Dan Point, "if Mr. Muckey would like to do something in response to the Philharmonic's action" and then "the Union will evaluate his request at that time."

**ANSWER:**    Paragraph 86 of the Amended Complaint purports to characterize and quote excerpts from an April 18, 2024, letter that Local 802's counsel sent to Plaintiff's counsel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith.

87.     The next day, on April 19th, Mr. Muckey sent a letter directly to Mr. Point demanding that Local 802 immediately act on his behalf to require the Philharmonic to comply with the Award and that Local 802 cease making statements in support of the Philharmonic's actions which contravene the Award.

**ANSWER:**    Paragraph 87 of the Amended Complaint purports to characterize an April 19, 2024, letter that Plaintiff sent to Mr. Point, which speaks for itself. Accordingly, the

34

Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith.

88.    One week later, on April 26th, Local 802's counsel (whom Mr. Muckey's attorney had initially contacted) sent a letter to Mr. Muckey's counsel.

**ANSWER:**    Paragraph 88 of the Amended Complaint purports to characterize an April 26, 2024, letter that Local 802's counsel sent to Plaintiff's counsel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith.

89.    Notwithstanding the fact that the Suspension was based solely upon the 2010 Allegations and the Philharmonic publicly announced same, and notwithstanding that the Award that Local 802 previously obtained in Mr. Muckey's favor determined that Mr. Muckey was entitled to reinstatement to the Philharmonic with back pay and seniority, the response of Local 802 in the April 26th letter was that Local 802 was not going to seek enforcement of the Award or take any necessary steps to restore Mr. Muckey to resume performing in his tenured position at the Philharmonic.

**ANSWER:**    Paragraph 89 of the Amended Complaint purports to characterize an April 26, 2024, letter that Local 802's counsel sent to Plaintiff's counsel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic denies that Plaintiff was suspended, and denies that its decision to place Plaintiff on paid administrative leave was based solely upon the 2010 Allegations or that it publicly announced as much.

90.    Instead, Local 802's counsel responded that, "the NY Philharmonic engaged an investigator to determine whether there were any new or different allegations of sexual

35

misconduct by any members of the Orchestra, including ... [Mr. Muckey]... Local 802 has determined to await the outcome of that investigation before determining how to proceed here."

**ANSWER:** Paragraph 90 of the Amended Complaint purports to quote excerpts from an April 26, 2024, letter that Local 802's counsel sent to Plaintiff's counsel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith.

91. In its response, Local 802 failed to address: (a) the fact that the Suspension occurred *before* any such determination; (b) that no member of the Philharmonic other than Mr. Muckey (and Mr. Wang) was subject to the Suspension pending the "investigation;" and (c) that the Suspension was based solely upon the 2010 Allegations, which violated the Award.

**ANSWER:** Paragraph 90 of the Amended Complaint purports to characterize an April 26, 2024, letter that Local 802's counsel sent to Plaintiff's counsel, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the letter for its full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic denies that the remaining allegations of this Paragraph.

I. **The Philharmonic Conducts Two Investigations in Response to Escalating Chatter in an Effort to Find Grounds to Terminate Mr. Muckey**

92. After Mr. Ginstling's announcement on April 18, 2024 that the Philharmonic had engaged a law firm to conduct an investigation into the culture of the New York Philharmonic (the "Culture Investigation"), it reached out to orchestra members and asked them to come forward to participate in the Culture Investigation.

**ANSWER:** The Philharmonic admits the allegations in Paragraph 92 of the Amended Complaint.

93.     On April 19, 2024, at or around the same time that the Philharmonic was conducting the Culture Investigation, Mr. Ginstling announced that the Philharmonic had also engaged an investigator, Tracey Levy of Levy Employment Law, LLC ("Ms. Levy").

**ANSWER:**     The Philharmonic admits the allegations in Paragraph 92 of the Amended Complaint.

94.     Ms. Levy's background, as she boasts on her law firm's website, https://www.levyemploymentlaw.com/tracey-1-levy/, includes a prior position as "an employment attorney with Proskauer Rose LLP for more than a third of her career, where she advised and litigated on behalf of a broad range of clients to resolve their employment law issues."

**ANSWER:**     Paragraph 94 of the Amended Complaint purports to characterize and excerpt quotes from Ms. Levy's law firm's website, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the website for its full contents and denies any allegations inconsistent therewith.

95.     Given that the clients of Proskauer Rose include the Philharmonic, and that the Proskauer Rose has represented, and continues to represent, the Philharmonic, even in the instant action, Ms. Levy was by no means a "neutral" or "independent" investigator appointed by the Philharmonic to perform such investigation.

**ANSWER:**     The Philharmonic admits as to this Paragraph 95 only that Proskauer Rose has represented the Philharmonic.  The Philharmonic denies the balance of the allegations of this Paragraph.

96.     Ms. Levy was purportedly retained "to investigate new allegations of sexual harassment, violence and/or abuse alleged to have been committed by any musicians employed by the Philharmonic" (the "Levy Investigation").

**ANSWER:**     The Philharmonic admits the allegations in Paragraph 96 of the Amended Complaint.

97.     However, the Levy Investigation was targeted towards two men only, Mr. Muckey and Mr. Wang.

**ANSWER:**     The Philharmonic denies the allegations in Paragraph 97 of the Amended Complaint.

98.     In fact, from the outset, the whole investigative process was unfair and biased in order to effectuate a plan and process to make sure that Mr. Muckey (as well as Mr. Wang) would never return to the orchestra.

**ANSWER:**     The Philharmonic denies the allegations in Paragraph 98 of the Amended Complaint.

99.     The Philharmonic had the Levy Investigation focus on only two musicians, Mr. Muckey and Mr. Wang, both male.

**ANSWER:**     The Philharmonic denies the allegations in Paragraph 99 of the Amended Complaint.

100.     The Philharmonic ignored and did not investigate allegations raised against a female musician in the orchestra regarding a subordinate male orchestra member.

**ANSWER:**     The Philharmonic denies the allegations in Paragraph 100 of the Amended Complaint.

101.    On or about July 9, 2024, the Philharmonic informed Mr. Muckey that Ms. Levy wanted to interview him in connection with the Levy Investigation.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 101 of the Amended Complaint.

102.    Mr. Muckey's attorney, Mr. Hyman, contacted Ms. Levy to inquire about the subject matter of Levy Investigation, but Ms. Levy refused to provide any details regarding the scope of the investigation and merely responded that Mr. Muckey was the subject of the inquiry and that she was looking into allegations related to his conduct during the time he has been employed by the Philharmonic.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 and therefore denies the same.

**J.      Local 802 Refuses to Provide Mr. Muckey with Independent, Nonaffiliated Representation During the Investigation**

103.    Mr. Muckey contacted Local 802 to invoke his rights to have a union representative appear with him in the Levy Investigation once it became apparent that the Levy Investigation could lead to disciplinary action against him, legally referred to as his *Weingarten* rights, established in the Supreme Court case of *National Labor Relations Board v. Weingarten*, 420 US 251 (1975).

**ANSWER:**    Paragraph 103 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, the Philharmonic states that *National*

*Labor Relations Board v. Weingarten*, 420 US 251 (1975) speaks for itself and, accordingly, respectfully refers the Court to that case for its full contents and denies any allegations inconsistent therewith.

104.    Since Local 802 and Mr. Muckey were active adversaries in the instant action, Mr. Muckey specifically requested that arrangements be made for a representative not affiliated with Local 802 to be assigned, so that he was afforded fair representation.

**ANSWER:**    Paragraph 104 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

105.    However, Local 802 rejected the request, and Mr. Muckey was required to attend the interview with Ms. Levy with a Local 802 representative.

**ANSWER:**    Paragraph 105 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

**K.    During the Levy Investigation, Mr. Muckey Learns About the Allegations Made Against Him and Provides Information Which Conclusively Refutes the Allegations**

106.    As part of the Levy Investigation, Mr. Muckey met with Ms. Levy virtually on August 8, 2024, which he attended with a Local 802 representative and his counsel.

**ANSWER:**    Paragraph 106 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to

Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

107. The primary focus of the Levy Investigation was a sexual relationship that Mr. Muckey had in 2008 with an unnamed woman, whom Ms. Levy refused to identify, and a party at which they met at 16 years earlier.

**ANSWER:** Paragraph 107 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

108. Based upon Ms. Levy's questions about the woman, Mr. Muckey was able to identify the woman as someone with whom he acknowledged he had a brief consensual sexual relationship. In the interests of the woman's privacy, she will be referred to in this Amended Complaint as C.S. ("C.S.").

**ANSWER:** Paragraph 108 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

109. Since Mr. Muckey had not been told about the scope of the Levy Investigation or given an opportunity to prepare for it prior to meeting with Ms. Levy, once he understood that the

subject matter concerned C.S., he requested that he have the opportunity to search his memory and records to more fully and accurately respond; Ms. Levy agreed.

**ANSWER:**    Paragraph 109 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

110.    When the virtual meeting resumed on September 3, 2024, Mr. Muckey produced documentary evidence that he had retrieved, including messages he and C.S. exchanged on Facebook Messenger in 2008 and again in 2011-2012 ("Facebook Messages"), and he was also able to more fully respond to Ms. Levy's questions about his relationship with C.S.

**ANSWER:**    Paragraph 110 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

111.    Although Ms. Levy would not divulge what information she had about Mr. Muckey and C.S. or from whom, it was apparent from the line of questioning that the Levy Investigation centered on whether Mr. Muckey's sexual encounters with C.S. were consensual.

**ANSWER:**    Paragraph 111 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without

knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

112.    Mr. Muckey understood that C.S. was alleging that the sex they had was not consensual (the "C.S. Allegation").

**ANSWER:**    Paragraph 112 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same

113.    Therefore, Mr. Muckey described the circumstances of his sexual relationship with C.S. and read to Ms. Levy the Facebook Messages he had retrieved.

**ANSWER:**    Paragraph 113 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

114.    All of the Facebook Messages definitively established that their sexual relationship was consensual and that C.S. had a clear recollection of the sex she had with Mr. Muckey, on two separate occasions.

**ANSWER:**    Paragraph 114 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained

therein and therefore denies the same. Answering further, Paragraph 114 of the Amended Complaint purports to characterize Plaintiff's Facebook Messages with C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

115.    Specifically, C.S. wrote to Mr. Muckey, "I did consent," expressing regret only because she had "wronged" her boyfriend, of whom Mr. Muckey had no prior knowledge.

**ANSWER:**    Paragraph 115 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 115 of the Amended Complaint purports to characterize and quote excerpts from Plaintiff's Facebook Messages with C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

116.    When she later pleads with Mr. Muckey not to "write back" to her boyfriend if he reached out to Mr. Muckey, she stated, "i know you'll want to say that i consented, which i did..."

**ANSWER:**    Paragraph 116 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 116 of the Amended Complaint purports to characterize and quote excerpts from Plaintiff's Facebook Messages with

C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

117.    In another message, C.S. sent holiday greetings to Mr. Muckey and apologized for ignoring him, which she explained was because of problems she was having with her boyfriend after she informed him that she and Mr. Muckey had sex.

**ANSWER:**    Paragraph 117 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 117 of the Amended Complaint purports to characterize Plaintiff's Facebook Messages with C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

118.    Specifically, C.S. stated the following:

> I'm sorry for ignoring you.  [NAME REDACTED] and I have been going through shit. ... **I had a panic attack and told him that we slept together** .... (emphasis added)

**ANSWER:**    Paragraph 118 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 118 of the Amended Complaint purports to characterize and quote excerpts from Plaintiff's Facebook Messages with C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

119.    Not only did C.S. recall the sex she had with Mr. Muckey, she complimented and thanked Mr. Muckey for the sex, and also asked Mr. Muckey for his telephone number, so she could be in touch.  Specifically, C.S. stated the following:

> awwww you're really the best 😊 **thanks for everything, yes, even the sex. it was pretty good**...
>
> and i sort of need your number to get in touch with you. (emphasis added)

**ANSWER:**    Paragraph 119 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 119 of the Amended Complaint purports to characterize and quote excerpts from Plaintiff's Facebook Messages with C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

120.    She also begged Mr. Muckey not to tell her boyfriend that they had sex twice, stating:

> ...PLEASEEEEEEEE **don't tell him about the sex. i told him that we did it twice because we did,** but i REALLY don't want this to evolve into anything and i don't want you dragged into it. DONT REPLY PLEASE (emphasis added)

**ANSWER:**    Paragraph 120 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, Paragraph 120 of the Amended Complaint purports to characterize and quote excerpts from Plaintiff's Facebook Messages with

C.S., which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Facebook Messages for their full contents and denies any allegations inconsistent therewith.

121.    No other relationship between Mr. Muckey was the subject of the Levy Investigation as it pertained to Mr. Muckey.

**ANSWER:**    Paragraph 121 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic denies the allegations therein.

**L.    The Philharmonic Lacks "Just Cause" to Terminate Mr. Muckey and So Utilizes a Never Before Used Provision of the CBA As a Basis to Execute its Plan to Terminate Mr. Muckey**

122.    With the overwhelming documentary evidence submitted by Mr. Muckey, it was manifestly clear that the Philharmonic did not have "just cause" to terminate Mr. Muckey.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 122 of the Amended Complaint.

123.    The Facebook Messages exchanged between C.S. and Mr. Muckey, as well as Ms. Levy's findings that there were no other claims made by any member of the orchestra since 2010, should have convinced the Philharmonic that Mr. Muckey had not engaged in any misconduct.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 123 of the Amended Complaint.

124.    However, the Philharmonic did not want Mr. Muckey returning to the orchestra.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 124 of the Amended Complaint.  By way of further response, Plaintiff had engaged in misconduct and many other

47

members of the Philharmonic had indicated that they would not perform, rendering the Philharmonic unable to perform as a whole, if he were allowed to return.

125.    Since the Philharmonic knew that it could not sustain its burden of establishing "just cause" in order to support the Dismissal, it proceeded to attempt to find a way to circumvent such requirement, and to nonetheless terminate Mr. Muckey without "just cause."

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 125 of the Amended Complaint.

126.    The Philharmonic, with the cooperation of Local 802, whose President publicly supported the Philharmonic's adverse employment actions and saw the Suspension as the "good first steps," implemented a plan and process to assure that Mr. Muckey, as well as Mr. Wang, who were both tenured musicians, would be terminated and not return to their positions in the orchestra.

**ANSWER:**    The Philharmonic denies that its ultimate decision not to re-engage Plaintiff and Mr. Wang for the 2025–2026 season was motivated by bias, lacked support, or was improper in any way. Answering further, Paragraph 126 of the Amended Complaint purports to quote excerpts from Local 802's President's statement, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the statement for its full contents and denies any allegations inconsistent therewith.

127.    On October 15, 2024, the Philharmonic gave Mr. Muckey a "written notice of non-reengagement" (the "Dismissal Notice") informing him that, pursuant to Article XIV of the collective bargaining agreement ("Article XIV"), the Philharmonic would not be re-engaging him as a member of the orchestra for the 2025-26 season and that during the remainder of the current season (2024-25), he would remain subject to the Suspension (the "Dismissal").

48

**ANSWER:** The Philharmonic admits that it notified Plaintiff on October 15, 2024, that he would not be reengaged as a Philharmonic member for the 2025–26 season pursuant to Article XIV of the CBA, and that he would remain on paid administrative leave during the remainder of the 2024–25 season.

128. Mr. Muckey was also given a contract for the current season that reduced his total compensation by discontinuing the overscale weekly pay that he was entitled to receive as the Associate Principal and Third Trumpet.

**ANSWER:** The Philharmonic admits the allegations in Paragraph 128 of the Amended Complaint.

129. No reason was given by the Philharmonic for the Dismissal.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 129 of the Amended Complaint.

130. In fact, counsel for the Philharmonic informed counsel for Mr. Muckey that no reason need be given under Article XIV and that the Philharmonic was exercising its prerogative to terminate Mr. Muckey.

**ANSWER:** The Philharmonic admits as to Paragraph 130 of the Amended Complaint only that it informed counsel for Plaintiff that no reason need be given for Plaintiff's non-reengagement and that Article XIV indeed did not require such explanation. The Philharmonic otherwise denies the allegations in Paragraph 130 of the Amended Complaint.

131. Article XIV had never been invoked or relied upon for the termination of any musician employed by the Philharmonic.

**ANSWER:** The Philharmonic admits the allegations in Paragraph 131 of the Amended Complaint.

132.    In the musical industry, provisions similar to Article XIV have been used in collective bargaining agreements to dismiss a musician for non-disciplinary reasons, such as for the failure to fulfill one's artistic obligations.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 132 and therefore denies the same.

133.    However, the Philharmonic's unprecedented use of Article XIV was not because Mr. Muckey lacked such artistic quality.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 133 of the Amended Complaint.

134.    Mr. Muckey later learned that Article XIV was used against him (as well as Mr. Wang) for the very first time, to do an "end run" around the requirement of "just cause" to terminate their employment.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 134 of the Amended Complaint.

135.    Also, Mr. Muckey later learned that pursuant to a written agreement between the Philharmonic and Local 802, the Philharmonic's use of Article XIV would be applied this one time, as against Mr. Muckey and Mr. Wang only, and that Article XIV would never be applied again as a disciplinary action based upon "just cause" where Article VII.E.7 would otherwise apply.

**ANSWER:**    Paragraph 135 of the Amended Complaint purports to characterize a written agreement between the Philharmonic and Local 802, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the written agreement for its full

50

contents and denies any allegations inconsistent therewith. The Philharmonic otherwise denies the allegations in Paragraph 135 of the Amended Complaint.

136.    The Philharmonic took a different course of action than it did after the 2018 Investigation concluded when it terminated Mr. Muckey's employment, purporting to have "just cause" to terminate him, and then Local 802 challenged the dismissal in arbitration.  This time, with its application of Article XIV, the Philharmonic thus sought to avoid arbitration under Article XV where it would have to prove "just cause" (which it previously failed to do with regard to the 2010 Allegations).

**ANSWER:**    The Philharmonic admits as to the allegations in Paragraph 136 of the Amended Complaint only that it took a different course of action than it did after the 2018 investigation concluded.  The Philharmonic denies the balance of the allegations of this Paragraph.

137.    The invocation of Article XIV therefore deliberately deprived Mr. Muckey of an independent forum in which he could contest the C.S. Allegation made against him and (once again) challenge the Philharmonic's unlawful conduct.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 137 of the Amended Complaint.

**M.    The Philharmonic Informs the Public That It Dismissed Mr. Muckey After a Finding of Sexual Misconduct**

138.    Notwithstanding the Dismissal as not requiring "just cause," the statements made by the Philharmonic suggested that the Dismissal was based upon a finding of sexual misconduct.

**ANSWER:**    Paragraph 138 of the Amended Complaint purports to characterize the Philharmonic's statement, which speaks for itself. Accordingly, the Philharmonic respectfully

refers the Court to its statement for its full contents and denies any allegations inconsistent therewith.

139.    On November 4, 2024, *The New York Times* reported the Dismissal in an article titled, "Philharmonic Dismisses 2 Players Over Sexual Misconduct Allegations," with the headline, "The orchestra said an inquiry found credible claims against the musicians of sexual assault and harassment.  They denied the charges."

**ANSWER:**    Paragraph 139 of the Amended Complaint purports to characterize and quote excerpts from a November 4, 2024, New York Times article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Times article for its full contents and denies any allegations inconsistent therewith.

140.    In the November 4th article, the Philharmonic said, "an investigation that began... has now turned up additional claims of misbehavior."

**ANSWER:**    Paragraph 140 of the Amended Complaint purports to quote excerpts from a November 4, 2024, New York Times article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Times article for its full contents and denies any allegations inconsistent therewith.

141.    The article further quoted the reason for the Dismissal, which was given by the Philharmonic's Executive Adviser, Deborah Borda, as follows:

> Ms. Borda said the inquiry had uncovered "patterns of sexual misconduct and abuse of power" by the two men... The orchestra said the accusations ranged from inappropriate remarks to assault.

**ANSWER:**    Paragraph 141 of the Amended Complaint purports to characterize and quote excerpts from a November 4, 2024, New York Times article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Times article for its full contents and denies any allegations inconsistent therewith.

52

142. The article also highlighted the fact that, notwithstanding the alleged "sexual misconduct" which would normally invoke Article VII.E.7, a termination based upon "just cause," "this year, the Philharmonic used a different strategy to dismiss Mr. Muckey and Mr. Wang. The orchestra invoked a section in the labor agreement known as a 'non-reengagement' provision, notifying the two men that it did not plan to rehire them in the 2025-26 season."

**ANSWER:** Paragraph 142 of the Amended Complaint purports to characterize and quote excerpts from a November 4, 2024, New York Times article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Times article for its full contents and denies any allegations inconsistent therewith.

143. On November 5, 2024, Ms. Borda was similarly reported in the *New York Post* article titled, "NY Philharmonic fires two musicians over alleged sexual misconduct, abuse of power."

**ANSWER:** Paragraph 143 of the Amended Complaint purports to characterize a November 5, 2024, New York Post article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Post article for its full contents and denies any allegations inconsistent therewith.

144. In the November 5th article, Ms. Borda stated that the Levy Investigation, "found that both gentlemen had been involved in sexual abuse and rape as well as abuse of power."

**ANSWER:** Paragraph 144 of the Amended Complaint purports to characterize and quote excerpts from a November 5, 2024, New York Post article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Post article for its full contents and denies any allegations inconsistent therewith.

145.    Ms. Borda also boasted in that same article that, "[Mr. Muckey, as well as Mr. Wang] are barred from the building.... They will never appear on the stage again with the philharmonic ."

**ANSWER:**    Paragraph 145 of the Amended Complaint purports to characterize and quote excerpts from a November 5, 2024, New York Post article, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York Post article for its full contents and denies any allegations inconsistent therewith.

N.    **Mr. Muckey Informs Local 802 That He Protests the Dismissal and At the Same Time, Local 802 Enters Into an Agreement with the Philharmonic Which Limits the Disclosure to Him of Requisite Information**

146.    After receiving the Dismissal Notice, on or about October 16, 2025, Mr. Muckey promptly invoked his limited rights pursuant to Article XV of the CBA and informed Local 802 that he protested the Dismissal.

**ANSWER:**    Paragraph 146 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

147.    The process that followed was similarly unfair, lacked any due process, and was intended to facilitate the Dismissal and limit Mr. Muckey's ability to challenge same.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 147 of the Amended Complaint.

148.    Thereafter, Local 802 informed Mr. Muckey that it had a copy of the investigative report prepared by Ms. Levy (the "Levy Report"), which it was able to obtain pursuant to a confidentiality agreement that it had entered into with the Philharmonic (the "Confidentiality

Agreement"). Local 802 also obtained a copy of an executive summary of the investigative report (the "Executive Summary") which was also subject of the Confidentiality Agreement.

**ANSWER:** Paragraph 148 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 148 and therefore denies the same.

149. However, Local 802 refused to send Mr. Muckey either of the documents.

**ANSWER:** Paragraph 149 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 149 and therefore denies the same.

150. Pursuant to the Confidentiality Agreement, Local 802 agreed not to discuss, provide or otherwise disclose to Mr. Muckey, the Levy Report, and agreed to only permit him to review the Executive Summary in person only, in the presence of a union representative.

**ANSWER:** Paragraph 150 of the Amended Complaint purports to characterize the Confidentiality Agreement, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Confidentiality Agreement for its full contents and denies any allegations inconsistent therewith.

151. Mr. Muckey was informed by Local 802 that while counsel for Local 802 and the President of Local 802 would have access to the Levy Report, he would not, and that he was only able to review the Executive Summary subject to his agreeing to the Confidentiality Agreement,

which provided, among other prohibitions, that Mr. Muckey could not copy the Executive Summary, could not take notes while reviewing it, could not share its findings with Mr. Wang, or otherwise divulge its content.

**ANSWER:** Paragraph 151 of the Amended Complaint purports to characterize the Confidentiality Agreement, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Confidentiality Agreement for its full contents and denies any allegations inconsistent therewith. Paragraph 151 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 151 and therefore denies the same.

152.    Although Mr. Muckey protested the terms of the Confidentiality Agreement, he was informed by Local 802 that if he did not sign the Confidentiality Agreement, he would not be able to view the Executive Summary, and he was therefore compelled to sign it.

**ANSWER:** Paragraph 152 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 152 and therefore denies the same.

**O.      The Executive Summary Is Clearly Unreasonable in Light of the Overwhelming Documentary Evidence Submitted Which Proved That the C.S. Allegation Was False**

153.    On October 24, 2025, Mr. Muckey and his counsel appeared at the offices of Local 802's counsel and signed the Confidentiality Agreement.

**ANSWER:**    Paragraph 153 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 153 and therefore denies the same.

154.    At that time, Mr. Muckey and his counsel were permitted to review the Executive Summary, in the presence of counsel, but were prohibited from taking any notes during such review or making copies of it.

**ANSWER:**    Paragraph 154 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 154 and therefore denies the same.

155.    The Executive Summary contained no exhibits or attachments and was a summary recounting of the Levy Investigation, by Ms. Levy as it pertained to Mr. Muckey.

**ANSWER:**    Paragraph 155 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 155 and therefore denies the same.

156.    The Executive Summary focused on the C.S. Allegation and discussed orchestra members who expressed their reluctance to take the stage with Mr. Muckey based upon the Article and rumor circulated within the orchestra about him.

**ANSWER:**   Paragraph 156 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

157.   The C.S. Allegation, according to the Executive Summary, consisted of an allegation now made some sixteen years later that when she had sex with Mr. Muckey in 2008, she was unable to consent.

**ANSWER:**   Paragraph 157 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

158.   The Executive Summary concluded that C.S. was inebriated in 2008 when she left a party with Mr. Muckey, attended by students of the Manhattan School of Music as well as members of the Philharmonic who taught at the Manhattan School of Music, and went back with him to his apartment to have sex with him.

**ANSWER:**   Paragraph 158 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

159.   In the Executive Summary, Ms. Levy found the C.S. Allegation "credible" notwithstanding the contemporaneous statements made by C.S. in the Facebook Messages referenced above, in which she, *inter alia*:

(a)     makes no mention of her being inebriated or otherwise impaired in her sexual encounter with Mr. Muckey;

(b)     affirmatively states that she "consented" to the sex;

(c)     comments that the "sex was pretty good" and thanks him for it;

(d)     acknowledges that she had sex with Mr. Muckey on a separate occasion thereafter; and

(e)     renewed her relationship with Mr. Muckey as a friend three (3) years later in 2011 and gave Mr. Muckey her new cell phone number, asking him to call her.

**ANSWER:**    Paragraph 159 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

160.    The determination by Ms. Levy that the C.S. Allegation was "credible" was clearly erroneous and contrary to documentary and testimonial evidence.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 160 of the Amended Complaint.

161.    Ms. Levy also found the C.S. Allegation "credible" notwithstanding the apology provided by C.S. when she was confronted by Ms. Levy with the Facebook Messages.

**ANSWER:**    Paragraph 161 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

162.    Ms. Levy's finding was also erroneous because it was not based upon a single interview with any witnesses present at the party, including members of the Philharmonic who were also present at the party, to substantiate C.S.'s belated claim.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 162 of the Amended Complaint.

163.    Indeed, there was no evidence reported by Ms. Levy that contradicted Mr. Muckey's statements and documents, or in any way called into question the authenticity or accuracy of the Facebook Messages.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 163 of the Amended Complaint.

164.    Ms. Levy did not give any weight to the Facebook Messages exchanged between C.S. and Mr. Muckey which proved that the C.S. Allegation was false, and when referred to, the Facebook Messages were taken out of context and quoted in such a manner to justify finding the C.S. Allegation "credible."

**ANSWER:**    Paragraph 164 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

165.    The findings were arbitrarily drafted in such a biased manner to place C.S., the alleged female "victim," in the most positive light and to place Mr. Muckey, the alleged male "perpetrator" in the most negative light.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 165 of the Amended Complaint.

166.    For example, Ms. Levy drew no adverse conclusion regarding the veracity of C.S.' allegation even though C.S. apologized after she was shown her own Facebook messages in which she expressly that she both consented to and enjoyed the sex with Mr. Muckey.

**ANSWER:**    Paragraph 166 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

167.    Nor was an adverse conclusion drawn after C.S. did not deny that she had sent the Facebook messages.

**ANSWER:**    Paragraph 167 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

168.    Also, the Executive Summary gave no weight to the fact that it was C.S.' boyfriend (and not C.S.) who removed Mr. Muckey as C.S.' "Facebook friend" on Facebook, after he found the messages exchanged between C.S. and Mr. Muckey, and that a few years later, it was C.S. who reached out to Mr. Muckey by sending him a "Friend Request" on Facebook so she could connect with him on Facebook again.

**ANSWER:**    Paragraph 168 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

169.    Ms. Levy discredited the message exchange between C.S. and Mr. Muckey as "meaningless," even though in those messages, C.S. provided Mr. Muckey, (the man with whom she now claimed to have had nonconsensual sex) with her new telephone number.

**ANSWER:**    Paragraph 169 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

170.    The Executive Summary was otherwise biased and drafted to portray Mr. Muckey in the most negative light to justify Ms. Levy's "finding" of wrongdoing.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 170 of the Amended Complaint.

**P.    The Executive Summary Erroneously Finds a "Pattern" of Abuse by Mr. Muckey**

171.    The Executive Summary purported to document alleged pattern of abuse of women by Mr. Muckey (and Mr. Wang).

**ANSWER:**    Paragraph 171 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

172.    However, with the exception of the C.S. Allegation, which was proven false by the documentary evidence, there was no other credible complaint of any misconduct of Mr. Muckey made by any orchestra member, so as to establish a "pattern" of abuse.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 172 of the Amended Complaint.

**Q.    The Philharmonic Has its Investigator Conduct an Unprecedented Survey As Part of Its Plan to Terminate Mr. Muckey, Since it Lacks "Just Cause" to Do So**

173.    In the Executive Summary, Ms. Levy reported that she had not received any complaints from any of the orchestra members about Mr. Muckey.

**ANSWER:**    Paragraph 173 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

174.    After conducting interviews of the orchestra members, and receiving no such complaints, in an extraordinary turn of events, Ms. Levy then solicited the orchestra members to consider whether or not they wanted to play with Mr. Muckey by asking them to respond to the two questions (the "Survey"). Specifically, the Survey asked the following:

(a)    How do you feel about Mr. Muckey (and Mr. Wang) being put on "leave"?

and,

(b)    How would you feel about Mr. Muckey (and Mr. Wang) returning to the orchestra?

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 174 and therefore denies the same.

175.    The Survey did not concern any other musician in the orchestra.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 175 and therefore denies the same.

176.    Indeed, Ms. Levy singled out only two men, Mr. Muckey and Mr. Wang, for such extraordinary action.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 176 and therefore denies the same.

177.    The Survey was a further part of the plan to find a rationale for removing Mr. Muckey and Mr. Wang from the orchestra in the absence of "just cause" to do so.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 177 of the Amended Complaint.

178.    The Survey was not based upon any allegations made by any of the musicians against Mr. Muckey of any misconduct.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 178 of the Amended Complaint.

179.    In fact, the Survey asked no such question.

**ANSWER:**    Paragraph 179 contains vague factual allegations as it is not clear what "such questions" is meant to refer to. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 179 of the Amended Complaint.

180.    Instead, the Survey was calculated to find a justification to support the Philharmonic's decision to:

(a)    initially place Mr. Muckey on "leave pending an investigation" when there was not a single allegation made against him of sexual harassment, violence and/or abuse at the time of such "leave;" and

(b) thereafter terminate Mr. Muckey, after the investigation which was conducted to find allegations of sexual harassment, violence and/or abuse alleged to have been committed by Mr. Muckey, yielded no such allegations, other than an allegation by a woman, which was proven false by her own messages.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 180 of the Amended Complaint.

181. The Executive Summary stated that Ms. Levy's conclusion from her Survey was that a significant number of musicians in the orchestra said that they did not want to be in the orchestra with Mr. Muckey because they said they were uncomfortable or felt unsafe due to allegations they either read about or heard about from rumors circulated among orchestra members or blogs in social media.

**ANSWER:** Paragraph 181 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

182. Yet, Ms. Levy acknowledged that she could not document any allegation about Mr. Muckey's conduct with women in the orchestra since 2010, involving the 2010 Allegations.

**ANSWER:** Paragraph 182 of the Amended Complaint purports to characterize the Executive Summary, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Executive Summary for its full contents and denies any allegations inconsistent therewith.

183. Thus, the Survey was calculated as yet another "end run" around the "just cause" requirement.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 183 of the Amended Complaint.

184. The purpose of the Survey was to develop grounds for the Suspension and Dismissal of Mr. Muckey regardless of what the Levy Investigation found.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 184 of the Amended Complaint.

185. After the Philharmonic did not succeed in obtaining any complaints about Mr. Muckey of misconduct, it then attempted to justify the disciplinary actions it took against Mr. Muckey as being based upon a supposed significant number of orchestra members not wanting to work with him and, therefore, supporting both the Suspension and the Dismissal.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 185 of the Amended Complaint.

186. It did not matter to the Philharmonic that none of the musicians surveyed alleged that Mr. Muckey had engaged in any acts of sexual harassment, violence and/or abuse.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 186 of the Amended Complaint.

**R.     Local 802 Conducts a Dismissal Review Process Which is Unfair, Biased and Predetermined to Find Against Mr. Muckey**

187. Following Mr. Muckey's review of the Executive Summary, he prepared a written response to it (the "Muckey Statement") and submitted it to Local 802's counsel for presentation to the Executive Committee as directed.

**ANSWER:** Paragraph 187 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information

sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

188.    At that time, a Dismissal Review Committee, consisting of nine (9) orchestra members had been elected, which was to serve as an "advisory group" to Local 802 in reviewing the Dismissal.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 188 of the Amended Complaint.

189.    Since the Dismissal Review Committee played a role in the review process, Mr. Muckey requested, through counsel, to appear and present the Muckey Statement to the Dismissal Review Committee; however, Local 802 rejected the request.

**ANSWER:**    The Philharmonic admits as to Paragraph 189 of the Amended Complaint only that the Dismissal Review Committee ("DRC") played a role in the review process. The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189 of the Amended Complaint and therefore denies the same.

190.    In making its recommendation to the Executive Committee, the Dismissal Review Committee reviewed only the Executive Summary and Mr. Muckey was given no opportunity to either appear before the Dismissal Review Committee or present the Muckey Statement to them.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 190 of the Amended Complaint.

191.    The Dismissal Review Committee met and presented its recommendation to the Executive Committee.

**ANSWER:** The Philharmonic admits the allegations in Paragraph 191 of the Amended Complaint.

192. With only the Executive Summary, which did not contain the Facebook Messages exchanged between C.S. and Mr. Muckey, and did not include a responsive statement from Mr. Muckey, the Dismissal Review Committee "unanimously recommended that Local 802 not contest Muckey's and Wang's terminations."

**ANSWER:** The Philharmonic admits as to Paragraph 192 of the Amended Complaint only that the DRC issued the described recommendation. The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192 of the Amended Complaint and therefore denies the same.

193. Then, on November 1, 2024, Mr. Muckey orally presented his statement to the Executive Committee.

**ANSWER:** The Philharmonic admits the allegations in Paragraph 193 of the Amended Complaint.

194. The oral statement was limited to 15 minutes and there was no interaction permitted between Mr. Muckey and members of the Executive Committee.

**ANSWER:** The Philharmonic admits as to Paragraph 194 of the Amended Complaint only that the oral statement was limited to 15 minutes. The Philharmonic denies that the oral statement did not constitute an interaction between Plaintiff and members of the Executive Committee.

195. Thereafter, Mr. Muckey had no opportunity to address the Dismissal Review Committee's recommendation since Mr. Muckey was neither given notice of what the Dismissal Review Committee recommendation was nor a copy of it.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 195 of the Amended Complaint.

S.    **Local 802 Refuses to Challenge the Dismissal and The Philharmonic Unilaterally Amends the Confidentiality Agreement to Permit Local 802 to Publish the Written Decision**

196.    After the Executive Committee met, it issued a written decision on November 4, 2024 (the "Union Decision"), in which it determined not to challenge the Dismissal of Mr. Muckey (as well as the dismissal of Mr. Wang) and not take the issue to arbitration as provided for in Article XV.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 196 of the Amended Complaint.

197.    The Union Decision reveals that it was similarly unfair, biased and predetermined to find against Mr. Muckey in that, *inter alia*:

(a)    it did not prepare a separate decision based solely upon the investigation of Mr. Muckey, but intentionally issued a collective decision which stated that there was a "pattern of predatory conduct" so as to portray Mr. Muckey as having many allegations, notwithstanding its admission that, "the allegations concerning Muckey are not as numerous as those involving Wang," but that,"[w]ith respect to Muckey, the Investigator credited the testimony of a woman;"

(b)    it combined its consideration of Mr. Muckey with the allegations against Mr. Wang notwithstanding that the grievances of Mr. Muckey and Mr. Wang concerned entirely separate claims involving different allegations and findings by Ms. Levy;

(c)    it acknowledged that Article XIV had never been used to terminate a tenured musician such as Mr. Muckey previously, but that the Philharmonic had agreed to

69

do so that for this "exceptional circumstances" involving Mr. Muckey as well as Mr. Wang, and further agreed that in the future it will "not use Article XIV to do an end-run around Article VII.E.7 to avoid its burden of showing 'just cause',"

(d)    while contending that it did not consider the allegations adjudicated in the Award, it "vociferously rejected" expert testimony referred to in the Award that was not the subject of Mr. Muckey's grievance;

(e)    it stated that it was because of the results of the Levy Investigation that it had decided not to take further steps to grieve the Dismissal through an arbitration;

(f)    it relied heavily on the recommendation of the Dismissal Review Committee before which Mr. Muckey could not appear, and which rendered its opinion based on "stories they had heard" and apparent claims not even considered in the Levy Report or Executive Summary;

(g)    it claimed that some percent of the orchestra members would "not take the stage" or felt "extremely uncomfortable or unsafe" without any allegation that Mr. Muckey had done anything abusive to such members;

(h)    it also claimed that "a number of musicians, most of whom were young women who had not heard anything about the allegations before the *Vulture* article, reported to the NY Phil HR Department that they did not feel safe in their workplace, not just because of what they read in the *Vulture* article, but also because their colleagues had begun to share stories of sexual misconduct by the two musicians," which Ms. Levy acknowledged had no basis in fact;

(i)     it found that Mr. Muckey's case presented "extreme circumstances,"

notwithstanding there was only one allegation against Mr. Muckey by C.S. which

Mr. Muckey proved to be false by submitting documentary evidence;

(j)     it concluded that its finding regarding Mr. Muckey was consistent with a

"pattern" of failing to "secure meaningful consent from women" when the Union

Decision could document no other allegation concerning Mr. Muckey other than

the reference to the one C.S. Allegation;

(k)     it considered the "soul crushing" and "heart breaking" regret of the culture in the

orchestra which was "plagued" by Mr. Muckey (and Mr. Wang) when even the

Executive Summary by Ms. Levy conceded that no allegation had been made

against Mr. Muckey since 2010; and,

(1)     it stated that Mr. Muckey exhibited no "contrition" or "empathy" towards his

female "victims" although Mr. Muckey submitted evidence which conclusively

established that the C.S. Allegation was false.

**ANSWER:**     The Philharmonic denies the allegations in Paragraph 197 of the Amended

Complaint.

198.    Notwithstanding that the Dismissal pursuant to Article XIV purportedly did not require

upon a determination by the Philharmonic of "just cause," Local 802 still made the decision that,

"[b]ased on the information in the Executive Summaries, as well as the unanimous

recommendation of the DRC..." that "Local 802 will not challenge the dismissals in arbitration."

**ANSWER:**     Paragraph 198 of the Amended Complaint purports to characterize and

quote excerpts from Article XIV of the CBA and the Union Decision, which speak for

themselves. Accordingly, the Philharmonic respectfully refers the Court to Article XIV of the

CBA and the Union Decision for their full contents and denies any allegations inconsistent therewith.

199.    In fact, in the Union Decision, Local 802 went to great lengths to detail the "findings" of the Levy Investigation which, if true, suggested that Mr. Muckey engaged in sexual misconduct and that the Dismissal was based upon "just cause."

**ANSWER:**    Paragraph 199 of the Amended Complaint purports to characterize Union Decision, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Union Decision for their full contents and denies any allegations inconsistent therewith.

200.    Local 802 explained that the Dismissal was "based on extreme circumstances, including the type and scope of the sexual misconduct at issue and the overwhelming sentiment of the Orchestra members who spoke to the investigator concerning the impact of returning [Mr. Muckey and Mr. Wang] to their workplace."

**ANSWER:**    Paragraph 200 of the Amended Complaint purports to characterize and quote excerpts from the Union Decision, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Union Decision for their full contents and denies any allegations inconsistent therewith.

201.    The Union Decision also stated that, "Although Muckey 'categorically denies' engaging in *any* of the misconduct in the report, we rely on the testimony that was credited by the investigator in her report, which is consistent with a pattern she identified of Muckey failing to secure meaningful consent from women with whom he had sex."

**ANSWER:**    Paragraph 201 of the Amended Complaint purports to quote excerpts from the Union Decision, which speaks for itself. Accordingly, the Philharmonic respectfully refers

the Court to the Union Decision for their full contents and denies any allegations inconsistent therewith.

202.    The Union Decision further stated that, "[w]hile we have signed confidentiality agreements and are not permitted to disclose most of the specific factual details and witness testimony discussed in the Executive Summaries, we are sickened by the pattern of predatory conduct and the failure to comprehend the concept of 'consent' that the witnesses, whom the investigator spoke to and found to be credible, discussed in detail..."

**ANSWER:**    Paragraph 202 of the Amended Complaint purports to quote excerpts from the Union Decision, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Union Decision for their full contents and denies any allegations inconsistent therewith.

203.    Thus, Local 802 decided not to take any further steps to grieve the Dismissal through arbitration because of the results of the Levy Investigation and the "sentiment" of orchestra members.

**ANSWER:**    Paragraph 203 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 203 of the Amended Complaint and therefore denies the same.

204.    Local 802 publicly shared the results of the Levy Investigation when it disseminated the Union Decision to all orchestra members and its contents were also divulged to the public.

**ANSWER:**    Paragraph 204 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B).

To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 204 of the Amended Complaint and therefore denies the same.

205.    Local 802 was permitted to share selected portions of the Executive Summary, which were purportedly "confidential information" pursuant to an amendment of the Confidentiality Agreement, which amendment was unilaterally made without any notice to Mr. Muckey.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 205 of the Amended Complaint. Answering further, Paragraph 205 of the Amended Complaint purports to characterize the Confidentiality Agreement, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Confidentiality Agreement for its full contents and denies any allegations inconsistent therewith.

206.    Specifically, the amendment permitted Local 802 to publish the Philharmonic's purported reasons for the non re-engagement and share such contents of the Executive Summary with orchestra members and the public.

**ANSWER:**    Paragraph 206 of the Amended Complaint purports to characterize the Confidentiality Agreement, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the Confidentiality Agreement for its full contents and denies any allegations inconsistent therewith.

207.    Although the Philharmonic did not cite to the Levy Investigation for its decision to terminate Mr. Muckey, the Philharmonic used the Levy Investigation, and Local 802 used the Union Decision and excerpts from the Executive Summary, to smear Mr. Muckey within the orchestra and before the general public.

74

**ANSWER:** The Philharmonic admits as to Paragraph 207 of the Amended Complaint only that it did not cite to the Levy Investigation in its correspondence where it communicated its decision not to reengage Plaintiff. The Philharmonic otherwise denies the allegations in Paragraph 207 of the Amended Complaint.

208. Both the Philharmonic and Local 802 were also motivated to counter public criticism that it had not done enough in the past to address women's concerns about male misconduct.

**ANSWER:** The Philharmonic denies the allegations in Paragraph 208 of the Amended Complaint.

209. After Mr. Muckey learned that contents of the Executive Summary had been shared, he wanted the same opportunity to be able to comment.

**ANSWER:** Paragraph 209 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 209 of the Amended Complaint and therefore denies the same.

210. Mr. Muckey asked Local 802, through counsel, to have a waiver of confidentiality in a similar amendment so that he could respond to what was published in the Union Decision but was informed that he would have to contact the Philharmonic.

**ANSWER:** Paragraph 210 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 210 of the Amended Complaint and therefore denies the same.

211.    Mr. Muckey thereafter asked the Philharmonic, through counsel, for a similar waiver and his request was ignored.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 211 of the Amended Complaint.

212.    In the end, both the Philharmonic and Local 802 knew that there was no "just cause" to terminate Mr. Muckey and so they both relied upon Article XIV as a device to support the Dismissal of him from his tenured position without having to prove "just cause."

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 212 of the Amended Complaint.

213.    Yet, both the Philharmonic and Local 802 made statements to the public about the "findings" of sexual misconduct, which if true, would constitute "just cause" and in doing so, smeared Mr. Muckey within the orchestra and before the general public.

**ANSWER:**    The Philharmonic admits as to Paragraph 213 of the Amended Complaint only that it made statements to the public about the findings of Plaintiff's sexual misconduct and that such conduct would constitute "just cause." The Philharmonic denies that it smeared Plaintiff whatsoever.

**T.    Mr. Muckey Has Suffered Harm and Sustained Damages As a Result of Both the Suspension and the Dismissal by the Philharmonic and Local 802's Support of the Philharmonic's Adverse Employment Actions**

214.    As a result of the Suspension, Mr. Muckey was not permitted to perform in any Philharmonic concert for the remainder of the 2023-24 season, including the Spring Gala with Gustavo Dudamel, and was not permitted to perform in the Philharmonic tours in China in June 2024 and in Vail in July 2024, among other Philharmonic Activities.

**ANSWER:**    The Philharmonic admits that Plaintiff was not permitted to perform in any Philharmonic concert for the remainder of the 2023–24 season, perform in any tours, or

participate in any other Philharmonic Activities because he was placed on paid administrative leave. The Philharmonic denies that Plaintiff was suspended.

215. Also, as a result of the Suspension, Mr. Muckey was removed from the following rehearsals, concerts and projects:

    (a)    Soloist performance with Chamber Music Society of Lincoln Center;

    (b)    Inaugural orchestral concert of Composing Inclusion, a partnership of the Juilliard Preparatory Division, sponsored by the Philharmonic;

    (c)    All-City Orchestra coaching, sponsored by the Philharmonic; and

    (d)    other opportunities of a like nature.

**ANSWER:** The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 215 and therefore denies the same. Answering further, the Philharmonic denies that Plaintiff was suspended, and states that Plaintiff was placed on paid administrative leave.

216. The Suspension of Mr. Muckey at the Philharmonic and the Philharmonic's public announcement of same, have resulted in a false perception within the classical music community, and beyond, that the Suspension was due to misconduct stemming from the 2010 Allegations.

**ANSWER:** The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 216 and therefore denies the same. Answering further, the Philharmonic denies that Plaintiff was suspended, and states that Plaintiff was placed on paid administrative leave.

217. Similarly, as a result of the Notice of Dismissal, Mr. Muckey was not permitted to perform in a single concert for the current 2024-25 season and will not be permitted to perform

in the Spring Gala with Sutton Foster which is scheduled for May 2025 or the tour in Vail which is scheduled for July 2025.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 217 of the Complaint.

218.    The Dismissal of Mr. Muckey at the Philharmonic and the Philharmonic's public announcement of same, also have resulted in a false perception within the classical music community, and beyond, that the Dismissal is due to misconduct stemming from the C.S. Allegation.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 217 and therefore denies the same.

219.    Additionally, Local 802's public statements that it supports the Philharmonic's adverse employment actions against Mr. Muckey, have similarly resulted in a false perception within the classical music community, and beyond, that Mr. Muckey's Suspension from the Philharmonic is due to misconduct stemming from the 2010 Allegations and that Mr. Muckey's Dismissal from the Philharmonic is due to misconduct stemming from the C.S. Allegation.

**ANSWER:**    Paragraph 219 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 219 and therefore denies the same. Answering further, the Philharmonic denies that Plaintiff was suspended, and states that Plaintiff was placed on paid administrative leave.

220.    Furthermore, Mr. Muckey's reputation has been immensely damaged over social media, in which the statements of the Philharmonic and Local 802 regarding the Suspension and the Dismissal have been reposted and reshared, thereby having exponential effects.

**ANSWER:**    Paragraph 220 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, the Philharmonic denies that Plaintiff was suspended, and states that Plaintiff was placed on paid administrative leave.

221.    As a result, Mr. Muckey has sustained irreversible damage to his reputation as well as his professional musical career, has been removed from other rehearsals, concerts and projects, and lost opportunities with various other music societies and symphonies, that have subsequently canceled or retracted invitations, offers and/or contracts, among other damages.

**ANSWER:**    Paragraph 221 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

222.    Mr. Muckey has applied for positions as a trumpet player in various orchestras, educational institutions, businesses, and even branches of the military.

**ANSWER:**    Paragraph 222 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 222 of the Amended Complaint and therefore denies the same.

223.    Despite Mr. Muckey's impressive musical background, and tenured position in one of the most prestigious orchestras in the world, he has been repeatedly denied employment because of the unwarranted, adverse employment action that the Philharmonic has taken against him which is known all throughout the classical music industry.

**ANSWER:**    The Philharmonic admits as to Paragraph 223 of the Amended Complaint only that it is one of the most prestigious orchestras in the world. Answering further, the Philharmonic denies that it took an unwarranted, adverse employment action against Plaintiff, and states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 223 of the Amended Complaint and therefore denies the same.

224.    Indeed, the fact that Mr. Muckey was dismissed from such an esteemed position at the Philharmonic sends no message other than he has engaged in misconduct, albeit untrue.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 225 of the Amended Complaint.

225.    Both the Philharmonic and Local 802 told orchestra members and the public at large that Mr. Muckey was terminated based upon sexual misconduct supposedly uncovered during the Levy Investigation when both the Philharmonic and Local 802 knew that there was compelling and uncontroverted evidence in the Facebook messages that refuted the C.S. Allegation and proved such allegation to be false.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 225 of the Amended Complaint.

226.    Moreover, both the Philharmonic and Local 802 intentionally published false statements to orchestra members and the public which created the false narrative there was a "pattern" of sexual misconduct by Mr. Muckey, notwithstanding their knowledge of such falsity given that he prevailed in the arbitration regarding allegations of sexual misconduct and submitted compelling and uncontroverted evidence in Facebook messages that refuted the C.S. Allegation and proved it to be false.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 226 of the Amended Complaint.

227.    Their false statements have exposed and continue to expose Mr. Muckey to public contempt, hatred, aversion, and disgrace.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 227 of the Amended Complaint.

228.    The actions of the Philharmonic and Local 802 have not only blemished the reputation of Mr. Muckey, but have permanently maimed his musical career, professional image, and ability to simply earn a livelihood.

**ANSWER:**    The Philharmonic denies that it made any false statements, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 228 of the Amended Complaint and therefore denies the same.

229.    As a result of the actions of the Philharmonic and Local 802, Mr. Muckey has suffered, and continues to suffer, economic harm, as well as sustained emotional distress and mental suffering, for which he has sought and continues to seek psychological treatment.

**ANSWER:** The Philharmonic denies that it made any false statements, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 229 of the Amended Complaint and therefore denies the same.

**U.      Mr. Muckey Exhausts His Federal Administrative Remedies**

230. On March 4, 2025, Mr. Muckey filed a charge of discrimination against the Philharmonic (the "Philharmonic Charge") and a charge of discrimination against Local 802 (the "Local 802 Charge") with the United States Equal Employment Opportunity Commission (the "EEOC"), alleging violations of the law including, but not limited to, Title VII, the New York State Human Rights Law and New York City Human Rights Law based upon his sex.

**ANSWER:** Paragraph 230 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic denies that it discriminated against Plaintiff or violated Title VII, the New York State Human Rights Law, or the New York City Human Rights Law, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 230 of the Amended Complaint and therefore denies the same. Answering further, Paragraph 230 of the Amended Complaint purports to characterize and quote excerpts from the Philharmonic Charge and the Local 802 Charge, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Philharmonic Charge and the Local 802 Charge for their full contents and denies any allegations inconsistent therewith.

231. On March 5, 2025, the EEOC issued a Notice of Right to Sue letter ("Right to Sue Letter") on the Philharmonic Charge and on March 7, 2025, issued a Notice of Right to Sue letter regarding the Local 802 Charge, both of which Mr. Muckey received on March 7, 2025.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 231 and therefore denies the same.

232.    The Right to Sue Letters authorize Mr. Muckey to proceed with his discrimination claims against both the Philharmonic and Local 802 in either state or federal court.

**ANSWER:**    Paragraph 232 of the Amended Complaint purports to characterize and quote excerpts from the Right to Sue Letters, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the Right to Sue Letters for their full contents and denies any allegations inconsistent therewith.

**V.    A Step-by-Step Account of the Collusion Between the Philharmonic and Local 802 to Remove Mr. Muckey From the Orchestra**

233.    From the time the Article was published, both the Philharmonic and Local 802 devised a plan to remove him from the orchestra, with or without just cause, and in order to effectuate such plan, the Philharmonic and Local 802 colluded to take the following steps, *inter alia*:

(a)    The Philharmonic would engage an investigator, who was not neutral or independent, but was a former attorney of the law firm representing the Philharmonic, to find and investigate alleged claims of abuse of women that would focus on Mr. Muckey (and Mr. Wang);

(b)    The investigator would prepare the Levy Report and Executive Summary that would document purported abuse of women by Mr. Muckey (and Mr. Wang);

(c)    The investigation would be used as ground for terminating the employment of Mr. Muckey (and Mr. Wang);

(d)    Local 802 would not grieve the Dismissal of Mr. Muckey (and Mr. Wang) but in fact would support it;

(e)   The Philharmonic would invoke Article XIV, a never before used provision, against Mr. Muckey and Mr. Wang to do an "end run" around the requirement of "just cause" to terminate their employment in the absence of "just cause;"

(f)   The Levy Report or Executive Summary would be used by the Philharmonic and Local 802 to demonstrate Mr. Muckey's purported abuse of women as a basis to support the Dismissal, notwithstanding that both the Philharmonic and Local 802 knew that such claim could not withstand scrutiny under a "just cause" standard;

(g)   The Philharmonic and Local 802 would enter into a Confidentiality Agreement with regard to the Levy Report to not share the Levy report with Mr. Muckey;

(h)   The Philharmonic would require that Mr. Muckey enter into the Confidentiality Agreement in order to have limited review of the Executive Summary such that Mr. Muckey could not copy it, take notes while reviewing it, share its findings with Mr. Wang, or otherwise divulge its content;

(i)   After Mr. Muckey's execution of the Confidentiality Agreement, the Philharmonic and Local 802 would unilaterally amend the Confidentiality Agreement(s), without any notice to Mr. Muckey, to permit Local 802 to publish their reasons for the non re-engagement and share contents of the Executive Summary with orchestra members and the public, while Mr. Muckey would be unable to publicly respond to such comments based upon the Confidentiality Agreement which had not been similarly amended for him;

(j)   Local 802 would agree to the Philharmonic's use of Article XIV to avoid its burden of showing "just cause" to support the Dismissal of Mr. Muckey (and the dismissal of Mr. Wang);

(k)   Local 802 and the Philharmonic would enter into a written agreement in which the Philharmonic would agree that it "will not use Article XIV as an end- run around Article VII.E.7 to avoid its burden of showing 'just cause' for any other tenured orchestra member;

(1)   Local 802 would undertake its obligations under Article XV in such a manner to ostensibly give Mr. Muckey a futile right to contest the allegations against him in the Executive Summary, and Local 802 could then issue a decision rejecting Mr. Muckey's grievance on the grounds that he abused women, thereby permitting the Philharmonic to proceed with terminating Mr. Muckey;

(m)   The Philharmonic would invoke Article XIV to terminate Mr. Muckey, which does not require "just cause," and thus avoid arbitration under Article XV where the Philharmonic would have to prove "just cause" and therefore deprive Mr. Muckey of an independent forum in which he could contest the allegations made against him;

(n)   In furtherance of the plan on October 15, 2024, the Philharmonic would give Mr. Muckey the Dismissal Notice advising him that, pursuant to Article XIV, the Philharmonic would not be re-engaging him as a member of the orchestra for the 2025-26 season and that during the remainder of the current season (2024-25), he would remain subject to the Suspension. Mr. Muckey would be also given a contract that reduced his total compensation by discontinuing the overscale weekly pay that he was entitled to receive as the Associate Principal and Third Trumpet;

(o)    Thus, Mr. Muckey would be given notice that he would remain subject to the Suspension, his compensation would be reduced for the current 2024-25 season, and he would not be re-engaged for the 2025-26 concert season but would be terminated from his position as a tenured orchestra member;

(p)    The Philharmonic and Local 802, based upon the amended Confidentiality Agreement, would then be able to issue public statements claiming that based upon the Levy Investigation, which erroneously found that Mr. Muckey had abused women, he was being removed from his tenured position at the orchestra;

(q)    Local 802 would also, based upon the amended Confidentiality Agreement, be able to share with orchestra members the Union Decision stating that it will not challenge the Dismissal in arbitration, which was ultimately disseminated to the public at large.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 233 of the Amended Complaint.

234.    The plan, as orchestrated between the Philharmonic and Local 802, left Mr. Muckey with no other remedy than to commence an action on his own behalf to seek redress.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 234 of the Amended Complaint.

### AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST LOCAL 802
**(Violation of NLRA, Section 9(a),
Breach of the Duty of Fair Representation)**

235.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "234" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 235 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

86

236.    Pursuant to Section 9(a) of the NLRA, Local 802 has an implied duty of fair representation to Plaintiff who is a member of Local 802.

**ANSWER:**    Paragraph 236 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic states that Paragraph 236 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic states that Section 9(a) of the NLRA speaks for itself and denies all allegations inconsistent therewith.

237.    There is a CBA between Local 802 and the Philharmonic which provides for the terms and conditions of employment, *inter alia*, compensation, disciplinary action, grievance procedures and the arbitration of disputes involving union members such as Plaintiff.

**ANSWER:**    Paragraph 237 of the Amended Complaint purports to characterize the CBA, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith.

238.    Pursuant to Article XV of the CBA, Local 802 and the Philharmonic agreed that an award by an arbitrator is final and binding.

**ANSWER:**    Paragraph 238 of the Amended Complaint purports to characterize the CBA, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith.

239.    In addition, Local 802 has the obligation to its members, such as Plaintiff, to ensure that an arbitral award is enforced according to its terms.

**ANSWER:**    Paragraph 239 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B).

To the extent a response is required, the Philharmonic states that Paragraph 239 of the Amended Complaint purports to characterize the CBA, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith.

240.   Further, pursuant to Article VII and XV of the CBA, Local 802 and the Philharmonic agreed that the Philharmonic can only take disciplinary measures, including dismissal, against a tenured musician of the Philharmonic only in the event of "just cause."

**ANSWER:**   Paragraph 240 of the Amended Complaint purports to characterize and excerpt quotes from the CBA, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith

241.   As its union representative, Local 802 has an obligation to a tenured musician that the Philharmonic adheres to such terms when seeking to terminate a member.

**ANSWER:**   Paragraph 241 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic states that Paragraph 241 of the Amended Complaint purports to characterize the CBA, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the CBA for its full contents and denies any allegations inconsistent therewith.

242.   The Philharmonic breached the CBA and violated the Award rendered in the Arbitration by its Suspension of Plaintiff on April 13, 2024 which, *inter alia*, banned him from all Philharmonic Activities solely based upon the publication of the 2010 Allegations in the Article.

88

**ANSWER:**    Paragraph 242 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

243.    Plaintiff duly requested that Local 802 enforce the Award and have the Philharmonic restore him to his tenured position as Associate Principal and Third Trumpet, but it refused and, in fact, endorsed the Suspension.

**ANSWER:**    Paragraph 243 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same. Answering further, the Philharmonic denies that Plaintiff was suspended, and states that Plaintiff was placed on paid administrative leave.

244.    Local 802's refusal to enforce the Award on Plaintiff's behalf was arbitrary, discriminatory and in bad faith, and in breach of its duty of fair representation.

**ANSWER:**    Paragraph 244 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, this Paragraph calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

245.    Following the Suspension, Local 802, in collaboration with the Philharmonic, created a process whereby Plaintiff could be terminated without "just cause," which was unique to Plaintiff (and Mr. Wang), had never been used before in such circumstances, and would never be used again as an "end run" around "just cause."

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 245 of the Amended Complaint.

246.    Local 802 engaged in a series of actions calculated to avoid Plaintiff's rights pursuant to the "just cause" provisions of the CBA including, but not limited to:

(a)    it refused to provide Plaintiff with an independent *Weingarten* representative at the Levy investigation inquiry;

(b)    it requested the Levy Report from the Philharmonic, notwithstanding that the Philharmonic had given Plaintiff a notice of non-reengagement that purportedly avoided the need for "just cause;"

(c)    it required Plaintiff to agree to the stringent Confidentiality Agreement prohibiting Plaintiff from reviewing the Levy Report and limiting Plaintiff in reviewing the Executive Summary under prohibitive and onerous restrictions;

(d)    it agreed with the Philharmonic to modify the Confidentiality Agreement so that both the Philharmonic and Local 802 would be able to make public those parts of the Levy Report which would cast Plaintiff in a false light as if he engaged in sexual misconduct so as to justify the extraordinary use of Article XIV against him;

(e)    it conducted a sham dismissal review process under Article XV, including convening a Dismissal Review Committee, which is the designated body to consider the validity of the basis for the Philharmonic's claimed actions under Article XIV and providing it with the Executive Summary but refusing Plaintiff the opportunity to appear and rebut it;

(f)      it issued a public decision adopting the Levy Report as to the allegations by C.S.

against Plaintiff, notwithstanding there was overwhelming documentary evidence

refuting it; and;

(g)      it obtained a written agreement with the Philharmonic that Article XIV would

only be used in this instance against Plaintiff (and Mr. Wang) and that it would

never be used again as an "end run" around the "just cause" requirement with

regard to a tenured musician of the Philharmonic.

**ANSWER:**     Paragraph 246 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, with respect to the allegations directed toward it, the Philharmonic denies the allegations in Paragraph 246 of the Amended Complaint.

247.    Under such circumstances, Local 802's consenting to the Dismissal under Article XIV of the CBA as an "end run" around the "just cause" requirement and refusal to challenge the Dismissal in arbitration behalf of Plaintiff, was arbitrary, discriminatory and in bad faith, thereby breaching its duty of fair representation to Plaintiff.

**ANSWER:**     Paragraph 247 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 247 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, this Paragraph calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

248.    By reason of Local 802's arbitrary, bad faith, and discriminatory conduct, Plaintiff has suffered and continues to suffer damages.

**ANSWER:**    Paragraph 248 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, this Paragraph calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

249.    Based upon the foregoing, Plaintiff is entitled to an Order granting the following relief:

(a)    a declaratory judgment that Local 802 has breached its duty of fair representation to Mr. Muckey;

(b)    an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:**    Paragraph 249 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 249 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies Plaintiff is entitled to the requested relief.

**AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST THE PHILHARMONIC**
**(Violation of § 301 of the LMRA, 29 U.S.C. § 185,**
**Breach of the Collective Bargaining Agreement)**

250.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "249" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 250 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

92

251.    The Philharmonic is a party to the CBA with Local 802 and liable to Plaintiff for breach of the CBA pursuant to Section 301 of the LMRA.

**ANSWER:**    Paragraph 251 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic admits only that it is a party to the CBA with Local 802 and denies the balance of the allegations of this Paragraph.

252.    As previously alleged above, Plaintiff was the subject of the Arbitration commenced pursuant to Article XV of the CBA in which an Award was rendered.

**ANSWER:**    The Philharmonic admits the allegations in Paragraph 252 of the Amended Complaint.

253.    Based upon the Award, Plaintiff was reinstated in 2020 as Associate Principal and Third Trumpet and remained in good standing through April 13, 2024.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 253 of the Amended Complaint.

254.    Notwithstanding the Award, as a result of the Article which rehashed the 2010 Allegations, Plaintiff was suspended and barred from all Philharmonic Activities.

**ANSWER:**    The Philharmonic admits as to Paragraph 254 of the Amended Complaint only that Plaintiff was placed on paid administrative leave in or about April 2024 and barred from all Philharmonic Activities. The Philharmonic otherwise denies the allegations in Paragraph 254.

255.    The Suspension of Plaintiff and the continuation of same was thereby violative of the Award, and Plaintiff was entitled to be reinstated to his position in the Philharmonic.

**ANSWER:**    This Paragraph calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

256.    Thereafter, the Philharmonic sought to find some basis to terminate Plaintiff (and Mr. Wang) and accordingly initiated the Levy Investigation even though no claims of wrongdoing against Plaintiff had been alleged.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 256 of the Amended Complaint.

257.    Ms. Levy then conducted her inquiry into Plaintiff and issued the flawed Levy Report.

**ANSWER:**    Paragraph 257 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic denies the allegations in Paragraph 257 of the Amended Complaint.

258.    Based on the Levy Report, the Philharmonic learned of the C.S. Allegation against Plaintiff, but that there was documentary evidence produced by Plaintiff that refuted the allegation and proved that the sex was consensual and, in fact, was rated by C.S. as "pretty good."

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 258 of the Amended Complaint.

259.    The Levy Report also established that since the 2010 Allegations, there were no complaints by any orchestra member against Plaintiff.

**ANSWER:**    Paragraph 259 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). To the extent a response is required, the Philharmonic denies the allegations therein.

260.    Under such circumstances, the Philharmonic understood that there was no basis to terminate Plaintiff for "just cause" and it could not prevail under Article VII and Article XV of the CBA.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 260 of the Amended Complaint.

261.    Therefore, in collaboration with Local 802, the Philharmonic devised a plan to use Article XIV of the CBA to do an "end run" around the "just cause" requirement and terminate Plaintiff under the Dismissal Notice.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 261 of the Amended Complaint.

262.    The Philharmonic agreed with Local 802 that:

(a)    it would use the Levy Report as a basis for justifying the use of Article XIV against Plaintiff;

(b)    it would restrict Plaintiff's review of the Levy Report to an Executive Summary under the prohibitive Confidentiality Agreement;

(c)    it would amend the Confidentiality Agreement so that both Local 802 and the Philharmonic could publicize parts of the Report to place Plaintiff in a bad light;

(d)    it would agree that Article XIV would never again be used as an "end run" around "just cause" to terminate a tenured member of the Philharmonic.

**ANSWER:**   The Philharmonic denies the allegations in Paragraph 262 of the Amended Complaint.

263.   By reason of the foregoing, the Philharmonic's actions in imposing the Suspension and the Dismissal, the Philharmonic has breached the CBA, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:**   This Paragraph calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

264.   Based upon the foregoing, Plaintiff is entitled to an Order granting the following  relief:

   (a)   a declaratory judgment that the Suspension and the Dismissal constitute a breach of the CBA;

   (b)   a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff;

   (c)   reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority;

   (d)   an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:**   Paragraph 264 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies that Plaintiff is entitled to the requested relief.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST LOCAL 802
### (Violation of Title VII of the Civil Rights Act of 1964,
### 28 U.S.C. § 2000e-2, Sex Discrimination)

265.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "264" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 265 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

266.    Title VII, 28 U.S.C. § 2000e-2 states as follows:

(c)    Labor organization practices

It shall be an unlawful employment practice for a labor organization –

(1)    to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his ... sex...;

(2)    to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's ... sex...; or

(3)    to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

**ANSWER:**    Paragraph 266 of the Amended Complaint purports to characterize and quote excerpts from Title VII, 28 U.S.C. § 2000e-2, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to Title VII, 28 U.S.C. § 2000e-2, for its full contents and denies any allegations inconsistent therewith.

267.    Local 802 discriminated against Plaintiff based upon his sex.

**ANSWER:**    Paragraph 267 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 267 of the Amended Complaint calls for a legal conclusion, to

97

which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

268.    In addition, Local 802 caused and/or attempted to cause the Philharmonic to discriminate against Plaintiff because of his sex.

**ANSWER:**    Paragraph 268 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 268 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

269.    Local 802 colluded with the Philharmonic to concoct a way to terminate Plaintiff because of his sex and caused the Philharmonic to discriminate against Plaintiff based upon his sex.

**ANSWER:**    Paragraph 269 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 269 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

270.    Local 802's actions as alleged were motivated by a discriminatory animus against Plaintiff because he was a male accused of sexual misconduct and to placate other union members who wrongfully feared and/or believed that Plaintiff was a threat to women, notwithstanding that there was no credible evidence of any wrongdoing and there was no allegation of wrongdoing by Plaintiff since the 2010 Allegations.

**ANSWER:**    Paragraph 270 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B).

Answering further, Paragraph 270 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

271.    As a result of its bias against Plaintiff based upon his sex, Local 802 consented to, acquiesced and/or joined in the Philharmonic's plan to terminate Plaintiff.

**ANSWER:**    Paragraph 271 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 271 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

272.    By reason of the foregoing, Local 802 has violated Title VII in its unlawful discrimination against Plaintiff on the basis of sex, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:**    Paragraph 272 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 272 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations of this Paragraph.

273.    Based upon the foregoing, Plaintiff is entitled to an Order granting an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:**    Paragraph 273 of the Amended Complaint contains no allegations directed to the Philharmonic and, therefore, no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 273 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies that Plaintiff is entitled to the requested relief.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST THE PHILHARMONIC
### (Violation of Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000e-2, Sex Discrimination)

274.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "273" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 274 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

275.    Title VII, 28 U.S.C. § 2000e-2 states as follows:

(a)    Employer practices

It shall be an unlawful employment practice for an employer —

> (1)    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...

**ANSWER:**    Paragraph 275 of the Amended Complaint purports to quote excerpts from Title VII, 28 U.S.C. § 2000e-2, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to Title VII, 28 U.S.C. § 2000e-2, for its full contents and denies any allegations inconsistent therewith.

276.    Plaintiff was subject to adverse employment actions by his employer, based upon his sex up to and including the Dismissal.

**ANSWER:**    Paragraph 276 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 276 of the Amended Complaint.

277.    The Philharmonic had a motive to discriminate against Plaintiff on the basis of sex, given the public pressure and general sentiment to favor the accusing female over the accused male and embarked on a plan to show the public that it was indeed committed to protecting female musicians from male musicians, regardless of the true facts.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 277 of the Amended Complaint.

278.    The whole process leading up to, and including, the Dismissal consisted of significant investigatory and procedural irregularity that raises a plausible inference of discrimination.

**ANSWER:**    Paragraph 278 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 278 of the Amended Complaint.

279.    The climate, still in the midst of the #MeToo movement, was that the Philharmonic, and the classical music industry as a whole, were not taking complaints of sexual harassment and misconduct against women seriously.

**ANSWER:**    Paragraph 279 contains vague factual allegations as it is not clear what is meant by the "climate." To the extent a response is required, the Philharmonic denies the allegations in Paragraph 279 of the Amended Complaint.

280.    Since the publication of the Article and continuing throughout the proceedings above, there have been ongoing statements in online blog sites and among orchestra members that there

is a culture at the Philharmonic and in the classical music community which is abusive to women.

**ANSWER:**    Paragraph 280 of the Amended Complaint purports to characterize ongoing statements in online blog sites, which speak for themselves. Accordingly, the Philharmonic respectfully refers the Court to the statements for their full contents and denies any allegations inconsistent therewith. Answering further, the Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 280 and therefore denies the same.

281.    In addition, since the publication of the Article and continuing throughout the proceedings above, there have been ongoing petitions and demonstrations calling for Plaintiff and Mr. Wang's dismissal from the Philharmonic because they were men and were allegedly abusive to women.

**ANSWER:**    The Philharmonic is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 281 and therefore denies the same.

282.    There was also the sentiment that, notwithstanding the Award, Ms. Kizer, who is a woman, was to be believed, and Plaintiff, who was a man, was not to be believed.

**ANSWER:**    Paragraph 282 contains vague factual allegations as it is not clear what is referenced by the term "sentiment". To the extent a response is required, the Philharmonic denies the allegations in Paragraph 282 of the Amended Complaint.

283.    These factors motivated the Philharmonic to take a strong stance against Plaintiff, a male, by the Suspension and the Dismissal.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 283 of the Amended Complaint.

284.    Thus, the Philharmonic was determined to show orchestra members, and the public, that it was taking complaints of sexual harassment and misconduct by men against women seriously, even in the absence of any meritorious claims against Plaintiff.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 284 of the Amended Complaint.

285.    The Philharmonic's motivation for its determination to take a strong stance against Plaintiff, a male, reflect an impermissible bias favoring females.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 285 of the Amended Complaint.

286.    The Philharmonic discriminated against Plaintiff because of his sex when it focused an investigation on Plaintiff, a male, and it ignored and did not investigate allegations raised against a female musician in the orchestra.

**ANSWER:**    Paragraph 286 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 286 of the Amended Complaint.

287.    The Philharmonic displayed a deliberate indifference during the Levy Investigation by knowingly refusing to consider the evidence presented by Plaintiff, a male, which not only refuted the allegations of C.S., a woman, but *proved* that the allegations against him were false.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 287 of the Amended Complaint.

288.    The findings in the Executive Summary were clearly arbitrary and erroneous and contrary to the weight of the overwhelming documentary evidence as well as the testimony of Plaintiff.

**ANSWER:**    Paragraph 288 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 288 of the Amended Complaint.

289.    Moreover, the findings were unfair, biased and pre-determined to find against Plaintiff because he is a male.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 289 of the Amended Complaint.

290.    In deciding to terminate the employment of Plaintiff, despite the lack of evidence to sustain any disciplinary action, the Philharmonic was impermissibly motivated by its concern regarding the reaction of orchestra members, particularly female orchestra members, to the return of Plaintiff, a male, against whom allegations of sexual misconduct, albeit unfounded, had been made and whom they wrongfully feared and/or believed was a threat to women, notwithstanding that there was no credible evidence of any wrongdoing and there was no allegation of wrongdoing by Plaintiff since the 2010 Allegations.

**ANSWER:**    Paragraph 290 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 290 of the Amended Complaint.

291.    As a result of the Philharmonic's actions, Plaintiff has been damaged by the loss of his employment, his career and his reputation.

**ANSWER:** Paragraph 291 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 291 of the Amended Complaint.

292. By reason of the foregoing, the Philharmonic has violated Title VII in its unlawful discrimination against Plaintiff on the basis of sex, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:** Paragraph 292 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 292 of the Amended Complaint.

293. Based upon the foregoing, Plaintiff is entitled to an Order granting the following relief:

(a) a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff in the absence of "just cause;"

(b) reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority;

(c) an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:** Paragraph 291 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies that Plaintiff is entitled to the requested relief.

**AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST LOCAL 802**
**(Violation of the New York State Human Rights Law,**
**N.Y.S. Executive Law § 296, Sex Discrimination)**

294.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "293" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 294 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

295.    The New York State Human Rights Law, Executive Law § 296 states as follows:

§ 296. Unlawful discriminatory practices.

1.        It shall be an unlawful discriminatory practice:

(c)        For a labor organization, because of the ... sex... of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer.

**ANSWER:**    Paragraph 295 of the Amended Complaint purports to quote excerpts from the New York State Human Rights Law, § 296, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York State Human Rights Law, § 296, for its full contents and denies any allegations inconsistent therewith.

296.    Local 802 discriminated against Plaintiff based upon his sex.

**ANSWER:**    Paragraph 296 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 296 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 296 of the Amended Complaint.

297.    In addition, Local 802 caused and/or attempted to cause the Philharmonic to discriminate against Plaintiff because of his sex.

106

**ANSWER:**    Paragraph 297 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 296 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 297 of the Amended Complaint.

298.    Local 802 colluded with the Philharmonic to concoct a way to terminate Plaintiff because of his sex and caused the Philharmonic to discriminate against Plaintiff based upon his sex.

**ANSWER:**    Paragraph 298 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 298 of the Amended Complaint.

299.    Local 802's actions as alleged were motivated by a discriminatory animus against Plaintiff because he was a male accused of sexual misconduct and to placate other union members who wrongfully feared and/or believed that Plaintiff was a threat to women, notwithstanding that there was no credible evidence of any wrongdoing and there was no allegation of wrongdoing by Plaintiff since the 2010 Allegations.

**ANSWER:**    Paragraph 299 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 299 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 299 of the Amended Complaint.

300.    As a result of its bias against Plaintiff based upon his sex, Local 802 consented to, acquiesced and/or joined in the unlawful discrimination, which included the Philharmonic's plan to terminate Plaintiff.

107

**ANSWER:**    Paragraph 300 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 300 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 300 of the Amended Complaint.

301.    By reason of the foregoing, Local 802 has violated the NYS Human Rights Law in its unlawful discrimination against Plaintiff on the basis of sex, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:**    Paragraph 301 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 301 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 301 of the Amended Complaint.

302.    Based upon the foregoing, Plaintiff is entitled to an Order granting an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:**    Paragraph 302 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies Plaintiff is entitled to the requested relief.

### AS AND FOR A SIXTH CLAIM FOR RELIEF AGAINST THE PHILHARMONIC
**(Violation of the New York State Human Rights Law,
N.Y.S. Executive Law § 296, Sex Discrimination)**

303.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "302" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 303 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

304.    The New York State Human Rights Law, Executive Law § 296 states as follows:

§ 296. Unlawful discriminatory practices.

1.    It shall be an unlawful discriminatory practice:

(a)    For an employer or licensing agency, because of an individual's ... sex, ... to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

**ANSWER:**    Paragraph 295 of the Amended Complaint purports to quote excerpts from the New York State Human Rights Law, § 296, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York State Human Rights Law, § 296, for its full contents and denies any allegations inconsistent therewith.

305.    Plaintiff is a member of a protected class because he is a male.

**ANSWER:**    Paragraph 305 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic admits that Plaintiff is male.

306.    Plaintiff is qualified for the tenured position of Associate Principal and Third Trumpet.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 306 of the Amended Complaint.

307.    The Philharmonic discriminated against Plaintiff because of his sex when it focused an investigation on Plaintiff, a male, and it ignored and did not investigate allegations raised against a female musician in the orchestra.

109

**ANSWER:**    Paragraph 307 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 307 of the Amended Complaint.

308.    Plaintiff was subject to an adverse employment action by his employer, the Philharmonic, based upon his sex when he was placed on the Suspension.

**ANSWER:**    Paragraph 308 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 308 of the Amended Complaint.

309.    Plaintiff was also subject to an adverse employment action by his employer, based upon his sex when he was given the Notice of Dismissal.

**ANSWER:**    Paragraph 309 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 309 of the Amended Complaint.

310.    In addition, Plaintiff was treated differently, and in fact worse, than other tenured musicians, based solely upon his sex.

**ANSWER:**    Paragraph 310 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 310 of the Amended Complaint.

311.    The adverse and different employment actions taken against Plaintiff by the Philharmonic occurred under circumstances giving rise to an inference of discrimination.

**ANSWER:**    Paragraph 311 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 311 of the Amended Complaint.

110

312.    As a result of the Philharmonic's actions, Plaintiff has been damaged by the loss of his employment, his career and his reputation.

**ANSWER:**    Paragraph 312 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 312 of the Amended Complaint.

313.    By reason of the foregoing, the Philharmonic has violated the NYS Human Rights Law in its unlawful discrimination against Plaintiff on the basis of sex, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:**    Paragraph 313 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 313 of the Amended Complaint.

314.    Based upon the foregoing, Plaintiff is entitled to an Order granting the following relief:

(a)    a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff in the absence of "just cause;"

(b)    reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority;

(c)    an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:**    Paragraph 314 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies that Plaintiff is entitled to the requested relief.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF AGAINST LOCAL 802
**(Violation of the New York City Human Rights Law,
N.Y.C. Administrative Code § 8-107, Gender Discrimination)**

315.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "314" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 315 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

316.    The New York City Human Rights Law, N.Y.C. Administrative Code, 8-107 states as follows:

§ 8-107. Unlawful discriminatory practices.

1.    Employment. It shall be an unlawful discriminatory practice:

(c)    For a labor organization or an employee or agent thereof, because of the actual or perceived ... gender... of any person, to exclude or to expel from its membership such person, to represent that membership is not available when it is in fact available, or to discriminate in any way against any of its members or against any employer or any person employed by an employer.

**ANSWER:**    Paragraph 316 of the Amended Complaint purports to quote excerpts from the New York City Human Rights Law, N.Y.C. Administrative Code, 8-107, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York City Human Rights Law, N.Y.C. Administrative Code, 8-10, for its full contents and denies any allegations inconsistent therewith.

317.    Local 802 discriminated against Plaintiff based upon his gender.

112

**ANSWER:** Paragraph 317 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 317 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 317.

318. In addition, Local 802 caused and/or attempted to cause the Philharmonic to discriminate against Plaintiff because of his gender.

**ANSWER:** Paragraph 318 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 318.

319. Local 802 colluded with the Philharmonic to concoct a way to terminate Plaintiff because of his gender and caused the Philharmonic to discriminate against Plaintiff based upon his gender.

**ANSWER:** Paragraph 319 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 319.

320. Local 802's actions as alleged were motivated by a discriminatory animus against Plaintiff because he was a male accused of sexual misconduct and to placate other union members who wrongfully feared and/or believed that Plaintiff was a threat to women, notwithstanding that there was no credible evidence of any wrongdoing and there was no allegation of wrongdoing by Plaintiff since the 2010 Allegations.

**ANSWER:** Paragraph 320 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to

113

Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 320 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 320.

321.    As a result of its bias against Plaintiff based upon his gender, Local 802 consented to, acquiesced and/or joined in the unlawful discrimination, which included the Philharmonic's plan to terminate Plaintiff.

**ANSWER:**    Paragraph 321 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 321 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 321.

322.    By reason of the foregoing, Local 802 has violated NYC Human Rights Law in its unlawful discrimination against Plaintiff on the basis of gender, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:**    Paragraph 322 of the Amended Complaint contains allegations directed against another defendant, to which no response is required from the Philharmonic pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 322 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 322.

323.    Based upon the foregoing, Plaintiff is entitled to an Order granting an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

114

**ANSWER:**    Paragraph 323 of the Amended Complaint contains no allegations directed to the Philharmonic, to which no response is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Answering further, Paragraph 323 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies that Plaintiff is entitled to the requested relief.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF AGAINST THE PHILHARMONIC
### (Violation of the New York City Human Rights Law,
### N.Y.C. Administrative Code § 8-107, Gender Discrimination)

324.    Plaintiff incorporates by reference and repeats and realleges each and every allegation set forth in paragraphs "1" through "323" as if set forth in full herein.

**ANSWER:**    Answering Paragraph 324 of the Amended Complaint, the Philharmonic incorporates each of its foregoing responses as if fully set forth herein.

325.    The New York City Human Rights Law, N.Y.C. Administrative Code, 8-107 states as follows:

§ 8-107. Unlawful discriminatory practices.

1.    Employment. It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived ... gender... of any person:

(2)    To refuse to hire or employ or to bar or to discharge from employment such person; or

(3)    To discriminate against such person in compensation or in terms, conditions or privileges of employment.

**ANSWER:**    Paragraph 325 of the Amended Complaint purports to quote excerpts from the New York City Human Rights Law, N.Y.C. Administrative Code, 8-107, which speaks for itself. Accordingly, the Philharmonic respectfully refers the Court to the New York City Human

115

Rights Law, N.Y.C. Administrative Code, 8-10, for its full contents and denies any allegations inconsistent therewith.

326.    Plaintiff is a member of a protected class because he is a male.

**ANSWER:**    Paragraph 326 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic admits that Plaintiff is male.

327.    Plaintiff is qualified for the tenured position of Associate Principal and Third Trumpet.

**ANSWER:**    The Philharmonic denies the allegations in Paragraph 327 of the Amended Complaint.

328.    The Philharmonic discriminated against Plaintiff because of his sex when it focused an investigation on Plaintiff, a male, and it ignored and did not investigate allegations raised against a female musician in the orchestra.

**ANSWER:**    Paragraph 328 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 328.

329.    Plaintiff was subject to an adverse employment action by his employer, the Philharmonic, based upon his gender when he was placed on the Suspension.

**ANSWER:**    Paragraph 329 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 329.

330.    Plaintiff was also subject to an adverse employment action by his employer, based upon his gender when he was given the Notice of Dismissal.

**ANSWER:**    Paragraph 330 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 330.

331.    In addition, Plaintiff was treated differently, and in fact worse, than other tenured musicians, based solely upon his gender.

**ANSWER:**    Paragraph 331 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 331 of the Amended Complaint.

332.    The adverse and different employment actions taken against Plaintiff by the Philharmonic occurred under circumstances giving rise to an inference of discrimination.

**ANSWER:**    Paragraph 332 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 332 of the Amended Complaint.

333.    As a result of the Philharmonic's actions, Plaintiff has been damaged by the loss of his employment, his career and his reputation.

**ANSWER:**    Paragraph 333 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 333 of the Amended Complaint.

334.    By reason of the foregoing, the Philharmonic has violated NYC Human Rights Law in its unlawful discrimination against Plaintiff on the basis of gender, thereby causing Plaintiff to suffer, and continue to suffer, damages.

**ANSWER:**    Paragraph 334 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies the allegations in Paragraph 334 of the Amended Complaint.

335.    Based upon the foregoing, Plaintiff is entitled to an Order granting the following relief:

(a)    a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff in the absence of "just cause;"

(b)    reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority;

(c)    an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages of up, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

**ANSWER:**    Paragraph 335 of the Amended Complaint calls for a legal conclusion, to which no response is required. To the extent a response is required, the Philharmonic denies Plaintiff is entitled to the requested relief.

WHEREFORE, Plaintiff requests that this Court issue an Order grating the following relief to Plaintiff:

A.    On the First Claim for Relief Against Local 802:

1)    a declaratory judgment that Local 802 has breached its duty of fair representation to Mr. Muckey; and

118

2)     an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

B.     On the Second Claim for Relief Against the Philharmonic, a declaratory judgment that the Suspension and the Dismissal constitute a breach of the CBA;

1)     a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff;

2)     reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority; and

3)     an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

C.     On the Third Claim for Relief Against Local 802, an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

D.     On the Fourth Claim for Relief Against the Philharmonic:

119

1) a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff in the absence of "just cause;"

2) reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority; and

3) an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

E. On the Fifth Claim for Relief Against Local 802, an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

F On the Sixth Claim for Relief Against the Philharmonic:

1) a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff in the absence of "just cause;"

2) reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority; and

3) an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

G. On the Seventh Claim for Relief Against Local 802, an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment.

H. On the Eighth Claim for Relief Against the Philharmonic:

1) a permanent injunction enjoining the Philharmonic from terminating the employment of Plaintiff in the absence of just cause;"

2) reinstatement of Plaintiff to his position at the Philharmonic as Associate Principal, Third Trumpet, and restoration of all contractual benefits lost, including full back pay for the period during which he was wrongfully suspended and terminated, and the restoration of seniority; and

3) an award of economic damages of not less than $25,000,000, in an exact amount to be determined at trial, plus prejudgment interest, compensatory and punitive damages, and attorneys' fees, expenses, costs and disbursements, in an amount not presently capable of ascertainment; and

I. Such other and further relief as this Court may deem just, proper and equitable.

**ANSWER:** The Philharmonic but denies that it breached the CBA or violated § 301 of the LMRA, 29 U.S.C. § 185; Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000e-2; the

121

New York State Human Rights Law, N.Y.S. Executive Law § 296; or the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107, and further denies that Plaintiff is entitled to any damages or relief whatsoever from the Philharmonic, including, without limitation, actual damages, statutory damages, punitive damages, past and future damages that may be incurred during the duration of this action, costs, and reasonable attorneys' fees.

### THE PHILHARMONIC-SYMPHONY SOCIETY OF NEW YORK, INC.'S AFFIRMATIVE AND OTHER DEFENSES

The Philharmonic asserts the following affirmative and other defenses. In asserting these defenses, the Philharmonic does not assume the burden with respect to any issue as to which applicable law places the burden on Plaintiff. The Philharmonic reserves the right to supplement, amend, or rescind any or all of the following defenses, as warranted by discovery or any other investigation, or as justice may require.

### FIRST DEFENSE

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by reason of payments Plaintiff received from the Philharmonic.

### FOURTH DEFENSE

Plaintiff's claims under New York State law and New York City law are preempted under

Section 301 of the Labor Management Relations Act.

## FIFTH DEFENSE

Plaintiff's claims under Section 301 of the Labor Management Relations Act are barred because Plaintiff failed to exhaust mandatory contractual and internal union prerequisites before bringing this lawsuit.

## SIXTH DEFENSE

Plaintiff cannot establish a viable "hybrid" Section 301 claim against the Philharmonic because he cannot prove that the Union breached the duty of fair representation.

## SEVENTH DEFENSE

Plaintiff's own deliberate and willful misconduct and egregious abuses of power supplied "just cause" for his termination independent of his non-reengagement, thereby precluding a remedy against the Philharmonic, even if the Union breached its duty of fair representation.

## EIGHTH DEFENSE

Plaintiff failed to take reasonable steps to mitigate his alleged damages, if any.

## NINTH DEFENSE

Plaintiff is not entitled to punitive damages under state, local, or federal law because the actions and conduct of the Philharmonic were at all times taken in good faith, with reasonable grounds for believing that the actions or omissions did not violate the law, and for legitimate and lawful business reasons.

## TENTH DEFENSE

To the extent any monetary damages are awarded Plaintiff, the Philharmonic is entitled to a set-off against said sum to the extent paid, tendered, waived, compromised, and/or released on or before the adjudication herein, including, but not limited to, those amounts paid, tendered,

123

waived, compromised, and/or released through any other proceeding, either formal or informal, or to the extent any additional compensation was paid to Plaintiff over and above his wages.

## ELEVENTH DEFENSE

Plaintiff is not entitled to equitable relief insofar as Plaintiff has adequate remedies at law or with respect to any purported violations that have discontinued, ceased, and/or are not likely to recur.

## TWELFTH DEFENSE

Plaintiff's claim is barred, in whole or in part, because Plaintiff has unclean hands.

Dated: April 8, 2026                      Respectfully submitted,


*/s/ Ashley R. Lynam*

Ashley R. Lynam
(NY Bar No. 5701404) (admitted *pro hac vice*)
Jacob Sand (admitted *pro hac vice*)
Natalie Georges (NY Bar No. 5011325)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001
ashley.lynam@morganlewis.com
jacob.sand@morganlewis.com
natalie.georges@morganlewis.com

Geneva Ramirez (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
T: 312.324.1000 | F: 312.324.1001
geneva.ramirez@morganlewis.com

*Attorneys for The Philharmonic-Symphony Society of New York, Inc.*

125

## CERTIFICATE OF SERVICE

I certify that today, April 8, 2026, I caused a true and correct copy of the foregoing to be served by CM/ECF on all counsel of record.

/s/ Ashley R. Lynam
Ashley R. Lynam